IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

FILED
KENNETH J. MURPHY
CLERK

91 JUN 10 PM 2: 52

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
ST. DIV. COLUMBUS

KEELY THOMPSON, et al.,

           Plaintiffs

vs.

STATE OF OHIO, et al.,

           Defendants.

:  CASE NO. C2-91-464
:
:
:
:  NOTICE OF REMOVAL
:
:  MAGISTRATE JUDGE KEMP
:
:

TO:    The United States District Court
        For the Southern District of Ohio
        Eastern Division

The State of Ohio, the Ohio State Board of Education, Superintendent Franklin

B. Walter, and the Ohio Department of Education, defendants in the above-titled action,

state:

    1.    Defendants desire to exercise their rights under the provisions of 28 U.S.C.

§ 1441, et seq., to remove this action from the Common Pleas Court for Perry County,

Ohio, in which said action is now pending under the name and style Keely Thompson, et

al. v. State of Ohio, et al., Case No. 21752.

    2.    This is an action of a civil nature in which the District Courts of the United

States have been given original jurisdiction pursuant to 28 U.S.C. § 1331 in that it arises

under the Fourteenth Amendment to the Constitution of the United States and 42 U.S.C.

§ 1400, et seq.

    3.    In particular, plaintiffs allege that the system of funding public education in

Ohio deprives plaintiffs of equal protection of law and due process of law as guaranteed

by the Fourteenth Amendment to the Constitution of the United States.

4.     Further, plaintiffs allege that the system of funding public education in Ohio fails to provide adequate services for handicapped students in violation of 42 U.S.C. § 1400 et seq.

5.     The date on or before which these defendants are required by the laws and Civil Rules of the State of Ohio to answer or plead to plaintiffs' complaint has not lapsed.  This action was filed on May 9, 1991.  Summons and complaint were served on the Ohio Department of Education on May 10, 1991 and on the other defendants on May 13, 1991.  An amended complaint was filed on June 3, 1991.  Under Ohio Rules of Civil Procedure 15(A), defendants have fourteen days after service of the amended complaint in which to file an answer.  In accordance with the requirements of 28 U.S.C. § 1446, this notice of removal is filed within 30 days after the service of the initial summons and complaint on defendants.

6.     Pursuant to the provisions of 28 U.S.C. § 1446, defendants attach hereto and incorporate herein copies of the following served upon them in this action:

(a)     Complaint for Declaratory Relief filed in the Perry County Court of Common Pleas, Case Number 21752 and served on all defendants (Attached as "A");

(b)     Summons' on Complaint served on all defendants (Attached as "B");

(c)     First Amended Complaint for Declaratory Relief served on all defendants (Attached as "C"); and

(d)     Answer of all defendants (Attached as "D").

- 2 -

7.  Written notice of the filing of this notice will be given to adverse parties as required by law.

8.  A true copy of this notice will be filed with the clerk of the Perry County Court of Common Pleas, as required by law.

WHEREFORE, Defendants request that this action be removed from the Court of Common Pleas, Perry County, Ohio, to this Court.

Dated: June _10_, 1991

LEE FISHER
ATTORNEY GENERAL

Christopher Culley (0022870)
Assistant Attorney General

Mark A. Vander Laan (0013297), Trial Attorney
Lawrence A. Kane, Jr. (0012711)
Joel S. Taylor (0019572)
David K. Mullen (0046857)
DINSMORE & SHOHL
Corporate Pavilion at City Center
Suite 330
175 South Third Street
Columbus, Ohio  43215-5134
(614) 224-7887

Special Counsel for the State of Ohio,
Superintendent Franklin B. Walter,
the Ohio State Board of Education, and
the Ohio Department of Education

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing has been served by regular U.S. mail, postage prepaid upon Nicholas A. Pittner, James A. Readey, and John F. Birath, Jr., Bricker & Eckler, 100 South Third Street, Columbus, Ohio, 43215, this _10th_ day of June, 1991.

_(signature)_

- 4 -

# EXHIBIT A

IN THE COURT OF COMMON PLEAS, PERRY COUNTY, OHIO

KEELY THOMPSON, Parent          '91 MAY  9: PM 4 30
and Next Friend of
CHRISTOPHER THOMPSON, a Minor  PERRY COUNTY
Box 108, Elm Street             CLERK OF COURTS
Shawnee, Ohio 43782                          :

JOSEPH WENNENBERG                            :
127 Highland Drive
New Lexington, Ohio 43764                    :

SOUTHERN LOCAL SCHOOL DISTRICT               :
BOARD OF EDUCATION
10397 State Route 155 S.E.                    :
Hemlock, Ohio 43743
                                             :

LOUIS ALTIER, President of                   :
the Southern Local School District :
Board of Education
Box 450, Jackson Street                      :
Corning, Ohio 43730
                                             :

       and                                   :

JAMES ROSENDAHL, Superintendent of
the Southern Local School District :
10397 State Route 155 S.E.
Hemlock, Ohio 43743                          :

          Plaintiffs,                        :

    vs.                                      :    Case No. **21752**

STATE OF OHIO                                :    COMPLAINT FOR
c/o Attorney General of Ohio                      DECLARATORY RELIEF
State Office Tower, 17th Floor                :
30 East Broad Street
Columbus, Ohio 43266-0410                    :

STATE BOARD OF EDUCATION OF OHIO             :
Ohio Departments Building
65 South Front Street                        :
Columbus, Ohio 43266-0308

FRANKLIN B. WALTER, Superintendent           :
of Public Instruction
808 Ohio Departments Building                :
65 South Front Street
Columbus, Ohio 43266-0308                    :

       and                                   :
OHIO DEPARTMENT OF EDUCATION
Ohio Departments Building                    :
65 South Front Street
Columbus, Ohio 43266-0308                    :

       Defendants.                           :

## I. INTRODUCTION

1.    This action is brought by and on behalf of a pupil,
parent, school teacher, school district board of education, board
of education president, and school superintendent for the purpose
of obtaining a declaratory judgment pursuant to Chapter 2721 of
the Ohio Revised Code ("O.R.C."). Plaintiffs seek an order of
this Court declaring that the defendants' current system of
funding elementary and secondary public education in Ohio as
applied to them and others, fails to comply with mandates of the
Ohio Constitution, including the requirement that the state
provide a thorough and efficient system of public education, and
unlawfully discriminates against Plaintiffs and others in
violation of rights secured by the Ohio and United States
Constitutions.

## II.   THE PARTIES

### A.   Plaintiffs

2.    Plaintiff Christopher Thompson is a minor and a student
in the Southern Local School District in Perry County, Ohio.
Plaintiff Christopher Thompson brings this action through Keely
Thompson, his parent and next friend.

3.    Plaintiff Joseph Wennenberg is a teacher employed by
the Southern Local School District Board of Education and is
responsible for providing instruction to high school students
attending school in the Southern Local School District.

2

4.   Plaintiff Southern Local School District Board of Education, is the governing body of the Plaintiff Southern Local School District in Perry County, Ohio.  The Southern Local School District Board of Education is required by the Constitution and laws of the State of Ohio and of the United States to provide an educational program for Plaintiff Christopher Thompson and all other public school pupils attending the schools of the district. The Southern Local School District Board of Education is authorized to bring this action by O.R.C. Sections 3313.17 and 3313.47.

5.   Plaintiff Louis Altier is a duly elected, qualified, and acting member of the Southern Local School District Board of Education and serves as President of that Board.

6.   Plaintiff James Rosendahl is the Superintendent of the Southern Local School District, Perry County, Ohio.  Plaintiff Rosendahl is charged with responsibility for the overall administration of the Southern Local School District and the provision of educational programs and services to the pupils of the district.  Plaintiffs Rosendahl and Southern Local School District Board of Education are also charged with the responsibility of providing an appropriate special education program and related services for each handicapped pupil residing in the Southern Local School District.

**B.   Defendants**

7.   Defendant State of Ohio, through the Ohio General Assembly, is required to provide for a system of public education

3

in the State of Ohio in accordance with the Constitutions and laws of the United States and the State of Ohio.

8. Defendant State Board of Education is the governing body charged with general supervision of public education in the state and having those powers enumerated in O.R.C. Section 3301.07.

9. Defendant Franklin B. Walter is the duly appointed, qualified and acting Superintendent of Public Instruction for the State of Ohio, having those powers and responsibilities described in O.R.C. Sections 3301.08 through and including 3301.12. Defendant Walter is charged with the overall responsibility for the administration of the laws and regulations governing the operation of public school districts in Ohio, including the implementation and operation of the school funding system as that term is used herein. Defendant Walter is made a party to this action solely in his official capacity.

10. Defendant Ohio Department of Education is the administrative unit and organization through which the policies, directives, and powers of the state board of education are administered. The department of education consists of the state board of education, the superintendent of public instruction, and a staff to perform the duties and exercise the required functions of the department. O.R.C. Section 3301.13.

### III. CONSTITUTIONAL AND STATUTORY BASES FOR THE PLAINTIFFS' CLAIMS

11. Plaintiff pupil and parent have a Constitutional and statutory right to an adequately and equitably funded system of public elementary and secondary education that provides an

4

equitable level of educational opportunity regardless of the geographic location in the state in which they happen to live. That right is guaranteed by, among others, the following provisions of the Ohio Constitution:

A. Section 1 Article I of the Ohio Constitution provides:

All men are, by nature, free and independent and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing, and protecting property, and seeking and obtaining happiness and safety.

B. Section 2 Article I of the Ohio Constitution provides, in part:

All political power is inherent in the people. Government is instituted for their equal protection and benefit . . .

C. Section 7 of Article I of the Ohio Constitution provides, in part:

Religion, morality, and knowledge, however, being essential to good government, it shall be the duty of the general assembly to pass suitable laws to protect every religious denomination in the peaceable enjoyment of its own mode of public worship, and to encourage schools and the means of instruction.

D. Section 26 of Article II of the Ohio Constitution provides:

All laws, of a general nature, shall have a uniform operation throughout the state; nor, shall any act, except such as relates to public schools, be passed, to take effect upon the approval of any other authority than the general assembly, except, as otherwise provided in this constitution.

E. Section 2 of Article VI of the Ohio Constitution provides:

The general assembly shall make such provisions, by taxation, or otherwise, as, with the income arising from the school trust fund, will secure a thorough and efficient system of common schools throughout the state; but no religious or other sect, or sects, shall ever have any exclusive right to, or control of, any part of the school funds of this state.

5

F.   Section 3 of Article VI of the Ohio Constitution provides:

Provision shall be made by law for the organization, administration and control of the public school system of the state supported by public funds: provided, that each school district embraced wholly or in part within any city shall have the power by referendum vote to determine for itself the number of members and the organization of the district board of education, and provision shall be made by law for the exercise of this power by such school districts.

G.   Section 4 of Article XII of the Ohio Constitution provides:

The General Assembly shall provide for raising revenue, sufficient to defray the expenses of the state, for each year, and also a sufficient sum to pay principal and interest as they become due on the state debt.

