Judge _JOH_

Mag. Judge _TPK_

Docketed _BC_

FILED
KENNETH J. MURPHY
CLERK

92 AUG 25 PM 4: 38

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

DONALD PLETCHER, Parent                 :
and Next Friend of                      :
WILLLIAM PLETCHER, a Minor              :
5070 Newmans Cardington Road East       :
Cardington, Ohio  43315                 :
                                        :
MICHAEL DALRYMPLE                       :
2409 Warrensburg Road                   :
Delaware, Ohio  43015                   :
                                        :
CARDINGTON-LINCOLN LOCAL SCHOOL         :
DISTRICT BOARD OF EDUCATION             :
349 Chesterville Avenue                 :
Cardington, Ohio  43315                 :
                                        :
MELVIN MACEYKO, a Member of             :
the Cardington-Lincoln Local            :
School District Board of Education      :
417 Washington Street                   :
Cardington, Ohio  43315                 :
                                        :
PATRICK DROUHARD, Superintendent        :       SECOND AMENDED COMPLAINT
of the Cardington-Lincoln Local         :       FOR DECLARATORY AND
School District                         :       INJUNCTIVE RELIEF
349 Chesterville Avenue                 :
Cardington, Ohio  43315                 :
                                        :
STEPHEN MILLER, Parent                  :
and Next Friend of                      :
KARA MILLER, a Minor                    :       Case No. C2-91-0464
SARA MILLER, a Minor                    :
JANICE MILLER, a Minor                  :
7762 Egypt Pike                         :
Chillicothe, Ohio  45601                :
                                        :
LINDA MILLER                            :
24 William Drive                        :
Chillicothe, Ohio  45601                :
                                        :
UNION SCIOTO LOCAL SCHOOL DISTRICT      :
BOARD OF EDUCATION                      :
1432 Egypt Pike                         :
Chillicothe, Ohio  45601                :
                                        :
KATHY MCKEE, a Member of                :
the Union Scioto Local School           :
District Board of Education             :
723 Rinkliff Lane                       :
Chillicothe, Ohio  45601                :

15

```
        and                                 :
                                            :
PAUL FOLMER, Superintendent of              :
the Union Scioto Local School               :
District Board of Education                 :
1432 Egypt Pike                             :
Chillicothe, Ohio  45601                    :
                                            :
            Plaintiffs,                     :
        vs.                                 :
                                            :
STATE OF OHIO                               :
c/o Attorney General of Ohio                :
State Office Tower, 17th Floor              :
30 East Broad Street                        :
Columbus, Ohio 43266-0410                   :
                                            :
STATE BOARD OF EDUCATION OF OHIO            :
Ohio Departments Building                   :
65 South Front Street                       :
Columbus, Ohio 43266-0308                   :
                                            :
JOHN TED SANDERS,                           :
Superintendent of                           :
Public Instruction                          :
808 Ohio Departments Building               :
65 South Front Street                       :
Columbus, Ohio 43266-0308                   :
                                            :
        and                                 :
                                            :
OHIO DEPARTMENT OF EDUCATION                :
Ohio Departments Building                   :
65 South Front Street                       :
Columbus, Ohio 43266-0308                   :
                                            :
            Defendants.                     :
```

## I.  <u>INTRODUCTION</u>

1.   This action is brought by and on behalf of pupils,
parents, school teachers, school district boards of education,
board of education members, and school superintendents for the
purpose of obtaining a declaratory judgment pursuant to Chapter
2721 of the Ohio Revised Code ("O.R.C."). Plaintiffs seek an
order of this Court declaring that the defendants' current system
of funding elementary and secondary public education in Ohio, as

applied to them and others, fails to comply with mandates of the
Ohio and United States Constitutions, including the requirement
that the state provide a thorough and efficient system of public
education, and unlawfully discriminates against plaintiffs and
others in violation of rights secured by the Ohio and United
States Constitutions.  The action also seeks injunctive relief.

## II.  **THE PARTIES**

### A.  **Plaintiffs**

2.   Plaintiff William Pletcher is a minor and a student in
the Cardington-Lincoln Local School District of Morrow County,
Ohio; and Plaintiffs Kara Miller, Sara Miller, and Janice Miller
are minors and students in the Union Scioto Local School District
of Ross County, Ohio.  (The above-named student plaintiffs are
hereafter collectively referred to as the "pupil plaintiffs".)
Plaintiff William Pletcher brings this action through Donald
Pletcher, his parent and next friend.  Each of the other pupil
plaintiffs, likewise, brings this action through her parent as
identified in the caption of this Second Amended Complaint.  The
parents of the pupil plaintiffs identified in this complaint also
assert claims against the defendants in this action based on harm
suffered by the parents as a result of the school funding system
described herein.