12.   The deficiency in funding common schools in Ohio limits the acquisition of knowledge of children and denies them property and liberty interests as guaranteed by the Due Process Clause of the Fourteenth Amendment of the United States Constitution, which states, in part:

No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

## Public Education is, Legislatively, a Fundamental Right of Public School Pupils in Ohio

13.   In addition to the mandates of the Ohio Constitution, the Ohio General Assembly has enacted legislation that recognizes, both explicitly and implicitly, the existence of a fundamental right to a free appropriate public education for all public elementary and secondary pupils in the state.  The following provisions illustrate, by way of example, the existence of that legislated recognition:

6

14. Every child of compulsory school age must attend a school or participate in a special education program that conforms to the minimum standards prescribed by the State Board of Education until either the child completes high school and receives a diploma or certificate of attendance, receives an age and schooling certificate, or is excused under standards adopted by the State Board of Education. O.R.C. Section 3321.03.

15. A parent, guardian, or other person having care of a child of compulsory school age who violates the requirements of compulsory school attendance imposed under O.R.C. Chapter 3321 is subject to a fine and may be required to give a bond conditioned that he will cause the child to attend school, and will be subject to imprisonment for failure to pay the fine or to give the bond. O.R.C. Sections 3321.38 and 3321.99.

16. School district boards of education in Ohio are required to offer elementary and secondary education programs meeting the minimum standards prescribed by the Defendant State Board of Education pursuant to O.R.C. Section 3301.07(D).

17. School district boards of education in Ohio are required by law to offer free educational programs that include instruction for the required number of hours per day and days per year. O.R.C. Section 3313.48.

18. School district boards of education in Ohio are prohibited from closing or delaying the opening of school for financial reasons. School district boards of education that lack sufficient revenue to operate their educational programs are

7

required by law to apply for a loan from a commercial lending institution and, if such application is denied, to seek authorization from the State Controlling Board to borrow funds to maintain operations. O.R.C. Sections 3313.483, 3317.63 and 3317.64. Plaintiff Southern Local School District Board of Education has applied for and received approval for such a loan.

19. Pupils attending the public schools of Ohio may not be excluded from school for disciplinary reasons without due process of law. O.R.C. Section 3313.66.

20. School district boards of education in Ohio are required by law to provide a free appropriate special education program together with related services to all handicapped pupils entitled to attend school in their districts. The State of Ohio has submitted a plan for special education to the Secretary of Education for the United States Department of Education and has received federal funds for the provision of special education and related services.

21. The State of Ohio has waived immunity from suit in the federal courts for the failure to adequately provide handicapped pupils of the plaintiff school district board of education with an appropriate special education program and related services. 42 U.S. Code Section 1403. The right to compel compliance with the lawful responsibilities of the State is enforceable in this court.

8

## The School Funding System

22. As used in this complaint, the "school funding system" means the combined operation of the following described groups of school funding statutes.

### A. The School Foundation Program

23. The school funding system consists of two primary elements: a system for the provision of state revenue for the support of public elementary and secondary schools, hereafter described, generally, as the school foundation program, and, a system for the provision of local revenue support from local property and income taxation referred to hereafter as the local revenue system. The statutory framework for the school foundation program includes O.R.C. Chapter 3317 and numerous uncodified provisions of Am. Sub. H. B. No. 111.

24. The school foundation program consists of two primary components: basic program support and categorical program support.

### 1. Basic Aid

25. The amount of basic aid to be received by a school district is determined by three factors: enrollment or "average daily membership" (ADM), the property wealth of the district and the statutory cost-of-doing-business factor applicable to the district.

26. Basic aid is determined and distributed to school districts through a formula that compares a legislatively determined amount per ADM (presently $2636 per year) increased by a cost of doing business factor. That amount is reduced by an

9

amount equal to twenty mills or two percent times the total assessed property valuation of the district.

27. In addition, a basic aid guarantee amount is established for each school district guaranteeing a certain percentage increase in the district's basic aid each year. Thus, if the state basic aid amount calculated by the above formula is less than the guaranteed amount of basic aid, then the district will receive the guaranteed amount rather than the formula amount. School districts entitled to receive guarantee amounts are paid without regard to pupil enrollment or property wealth of the school district.

28. At the present time over two hundred of the 612 total school districts in Ohio, including plaintiff Southern Local School District, receive foundation payments based on a guaranteed amount rather than a formula amount.

**2. Disadvantaged Pupil Impact Aid**

29. The second major component of the school foundation program is Disadvantaged Pupil Impact Aid (DPIA).

30. DPIA funds are distributed on a per pupil basis, with the amount per pupil determined by the percentage of students in the district receiving aid to dependent children (ADC).

31. In Fiscal Year 1990 the following represents the amount of DPIA available to school districts in Ohio on a per pupil basis:

| ADC Percentage | Per Pupil Amount of DPIA |
|---|---|
| 5-10% or 50 ADC students | $ 100 |
| 10-16% or 500 ADC students | $ 494 |
| 16-18% | $ 592 |
| 18-20% | $ 716 |
| 20+% | $1,056 |

## 3. Categorical Aid and Other Types of Aid

32. Funding for particular types of education such as vocational education, special education, and gifted education is provided through a classroom unit mechanism. Funding for approved classroom units, together with other types of state aid such as, for example, transportation, school bus purchase allowances and school lunch support is provided in uncodified sections of Am. Sub. H. B. No. 111.

## B. Local Tax Revenue

33. The second component of the school funding system in Ohio is local tax revenue, representing funds raised by voted and unvoted property taxes and, in some cases, voter-approved school district income taxes.

## 1. Inside Millage

34. Property taxes consist of two types, unvoted taxes ("inside millage") and voted taxes ("outside millage").

35. Inside millage is that portion of the total available ten mills of unvoted property tax authorized by Section 2 of Article XII of the Ohio Constitution that may be levied by each school district. Though it produces only a small portion of a school district's total revenue, inside millage is significant

11

because it is not subject to a tax reduction factor and thus, for many school districts, represents the only element of local revenue capable of producing an increase in revenue as property values increase.

## 2. Voted Property Tax Millage

36. Voted tax levies are "outside" (not subject to) the ten mill limitation and may be authorized to provide for the current operating expenses of a school district or to finance permanent improvements. O.R.C. Section 5705.21. In addition, limited period tax levies designed to produce specific amounts are also available upon the declaration of an "emergency" by the board of education. O.R.C. Sections 5705.194 et. seq..

37. Property tax levies for the operation of schools are approved by the voters based on a voted rate of taxation, expressed in mills per dollar of valuation. The amount of revenue produced by a mill of property taxation will and does in fact vary widely from school district to school district due to wide discrepancies in the types and value of taxable property within each district.

38. Local school district property tax levies, other than those for the repayment of indebtedness or to produce a specified amount of money, are subject to a tax reduction factor. Such reduction factors are calculated and certified by the Tax Commissioner through the Department of Taxation and applied by the County Auditor to reduce the amount of revenue to be produced from each property tax levy. The application of the reduction factors results in the determination of an "effective

12

rate" of millage which insures that the amount of revenue raised by each tax levy will not, when the tax is levied against carryover property, be any greater than the amount of revenue produced in the year the levy was first approved.

39. Once the application of tax reduction factors have resulted in a reduction in the effective rates of taxation for any class of property to a total of twenty mills, including voted operating levies and unvoted ("inside") millage levied for current operating expenses, the effective rates of taxation are not reduced further. School districts at the twenty mill floor will receive increased revenue if the size of the real property tax duplicate increases. Other school districts with identical circumstances but with effective rates in excess of twenty mills will receive substantially less additional revenue from an increase in the value of taxable real property.

3. School Facilities

40. The State of Ohio provides no direct state funds for the housing and equipment of school district educational programs. School buildings are primarily provided and paid for through the issue and sale of school district bonds upon the approval of the voters in the district. The bonds are then repaid with the proceeds of property taxes levied on the taxable property of the school district for that purpose. As a result of the circumstances described above, the rate of millage, and amount of property taxes necessary to provide and equip identical school

13

facilities within the state will and do vary widely from school district to school district.

41. Chapter 3318 of the Revised Code provides a means by which a school district may purchase classroom facilities from the state. Such purchase is contingent on the existence of state funds, the approval of school district requests for such funds and the passage of local tax levies to provide sufficient funds to repay the state.

42. The Ohio Department of Education has determined that over $10 billion in additional funds is presently needed to bring existing school buildings up to good working condition.

43. The Ohio Department of Education has determined that, of the existing 3,864 public school buildings in Ohio, approximately sixty-eight percent are thirty years of age or older, fifty percent are fifty years old or older and fifteen percent are seventy years old or older.

44. Of the existing buildings, the Department of Education has determined that sixty-eight percent need roofing work -- thirty percent need to be repaired and thirty-eight percent need to be completely replaced. Forty-two percent of the walls and chimneys are in need of repair and five percent need replacement.

45. The Ohio Department of Education has determined that only twenty percent of the existing school districts in Ohio have satisfactory handicapped access with the remaining eighty percent in need of repair or replacement.

14

46. The burden of funding school facilities and equipment falls most heavily on the school districts having lower levels of taxable property valuation. The taxpayers in the 50 school districts having the lowest levels of property valuation would need to levy an average of 15.6 mills to retire bonds to remediate their facility needs, as those needs have been identified by the State Department of Education, while the taxpayers in the 50 school districts having the highest levels of property valuation would need only to tax themselves at a rate of 3.3 mill per year to retire the debt necessary to fund their facility and equipment needs.

## IV. IMPACT OF THE SCHOOL FUNDING SYSTEM ON THE PLAINTIFFS

47. The method of funding the common schools of Ohio results in wide disparities in school revenues per pupil.

48. The per pupil property valuation differential between the highest and lowest valued school districts in Ohio is a ratio of 45 to 1. In 1988-89, the 50 school districts having the greatest amount of property tax valuation had an average of $131,294 in assessed property valuation per pupil, while the 50 school districts having the least amount of property valuation per pupil had only $25,709. The Southern Local School District is one of the fifty school districts having the least amount of property valuation.

49. School districts having high property valuation spend a greater amount of money per pupil for the education of school-

15

aged children residing in those districts than do school districts having low property valuation.

50. The disparity in school district revenue between the district having the greatest amount of property tax valuation and the district having the least amount of property tax valuation in the State of Ohio for the current fiscal year is approximately 9 to 1.

51. The disparity in school district revenue between the Ohio public school district having the greatest amount of property tax valuation and the district having the least amount of property tax valuation for the current fiscal year is one of the greatest disparities of any state in the nation.

52. Voters in school districts having low property valuation fail to approve tax levies for the local support of public schools at a greater rate than school districts having greater valuation.

53. During the 1988-89 fiscal year, a tax increase of one mill in the Southern Local School District would have raised only $26.86 per pupil while the same one mill effort in another school district in Ohio would have raised $488 per pupil.

54. The variation in fiscal ability between the school districts with high levels of property valuation is reflected in wide differences in educational opportunity provided by the respective instructional programs.

55. Ohio school districts with high property values have a more enriched curriculum with greater program breadth and depth

in, among other areas, mathematics, science, languages, and social studies.  High schools in such districts have more course electives, advanced placement courses, more foreign languages, much greater intensity of mathematics and science offerings.