3.   Plaintiff Michael Dalrymple is a teacher employed by
the Cardington-Lincoln Local School District Board of Education;
and Plaintiff Linda Miller is a teacher employed by the Union
Scioto Local School District Board of Education.  (The above-

named teacher plaintiffs are hereafter collectively referred to as the "teacher plaintiffs".)  Each of the teacher plaintiffs is responsible for providing instruction to students attending school in their respective districts.

4.    Plaintiff Cardington-Lincoln Local School District Board of Education, with its office in Morrow County, Ohio, is the governing body of the Cardington-Lincoln Local School District; and Plaintiff Union Scioto Local School District Board of Education, with its office in Ross County, Ohio, is the governing body of the Union Scioto Local School District.  (The above-named plaintiff boards of education are hereafter collectively referred to as the "board of education plaintiffs".) Each of the board of education plaintiffs is required by the Constitutions and laws of the State of Ohio and laws of the United States to provide an educational program for those pupil plaintiffs who are residents of their respective school districts as well as all other public school pupils entitled to attend the schools of their respective school districts.  The board of education plaintiffs are authorized to bring this action by O.R.C. Sections 3313.17 and 3313.47.

5.    Plaintiff Melvin Maceyko is a duly elected, qualified, and acting member of the Cardington-Lincoln Local School District Board of Education; and Plaintiff Kathy McKee is a duly elected, qualified, and acting member of the Union Scioto Local School District Board of Education.  (The above-named plaintiff board of

ACLI2884                                   -4-

education members are hereafter collectively referred to as the "board of education member plaintiffs".)

6.   Plaintiff Patrick Drouhard is the Superintendent of the Cardington-Lincoln Local School District of Morrow County; and Plaintiff Paul Folmer is the Superintendent of the Union Scioto Local School District of Ross County.  (The above-named superintendent plaintiffs are hereafter collectively referred to a the "superintendent plaintiffs".)  Each of the superintendent plaintiffs is charged with responsibility for the overall administration of their respective school districts and with the provision of educational programs and services to the pupils of each of their respective school districts.  Each of the superintendent and board of education plaintiffs are also charged with the responsibility of providing an appropriate special education program and related services for each handicapped pupil residing in each of their respective school districts.

**B.  Defendants**

7.   Defendant State of Ohio, through the Ohio General Assembly, is required to provide for a system of public education in the State of Ohio in accordance with the Constitutions and laws of the State of Ohio and the United States.

8.   Defendant State Board of Education is the governing body charged with general supervision of public education in the state and having those powers enumerated in O.R.C. Section 3301.07.

9.   Defendant Ted Sanders is the duly appointed, qualified and acting Superintendent of Public Instruction for the State of

Ohio, having those powers and responsibilities described in O.R.C. Sections 3301.08 through and including 3301.12. Defendant Sanders is charged with the overall responsibility for the administration of the laws and regulations governing the operation of public school districts in Ohio, including the implementation and operation of the school funding system as that term is used herein. Defendant Sanders is made a party to this action solely in his official capacity.

10. Defendant Ohio Department of Education is the administrative unit and organization through which the policies, directives, and powers of the Defendant State Board of Education are administered. The Ohio Department of Education consists of the State Board of Education, the Superintendent of Public Instruction, and a staff to perform the duties and exercise the required functions of the department. O.R.C. Section 3301.13.

### III. CONSTITUTIONAL AND STATUTORY BASES FOR THE PLAINTIFFS' CLAIMS

#### A. Ohio and United States Constitutions

11. Public elementary and secondary education is a fundamental right guaranteed to the pupil plaintiffs and their parents by the Ohio Constitution and the laws of Ohio.

12. Pupil plaintiffs and their parents have a right under the Constitutions and laws of the State of Ohio and the laws of the United States to an adequately and equitably funded system of public elementary and secondary education that provides an equitable level of educational opportunity regardless of the

geographic location in the state in which he and his parent happen to live.  That right is guaranteed by, among others, the following provisions of the Ohio Constitution:

A.   Section 1 Article I of the Ohio Constitution provides:

All men are, by nature, free and independent and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing, and protecting property, and seeking and obtaining happiness and safety.

B.   Section 2 Article I of the Ohio Constitution provides, in part:

All political power is inherent in the people. Government is instituted for their equal protection and benefit . . .