56.  Children from school districts with lower property values generally score significantly lower on achievement tests at all grade levels tested.

57.  In 1990, the Normal Curve Equivalents of the mean achievement test scores in reading, for Grades 4, 6, and 8 were 59.02, 58.27, and 58.67 for the 50 highest property value school districts, and only 49.48, 48.62, and 50.28 for the lowest property valued school districts.  The mathematics achievement test scores for the same grades were 58.53, 58.88 and 58.55 and 47.90, 48.58, and 48.02, respectively.

58.  School districts with low property value per pupil pay teachers at generally lower rates than the school districts with higher values.

59.  During the 1988-89 fiscal year, the average salary of teachers in the 50 lowest valued school districts was over $7,000 less than the average salary in the highest value school districts.

60.  During the 1980's, the inequality in teacher compensation between low and high value districts increased.

61.  School districts with low levels of property valuation are unable to acquire the numbers of books and school materials

17

at or near the level of the school districts with higher property tax valuation.

62. In 1988-89, the 50 school districts having the highest levels of property valuation had 30.4 books per pupil and the 50 school districts having the lowest level of property valuation had less than 18.

63. School districts in Ohio having lower levels of property valuation and lower levels of school district income per pupil have higher dropout rates and lower graduation rates than do the school districts having higher levels of school district revenue per pupil.

64. The state system of funding elementary and secondary schools in Ohio is presently subjecting the children attending the plaintiff school district to an inadequately funded educational program resulting in invidious discrimination against plaintiff pupil and others and depriving plaintiff pupil and others of equal educational opportunity.

65. The present educational system harms pupils attending the plaintiff school district not only by impeding their ability to contribute to the general economic and social condition of the state, but also by subjecting them to a reduced level of knowledge, effectively diminishing their personal economic, social and political abilities, and especially their opportunities for the same.

66. The present system of school funding in Ohio denies local control to the citizens and electors of plaintiff school district and all other inadequately funded school districts in Ohio because those school districts are denied sufficient

18

resources to make policy choices in the best interests of their pupils.

67. The taxpayers in plaintiff school district and in other Ohio school districts having lower levels of taxable property value per pupil and often lower ability to pay must tax themselves at several times the rate required of the taxpayers in the school districts having the greatest level of property valuation in order to raise an equal amount of revenue per pupil for their schools.

68. The differences in expenditures per pupil for public elementary and secondary education in Ohio among school districts result in lower levels of training and experience of teaching and administrative personnel, fewer support services, restricted scope and content of program offerings, fewer extra-curricular activities, and other indicators of quality educational programs in districts spending fewer dollars per pupil.

69. Defendants have mandated that plaintiff school district board of education and other districts undertake certain activities and provide programs and services, but defendants have failed to provide adequate funding therefore.

70. The Defendant State of Ohio has, through the adoption of Chapter 3323 of the Revised Code and actions pursuant to that adoption, determined by statute that some public school pupils in this state have a right to a free appropriate public education

19

and related services designed to meet the unique needs of those pupils.

71. The Defendant State of Ohio has failed to provide sufficient funds to enable the plaintiff school district or its superintendent to provide appropriate educational programs and adequate facilities to serve the needs of handicapped pupils in the district.

72. The Defendants have created and maintained an arbitrary distinction between classes of pupils without any rational basis by affording rights to some public school pupils based on the determination of a handicapping condition and denying the same rights to the remainder of the pupils in the state, including plaintiff pupil.

73. Plaintiffs are entitled to a declaration that the present system of funding is unconstitutional as applied to them.

74. Defendants and their agents have acted in Perry County, Ohio in the administration of the system of funding complained of and are subject to the jurisdiction of this Court.

75. Plaintiffs have no adequate remedy at law for such unconstitutional conduct of defendants in that money damages would be totally inadequate to redress the grievances alleged in this Complaint.

## V. COUNT ONE

76. Plaintiffs restate and incorporate by reference each of the allegations of paragraphs 1 through 75 of this Complaint as if fully rewritten herein.

20

77. The defendants have failed to provide a "thorough and efficient system of common schools throughout the state", in violation of Section 2 of Article VI of the Ohio Constitution, to the damage of plaintiffs and in violation of their rights.

## VI. COUNT TWO

78. Plaintiffs restate and incorporate by reference each of the allegations of paragraphs 1 through 77 of this Complaint as if rewritten herein.

79. The system of funding public education in Ohio, as described in this Complaint, has resulted in an inadequate and inefficient level of educational opportunity for the pupils of the plaintiff Southern Local School District, depriving plaintiff pupil and others of a fundamental right in violation of the Ohio Constitution.

## VII. COUNT THREE

80. Plaintiffs restate and incorporate by reference each of the allegations of paragraphs 1 through 79 of this Complaint as if rewritten herein.

81. The system of funding public education in Ohio, as described in this Complaint, has created constitutionally impermissible disparities in the level and types of educational opportunity for the pupils attending the plaintiff school district as compared to those available for pupils elsewhere in the State of Ohio, and has invidiously and arbitrarily discriminated against plaintiff and others, to the injury and detriment of Plaintiffs. Plaintiffs are thereby deprived of

21

equal protection of law, due process of law, and uniform operation of laws as guaranteed by the Ohio and United States Constitutions.

## VIII. COUNT FOUR

82. Plaintiffs restate and incorporate by reference each of the allegations of paragraphs 1 through 81 of this Complaint as if rewritten herein.

83. The system of funding public education in Ohio, as described in this Complaint, fails to provide adequate or sufficient revenue to enable the Plaintiff Southern Local School District or Plaintiff Rosendahl to provide an adequate educational program and related services for the handicapped pupils of the school district, as required by law, in direct violation of the obligations of the State of Ohio pursuant to the provisions of O.R.C. Chapter 3323 and 42 U.S. Code Section 1400 et. seq.

## IX. COUNT FIVE

84. Plaintiffs restate and incorporate by reference each of the allegations of paragraphs 1 through 83 of this Complaint as if rewritten herein.

85. The system of funding public education in Ohio, as described in this Complaint, fails to provide adequate or sufficient revenue to enable the plaintiff Southern Local School District or Plaintiff Rosendahl to provide an adequate educational program and related services for the non-handicapped pupils of the school district, as required by law, thus denying

22

equal protection of law as guaranteed by the Ohio and United States Constitutions.

## X. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for relief from the Court as follows:

86. That the Court determine and declare that public education is a fundamental right in the State of Ohio, guaranteed by the Constitution of the State of Ohio, the Constitution of the United States, the laws of Ohio and the United States, or any combination thereof.

87. That the Court declare, with prospective application and after the allowance of reasonable time as to permit the enactment of a constitutional system, that the current system of funding elementary and secondary education is unconstitutional as applied to plaintiffs and others.

88. That the Court retain jurisdiction of this matter for the purpose of assuring compliance with its lawful findings.

89. That the Court award Plaintiffs costs of this action and reasonable attorneys' fees.

90. That the Court award Plaintiffs such other relief as it deems equitable and proper.

Nicholas A. Pittner (PIT01)

James A. Readey (REA02)

23

John F. Birath, Jr. (BIR01)
BRICKER & ECKLER
100 South Third Street
Columbus, Ohio  43215-4291
(614)  227-2300
Attorneys for Plaintiffs

compl10.osc

24

IN THE COURT OF COMMON PLEAS, PERRY COUNTY, OHIO

KEELY THOMPSON, Parent         :
and Next Friend of
CHRISTOPHER THOMPSON, a Minor, et al.,   :

       Plaintiffs,          :

    vs.                   :    Case No. _____

STATE OF OHIO, et al.,         :

       Defendants.         :    WAIVER OF JURY TRIAL

The Plaintiffs hereby waive any right to a jury trial.

Respectfully submitted,

_____
Nicholas A. Pittner

_____
James A. Readey

_____
John F. Birath, Jr.
BRICKER & ECKLER
100 South Third Street
Columbus, Ohio 43215
(614) 227-2300
Attorneys for Plaintiffs

ACL02FFA

IN THE COURT OF COMMON PLEAS, PERRY COUNTY, OHIO

| | |
|---|---|
| KEELY THOMPSON, Parent and Next Friend of CHRISTOPHER THOMPSON, a Minor, et al., | : |
| Plaintiffs, | : |
| vs. | :  Case No. _____ |
| STATE OF OHIO, et al., | : |
| Defendants. | :  INSTRUCTIONS FOR SERVICE |

TO:  The Clerk of Courts

You are instructed to make certified mail service of the Complaint for Declaratory and Injunctive Relief and Summons upon all defendants at their addresses listed on said complaint.

Respectfully submitted,

Nicholas A. Pittner

Nicholas A. Pittner

James A. Readey

James A. Readey

John F. Birath, Jr.

John F. Birath, Jr.
BRICKER & ECKLER
100 South Third Street
Columbus, Ohio  43215
(614)  227-2300
Attorneys for Plaintiffs

ACL02F92

# EXHIBIT B

C 14                                    BARRETT BROTHERS, PUBLISHERS, SPRINGFIELD, OHIO

Court of Common Pleas, ........Perry........ County, ....New Lexington...., **Ohio**

# SUMMONS

RECEIVED under the 1970 Ohio Rules of Civil Procedure

MAY 13 1991

CHIEF COUNSEL STAFF

## 21752

Case No. 21752

Doc. _____29_____ Page _____21752

| Name | Address |
|------|---------|
| Keely Thompson, Parent et al and Next Friend of Christopher Thompson, a Minor Box 108, Elm St., Shawnee, OH 43782 | |

Plaintiff___

vs.

| Name | Address |
|------|---------|
| State of Ohio c/o Attorney General of Ohio State Office Tower, 17th Floor 30 East Broad St., Columbus, OH 43266-0410 | |

Defendant___

**SUMMONS
ON
COMPLAINT**

Declaratory Relief
& Injunctive
Relief

To the above named defendant____:

You are hereby summoned that a complaint (a copy of which is hereto attached and made a part hereof) has been filed against you in this court by the plaintiff____ named herein.

You are required to serve upon the plaintiff____ attorney, or upon the plaintiff____ if ___he___ ha___ no attorney of record, a copy of your answer to the complaint within 28 days after service of this summons upon you, exclusive of the day of service. Said answer must be filed with this court within three days after service on Plaintiff's Attorney.

The name and address of the plaintiff____ attorney is as follows: John F. Birath, Jr.
Attorney at Law
100 South Third St.,
Columbus, OH 43215-4291

If you fail to appear and defend, judgment by default will be taken against you for the relief demanded in the complaint.

Ned Watts
Clerk

Date _____May 10th_____ 19_91_ By _Sheri L. Starner_ (signature)
Sheri L. Starner          Deputy

C   14

BARRETT BROTHERS, PUBLISHERS, SPRINGFIELD, OHIO

Court of Common Pleas, ............... Perry ............... County, ...... New Lexington ......, Ohio

# SUMMONS

Rule 4  1970 Ohio Rules of Civil Procedure

# 21752

Case No.