C.   Section 7 of Article I of the Ohio Constitution provides, in part:

Religion, morality, and knowledge, however, being essential to good government, it shall be the duty of the general assembly to pass suitable laws to protect every religious denomination in the peaceable enjoyment of its own mode of public worship, and to encourage schools and the means of instruction.

D.   Section 26 of Article II of the Ohio Constitution provides:

All laws, of a general nature, shall have a uniform operation throughout the state; nor, shall any act, except such as relates to public schools, be passed, to take effect upon the approval of any other authority than the general assembly, except, as otherwise provided in this constitution.

E.   Section 2 of Article VI of the Ohio Constitution provides:

The general assembly shall make such provisions, by taxation, or otherwise, as, with the income arising from the school trust fund, will secure a thorough and efficient system of common schools throughout the state; but no religious or other sect, or sects, shall ever have any exclusive right to, or control of, any part of the school funds of this state.

F.   Section 3 of Article VI of the Ohio Constitution provides:

ACLI2884                          -7-

Provision shall be made by law for the organization, administration and control of the public school system of the state supported by public funds: provided, that each school district embraced wholly or in part within any city shall have the power by referendum vote to determine for itself the number of members and the organization of the district board of education, and provision shall be made by law for the exercise of this power by such school districts.

G.  Section 4 of Article XII of the Ohio Constitution provides:

The General Assembly shall provide for raising revenue, sufficient to defray the expenses of the state, for each year, and also a sufficient sum to pay principal and interest as they become due on the state debt.

## B.  Provisions of Law Establishing Public Education as a Fundamental Right of Ohio Citizens

13.  In addition to the mandates of the Ohio Constitution, the Ohio General Assembly has enacted legislation that recognizes, both explicitly and implicitly, the existence of a fundamental right to a free appropriate public education for all public elementary and secondary pupils in the state.  The following provisions illustrate, by way of example, the existence of that legislated recognition:

14.  Every child of compulsory school age, including each of the pupil plaintiffs in this action, must attend a school or participate in a special education program that conforms to the minimum standards prescribed by the Defendant State Board of Education until the child either completes high school and receives a diploma or certificate of attendance, receives an age and schooling certificate, or is excused under standards adopted

by the Defendant State Board of Education.  O.R.C. Section
3321.03.

15.  A parent, guardian, or other person having care of a
child of compulsory school age, including each parent of a pupil
plaintiff in this action, who violates the requirements of
compulsory school attendance imposed under O.R.C. Chapter 3321 is
subject to a fine and may be required to give a bond conditioned
upon his causing the child to attend school, and is subject to
imprisonment for failure to pay the fine or to give the bond.
O.R.C. Sections 3321.38 and 3321.99.

16.  School district boards of education in Ohio, including
the board of education plaintiffs, are required to offer
elementary and secondary education programs meeting the minimum
standards prescribed by the Defendant State Board of Education
pursuant to O.R.C. Section 3301.07(D).

17.  School district boards of education in Ohio, including
the board of education plaintiffs, are required by law to offer
free educational programs that include instruction for the
required number of hours per day and days per year.  O.R.C.
Section 3313.48.

18.  School district boards of education in Ohio, including
the board of education plaintiffs, are prohibited from closing or
delaying the opening of school for financial reasons.  School
district boards of education that lack sufficient revenue to
operate their educational programs are required by law to apply
for a loan from a commercial lending institution and, if such

application is denied, to seek authorization from the State Controlling Board to borrow funds to maintain operations. O.R.C. Sections 3313.483, 3317.63 and 3317.64.

19.  Pupils attending the public schools of Ohio, including the pupil plaintiffs in this action, may not be excluded from school for disciplinary reasons (suspended or expelled from school) without due process of law. O.R.C. Section 3313.66.

20.  School district boards of education in Ohio, including the board of education plaintiffs, are required by both Ohio and federal law to provide a free appropriate special education program together with related services to all handicapped or disabled pupils three through twenty-one years of age entitled to attend school in their districts. O.R.C. Section 3323.02, et seq.

### IV. The School Funding System

21.  As used in this complaint, the "school funding system" means the combined operation of the following described groups of statutes that fund public elementary and secondary school sin Ohio. The school funding system consists of two primary parts: one part which provides state revenue, hereafter described, generally, as the school foundation program; and a second part, which provides local revenue from local property and income taxation, referred to hereafter as local revenue. The statutory framework for the school foundation program includes O.R.C. Chapter 3317 and numerous uncodified provisions of Am. Sub. H. B. No. 298.