Doc. _____ 29 ___ Page _____ 21752

| Name | Address |
|---|---|
| Keely Thompson, Parent et al | |
| and Next Friend of | |
| Christopher Thompson, a Minor | |
| Box 108, Elm St., | |
| Shawnee, OH  43782 | |

91 MAY 14  AM 11:01

Plaintiff___

## SUMMONS
## ON
## COMPLAINT

Declaratory Relief
& Injunctive
Relief

vs.

| Name | Address |
|---|---|
| State Board of Education of Ohio | |
| Ohio Departments Building | |
| 65 South Front Street | |
| Columbus, OH  43266-0308 | |

Defendant___

To the above named defendant____:

You are hereby summoned that a complaint (a copy of which is hereto attached and made a part hereof) has been filed against you in this court by the plaintiff___ named herein.

You are required to serve upon the plaintiff___ attorney, or upon the plaintiff___ if ___he___ ha___ no attorney of record, a copy of your answer to the complaint within 28 days after service of this summons upon you, exclusive of the day of service. Said answer must be filed with this court within three days after service on Plaintiff's Attorney.

The name and address of the plaintiff___ attorney is as follows: John F. Birath, Jr.
Attorney at Law
100 South Third St.,
Columbus, OH  43215-4291

If you fail to appear and defend, judgment by default will be taken against you for the relief de- manded in the complaint.

Ned Watts

Clerk

Date _____ May 10th _____ 19__91 By ___Sheri L. Starner___

Sheri L. Starner                    Deputy

Case: 2:91-cv-00464-MHW-CMV Doc #: 1 Filed: 06/10/91 Page: 35 of 83 PAGEID #: 35

C

Court of Common Pleas, ........ Perry ........ County, New Lexington ........, Ohio

## SUMMONS

Rule 4  1970 Ohio Rules of Civil Procedure

# 21752

Case No.

Doc. ____29____ Page____21752____

| Name | Address |
|---|---|
| Keely Thompson, Parent et al and Next Friend of Christopher Thompson, a Minor Box 108, Elm St., Shawnee, OH 43782 | |

vs.

Plaintiff

| Name | Address |
|---|---|
| Franklin B. Walter, Superintendent of Public Instruction 808 Ohio Departments Building 65 South Front Street Columbus, OH 43266-0308 | |

Defendant

SUMMONS
ON
COMPLAINT

Declaratory Reli
& Injunctive
Relief

To the above named defendant____:

You are hereby summoned that a complaint (a copy of which is hereto attached and made a part hereof) has been filed against you in this court by the plaintiff____ named herein.

You are required to serve upon the plaintiff____ attorney, or upon the plaintiff____ if __he__ ha__ no attorney of record, a copy of your answer to the complaint within 28 days after service of this summons upon you, exclusive of the day of service. Said answer must be filed with this court within three days after service on Plaintiff's Attorney.

The name and address of the plaintiff____ attorney is as follows: John F. Birath, Jr.
Attorney at Law
100 South Third St.,
Columbus, OH 43215-4291

If you fail to appear and defend, judgment by default will be taken against you for the relief demanded in the complaint.

Ned Watts

Clerk

Date ____May 10th____ 19 91 By _Sheri L. Starner_

Sheri L. Starner          Deputy

BANKS-BALDWIN LAW PUBLISHERS, SPRINGFIELD, OHIO

Court of Common Pleas, _____ Perry _____ County, New Lexington _____, Ohio

# SUMMONS

Rule 4 1970 Ohio Rules of Civil Procedure

## 21752

Case No.

Doc. _____ 29 _____ Page _____ 21752

| Name | Address |
|---|---|

Keely Thompson, Parent et al
and Next Friend of
Christopher Thompson, a Minor
Box 108, Elm St.,
Shawnee, OH 43782

Plaintiff

vs.

| Name | Address |
|---|---|

Ohio Department of Education

Ohio Departments Building

65 South Front Street

Columbus, OH 43266-0308

Defendant

## SUMMONS ON COMPLAINT

Declaratory Relief
& Injunctive
Relief

To the above named defendant____:

You are hereby summoned that a complaint (a copy of which is hereto attached and made a part hereof) has been filed against you in this court by the plaintiff____ named herein.

You are required to serve upon the plaintiff____ attorney, or upon the plaintiff____ if ___he___ ha___ no attorney of record, a copy of your answer to the complaint within 28 days after service of this summons upon you, exclusive of the day of service. Said answer must be filed with this court within three days after service on Plaintiff's Attorney.

The name and address of the plaintiff____ attorney is as follows: John F. Birath, Jr.
Attorney at Law
100 South Third St.,
Columbus, OH 43215-4291

If you fail to appear and defend, judgment by default will be taken against you for the relief demanded in the complaint.

Ned Watts

Clerk

Date _____ May 10th _____ 19 91 By _____ Sheri L. Starner

Sheri L. Starner          Deputy

# EXHIBIT C

## IN THE COURT OF COMMON PLEAS, PERRY COUNTY, OHIO

RECEIVED

JUN 04 1991

KEELY THOMPSON, Parent          :
and Next Friend of
CHRISTOPHER THOMPSON, a Minor   :
Box 108, Elm Street             :
Shawnee, Ohio 43782             :
                                :
JOSEPH WINNENBERG               :
127 Highland Drive              :
New Lexington, Ohio 43764       :
                                :
SOUTHERN LOCAL SCHOOL DISTRICT  :
BOARD OF EDUCATION              :
10397 State Route 155 S.E.      :
Hemlock, Ohio 43743             :
                                :
LOUIS ALTIER, a Member of       :
the Southern Local School District :
Board of Education              :
Box 450, Jackson Street         :
Corning, Ohio 43730             :     Case No. 21752
                                :
JAMES ROSENDAHL, Superintendent of : **FIRST AMENDED COMPLAINT**
the Southern Local School District : **FOR DECLARATORY RELIEF**
10397 State Route 155 S.E.      :
Hemlock, Ohio 43743             :
                                :
DONALD PLETCHER, Parent         :
and Next Friend of              :
WILLIAM PLETCHER, a Minor       :
5070 Newmans Cardington Road East :
Cardington, Ohio  43315         :
                                :
MICHAEL DALRYMPLE               :
2409 Warrensburg Road           :
Delaware, Ohio  43015           :
                                :
CARDINGTON-LINCOLN LOCAL        :
SCHOOL DISTRICT BOARD OF EDUCATION :
349 Chesterville Avenue         :
Cardington, Ohio  43315         :
                                :
MELVIN MACEYKO, a Member of     :
the Cardington-Lincoln Local    :
School District Board of Education :
417 Washington Street           :
Cardington, Ohio  43315         :

PATRICK DROUHARD, Superintendent        :
of the Cardington-Lincoln Local         :
School District                         :
349 Chesterville Avenue                 :
Cardington, Ohio  43315                 :
                                        :
DONNA BLANKENSHIP, Parent               :
and Next Friend of                      :
JAMI BLANKENSHIP, a Minor               :
Route # 1, Box 226-1                    :
Ironton, Ohio  45638                    :
                                        :
MARK SEMANCO                            :
234 Green Oak Drive                     :
Huntington, West Virginia  25705        :
                                        :
DAWSON-BRYANT LOCAL SCHOOL              :
DISTRICT BOARD OF EDUCATION             :
423 Marion Pike                         :
Coal Grove, Ohio  45638                 :
                                        :
CARL SWARTZWELDER, a Member of          :
the Dawson-Bryant Local School          :
District Board of Education             :
Route # 1, Box 300                      :
South Point, Ohio  45680                :
                                        :
WAYNE WHITE, Superintendent of          :
the Dawson-Bryant Local School          :
District                                :
423 Marion Pike                         :
Coal Grove, Ohio  45638                 :
                                        :
DAVID BOWERS, Parent                    :
and Next Friend of                      :
ANDREW BOWERS, a Minor                  :
CHRISTOPHER BOWERS, a Minor             :
1225 State Street                       :
Lima, Ohio  45805                       :
                                        :
JON CARVER                              :
1522 Rice Avenue                        :
Lima, Ohio  45805                       :
                                        :
LIMA CITY SCHOOL DISTRICT               :
BOARD OF EDUCATION                      :
515 South Calumet Avenue                :
Lima, Ohio  45804                       :

2

```
JAMES EATON, a Member of          :
the Lima City School District     :
Board of Education                :
2452 Merit Avenue                 :
Lima, Ohio  45805                 :
                                  :
CHARLES BUROKER, Superintendent of :
the Lima City School District     :
Board of Education                :
515 South Calumet Avenue          :
Lima, Ohio   45804                :
                                  :
STEPHEN MILLER, Parent            :
and Next Friend of                :
KARA MILLER, a Minor              :
SARA MILLER, a Minor              :
JANICE MILLER, a Minor            :
7762 Egypt Pike                   :
Chillicothe, Ohio  45601          :
                                  :
LINDA MILLER                      :
24 William Drive                  :
Chillicothe, Ohio  45601          :
                                  :
UNION-SCIOTO LOCAL SCHOOL DISTRICT :
BOARD OF EDUCATION                :
1432 Egypt Pike                   :
Chillicothe, Ohio  45601          :
                                  :
KATHY MCKEE, a Member of          :
the Union-Scioto Local School     :
District Board of Education       :
723 Rinkliff Lane                 :
Chillicothe, Ohio  45601          :
                                  :
PAUL FOLMER, Superintendent of    :
the Union-Scioto Local School     :
District Board of Education       :
1432 Egypt Pike                   :
Chillicothe, Ohio  45601          :
                                  :
MARION GARY SOUTHERS, JR., Parent :
and Next Friend of                :
SHERRI SOUTHERS, a Minor          :
BRIAN SOUTHERS, a Minor           :
1040 Mercer Street                :
Youngstown, Ohio  44502           :
                                  :
ROBERT RIOS                       :
2676 Poland Village Boulevard     :
Poland, Ohio  44514               :
```

3

YOUNGSTOWN CITY SCHOOL DISTRICT       :
BOARD OF EDUCATION                    :
20 West Wood Street                   :
P.O. Box 550                          :
Youngstown, Ohio  44501               :
                                      :
SOCRATES KOLITSOS, a Member           :
of the Youngstown City School         :
District Board of Education           :
278 East Lucius Avenue                :
Youngstown, Ohio  44507               :
                                      :
          and                         :
                                      :
EMANUEL CATSOULES, Superintendent     :
of the Youngstown City School         :
District Board of Education           :
20 West Wood Street                   :
P.O. Box 550                          :
Youngstown, Ohio  44501               :
                                      :
          Plaintiffs,                 :
                                      :
     vs.                              :
                                      :
STATE OF OHIO                         :
c/o Attorney General of Ohio          :
State Office Tower, 17th Floor        :
30 East Broad Street                  :
Columbus, Ohio 43266-0410             :
                                      :
STATE BOARD OF EDUCATION OF OHIO      :
Ohio Departments Building             :
65 South Front Street                 :
Columbus, Ohio 43266-0308             :
                                      :
FRANKLIN B. WALTER, Superintendent    :
of Public Instruction                 :
808 Ohio Departments Building         :
65 South Front Street                 :
Columbus, Ohio 43266-0308             :
                                      :
          and                         :
                                      :
OHIO DEPARTMENT OF EDUCATION          :
Ohio Departments Building             :
65 South Front Street                 :
Columbus, Ohio 43266-0308             :
                                      :
          Defendants.                 :

4

## I.   INTRODUCTION

1.   This action is brought by and on behalf of pupils, parents, school teachers, school district boards of education, board of education presidents, members and school superintendents for the purpose of obtaining a declaratory judgment pursuant to Chapter 2721 of the Ohio Revised Code ("O.R.C.").  Plaintiffs seek an order of this Court declaring that the defendants' current system of funding elementary and secondary public education in Ohio, as applied to them and others, fails to comply with mandates of the Ohio Constitution, including the requirement that the state provide a thorough and efficient system of public education, and unlawfully discriminates against plaintiffs and others in violation of rights secured by the Ohio and United States Constitutions.