## A.  The School Foundation Program

22.  The school foundation program consists of two primary components:  basic program support and categorical program support.

### 1.  Basic Aid

23.  The amount of basic aid to be received by a school district is determined by three factors:  average daily membership (ADM), the taxable property wealth of the district and the statutory equalization factor applicable to the district.

24.  Basic aid is determined and distributed to school districts through a formula that compares a legislatively determined amount per ADM increased by a cost of doing business factor.  That amount is reduced by an amount equal to twenty mills or two percent times the total assessed valuation of the district.

25.  In addition, a basic aid guarantee amount is established for each school district guaranteeing a certain percentage increase in the district's basic aid each year.  Thus, if the state basic aid amount calculated by the above formula is less than the guaranteed amount of basic aid, then the district will receive the guaranteed amount rather than the formula amount. School districts entitled to receive guarantee amounts are paid without regard to ADM or the amount of assessed valuation per pupil of the school district.

26.  For fiscal year 1990-91, over two hundred of the 612 total school districts in Ohio, received foundation payments based on a guaranteed amount rather than a formula amount.

27.  For fiscal year 1990-91, Plaintiff Union Scioto Local School District received foundation payments based on a guaranteed amount rather than a formula amount.

28.  For fiscal year 1991-92, over three hundred forty school districts in Ohio are estimated to receive foundation payments based on a guaranteed amount rather than a formula amount.

**2.  Disadvantaged Pupil Impact Aid**

29.  The second major component of the school foundation program is Disadvantaged Pupil Impact Aid (DPIA).

30.  DPIA funds are distributed on a per pupil basis, with the amount per pupil determined by the percentage of pupils in the district receiving aid to dependent children (ADC).

31.  For fiscal year 1991-92, the following represents the amount of DPIA available to school districts in Ohio on a per pupil basis:

| ADC Percentage | Per Pupil Amount of DPIA |
|---|---|
| 5-10% or 50 ADC pupils | $    103 |
| 10-16% or 500 ADC pupils | $    510 |
| 16-18% | $    610 |
| 18-20% | $    740 |
| 20+% | $  1,092 |

ACLI2884

### 3. Categorical Aid and Other Types of Aid

32.  Funding to pay all, or a portion of the cost of particular types of educational programs such as vocational education, special education, and gifted education is provided through a classroom unit mechanism.  Funding for approved classroom units, together with other types of state aid such as pupil transportation, school bus purchase allowances, and school lunch support, is provided in the current appropriations measure as set forth in Amended Substitute House Bill No. 298.

### B. Local Tax Revenue

33.  The second component of the school funding system in Ohio is local tax revenue, representing funds raised by voted and unvoted property taxes and, in some cases, voter-approved school district income taxes.

### 1. Inside Millage

34.  Property taxes consist of two types, unvoted taxes ("inside millage") and voted taxes ("outside millage").

35.  Inside millage is that portion of the total available ten mills of unvoted property tax authorized by Section 2 of Article XII of the Ohio Constitution that may be levied by each school district.  Though it produces only a small portion of a school district's total revenue, inside millage is not subject to a tax reduction factor and thus, for many school districts, represents the only element of local revenue capable of producing an increase in revenue as property values increase.

## 2.  Voted Property Tax Millage

36.  Voted tax levies are "outside" (not subject to) the ten mill limitation and may be authorized to provide for the current operating expenses of a school district or to finance permanent improvements.  O.R.C. Section 5705.21.  In addition, limited period tax levies designed to produce specific amounts are also available upon the declaration of an "emergency" by a board of education.  O.R.C. Sections 5705.194 et seq.

37.  Property tax levies for the operation of schools are approved by the voters based on a voted rate of taxation, expressed in mills per dollar of property valuation.  The amount of revenue produced by one mill of property taxation will and does vary widely from school district to school district due to wide discrepancies in the types and value of taxable property within each district.

38. Taxable real and tangible personal property is taxed at a percentage of fair market value.  For real property, other than agricultural real property, that percentage is thirty-five peer cent.  Agricultural real property and tangible personal property are taxed at lesser percentages.  As used in this complaint the term "assessed valuation per pupil" means the total taxable valuation of all real and tangible personal property subject to property tax within a school district divided by the school district average daily membership.