## II.   THE PARTIES

### A.   Plaintiffs

2.   Plaintiff Christopher Thompson is a minor and a student in the Southern Local School District of Perry County, Ohio; Plaintiff William Pletcher is a minor and a student in the Cardington-Lincoln Local School District; Plaintiff Jami Blankenship is a minor and a student in the Dawson-Bryant Local School District; Plaintiffs Andrew Bowers and Christopher Bowers are minors and students in the Lima City School District; Plaintiffs Kara Miller, Sara Miller, and Janice Miller are minors and students in the Union-Scioto Local School District; and Plaintiffs Sherri Southers and Brian Southers are minors and

students in the Youngstown City School District. (The above-
named student plaintiffs are hereafter collectively referred to
as the "pupil plaintiffs".) Plaintiff Christopher Thompson
brings this action through Keely Thompson, his parent and next
friend. Each of the other pupil plaintiffs, likewise, brings
this action through their parents as identified in the caption of
this Complaint.

3. Plaintiff Joseph Winnenberg is a teacher employed by
the Southern Local School District Board of Education; Plaintiff
Michael Dalrymple is a teacher employed by the Cardington-Lincoln
Local School District Board of Education; Plaintiff Mark Semanco
is a teacher employed by the Dawson-Bryant Local School District
Board of Education; Plaintiff Jon Carver is a teacher employed by
the Lima City School District Board of Education; Plaintiff Linda
Miller is a teacher employed by the Union-Scioto Local School
District Board of Education; and Plaintiff Robert Rios is a
teacher employed by the Youngstown City School District Board of
Education. (The above-named teacher plaintiffs are hereafter
collectively referred to as the "teacher plaintiffs".) Each of
the teacher plaintiffs is responsible for providing instruction
to students attending school in their respective districts.

4. Plaintiff Southern Local School District Board of
Education, with its office in Perry County, Ohio, is the
governing body of the Southern Local School District; Plaintiff
Cardington-Lincoln Local School District Board of Education, with
its office in Morrow County, Ohio, is the governing body of the

6

Cardington-Lincoln Local School District; Plaintiff Dawson-Bryant Local School District Board of Education, with its office in Lawrence County, Ohio, is the governing body of the Dawson-Bryant Local School District; Plaintiff Lima City School District Board of Education, with its office in Allen County, Ohio, is the governing body of the Lima City School District; Plaintiff Union-Scioto Local School District Board of Education, with its office in Ross County, Ohio, is the governing body of the Union-Scioto Local School District; and Plaintiff Youngstown City School District Board of Education, with its office in Mahoning County, Ohio, is the governing body of the Youngstown City School District. (The above-named plaintiff boards of education are hereafter collectively referred to as the "board of education plaintiffs".) Each of the board of education plaintiffs is required by the Constitution and laws of the State of Ohio and of the United States to provide an educational program for those pupil plaintiffs who are residents of their respective school districts as well as all other public school pupils entitled to attend the schools of their respective school districts. The board of education plaintiffs are authorized to bring this action by O.R.C. Sections 3313.17 and 3313.47.

5. Plaintiff Louis Altier is a duly elected, qualified, and acting member of the Southern Local School District Board of Education; Plaintiff Melvin Maceyko is a duly elected, qualified, and acting member of the Cardington-Lincoln Local School District Board of Education; Plaintiff Carl Swartzwelder is a duly

7

elected, qualified, and acting member of the Dawson-Bryant Local
School District Board of Education; Plaintiff James Eaton is a
duly elected, qualified, and acting member of the Lima City
School District Board of Education; Plaintiff Kathy McKee is a
duly elected, qualified, and acting member of the Union-Scioto
Local School District Board of Education; and Plaintiff Socrates
Kolitsos is a duly elected, qualified, and acting member of the
Youngstown City School District Board of Education. (The above-
named plaintiff board of education members are hereafter
collectively referred to as the "board of education member
plaintiffs".)

     6.    Plaintiff James Rosendahl is the Superintendent of the
Southern Local School District of Perry County; Plaintiff Patrick
Drouhard is the Superintendent of the Cardington-Lincoln Local
School District; Plaintiff Wayne White is the Superintendent of
the Dawson-Bryant Local School District; Plaintiff Charles
Buroker is the Superintendent of the Lima City School District;
Plaintiff Paul Folmer is the Superintendent of the Union-Scioto
Local School District; and Plaintiff Emanuel Catsoules is the
Superintendent of the Youngstown City School District. (The
above-named superintendent plaintiffs are hereafter collectively
referred to a the "superintendent plaintiffs".) Each of the
superintendent plaintiffs is charged with responsibility for the
overall administration of their respective school districts and
with the provision of educational programs and services to the
pupils of each of their respective school districts. Each of the

8

superintendent and board of education plaintiffs are also charged with the responsibility of providing an appropriate special education program and related services for each handicapped pupil residing in each of their respective school districts.

**B. Defendants**

7.  Defendant State of Ohio, through the Ohio General Assembly, is required to provide for a system of public education in the State of Ohio in accordance with the Constitutions and laws of the United States and the State of Ohio.

8.  Defendant State Board of Education is the governing body charged with general supervision of public education in the state and having those powers enumerated in O.R.C. Section 3301.07.

9.  Defendant Franklin B. Walter is the duly appointed, qualified and acting Superintendent of Public Instruction for the State of Ohio, having those powers and responsibilities described in O.R.C. Sections 3301.08 through and including 3301.12. Defendant Walter is charged with the overall responsibility for the administration of the laws and regulations governing the operation of public school districts in Ohio, including the implementation and operation of the school funding system as that term is used herein. Defendant Walter is made a party to this action solely in his official capacity.

10. Defendant Ohio Department of Education is the administrative unit and organization through which the policies, directives, and powers of the Defendant State Board of Education are administered. The Ohio Department of Education consists of

9

the State Board of Education, the Superintendent of Public
Instruction, and a staff to perform the duties and exercise the
required functions of the department.  O.R.C. Section 3301.13.

### III.  CONSTITUTIONAL AND STATUTORY BASES FOR THE PLAINTIFFS' CLAIMS

11.  Pupil plaintiffs and their parents have a Constitutional
and statutory right to an adequately and equitably funded system
of public elementary and secondary education that provides an
equitable level of educational opportunity regardless of the
geographic location in the state in which the pupil plaintiffs
and parents happen to live.  That right is guaranteed by, among
others, the following provisions of the Ohio Constitution:

A.   Section 1 Article I of the Ohio Constitution provides:

   All men are, by nature, free and independent and have
   certain inalienable rights, among which are those of
   enjoying and defending life and liberty, acquiring,
   possessing, and protecting property, and seeking and
   obtaining happiness and safety.

B.   Section 2 Article I of the Ohio Constitution provides, in
part:

   All political power is inherent in the people.
   Government is instituted for their equal protection and
   benefit . . .

C.   Section 7 of Article I of the Ohio Constitution provides, in
part:

   Religion, morality, and knowledge, however, being
   essential to good government, it shall be the duty of the
   general assembly to pass suitable laws to protect every
   religious denomination in the peaceable enjoyment of its
   own mode of public worship, and to encourage schools and
   the means of instruction.

D.   Section 26 of Article II of the Ohio Constitution provides:

   All laws, of a general nature, shall have a uniform
   operation throughout the state; nor, shall any act,

10

except such as relates to public schools, be passed, to take effect upon the approval of any other authority than the general assembly, except, as otherwise provided in this constitution.

E. Section 2 of Article VI of the Ohio Constitution provides:

The general assembly shall make such provisions, by taxation, or otherwise, as, with the income arising from the school trust fund, will secure a thorough and efficient system of common schools throughout the state; but no religious or other sect, or sects, shall ever have any exclusive right to, or control of, any part of the school funds of this state.

F. Section 3 of Article VI of the Ohio Constitution provides:

Provision shall be made by law for the organization, administration and control of the public school system of the state supported by public funds: provided, that each school district embraced wholly or in part within any city shall have the power by referendum vote to determine for itself the number of members and the organization of the district board of education, and provision shall be made by law for the exercise of this power by such school districts.

G. Section 4 of Article XII of the Ohio Constitution provides:

The General Assembly shall provide for raising revenue, sufficient to defray the expenses of the state, for each year, and also a sufficient sum to pay principal and interest as they become due on the state debt.

12. The deficiency in funding common schools in Ohio limits the acquisition of knowledge by pupil plaintiffs and denies them property and liberty interests as guaranteed by the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution, which states, in part:

No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

11

## Public Education is, Legislatively, a Fundamental Right of Public School Pupils in Ohio.

13.   In addition to the mandates of the Ohio Constitution, the Ohio General Assembly has enacted legislation that recognizes, both explicitly and implicitly, the existence of a fundamental right to a free appropriate public education for all public elementary and secondary pupils in the state.  The following provisions illustrate, by way of example, the existence of that legislated recognition:

14.   Every child of compulsory school age, including each of the pupil plaintiffs in this action, must attend a school or participate in a special education program that conforms to the minimum standards prescribed by the Defendant State Board of Education until the child either completes high school and receives a diploma or certificate of attendance, receives an age and schooling certificate, or is excused under standards adopted by the Defendant State Board of Education.  O.R.C. Section 3321.03.

15.   A parent, guardian, or other person having care of a child of compulsory school age, including each parent of a pupil plaintiff in this action, who violates the requirements of compulsory school attendance imposed under O.R.C. Chapter 3321 is subject to a fine and may be required to give a bond conditioned upon his causing the child to attend school, and is subject to imprisonment for failure to pay the fine or to give the bond. O.R.C. Sections 3321.38 and 3321.99.

12

16. School district boards of education in Ohio, including
the board of education plaintiffs, are required to offer
elementary and secondary education programs meeting the minimum
standards prescribed by the Defendant State Board of Education
pursuant to O.R.C. Section 3301.07(D).

17. School district boards of education in Ohio, including
the board of education plaintiffs, are required by law to offer
free educational programs that include instruction for the
required number of hours per day and days per year. O.R.C.
Section 3313.48.