39. School district property tax levies, other than those for the repayment of indebtedness or to produce a specified amount of money, are subject to a tax reduction factor.  Such reduction

-14-

factors are calculated and certified by the Tax Commissioner
through the Department of Taxation and applied by the County
Auditor to reduce the amount of revenue to be produced from each
property tax levy.  The application of the reduction factors
results in the determination of an "effective rate" of millage,
which insures that the amount of revenue raised by each tax levy
will not, when the tax is levied against carryover property, be
any greater than the amount of revenue produced in the year the
levy was first approved.  O.R.C. Section 319.301.

40.  Once the application of tax reduction factors has
resulted in a reduction in the effective rates of taxation for
any class of property to a total of twenty mills, including voted
operating levies and unvoted ("inside") millage levied for
current operating expenses, the effective rates of taxation are
not reduced further.  School districts at the "twenty mill floor"
will receive increased revenue if the amount of the real property
tax duplicate increases.  Other school districts with identical
circumstances but with effective rates in excess of twenty mills
will receive substantially less additional revenue from an
increase in the value of taxable real property.

41.  The school funding system permits reduction in the value
of taxable property within a school district through such
measures as agricultural use valuation, exemption of property
from taxation, and abatement of property taxes, thus reducing the
amount of revenue that a mill of property tax would raise in that
district.  The value of taxable property in each of the plaintiff

school districts has been reduced through one or more of these measures.

42.  The system of public school funding in Ohio limits the receipt of additional school district operating revenue to three basic sources:  additional legislative appropriations, the passage of additional tax levies by the voters of the school district, and the addition of new taxable value to the school district tax duplicate.

### 3.  School Facilities

43.  The State of Ohio provides no direct state funds to house or equip school district educational programs or to provide pupils with disabilities access to those programs.

44.  Public elementary and secondary school buildings in Ohio are primarily financed through the issue and sale of school district bonds upon the approval of the voters in the district. The bonds are then repaid with the proceeds of property taxes levied on the taxable property of the school district for that purpose.

45.  The rates of tax millage necessary to provide and equip identical school facilities within the state varies widely because of the disparities in the value of taxable real and personal property from school district to school district.

46.  Chapter 3318 of the Revised Code provides a means by which a school district may purchase classroom facilities from the state.  Such purchase is contingent on the existence of state funds, the approval of school district requests for such funds,

and the passage of local tax levies to provide sufficient funds to repay the state.

47.   The Ohio Department of Education conducted and published the results of a state-wide school facilities survey in 1990. Based on that survey, the Ohio Department of Education determined that:

   A.   Over $10 billion in additional funds was needed to bring existing school buildings up to good working condition.

   B.   Of the then existing 3,864 public school buildings in Ohio, approximately sixty-eight percent were thirty years of age or older, fifty percent were fifty years old or older, and fifteen percent were seventy years old or older.

   C.   Of the then existing public school buildings, sixty-eight percent needed roofing work -- thirty percent needed to be repaired and thirty-eight percent needed to be completely replaced.  Forty-two percent of the walls and chimneys were in need of repair and five percent needed replacement.

   D.   Only twenty percent of the existing public school buildings in Ohio had satisfactory handicapped access with the remaining eighty percent in need of repair or replacement.

   E.   Only approximately thirty-one percent of the existing public school buildings had satisfactory reports regarding asbestos requirements.

ACL12884                              -17-

F.    The Plaintiff Union Scioto Local School District needed additional repairs, additions or replacements of existing facilities, at a total district-wide cost of $9,686,801.  The Plaintiff Cardington-Lincoln Local School District needed additional repairs, additions or replacements of existing facilities, at a total district-wide cost of $30,144,036.

48. Taxpayers in school districts having lower assessed valuation per pupil must tax themselves at greater rates to produce the same level of revenue to fund school facilities than taxpayers in school districts having higher levels of assessed valuation per pupil.

## V.    IMPACT OF THE SCHOOL FUNDING SYSTEM

## A. Disparities in Valuation, Revenue and Expenditures Per Pupil

49.   The method of funding the common schools of Ohio results in wide disparities in school revenues per pupil, thereby harming each of the plaintiffs in this action.

50.   For school year 1988-89, the assessed valuation per pupil disparity between the highest and lowest school districts in Ohio ranged from a high of approximately $680,242 to a low of approximately $14,557.

51.   For school year 1988-89, the fifty Ohio school districts having the greatest amount of assessed valuation per pupil had an average of approximately $131,294 assessed valuation per pupil, while the fifty Ohio school districts having the least amount of

assessed valuation per pupil had an average of approximately
$25,709.