18. School district boards of education in Ohio, including
the board of education plaintiffs, are prohibited from closing or
delaying the opening of school for financial reasons. School
district boards of education that lack sufficient revenue to
operate their educational programs are required by law to apply
for a loan from a commercial lending institution and, if such
application is denied, to seek authorization from the State
Controlling Board to borrow funds to maintain operations. O.R.C.
Sections 3313.483, 3317.63 and 3317.64. Plaintiff Southern Local
School District Board of Education has applied for and received
approval for such a loan. Plaintiff Union-Scioto Local School
District Board of Education has applied for, received, and repaid
such a loan.

19. Pupils attending the public schools of Ohio, including
the pupil plaintiffs in this action, may not be excluded from

13

school for disciplinary reasons without due process of law.
O.R.C. Section 3313.66.

20. School district boards of education in Ohio, including
the board of education plaintiffs, are required by law to provide
a free appropriate special education program together with
related services to all handicapped pupils entitled to attend
school in their districts. The State of Ohio has submitted a
plan for special education to the Secretary of Education for the
United States Department of Education and has received federal
funds for the provision of special education and related
services.

21. The State of Ohio has waived immunity from suit in the
federal courts for the failure to adequately provide handicapped
pupils of the board of education plaintiffs with an appropriate
special education program and related services. 42 U.S. Code
Section 1403. The right to compel compliance with the lawful
responsibilities of the state is enforceable in this Court.

## The School Funding System

22. As used in this complaint, the "school funding system"
means the combined operation of the following described groups of
school funding statutes. The school funding system consists of
two primary elements: a system for the provision of state
revenue for the support of public elementary and secondary
schools, hereafter described, generally, as the school foundation
program, and a system for the provision of local revenue support
from local property and income taxation, referred to hereafter as
the local revenue system. The statutory framework for the school

14

foundation program includes O.R.C. Chapter 3317 and numerous
uncodified provisions of Am. Sub. H. B. No. 111.

## A. The School Foundation Program

23. The school foundation program consists of two primary
components: basic program support and categorical program
support.

### 1. Basic Aid

24. The amount of basic aid to be received by a school
district is determined by three factors: enrollment or "average
daily membership" (ADM), the property wealth of the district and
the statutory cost-of-doing-business factor applicable to the
district.

25. Basic aid is determined and distributed to school
districts through a formula that compares a legislatively
determined amount per ADM (presently $2636 per year) increased by
a cost of doing business factor. That amount is reduced by an
amount equal to twenty mills or two percent times the total
assessed property valuation of the district.

26. In addition, a basic aid guarantee amount is established
for each school district guaranteeing a certain percentage
increase in the district's basic aid each year. Thus, if the
state basic aid amount calculated by the above formula is less
than the guaranteed amount of basic aid, then the district will
receive the guaranteed amount rather than the formula amount.
School districts entitled to receive guarantee amounts are paid

15

without regard to pupil enrollment or property wealth of the school district.

27. For fiscal year 1990-91, over two hundred of the 612 total school districts in Ohio, including Plaintiffs Southern Local School District Board of Education and the Dawson-Bryant Local School District Board of Education, received foundation payments based on a guaranteed amount rather than a formula amount.

## 2. Disadvantaged Pupil Impact Aid

28. The second major component of the school foundation program is Disadvantaged Pupil Impact Aid (DPIA).

29. DPIA funds are distributed on a per pupil basis, with the amount per pupil determined by the percentage of students in the district receiving aid to dependent children (ADC).

30. For fiscal year 1989-90, the following represents the amount of DPIA available to school districts in Ohio on a per pupil basis:

| ADC Percentage | Per Pupil Amount of DPIA |
|---|---|
| 5-10% or 50 ADC students | $ 100 |
| 10-16% or 500 ADC students | $ 494 |
| 16-18% | $ 592 |
| 18-20% | $ 716 |
| 20+% | $1,056 |

## 3. Categorical Aid and Other Types of Aid

31. Funding for particular types of education such as vocational education, special education, and gifted education is provided through a classroom unit mechanism. Funding for

16

approved classroom units, together with other types of state aid such as transportation, school bus purchase allowances, and school lunch support, is provided in uncodified sections of Am. Sub. H. B. No. 111.

**B. Local Tax Revenue**

32. The second component of the school funding system in Ohio is local tax revenue, representing funds raised by voted and unvoted property taxes and, in some cases, voter-approved school district income taxes.

**1. Inside Millage**

33. Property taxes consist of two types, unvoted taxes ("inside millage") and voted taxes ("outside millage").

34. Inside millage is that portion of the total available ten mills of unvoted property tax authorized by Section 2 of Article XII of the Ohio Constitution that may be levied by each school district. Though it produces only a small portion of a school district's total revenue, inside millage is not subject to a tax reduction factor and thus, for many school districts, represents the only element of local revenue capable of producing an increase in revenue as property values increase.

**2. Voted Property Tax Millage**

35. Voted tax levies are "outside" (not subject to) the ten mill limitation and may be authorized to provide for the current operating expenses of a school district or to finance permanent improvements. O.R.C. Section 5705.21. In addition, limited period tax levies designed to produce specific amounts are also

17

available upon the declaration of an "emergency" by a board of education. O.R.C. Sections 5705.194 et. seq.

36. Property tax levies for the operation of schools are approved by the voters based on a voted rate of taxation, expressed in mills per dollar of valuation. The amount of revenue produced by a mill of property taxation will and does in fact vary widely from school district to school district due to wide discrepancies in the types and value of taxable property within each district.

37. Local school district property tax levies, other than those for the repayment of indebtedness or to produce a specified amount of money, are subject to a tax reduction factor. Such reduction factors are calculated and certified by the Tax Commissioner through the Department of Taxation and applied by the County Auditor to reduce the amount of revenue to be produced from each property tax levy. The application of the reduction factors results in the determination of an "effective rate" of millage, which insures that the amount of revenue raised by each tax levy will not, when the tax is levied against carryover property, be any greater than the amount of revenue produced in the year the levy was first approved.

38. Once the application of tax reduction factors has resulted in a reduction in the effective rates of taxation for any class of property to a total of twenty mills, including voted operating levies and unvoted ("inside") millage levied for current operating expenses, the effective rates of taxation are

18

not reduced further. School districts at the "twenty mill floor" will receive increased revenue if the size of the real property tax duplicate increases. Other school districts with identical circumstances but with effective rates in excess of twenty mills will receive substantially less additional revenue from an increase in the value of taxable real property.

### 3. School Facilities

39. The State of Ohio provides no direct state funds for the housing and equipment of school district educational programs. School buildings are primarily provided and paid for through the issue and sale of school district bonds upon the approval of the voters in the district. The bonds are then repaid with the proceeds of property taxes levied on the taxable property of the school district for that purpose. As a result of the circumstances described above, the rate of millage and amount of property taxes necessary to provide and equip identical school facilities within the state will and do vary widely from school district to school district.

40. Chapter 3318 of the Revised Code provides a means by which a school district may purchase classroom facilities from the state. Such purchase is contingent on the existence of state funds, the approval of school district requests for such funds, and the passage of local tax levies to provide sufficient funds to repay the state.

19

41. The Ohio Department of Education has determined that over $10 billion in additional funds is presently needed to bring existing school buildings up to good working condition.

42. The Ohio Department of Education has determined that, of the existing 3,864 public school buildings in Ohio, approximately sixty-eight percent are thirty years of age or older, fifty percent are fifty years old or older, and fifteen percent are seventy years old or older.

43. Of the existing buildings, the Department of Education has determined that sixty-eight percent need roofing work -- thirty percent need to be repaired and thirty-eight percent need to be completely replaced. Forty-two percent of the walls and chimneys are in need of repair and five percent need replacement.

44. The Ohio Department of Education has determined that only twenty percent of the existing school districts in Ohio have satisfactory handicapped access with the remaining eighty percent in need of repair or replacement.

45. The burden of funding school facilities and equipment falls most heavily on the school districts having lower levels of taxable property valuation. The taxpayers in the fifty school districts having the lowest levels of property valuation would need to levy an average of 15.6 mills to retire bonds to remediate their facility needs, as those needs have been identified by the State Department of Education, while the taxpayers in the fifty school districts having the highest levels of property valuation would need only to tax themselves at a rate

20

of 3.3 mills per year to retire the debt necessary to fund their facility and equipment needs.

## IV.   IMPACT OF THE SCHOOL FUNDING SYSTEM ON THE PLAINTIFFS

46.   The method of funding the common schools of Ohio results in wide disparities in school revenues per pupil, thereby harming each of the plaintiffs in this action.

47.   For school year 1988-89, the per pupil property valuation disparity between the highest and lowest school districts in Ohio ranged from a high of approximately $680,242 to a low of $14,557. For school year 1988-89, the fifty Ohio school districts having the greatest amount of property tax valuation per pupil had an average of $131,294 in assessed property valuation per pupil, while the fifty Ohio school districts having the least amount of property tax valuation per pupil had an average of only $25,709.

48.   Board of Education Plaintiffs Southern Local, Cardington-Lincoln Local, Dawson-Bryant Local, and Union-Scioto Local are among the fifty school districts in Ohio having the least amount of property valuation per pupil.

49.   School districts having high property valuation spend a greater amount of money per pupil for the education of pupils residing in those districts than do school districts having low property valuation.

50.   For school year 1988-89, the disparity in expenditures per pupil between the highest and lowest school districts in Ohio

21

ranged from a high of approximately $11,208 to a low of approximately $2,807.

51. The disparity in revenue between the Ohio public school district having the greatest amount of property tax valuation and the district having the least amount of property tax valuation for the 1990-91 fiscal year is one of the greatest disparities found in any state in the nation.

52. Voters in school districts having low property valuation fail to approve tax levies for the local support of public schools at a greater rate than school districts having greater property valuation.

53. During the 1989-90 fiscal year, the per pupil revenue from a tax levy of one mill in each of the plaintiff school districts and in each of the six Ohio school districts having the greatest amount of property valuation per pupil would have yielded the following amounts of revenue:

| Plaintiff School Districts | Per-Pupil Yield for One Mill of Property Tax |
|---|---|
| Southern Local | $23.65 |
| Cardington-Lincoln | $30.31 |
| Dawson-Bryant | $20.64 |
| Lima City | $34.87 |
| Union-Scioto | $29.89 |
| Youngstown City | $36.10 |

22

| Six Highest Valuation Per Pupil Districts | Per-Pupil Yield for One Mill of Property Tax |
|---|---|
| Beachwood City | $290.58 |
| Cuyahoga Heights Local | $528.34 |
| Independence Local | $326.09 |
| Lockland City | $231.67 |
| Orange City | $223.60 |
| Perry Local | $870.81 |

54. The variation in fiscal ability between the school districts with high levels of property valuation is reflected in wide differences in educational opportunity provided by the respective instructional programs.

55. Ohio school districts with higher property values have a more enriched curriculum with greater program breadth and depth in, among other areas, mathematics, science, languages, and social studies. High schools in such districts have more course electives, more advanced placement courses, more foreign languages, and greater intensity of mathematics and science offerings.

56. Children from school districts with lower property values generally score significantly lower on achievement tests at all grade levels tested.