52. The taxpayers in the plaintiff school districts and in
other Ohio school districts having lower levels of assessed
valuation per pupil, must tax themselves at a greater rate than
those taxpayers in school districts having higher levels of
assessed valuation per pupil in order to raise an equal amount of
revenue per pupil for their schools.

53. School districts having high assessed valuation per
pupil spend a greater amount of money per pupil for education
than school districts having low assessed valuation per pupil.

54. For school year 1988-89, the disparity in expenditures
per pupil between the highest and lowest school districts in Ohio
ranged from a high of approximately $11,208 to a low of
approximately $2,807. The Department of Education reported on
its report "Fiscal Year 91 Vital Statistics on Ohio School
Districts" that for the 1989-90 school year the disparity in
expenditures per pupil between the highest and lowest school
districts in Ohio ranged from a high of approximately $42,812 to
a low of approximately $2,637.

55. The disparity in revenue per pupil between the Ohio
public school district having the greatest amount of property tax
valuation per pupil and the district having the least amount of
assessed valuation per pupil is one of the greatest disparities
found in any state in the nation.

56.  Voters in school districts having low assessed valuation per pupil reject additional tax levies for the local support of public schools at a greater rate than voters in school districts having greater assessed valuation per pupil.

57.  Economic growth that produces additional assessed valuation is less likely to locate in a school district having lower assessed valuation per pupil, including the plaintiff school districts, thus further depriving the pupils of those school districts of the opportunity for an adequately funded educational program.

## B. Disparities in Levels of Educational Opportunity

58.  The variation in fiscal ability between Ohio school districts with high levels of assessed valuation per pupil and those with low levels of assessed valuation per pupil is reflected in wide differences in educational opportunity available to the pupils attending the respective public schools.

59.  Ohio school districts with higher assessed valuation per pupil have more course opportunities in, among other areas, English, mathematics, science, foreign languages, and social studies than school districts with lower assessed valuation per pupil, including the plaintiff school districts.

60.  High schools in Ohio school districts with higher assessed valuation per pupil generally have more course electives, more advanced placement courses, more foreign language courses, and greater intensity of mathematics and science

than the state average for public school classroom teachers'
salaries for that year.

67.  During the 1980s, the relative inequality in the rates
of teacher compensation between school districts in Ohio with low
and high assessed valuation per pupil has increased.

68.  Ohio school districts with low levels of assessed
valuation per pupil, including the plaintiff school districts,
generally have a lower ratio of library books per pupil than
school districts with higher assessed valuation per pupil.

69.  In the 1988-89 school year, the fifty Ohio school
districts having the highest levels of assessed valuation per
pupil had an average of 30.4 books per pupil, while the fifty
school districts having the lowest level of assessed valuation
per pupil had less than 18.

70.  Ohio school districts having lower levels of assessed
valuation per pupil generally have higher dropout rates than do
the school districts having higher levels of assessed valuation
per pupil.

71.  Ohio school districts having lower levels of assessed
valuation per pupil generally have lower rates of graduation from
high school than do school districts having higher levels of
assessed valuation per pupil.

72.  Ohio school districts having lower levels of assessed
valuation per pupil, including the plaintiff school districts,
generally have lower percentages of pupils who are college

ACLI2884          -22-

preparatory graduates than do school districts having higher levels of assessed valuation per pupil.

73.  Ohio school districts having lower levels assessed valuation per pupil generally have lower percentages of graduates who enroll in degree-granting institutions than do school districts having higher levels of assessed valuation per pupil.

74.  Ohio school districts having lower levels of assessed valuation per pupil generally have a greater percentage of pupils who require remediation upon enrollment in degree-granting institutions than do school districts having higher levels of assessed valuation per pupil.

75.  Ohio school districts having lower levels of assessed valuation per pupil, including the plaintiff school districts, generally provide their pupils with fewer opportunities for social and cultural enrichment than do school districts having higher levels of assessed valuation per pupil.

76.  Ohio school districts having lower levels of assessed valuation per pupil, including the plaintiff school districts, generally are unable to offer their pupils the same level of exposure to and training in current scientific and business technology, including such areas as computer training and experience, as are school districts having higher levels of assessed valuation per pupil.

C. Impact on School District Operations

77.  The system of funding public elementary and secondary schools in Ohio does not provide sufficient revenue to afford an

adequate education program to pupils in plaintiff school districts and other school districts in Ohio.

78. The system of funding public elementary and secondary schools in Ohio provides substantially less in state funds for the education of pupils than the actual cost of providing that education in any school district.