57. In 1990, the Normal Curve Equivalents of the mean achievement test scores in reading, for Grades 4, 6, and 8 were 59.02, 58.27, and 58.67 for the fifty school districts with the highest property valuation per pupil, and only 49.48, 48.62, and

23

50.28 for the lowest property valued school districts. The mathematics achievement test scores for the same grades and groups of school districts were 58.53, 58.88 and 58.55 and 47.90, 48.58, and 48.02, respectively.

58. Proficiency test scores for pupils in each of the six plaintiff school districts compared to scores reported for the same period for the six Ohio school districts having the highest property valuation per pupil were as follows:

| Plaintiff School Districts | Test Scores |
|---|---|
| Southern Local | 13 |
| Cardington-Lincoln | 26 |
| Dawson-Bryant | 19 |
| Lima City | 18 |
| Union-Scioto | 21 |
| Youngstown City | 19 |

| Six Highest Valuation Per Pupil Districts | Test Scores |
|---|---|
| Beachwood City | 69 |
| Cuyahoga Heights Local | 61 |
| Independence Local | 53 |
| Lockland City | 31 |
| Orange City | 59 |
| Perry Local | 59 |

59. School districts with lower property value per pupil generally pay teachers at lower rates than the school districts

24

with higher values, thereby harming each of the plaintiffs in this action.

60. During the 1988-89 school year, the average salary of teachers in Ohio's fifty school districts with the lowest property value per pupil was over $7,000 less than the average salary in the fifty school districts with the highest property value per pupil.

61. During the 1989-90 school year, each of the board of education plaintiffs, other than Plaintiff Youngstown City School District Board of Education, spent fewer dollars per pupil than the state average; all board of education plaintiffs provided an average teacher's salary for the teachers of their districts that was less than the state average teacher's salary for the same period.

62. During the 1980's, the inequality in teacher compensation between low and high property value districts in Ohio increased.

63. Ohio school districts with low levels of property valuation are unable to acquire the numbers of books and school materials at or near the level of the school districts with higher property tax valuation.

64. In the 1988-89 school year, the fifty Ohio school districts having the highest levels of property valuation per pupil had 30.4 books per pupil, and the fifty school districts having the lowest level of property valuation per pupil had less than 18.

65. Ohio school districts having lower levels of property valuation and lower levels of school district income per pupil have higher dropout rates and lower graduation rates than do the school districts having higher levels of school district revenue per pupil.

66. The system of funding public elementary and secondary schools in Ohio is presently subjecting the children attending the plaintiff school districts to inadequately funded educational programs, resulting in invidious discrimination against pupil plaintiffs and others and depriving pupil plaintiffs and others of equal educational opportunity.

67. The system of funding public elementary and secondary schools in Ohio fails to provide an adequate mechanism for increasing school district revenue as expenses of operation increase. As a result, even those school districts presently having sufficient operating revenue to operate an adequate educational program will become unable to provide an adequate educational program for the pupils of those districts, absent the addition of substantial new taxable value to the tax duplicates of those districts or the passage of additional tax levies by the electors of those districts.

68. The system of funding public elementary and secondary schools in Ohio harms pupils attending the plaintiff school districts not only by impeding their ability to contribute to the general economic and social condition of the state, but also by subjecting them to a reduced level of knowledge, effectively

26

diminishing their inalienable rights of enjoying and defending life and liberty, acquiring, possessing, and protecting property, and seeking and obtaining happiness and safety.

69. The system of funding public elementary and secondary schools in Ohio effectively denies local control to the citizens and electors of plaintiff school districts, to the board of education member plaintiffs of those districts and to all other inadequately funded school districts in Ohio because those school districts are denied sufficient resources to make policy choices in the best interests of their pupils.

70. The taxpayers in the plaintiff school districts and in other Ohio school districts having lower levels of taxable property value per pupil, must tax themselves at a greater rate than those taxpayers in school districts having a higher level of property valuation per pupil in order to raise an equal amount of revenue per pupil for their schools.

71. The differences in expenditures per pupil among public elementary and secondary school districts in Ohio result in lower levels of training and experience of teaching and administrative personnel, fewer support services, restricted scope and content of program offerings, fewer extra-curricular activities, and a reduction in other indicators of quality educational programs in those districts spending fewer dollars per pupil.

72. Defendants have mandated that the plaintiff school districts and other districts undertake certain activities and

27

provide programs and services, but defendants have failed to provide adequate funding therefor.

73. The Defendant State of Ohio has, through the adoption of Chapter 3323 of the Revised Code and actions pursuant to that adoption, determined by statute that some public school pupils in this state have a right to a free appropriate public education and related services designed to meet the unique needs of those pupils.

74. The Defendant State of Ohio has failed to provide sufficient funds to enable the plaintiff school districts or their superintendents to provide appropriate educational programs and adequate facilities to serve the needs of handicapped pupils in those districts.

75. The defendants have created and maintained an arbitrary distinction between classes of pupils without any rational basis by affording rights and benefits to some public school pupils based on the determination of a handicapping condition and denying the same rights and benefits to the remainder of the pupils in the state, including pupil plaintiffs in this action.

76. Plaintiffs are entitled to a declaration that the present system of funding is unconstitutional as applied to them.

77. Defendants and their agents have acted in Perry County, Ohio in the administration of the system of funding complained of and are subject to the jurisdiction of this Court.

78. Plaintiffs have no adequate remedy at law for such unconstitutional conduct of defendants in that money damages

would be totally inadequate to redress the grievances alleged in this Complaint.

## V.   FIRST CLAIM FOR RELIEF

79.  Plaintiffs restate and incorporate by reference each of the allegations of paragraphs 1 through 78 of this Complaint as if fully rewritten herein.

80.  The defendants have failed to provide a "thorough and efficient system of common schools throughout the state", in violation of Section 2 of Article VI of the Ohio Constitution, to the damage of plaintiffs and in violation of their rights.

## VI.   SECOND CLAIM FOR RELIEF

81.  Plaintiffs restate and incorporate by reference each of the allegations of paragraphs 1 through 80 of this Complaint as if rewritten herein.

82.  The system of funding public education in Ohio, as described in this Complaint, has resulted in an inadequate level of educational opportunity for the pupils of each of the plaintiff school districts, depriving the pupil plaintiffs, their parents and others of a fundamental right in violation of the Ohio Constitution.

## VII.   THIRD CLAIM FOR RELIEF

83.  Plaintiffs restate and incorporate by reference each of the allegations of paragraphs 1 through 82 of this Complaint as if rewritten herein.

84.  The system of funding public education in Ohio, as described in this Complaint, has created constitutionally

29

impermissible disparities in the level and types of educational opportunity for the pupils attending each of the plaintiff school districts as compared to those available for pupils elsewhere in Ohio, and has invidiously and arbitrarily discriminated against plaintiffs and others, to the injury and detriment of plaintiffs. Plaintiffs are thereby deprived of equal protection of law, due process of law, and uniform operation of laws as guaranteed by the Ohio Constitution.

## VIII. FOURTH CLAIM FOR RELIEF

85. Plaintiffs restate and incorporate by reference each of the allegations of paragraphs 1 through 84 of this Complaint as if rewritten herein.

86. The system of funding public education in Ohio, as described in this Complaint, has created constitutionally impermissible disparities in the level and types of educational opportunity for the pupils attending each of the plaintiff school districts as compared to those available for pupils elsewhere in Ohio, and has invidiously and arbitrarily discriminated against plaintiffs and others, to the injury and detriment of plaintiffs. Plaintiffs are thereby deprived of equal protection of law and due process of law as guaranteed by federal law and by the Fourteenth Amendment to the United States Constitution.

## IX. FIFTH CLAIM FOR RELIEF

87. Plaintiffs restate and incorporate by reference each of the allegations of paragraphs 1 through 86 of this Complaint as if rewritten herein.

30

88. The system of funding public education in Ohio, as described in this Complaint, fails to provide adequate or sufficient revenue to enable each of the board of education plaintiffs and the superintendent plaintiffs to provide an adequate educational program and related services for the handicapped pupils of the school district, as required by law, in direct violation of the obligations of the State of Ohio pursuant to the provisions of O.R.C. Chapter 3323 and 42 U.S. Code Sections 1400 et. seq.

## X.   SIXTH CLAIM FOR RELIEF

89. Plaintiffs restate and incorporate by reference each of the allegations of paragraphs 1 through 88 of this Complaint as if rewritten herein.

90. The system of funding public education in Ohio, as described in this Complaint, fails to provide adequate or sufficient revenue to enable the board of education plaintiffs and the superintendent plaintiffs to provide an adequate educational program and related services for the non-handicapped pupils of the school district, as required by law, thus denying equal protection of law as guaranteed by the Ohio and United States Constitutions.

## XI.   PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray for relief from the Court as follows:

91. That the Court determine and declare that public education is a fundamental right in the State of Ohio, guaranteed

31

by the Constitution of the State of Ohio, the Constitution of the United States, the laws of Ohio and the United States, or any combination thereof.

92. That the Court declare, with prospective application and after the allowance of reasonable time as to permit the enactment of a constitutional system, that the current system of funding public elementary and secondary education is unconstitutional as applied to plaintiffs and others.

93. That the Court retain jurisdiction of this matter for the purpose of assuring compliance with its lawful findings.

94. That the Court award plaintiffs costs of this action and reasonable attorneys' fees.

95. That the Court award plaintiffs such other relief as it deems equitable and proper.

Nicholas A. Pittner

James A. Readey

John F. Birath, Jr.
BRICKER & ECKLER
100 South Third Street
Columbus, Ohio 43215-4291
(614) 227-2300
Attorneys for Plaintiffs

32

# EXHIBIT D

IN THE COURT OF COMMON PLEAS
PERRY COUNTY, OHIO

KEELY THOMPSON, Parent and )
Next Friend of )
CHRISTOPHER THOMPSON, )
a Minor, et al., )
                          )    Case No.21752
       Plaintiffs, )
                          )    Judge Linton D. Lewis
-vs- )
                          )    **ACTION FOR**
STATE OF OHIO, et al., )    **DECLARATORY JUDGMENT**
                          )
       Defendants. )

## ANSWER

    Defendants State of Ohio, State Board of Education of Ohio, Superintendent of Public Instruction Franklin B. Walter, and the Ohio Department of Education, by their attorneys, hereby answer the amended complaint in this matter as follows:

    1.    Defendants state that they are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 1 of the amended complaint, except that they deny that the current system of funding elementary and secondary public education in Ohio as applied to plaintiffs and others fails to comply with mandates of the Ohio Constitution and unlawfully discriminates against plaintiffs and others in violation of rights secured by the Ohio and United States Constitutions.

    2.    Defendants state that they are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 2 of the amended complaint.

    3.    Defendants state that they are without knowledge or information sufficient to form a belief as to the truth of the

allegations in paragraph 3 of the amended complaint, except they admit such allegations as of the beginning of the school year 1990-1991.

4.    Defendants deny each and every allegation in paragraph 4 of the amended complaint, except they admit that plaintiff boards of education are the governing bodies of the plaintiff school districts as alleged and that they have their offices in the counties alleged.