79. School districts in Ohio have, for the past decade, faced increased operating costs because of unfunded legislative requirements imposed by the Defendants.

80. For many Ohio school districts, including the plaintiff school districts, costs have increased at a faster rate than revenues.

81. School districts in Ohio have been required in increasingly large numbers, to seek approval from the state controlling board to borrow additional funds to maintain operations.

82. Nearly two hundred of the six hundred twelve school districts in Ohio have borrowed funds to maintain operations, have been given approval to borrow funds to maintain operations, or are projected by the Defendant State Department of Education as being in financial difficulty.

83. The current system of funding public elementary and secondary education in Ohio fails to provide an adequate mechanism for increasing school district revenue as expenses of operation increase.

84. Ohio school districts presently having sufficient operating revenue to operate an adequate educational program will in the future become unable to provide an adequate educational program for the pupils of those districts, unless additional revenue is made available.

85. The system of funding public elementary and secondary schools in Ohio harms pupils and the parents of pupils attending the plaintiff school districts and other school districts by impeding their ability to contribute to the general economic and social condition of the state.

86. The system of funding public elementary and secondary schools in Ohio harms pupils and the parents of pupils attending the plaintiff school districts and other school districts by subjecting them to a reduced level of knowledge, effectively diminishing their inalienable rights of enjoying and defending life and liberty, acquiring, possessing, and protecting property, and seeking and obtaining happiness and safety.

87. The system of funding public elementary and secondary schools in Ohio effectively denies local control to the citizens and electors of the plaintiff school districts, to the board of education plaintiffs and board of education member plaintiffs and to other school district boards of education and their members in Ohio because those school districts are denied sufficient resources to make policy choices in the best interests of their pupils.

88. The teacher plaintiffs in this action are required to provide, within their areas of certification and assignment, an adequate educational program for those pupils placed in their charge. As a result of the state system of funding elementary and secondary public schools, the teacher plaintiffs and other public school teachers in Ohio are denied a sufficient level of resources to permit them to carry out that responsibility, thus denying them the ability to afford the pupils in their charge the level of educational opportunity to which those pupils are entitled.

89. The differences in expenditures per pupil among public elementary and secondary school districts in Ohio result in lower levels of training and experience of teaching and administrative personnel, fewer support services, restricted scope and content of program offerings, fewer extra-curricular activities, and a reduction in other indicators of quality educational programs in those districts spending fewer dollars per pupil thus harming each of the plaintiffs in this action.

## VI. Distinctions Between Classes of Pupils

90. The Defendant State of Ohio has, through the adoption of Chapter 3323 of the Revised Code and actions pursuant to that adoption, determined by statute that some public school pupils in this state have a right to a free appropriate public education and related services designed to meet the unique needs of those pupils. The State of Ohio, through the Ohio Department of Education, has submitted a plan for special education to the

Secretary of Education for the United States Department of Education and has received federal funds for the provision of special education and related services to handicapped pupils in the state, thereby waiving immunity from suit in the federal courts for the failure to adequately provide handicapped or disabled pupils with appropriate special education programs and related services.

91.   The Defendant State of Ohio has failed to provide sufficient funds to enable the plaintiff school districts and other school districts and their superintendents to provide appropriate educational programs and adequate facilities to serve the needs of handicapped pupils in those districts.

92.   Statutory requirements imposed by the Defendant State of Ohio that Ohio school districts provide individualized educational programs and related services for handicapped pupils have reduced the level of resources available for the education of non-handicapped pupils.

93.   The defendants have created and maintained an arbitrary distinction between classes of pupils without any rational basis by affording rights and benefits to some public school pupils based on the determination of a handicapping condition and denying the same rights and benefits to the remainder of the pupils in the state, in violation of the Ohio and United States Constitutions.

ACLI2884                          -27-

## VII. Declaratory Judgment and Injunctive Relief are Appropriate

94. Plaintiffs are entitled to a declaration that the present system of funding public elementary and secondary education in Ohio is unconstitutional as applied to them.

95. Defendants and their agents have acted within the jurisdiction of this court in the administration of the system of funding complained of and are subject to the jurisdiction of this Court.

96. Plaintiffs have no adequate remedy at law for such unconstitutional conduct of defendants in that money damages would be totally inadequate to redress the grievances alleged in this Complaint.

97. Plaintiffs have suffered and will continue to suffer irreparable harm as a result of the actions of defendants.

### FIRST CLAIM FOR RELIEF

98. Plaintiffs restate and incorporate by reference each of the allegations of paragraphs 1 through 97 of this Complaint as if fully rewritten herein.