5.    Defendants state that they are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 5 of the amended complaint.

6.    Defendants deny each and every allegation in paragraph 6 of the amended complaint and refer to the appropriate statutes for a description of plaintiffs' duties and responsibilities, except that defendants admit that the individual plaintiffs named are the superintendents of the school districts identified.

7.    Defendants deny each and every allegation in paragraphs 7 and 8 of the amended complaint and refer to the appropriate provisions of law for an accurate description of said defendants' duties.

8.    Defendants deny each and every allegation in paragraph 9 of the amended complaint and refer to the appropriate provisions of law for a description of the superintendent's powers and responsibilities, except that defendants admit that Franklin B. Walter is the duly appointed, qualified and acting Superintendent

2

of Public Instruction for the State of Ohio and that he is made a party to this action solely in his official capacity.

9.   Defendants deny each and every allegation in paragraph 10 of the amended complaint and refer to the appropriate provisions of law for a description of the powers and duties of said defendants.

10.   Defendants deny each and every allegation in paragraphs 11, 12, 13, 14, 15, 16, 17, 18, 19, 20 and 21 of the amended complaint.

11.   Defendants deny each and every allegation in paragraph 22 of the amended complaint, except that they state that they are without knowledge or information sufficient to form a belief as to the truth of the allegation as to how plaintiffs employ the term "school funding system," and except they admit that state revenues, local property tax revenues and local personal income tax revenues are elements of funding public elementary and secondary schools and that Ohio Revised Code Chapter 3317 and the various biennial budget bills contain provisions with respect to school funding.

12.   Defendants deny each and every allegation in paragraph 23 of the amended complaint, except they admit that basic program support and categorical program support are components of the funding of public elementary and secondary schools.

13.   Defendants deny each and every allegation in paragraph 24 of the amended complaint, except they admit that the "average daily membership" (ADM) as defined by law, the assessed valuation of property, and the school district equalization factor applicable to

3

the district are factors utilized in calculating the amount of basic aid to be received by a school district.

14. Defendants deny each and every allegation in paragraph 25 of the amended complaint, except they admit that the per-pupil funding level established by law for fiscal year 1991 is $2,636, the school district equalization factor is applied to such figure in fiscal year 1991, and the calculation of basic state aid does involve a reduction of an amount equal to 20 mills or 2% times the total assessed property valuation of the district.

15. Defendants deny each and every allegation in paragraph 26 of the amended complaint, except they admit that a guaranteed amount of basic state aid is available to a school district if it is larger than basic state aid as calculated pursuant to formula.

16. Defendants admit the allegations in paragraph 27 of the amended complaint.

17. Defendants deny each and every allegation in paragraph 28 of the amended complaint, except they admit that Disadvantaged Pupil Impact Aid (DPIA) is a component of the state revenue available for the support of public elementary and secondary schools.

18. Defendants deny each and every allegation in paragraph 29 of the amended complaint, except they admit that DPIA funds are distributed to school districts based upon the number of pupils receiving Aid to Dependent Children with the amount per pupil being determined by the percentage of the ADM receiving Aid to Dependent Children.

4

19. Defendants deny each and every allegation in paragraph 30 of the amended complaint and refer to the law for an accurate description of funds available under DPIA.

20. Defendants deny each and every allegation in paragraph 31 of the amended complaint, except they admit that classroom units are utilized in determining funding for vocational education, special education, and gifted pupil education, and that such funding, together with other types of state aid such as for transportation, school bus purchase allowances, and school lunch support is provided in the biennial budget bill.

21. Defendants deny each and every allegation in paragraph 32 of the amended complaint, except they admit that local tax revenues, representing funds raised by voted and unvoted property taxes, and, in some cases, voter-approved school district personal income taxes, are a component of financing public elementary and secondary schools.

22. Defendants admit the allegations in paragraph 33 of the amended complaint.

23. Defendants deny each and every allegation in paragraph 34 of the amended complaint, except they admit that inside millage refers to the ten mills of unvoted property tax authorized by Section 2 of Article XII of the Ohio Constitution.

24. Defendants deny each and every allegation in paragraph 35 of the amended complaint and refer to the statutes cited therein for an accurate description of their provisions.

25. Defendants deny each and every allegation in paragraphs 36, 37, and 38 of the amended complaint and refer to the appropriate statutes for an accurate description of the system of property taxation.

26. Defendants deny each and every allegation in paragraph 39 of the amended complaint, except that defendants state that they are without knowledge or information sufficient to form a belief as to the truth of the allegations that the rate of millage and the amount of property taxes necessary to provide and equip identical school facilities within the state will and do vary widely from school district to school district, and except that defendants admit that the issue and sale of school district bonds with the approval of voters in the district does support the construction of school buildings and that such bonds are repaid with the proceeds of property taxes levied on the taxable property of the school district for that purpose.

27. Defendants deny each and every allegation in paragraph 40 of the amended complaint and refer to Chapter 3318 for an accurate description of the program therein provided.

28. Defendants deny each and every allegation in paragraph 41 of the amended complaint, except they admit that the Ohio Department of Education has determined that over 10 billion dollars are needed to bring the existing schools up to good working condition as related to the purposes of the November 1990 survey conducted by the Department.

6

29.   Defendants deny each and every allegation in paragraph 42 of the amended complaint, except they admit that as of November 1990 these percentages are accurate as applied to the 3,684 public school buildings in Ohio.

30.   Defendants deny each and every allegation in paragraph 43 of the amended complaint, except they admit that the Department of Education's November 1990 survey showed the repair and replacement figures cited therein as of the time that the field work for the survey was performed.

31.   Defendants deny each and every allegation in paragraph 44 of the amended complaint, except they admit that satisfactory handicapped access systems were found in 20% of the buildings at the time the field work for the Department's November 1990 survey was performed.

32.   Defendants deny each and every allegation in paragraph 45 of the amended complaint.

33.   Defendants state that they are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 46 of the amended complaint.

34.   Defendants deny each and every allegation in paragraph 47 of the amended complaint, except they admit that in school year 1988-89 the assessed property valuation per pupil in the school district with the highest such valuation was $680,242, the assessed property valuation per pupil for that school year in the school district with the lowest such valuation was $14,557, and the weighted average assessed property valuation per pupil for that

7

school year in the fifty Ohio school districts having the lowest amounts of assessed property valuation per pupil was $25,709.

35. Defendants admit the allegations in paragraph 48 of the amended complaint.

36. Defendants deny each and every allegation in paragraphs 49 and 50 of the amended complaint.

37. Defendants state that they are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 51 and 52 of the amended complaint.

38. Defendants deny each and every allegation in paragraph 53 of the amended complaint.

39. Defendants state that they are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 54, 55, and 56 of the amended complaint.

40. Defendants deny each and every allegation in paragraphs 57 and 58 of the amended complaint.

41. Defendants state that they are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 59 of the amended complaint.

42. Defendants deny each and every allegation in paragraphs 60 and 61 of the amended complaint, except they admit that during the 1989-90 school year all board of education plaintiffs provided an average teacher's salary for the teachers of their districts that was less than the state average teacher's salary for the same period.

8

43. Defendants state that they are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 62 and 63 of the amended complaint.

44. Defendants state that they are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 64 of the amended complaint, except they state that data, the reliability of which is questionable, can support an average of less than 18 books per pupil for the fifty school districts with the lowest assessed property values per pupil in school year 1988-89.

45. Defendants state that they are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 65 of the amended complaint.

46. Defendants deny each and every allegation in paragraphs 66, 67, 68 and 69 of the amended complaint.

47. Defendants state that they are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 70 and 71 of the amended complaint.

48. Defendants deny each and every allegation in paragraph 72 of the amended complaint.

49. Defendants state that they are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 73 of the amended complaint and refer to Chapter 3323 for a description of its provisions.

50. Defendants deny each and every allegation in paragraphs 74, 75, 76, 77 and 78 of the amended complaint.

51. With respect to paragraph 79 of the amended complaint, defendants restate and incorporate by reference each of their responses to the allegations in paragraphs 1 through 78 of the amended complaint as if fully rewritten herein.

52. Defendants deny each and every allegation in paragraph 80 of the amended complaint.

53. With respect to paragraph 81 of the amended complaint, defendants restate and incorporate by reference each of their responses to the allegations in paragraphs 1 through 80 of the amended complaint as if fully rewritten herein.

54. Defendants deny each and every allegation in paragraph 82 of the amended complaint.

55. With respect to paragraph 83 of the amended complaint, defendants restate and incorporate by reference each of their responses to the allegations in paragraphs 1 through 82 of the amended complaint as if fully rewritten herein.

56. Defendants deny each and every allegation in paragraph 84 of the amended complaint.

57. With respect to paragraph 85 of the amended complaint, defendants restate and incorporate by reference each of their responses to the allegations in paragraphs 1 through 84 of the amended complaint as if fully rewritten herein.

58. Defendants deny each and every allegation in paragraph 86 of the amended complaint.

59. With respect to paragraph 87 of the amended complaint, defendants restate and incorporate by reference each of their

10

responses to the allegations in paragraphs 1 through 86 of the amended complaint as if fully rewritten herein.

60. Defendants deny each and every allegation in paragraph 88 of the amended complaint.

61. With respect to paragraph 89 of the amended complaint, defendants restate and incorporate by reference each of their responses to the allegations in paragraphs 1 through 88 of the amended complaint as if fully rewritten herein.

62. Defendants deny each and every allegation in paragraph 90 of the amended complaint.

### FIRST AFFIRMATIVE DEFENSE

63. The matters which plaintiffs seek to litigate in this case were previously litigated by plaintiffs unsuccessfully in <u>Board of Education of the City of Cincinnati v. Walter</u>, 58 Ohio St. 2d 368 (1979), and this action is barred by the doctrines of <u>res judicata</u> and collateral estoppel.

### SECOND AFFIRMATIVE DEFENSE

64. This action is improperly venued in Perry County.

### THIRD AFFIRMATIVE DEFENSE

65. The State of Ohio is not a proper party defendant to this action.

WHEREFORE, defendants pray that the amended complaint be dismissed and that judgment be rendered in their favor with costs and an award of reasonable attorneys fees together with such further relief as the court deems equitable and proper.

Respectfully submitted,

11

LEE FISHER
ATTORNEY GENERAL

Christopher Culley (0022870)
Assistant Attorney General

Mark A VanderLaan (0013297)
Lawrence A. Kane, Jr. (0012711)
Joel S. Taylor (0019572)
David K. Mullen (0046857)
DINSMORE & SHOHL
Suite 330
175 South Third Street
Columbus, Ohio  43215-5134
(614) 224-7887

Special Counsel for Defendants
State of Ohio, Superintendent
Franklin B. Walter, Ohio State
Board of Education, and Ohio
Department of Education

12

## CERTIFICATE OF SERVICE

The undersigned certifies that a true copy of the foregoing document was served by U.S. mail, postage prepaid, this _10th_ day of June, 1991, upon Nicholas A. Pittner, Esq. at Bricker & Eckler, 100 South Third Street, Columbus, Ohio  43215-4291, attorneys for plaintiffs.

13