99. The defendants have failed to provide a "thorough and efficient system of common schools throughout the state", in violation of Section 2 of Article VI of the Ohio Constitution, to the damage of plaintiffs and in violation of their rights.

### SECOND CLAIM FOR RELIEF

100. Plaintiffs restate and incorporate by reference each of the allegations of paragraphs 1 through 99 of this Complaint as if rewritten herein.

ACL12884                          -28-

101. The system of funding public education in Ohio, as described in this Complaint, has resulted in an inadequate level of educational opportunity for pupil plaintiffs and the other pupils of the plaintiff school districts, and defendants thereby have deprived the pupil plaintiffs, their parents and others of a fundamental right in violation of the Ohio Constitution and the laws of Ohio and of protections afforded by the Constitution and laws of the United States in violation of 42 U.S.C. Section 1983.

### THIRD CLAIM FOR RELIEF

102. Plaintiffs restate and incorporate by reference each of the allegations of paragraphs 1 through 101 of this Complaint as if rewritten herein.

103. The system of funding public education in Ohio, as described in this Complaint, has created constitutionally impermissible disparities in the level and types of educational opportunity for the pupils attending the plaintiff school districts as compared to those available for pupils elsewhere in Ohio, and said system, and defendants herein, have invidiously and arbitrarily discriminated against plaintiffs and others, to the injury and detriment of plaintiffs.  Plaintiffs are thereby deprived of equal protection of law, due process of law, and uniform operation of laws as guaranteed by the Ohio and United States Constitutions in violation of 42 U.S.C. Section 1983.

## FOURTH CLAIM FOR RELIEF

104. Plaintiffs restate and incorporate by reference each of the allegations of paragraphs 1 through 103 of this Complaint as if rewritten herein.

105. The system of funding public education in Ohio, as described in this Complaint, and defendants fail to provide adequate or sufficient revenue to enable the board of education plaintiffs, teacher plaintiffs, and superintendent plaintiffs to provide adequate educational programs, related services, and accessibility for the handicapped or disabled pupils of the school district, as required by law, in direct violation of the obligations of the State of Ohio pursuant to the provisions of O.R.C. Chapter 3323, 20 U.S.C. Section 1401 et seq., 29 U.S.C. Sections 706(8), 794 et seq., and 42 U.S.C. Section 12131 et seq.

## FIFTH CLAIM FOR RELIEF

106. Plaintiffs restate and incorporate by reference each of the allegations of paragraphs 1 through 105 of this Complaint as if rewritten herein.

107. The system of funding public education in Ohio, as described in this Complaint, and defendants fail to provide adequate or sufficient revenue to enable the board of education plaintiffs, teacher plaintiffs, and superintendent plaintiffs to provide an adequate educational program and related services for the non-handicapped pupils of the school district, as required by law, thus denying equal protection of law as guaranteed by the Ohio and United States Constitutions.

ACL12884                        -30-

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiffs pray for relief from the Court as follows:

108. That the Court determine and declare that public education is a fundamental right in the State of Ohio, guaranteed by the Constitution of the State of Ohio.

109. That the Court declare, with prospective application and after the allowance of reasonable time as to permit the enactment of a constitutional system, that the current system of funding public elementary and secondary education is unconstitutional as applied to plaintiffs and others.

110.  That the Court issue a mandatory injunction requiring the Defendant State of Ohio to provide for and fund a system of funding public elementary and secondary education in compliance with the Ohio and United States Constitutions.

111.  That the Court award plaintiffs such other relief as it deems equitable and proper.

112.  That the Court retain jurisdiction of this matter for the purpose of assuring compliance with its lawful findings and orders.

ACL12884

-31-

113. That the Court award plaintiffs costs of this action and reasonable attorneys' fees.

Nicholas A. Pittner (0023159)
Trial Attorney

John F. Birath, Jr. (0022024)

Sue Wyskiver Yount (0034514)
BRICKER & ECKLER
100 South Third Street
Columbus, Ohio 43215-4291
(614) 227-2300
Attorneys for Plaintiffs


## CERTIFICATE OF SERVICE

The undersigned certifies that a true copy of the foregoing Second Amended Complaint for Declaratory and Injunctive Relief was served upon Mark A. Vander Laan, Trial Attorney, Dinsmore & Shohl, Corporate Pavilion at City Center, Suite 330, 175 S. Third St., Columbus, OH 43215, via regular U.S. Mail this _25th_ day of August, 1992.

Sue Wyskiver Yount