**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JOHN DOE, et al.,** | : | |
| **Plaintiff-Intervenors,** | : | **Case No. 2:91-cv-464** |
| **v.** | : | **Judge Holschuh** |
| **STATE OF OHIO, et al.,** | : | **Magistrate Judge Kemp** |
| **Defendants.** | : | |
| | : | |

**MEMORANDUM & ORDER**

This is a class action suit in which Intervenor-Plaintiffs (hereafter "Plaintiffs") challenge Ohio's system for funding and monitoring special education.  Defendants include the State of Ohio, the Ohio State Board of Education, the Superintendent of Public Instruction, and the Ohio Department of Education.  Plaintiffs have alleged violations of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq*., Section 504 of the Rehabilitation Act of 1973 ("§ 504"), 29 U.S.C. § 794, and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq*.  Plaintiffs also seek relief pursuant to 42 U.S.C. § 1983 for alleged violations of the Fourteenth Amendment.  This matter is currently before the Court on Defendants' motion for summary judgment.  (Record at 81).  For the reasons set forth below, Defendants' motion is granted in part and denied in part.

**I.     Background and Procedural History**

In 1991, Keely Thompson and numerous other parents, students, teachers, and superintendents filed suit in the Perry County Court of Common Pleas against the State of Ohio, the Ohio State Board of Education, the Superintendent of Public Instruction, and the Ohio

Department of Education.  Plaintiffs alleged that Ohio's statutory scheme for financing public education violated both federal and state law.  That case, captioned Thompson v. State of Ohio, was removed to this Court.  After this Court denied plaintiffs' motion to remand, some of those plaintiffs filed a parallel suit in state court – the now somewhat notorious case of DeRolph v. State of Ohio – and stipulated to a dismissal of their claims here.[1]  In 1992, the remaining Thompson plaintiffs filed a Second Amended Complaint.

In February of 1994, handicapped student John Doe, his parents, and the Ohio Legal Rights Service were granted leave to intervene as plaintiffs in Thompson.  They filed a class action complaint, alleging violations of the IDEA, § 504, and Title II of the ADA.  They also sought relief under 42 U.S.C. § 1983 for violations of the  Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution.  They asked this Court to declare illegal Ohio's system of funding and providing services to students with disabilities, and to order Defendants to provide a new system for funding special education services.  In February of 1996, the Court certified this as a class action, allowing John Doe to represent a class of handicapped students in the State of Ohio.

In 1995, the remaining original plaintiffs stipulated to a dismissal of their claims in this Court.  Later that year, the parties stipulated to the dismissal of Ohio Legal Rights Service as a party plaintiff.  Since John Doe and the class he represents are the only remaining plaintiffs, the case caption has been changed from Thompson v. State of Ohio to Doe v. State of Ohio.

_____

[1] The DeRolph case was reviewed by the Supreme Court of Ohio on four separate occasions.  Although the Supreme Court of Ohio found Ohio's system of funding public education was unconstitutional, efforts to remedy the situation have proved to be futile, even after court-directed mediation.

Because there were so many overlapping issues, the parties agreed that <u>Doe</u> should be stayed until the Ohio Supreme Court issued a final decision in <u>DeRolph</u>.  In February of 2003, when it appeared that a final decision had been rendered in <u>DeRolph</u>, the Court held a status conference and the parties agreed that the stay should be lifted.  It was agreed that Defendants would file a motion for summary judgment limited to purely legal issues, and that discovery would be stayed until the Court issued a ruling on that motion.  That motion has now been fully briefed and is ripe for decision.  As Plaintiffs have pointed out, although Defendants' motion is labeled a "motion for summary judgment," it is perhaps more appropriately titled a "motion to dismiss for failure to state a claim upon which relief may be granted" since, for the reasons hereafter set forth, it will be confined to purely legal issues.  The Court will treat it accordingly.

## II.    Standard of Review

The purpose of a motion under Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the complaint.  This rule permits courts to dismiss meritless cases which would otherwise waste judicial resources and result in unnecessary discovery.  See <u>Neitzke v. Williams</u>, 490 U.S. 319, 326-27 (1989). When considering a motion to dismiss pursuant to Rule 12(b)(6), a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true.  See <u>Scheuer v. Rhodes</u>, 4l6 U.S. 232, 236 (1974); <u>Mayer v. Mylod</u>, 988 F.2d 635, 638 (6th Cir. 1993); <u>Miller v. Currie</u>, 50 F.3d 373, 377 (6th Cir. 1995);  <u>Murphy v. Sofamor Danek Group, Inc.</u>, 123 F.3d 394, 400 (6th Cir.1997). Although the Court must liberally construe the complaint in favor of the party opposing the motion to dismiss, it will not accept conclusions of law or unwarranted inferences cast in the form of factual allegations.  See <u>Morgan v. Church's Fried Chicken</u>, 829 F.2d 10, 12 (6th Cir.

1987); Lewis v. ACB Business Serv., Inc., 135 F.3d 389, 405-06 (6th Cir. 1998).  The Court

will, however, indulge all reasonable inferences that might be drawn from the pleading.  See

Fitzke v. Shappell, 468 F.2d 1072, 1076 n.6 (6th Cir. 1972).

When determining the sufficiency of a complaint in the face of a motion to dismiss, a

court will apply the principle that "a complaint should not be dismissed for failure to state a

claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his

claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  See also

Lewis, 135 F.3d at 405.  Because a motion under Rule 12(b)(6) is directed solely to the

complaint itself, Roth Steel Prods. v. Sharon Steel Corp., 705 F.2d 134, 155 (6th Cir. 1983), the

focus is on whether the plaintiff is entitled to offer evidence to support the claims, rather than on

whether the plaintiff will ultimately prevail.  See Scheuer, 416 U.S. at 236; McDaniel v. Rhodes,

512 F. Supp. 117, 120 (S.D. Ohio 1981).

## III.  Discussion

In their motion for summary judgment, Defendants argued that: (1) Plaintiffs' claims are

now moot because, since the Complaint was filed, Ohio's system for funding special education

in Ohio has been totally overhauled; (2) Plaintiffs' claims must be dismissed because they failed

to exhaust their administrative remedies; (3) Plaintiffs failed to state a claim upon which relief

may be granted; (4) the Eleventh Amendment bars Plaintiffs' claims under the IDEA; and (5)

injunctive relief is inappropriate because Plaintiffs had an adequate remedy at law.

In the alternative, Defendants urged the Court to decertify the class because: (1) John

Doe is no longer an appropriate class representative; (2) even if another named plaintiff is

substituted, class certification is inappropriate because there is no common factual link; and (3)

since the current system of school funding was developed with the assistance of the Ohio

Coalition for the Education of Children with Disabilities ("OCECD"), an organization that

advocates the interests of children with disabilities, there is no unity of interest among members

of the certified class.

As Plaintiffs note, the parties agreed that the motion for summary judgment would be

limited to purely legal issues, and that discovery would be stayed pending a ruling on that

motion.  Some of Defendants' arguments are premature.  For example, discovery will be

required before Plaintiffs can adequately respond to Defendants' argument that recent changes in

the way Ohio funds its special education programs have rendered Plaintiffs' claims moot.  The

Court will also reserve ruling on the issues of the appropriateness of injunctive relief and

decertification of the class.  This Memorandum and Order will be limited to a discussion of

whether Plaintiffs have failed to state a claim upon which relief may be granted.

As both parties acknowledge, the structure of Ohio's system for funding special

education has changed considerably since Plaintiffs filed their class action complaint in 1994.

Therefore, many of the factual allegations contained in that complaint are no longer accurate.

This, of course, complicates the Court's task of determining whether Plaintiffs have stated a

claim upon which relief may be granted.

Eventually, Plaintiffs will be required to file a supplemental complaint setting forth the

changes that have occurred since the original complaint was filed.  However, before Plaintiffs

can do this, additional discovery will be required.  The Court agreed with the parties that, before

that additional discovery takes place, it would be advisable to determine whether there are any

legal barriers to Plaintiffs' continued prosecution of this lawsuit.  Plaintiffs have represented to

the Court that, despite the changes in the structure of school funding, the system still suffers

from many of the same deficiencies as the previous system, and these deficiencies, presumably,

give rise to the same causes of action.  (Mem. in Opp'n to Mot. Summ. J. at 2 n.2).

### A.    Individuals with Disabilities Education Act

#### 1.    Sufficiency of Allegations

The first cause of action contained in the Class Action Complaint for Declaratory and

Injunctive Relief alleges:

> The system of funding and provision of educational services to students with
> disabilities in the State of Ohio . . ., and the defendants' actions and inactions has
> resulted in the failure to provide adequate or sufficient revenue to enable students
> with disabilities to receive a free appropriate public education and related services
> in the least restrictive setting as required by 20 U.S.C. §§ 1401, et seq.,
> implementing federal regulations, 34 C.F.R. Part 300 and as implemented by
> Ohio Revised Code Chapter 3323.  Defendants have also failed in their statutory
> duties to assure and monitor compliance with these laws as articulated by those
> laws.

(Class Action Compl. at ¶ 171).

The Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 et seq.,

formerly known as the Education of the Handicapped Act ("EHA"), confers on children with

disabilities the right to a free appropriate public education, or "FAPE."  20 U.S.C. §

1400(d)(1)(A).  Federal funding for special education is available to those states complying with

the substantive and procedural requirements of the IDEA.  See Doe v. Smith, 879 F.2d 1340,

1341 (6th Cir. 1989).  Pursuant to the IDEA, school districts are required to develop an

individualized education plan, or "IEP," for each child with a disability.  See 20 U.S.C. §

1414(d).  Each IEP sets individually-tailored goals for the student and describes specific services

to be provided by the school district.  It is to be reviewed each year and revised if necessary.  See

20 U.S.C. § 1414(d)(4)(A).

If parents of a disabled child are dissatisfied with their child's placement or education, they can request a hearing by an impartial hearing examiner.  This hearing may be conducted by a local educational agency or by the State educational agency.  See 20 U.S.C. § 1415(f); 34 C.F.R. § 300.508.  If the hearing is held by a local educational agency, and the parents disagree with the decision made by the hearing examiner, they may appeal that decision to the State educational agency.  See 20 U.S.C. § 1415(g).  If they are still dissatisfied, they are entitled to bring a civil action in state or federal court.  See 20 U.S.C. § 1415(i)(2).  Normally, an individual must exhaust all administrative remedies before filing suit.  See Crocker v. Tennessee Secondary Sch. Athletic Ass'n, 873 F.2d 933, 935 (6th Cir. 1989); Metropolitan Bd. of Public Educ. v. Guest, 193 F.3d 457, 462 (6th Cir. 1999).

### 1.    Failure to Exhaust Administrative Remedies

It is undisputed that John Doe's parents did not exhaust their administrative remedies with respect to the pending claims prior to filing the class action Complaint.[2]  Defendants argue that the failure to do so bars them from pursuing their IDEA claim.[3]  However, as Plaintiffs point out, there are exceptions to the exhaustion requirement.  The Sixth Circuit has held that "[e]xhaustion is not required if it would be futile or inadequate to protect the plaintiff's rights." Covington v. Knox County Sch. Sys., 205 F.3d 912, 917 (6th Cir. 2000)(citing Honig v. Doe,

---

[2]  When John Doe was approximately eight years old, he was placed with a teacher who did not have adequate signing ability.  His parents filed a complaint, alleging that the district had failed to implement his IEP.  They lost the hearing and a subsequent appeal.  (Compl. at ¶ 20). However, that particular claim is not at issue in this case.

[3]  The parties agree that the fact that this was filed as a class action does not excuse the exhaustion requirement.

7

484 U.S. 305, 326-27 (1988)).

Other circuits have held that exhaustion is not required when "an agency has adopted a policy or pursued a practice of general applicability that is contrary to law." Association for Community Living in Colorado v. Romer, 992 F.2d 1040, 1044 (10th Cir. 1993)(quoting H.R. Rep. No. 296, 99th Cong., 1st Sess. at 7 (1985)).  As the court noted in Urban v. Jefferson County School District R-1, 89 F.3d 720 (10th Cir. 1996), "[a]dministrative remedies are generally futile or inadequate when plaintiffs allege 'structural or systemic failure and seek systemwide reforms.'" Id. at 725 (quoting Romer, 992 F.2d at 1044).  See also Hoeft v. Tucson Unified Sch. Dist., 967 F.2d 1298, 1309 (9th Cir. 1992) ("[a]dministrative remedies are generally inadequate where structural, systemic reforms are sought").

Plaintiffs have the burden of demonstrating that one of these exceptions applies.  See Covington, 205 F.3d at 917.  Plaintiffs note that this Court has already held:

> . . . that it would be futile for John Doe to first exhaust administrative remedies, since the remedies he seeks in this case – a declaration that the system of funding and providing services to students with disabilities does not comply with state and federal law and an order requiring the state to establish a system that complies with such laws – are not available in the administrative hearing and appeals process.  That process is limited to a review of decisions concerning the identification, evaluation, or education placement of a particular child and to decisions concerning the provision of education or related services to the child. . . The focus throughout the administrative process is on the needs of the individual child; nowhere does the process allow for a hearing officer or the state board of education . . . to decide the broader issues presented in this case . . .

(July 5, 1995 Mem. & Order at 12-13).

Plaintiffs claim that the "law of the case" doctrine precludes this Court from reconsidering this issue unless there is "some cogent reason to show the prior ruling is no longer applicable." Petition of U.S. Steel Corp., 479 F.2d 489, 494 (6th Cir.), cert. denied, 414 U.S.

859 (1973).  Defendants argue that the "law of the case" doctrine is inapplicable because the

system of school funding has changed dramatically since 1995, and because federal law

interpreting the IDEA has become significantly more developed since then.  Defendants'

arguments lack merit.  Plaintiffs allege that, despite the changes in Ohio's school funding

system, it still violates the IDEA.  Furthermore, Defendants have pointed to no change in the law

that would now allow hearing officers to provide the types of systemic remedies sought by

Plaintiffs.  Quite simply, there is no meaningful administrative enforcement mechanism for the

type of relief sought.  For these reasons, the Court again concludes that Plaintiffs were not

required to exhaust their administrative remedies under the IDEA prior to filing suit in this

Court.

### 2.        Private Right of Action

Defendants argue that, even if Plaintiffs were not required to exhaust their administrative

remedies, Plaintiffs have failed to state a claim upon which relief may be granted.  Defendants

contend that the IDEA creates no express or implied cause of action for the kinds of claims

asserted by Plaintiffs.  Defendants attempt to summarize Plaintiffs' allegations as follows: (1)

Defendants have failed to provide adequate funding for special education services; and (2)

Defendants have failed to assure and monitor local school districts' compliance with the IDEA.

Plaintiffs take issue with the first characterization.  They note that they are challenging more

than the *amount* of funding.  Plaintiffs have also alleged that the State's *method* of funding

special education adversely impacts the labeling and educational placement of children with

disabilities.  Plaintiffs claim that the funding system encourages local school districts to label

more children as disabled, and to label them as more severely disabled than they really are.  The

9

result is that children are placed in educational settings that are more restrictive than necessary, and are denied their right to a FAPE.

As Plaintiffs correctly note, federal courts are courts of limited jurisdiction and can exercise authority only where Congress has created both subject matter jurisdiction and a cause of action.  Defendants do not dispute that this Court has subject matter jurisdiction.[4]  The parties disagree, however, about whether Congress has created either an explicit or implied cause of action under the IDEA for plaintiffs alleging widespread systemic deficiencies in a State's provision of special education services.  The IDEA provides as follows:

(2) Right to bring civil action

(A) In general
Any party aggrieved by the findings and decision made under subsection (f) or (k) of this section who does not have the right to an appeal under subsection (g) of this section, and any party aggrieved by the findings and decision under this subsection, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy.

(B) Additional requirements
In any action brought under this paragraph, the court--
(i) shall receive the records of the administrative proceedings;
(ii) shall hear additional evidence at the request of a party; and
(iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

20 U.S.C. § 1415(i)(2).

Defendants concede that the statute creates an express cause of action, but argue that it is

---

[4]  The IDEA grants such jurisdiction to the district courts of the United States without regard to the amount in controversy.  See 20 U.S.C. § 1415(i)(3)(A).

limited to the narrow situations described in subsections (f) and (k) of § 1415. Subsection (f) provides the right to an impartial due process hearing after a complaint is filed; subsection (k) sets forth the law concerning placement in an alternative educational setting. Defendants therefore contend that an explicit private right of action exists only for those parents or children who are dissatisfied with the outcome of an individual administrative hearing, or are dissatisfied with the student's placement in an alternative educational setting. Defendants contend that Plaintiffs' broad allegations, that systemic deficiencies in Ohio's special education programs deprive children with disabilities of their right to a FAPE, fall outside the scope of these express provisions.

This Court disagrees and finds that the IDEA provides an express cause of action broad enough to encompass Plaintiffs' claims. Subsection (f) of 20 U.S.C. § 1415 is titled "Impartial due process hearing." It states that "[w]henever a complaint has been received under subsection (b)(6) or (k) of this section, the parents involved in such complaint shall have an opportunity for an impartial due process hearing." 20 U.S.C. § 1415(f)(1). In turn, subsection (b)(6), which describes "Types of procedures," requires "an opportunity to present complaints with respect to *any matter relating to* the identification, evaluation, or educational placement of the child, or *the provision of a free appropriate public education to such child*." 20 U.S.C. § 1415(b)(6) (emphasis added). This language is extremely broad, giving parents of children with disabilities the opportunity to file a complaint with respect to *any matter* relating to the provision of a FAPE to their children. See S.C. v. Deptford Township Bd. of Educ., 213 F. Supp. 2d 452, 459 (D.N.J. 2002)(noting the "broad sweep" of § 1415(b)(6)'s language). In the Court's view, under the plain language of subsection (b)(6), Plaintiffs were entitled to file administrative complaints

11

challenging Ohio's method of funding special education and improper monitoring of local school boards' compliance with the IDEA.[5]  Plaintiffs' allegations that these systemic deficiencies result in the denial of a FAPE fall within the broad language of subsection (b)(6).

Neither the Supreme Court nor the Sixth Circuit has had the occasion to decide whether the IDEA provides an express cause of action for plaintiffs alleging widespread systemic deficiencies in a state's special education programs.  However, the vast majority of other courts that have considered this issue have concluded that the IDEA does provide either an express or implied cause of action for plaintiffs challenging state-wide violations of the IDEA.  For example, in Beth V. v. Carroll, 87 F.3d 80 (3d Cir. 1996), plaintiffs alleged that the Pennsylvania Department of Education consistently failed to investigate and resolve IDEA complaints in a timely manner.  Plaintiffs sought declaratory and injunctive relief.  The Third Circuit held that "[t]he express language of IDEA gives disabled children and their parents substantive and procedural rights as well as the right to seek judicial enforcement of those rights in a federal or state court."  Id. at 85.  The court rejected defendant's argument that plaintiffs' claims fell outside the scope of the express rights created by the statute.  The court noted that plaintiffs' complaint centered on the "inability of the children involved to secure a satisfactory education," thereby directly implicating "the provision of a free appropriate public education to such child." Id. at 86.  The court further noted that the statute gives individuals the opportunity to submit

_____

[5] Even though Plaintiffs were *entitled* to file an administrative complaint alleging systemic deficiencies, this does not mean that they were *required* to do so prior to filing suit.  As discussed above, exhaustion of administrative remedies is not required if, as here, it would be futile or inadequate to protect the plaintiff's rights.  The administrative hearing officers simply lack the authority to order the relief sought by Plaintiffs.

complaints "with respect to any matter relating to" the provision of a free appropriate public education. Id. Since plaintiffs' claims fell within the scope of this broad language, the court therefore concluded that plaintiffs had an express right of action under § 1415 of the IDEA. Id. at 88.[6]

Many other courts have likewise held that the IDEA provides an avenue of relief for plaintiffs claiming that widespread systemic deficiencies in a State's special education programs have resulted in a denial of a FAPE. See, e.g., Mrs. W. v. Tirozzi, 832 F.2d 748, 755 (2d Cir. 1987)(holding that parents alleging systemic deficiencies in regulatory complaint procedures had a private right of action under the EHA); Jose P. v. Ambach, 557 F. Supp. 1230, 1235 (E.D.N.Y. 1983)(holding that Congress intended beneficiaries of the EHA to be able to challenge system-wide violations of that statute in court); Upper Valley Ass'n for Handicapped Citizens v. Mills, 928 F. Supp. 429, 436 (D. Vt. 1996)(denying motion to dismiss IDEA claims and holding that the statute provided a private remedy for plaintiffs alleging systemic failure to conform to IDEA's procedural requirements); Duane B. v. Chester-Upland Sch. Dist., No. Civ. A 90-0326, 1994 WL 724991 (E.D. Pa. Dec. 29, 1994)(finding that plaintiffs had an implied right of action to challenge systemic procedural violations of IDEA that denied them their right to a FAPE, and holding the school district in civil contempt for failing to implement remedial orders in a timely manner); Bitsilly v. Bureau of Indian Affairs, 253 F. Supp. 2d 1257 (D.N.M. 2003)(denying motion to dismiss plaintiffs' claim that defendants' failure to supervise, monitor, evaluate and ensure that tribally controlled schools complied with the requirements of the IDEA resulted in

---

[6] But see Virginia Office of Protection & Advocacy v. Virginia Dep't of Educ., 262 F. Supp. 2d 648, 659 n.4 (E.D. Va. 2003)(rejecting the decision in Beth V. and construing the statute more narrowly).

13

the denial of a FAPE).

Other courts have presumed, without deciding, that the IDEA permits plaintiffs to bring a cause of action to challenge systemic deficiencies. In Corey H. v. Board of Education of the City of Chicago, 995 F. Supp. 900 (N.D. Ill. 1998), plaintiffs filed a class action suit against the Chicago Public Schools Board of Education and the Illinois State Board of Education seeking declaratory and injunctive relief. Much like Plaintiffs in the instant case, the Corey H. plaintiffs alleged that because of state-wide systemic failures, students were not being educated in the least restrictive educational environment as required by the IDEA. The district court concluded that the State of Illinois violated the IDEA by failing to ensure that placement decisions were based on the child's individual needs, that teachers and administrators were properly trained, and that "state funding formulas that reimburse local agencies for educating children in the least restrictive environment are consistent with the [least restrictive environment] mandate." Id. at 918.

Likewise, in Cordero v. Pennsylvania Department of Education, 795 F. Supp. 1352 (M.D. Pa. 1992), plaintiffs filed a class action suit alleging that the Pennsylvania Department of Education violated the IDEA by failing to tailor educational placements to the child's individual needs, and by not offering a wide enough range of placement settings to enable the children to be placed in the least restrictive educational environment. The court agreed that the IDEA had been violated and rejected defendants' contention that the injunctive relief sought by plaintiffs was too broad. Id. at 1363-64.

Notably, Defendants have cited to no case in which a court has held that the IDEA does not create a private cause of action, either express or implied, for plaintiffs alleging systemic

14

violations of the statute.  In support of their argument that the IDEA provides no right of action

for plaintiffs seeking to challenge a State's monitoring policies, Defendants cite to the case of

A.A. v. Board of Education, Central Islip Union Free School District, 255 F. Supp. 2d 119

(E.D.N.Y. 2003).  In that case, plaintiffs brought claims under 42 U.S.C. § 1983, alleging

violations of the IDEA and § 504.  Plaintiffs alleged that the State of New York violated these

statutes when it failed to adequately monitor local school districts and failed to cut off funds

when those local school districts did not remedy certain deficiencies.  After a bench trial was

held, the court issued findings of fact and conclusions of law.  The court noted that while the

IDEA clearly requires the State to monitor compliance with the IDEA, the statute sets forth no

specific requirements and is designed to ensure flexibility in fashioning remedies.  Id. at 125-26.

The court concluded that plaintiffs had failed to establish that the State's failure to cut off funds

to those districts that failed to comply with the relevant policies and procedures violated the

IDEA.  Id. at 126-27.  In this Court's view, A.A. actually supports Plaintiffs' position in the

instant case because, prior to trial in A.A., the court had denied defendants' motion to dismiss.

Plaintiffs were permitted to proceed to trial on their claims for prospective injunctive relief,

based on allegations that inadequate monitoring violated the IDEA.  See id. at 120.

Based on the above-cited case law and the plain language of the IDEA itself, this Court

concludes that the IDEA does create an *express* private right of action for plaintiffs alleging that

systemic deficiencies deny children with disabilities the right to a FAPE.  Therefore, the Court

need not address Defendants' argument that no *implied* private right of action exists.  The Court

notes, however, that the cases cited by Defendants in support of that argument are nevertheless

inapposite.  Defendants argue that no implied private right of action exists because Congress has

15

not expressed its intent to confer such a right in clear and unambiguous terms.  In support of this argument, Defendants cite to Gonzaga University v. Doe, 536 U.S. 273 (2002), and Blessing v. Freestone, 520 U.S. 329 (1997).  In Gonzaga, the Court held that the Family Educational Rights and Privacy Act of 1974 ("FERPA"), 20 U.S.C. § 1232g, created no private right of action enforceable under 42 U.S.C. § 1983.  In Blessing, the Court found that Title IV-D of the Social Security Act, 42 U.S.C. §§ 651-669b, created no private right of action enforceable under § 1983.

Like the IDEA, both FERPA and Title IV-D are Spending Clause legislation.  Under each of these statutes, federal funding for a certain program is linked to a States' compliance with a particular statute.  In other words, if a State fails to comply with the statute, the appropriate federal regulatory agency has the authority to terminate federal funding.  As the Court noted in Gonzaga, Spending Clause legislation does not automatically confer an implied private right of action.  See 536 U.S. at 280.  Congress must express its intent to confer such a right of action in terms that are "clear and unambiguous."  Id. at 290.  The Court explained that in order to determine whether a particular statute confers a private right of action, one must examine the focus of the statute.  If the language of the statute focuses on the class of persons to be protected, then a private right of action is more likely to be found.  However, if the language of the statute is directed solely to the person or agency to be regulated by the Spending Clause legislation, then no private right of action exists.  Id. at 287.  As the Court noted, "FERPA's provisions speak only to the Secretary of Education, directing that '[n]o funds shall be made available' to any 'educational agency or institution' which has a prohibited 'policy or practice.'" Id.  Therefore, the Court concluded that FERPA is devoid of any language that would confer on

16

individual students and parents the right to file suit to enforce the statute.  Id. at 290-91.

Blessing dealt with Title IV-D of the Social Security Act.  This statute makes federal funding for child welfare contingent on a State's compliance with certain regulations.  The Supreme Court held that parents whose children were eligible to receive child support services had no private right of action to compel Arizona to achieve "substantial compliance" with the federal statute so that Arizona could continue to receive full federal funding.  The Court noted:

> the requirement that a State operate its child support program in "substantial compliance" with Title IV-D was not intended to benefit individual children and custodial parents, and therefore it does not constitute a federal right. Far from creating an *individual* entitlement to services, the standard is simply a yardstick for the Secretary to measure the *systemwide* performance of a State's Title IV-D program. Thus, the Secretary must look to the aggregate services provided by the State, not to whether the needs of any particular person have been satisfied.

520 U.S. at 343 (emphasis in original).  The Court concluded that while the "substantial compliance" provision may indirectly benefit individuals who are eligible for child welfare payments, it does not clearly create a private right of action.  See id. at 344-45.

The IDEA is clearly distinguishable from Title IV-D and FERPA.  Unlike Title IV-D and FERPA, the IDEA is focused on the class of individuals it is designed to protect.  It explicitly creates an individual entitlement to services.  In those states receiving federal funding for special education, each child with a disability has the right to a free, appropriate public education.  See 20 U.S.C. § 1412(a)(1)(A).  Furthermore, the statute specifically provides children with disabilities and their parents numerous procedural safeguards designed to protect that right.  See 20 U.S.C. § 1415.  Congress has specifically conferred on them the right to present a complaint "with respect to any matter relating to . . . the provision of a free appropriate public education to

17

such child" and to bring a civil action with respect to that complaint.  See 20 U.S.C. §§

1415(b)(6) and 1415(i)(2)(A).  The Secretary of Education does have the right to withdraw funds

from those States that do not comply with the IDEA.  However, in addition, Congress has

specifically provided that children with disabilities and their parents may also file suit to protect

their right to a FAPE.

In summary, the Court concludes that the IDEA expressly confers on Plaintiffs the right

to bring a cause of action based on allegations that systemic failures in the way a State funds and

monitors its special education programs result in the denial of a FAPE.  Furthermore, as this

Court has previously held, under the circumstances presented here, Plaintiffs were not required

to exhaust administrative remedies prior to filing suit.

### 3.        Eleventh Amendment Immunity

In their motion for summary judgment, Defendants also argue that the Eleventh

Amendment to the United States Constitution "bars an Order requiring the State to increase its

funding for special education under the IDEA."  (Mot. Summ. J. at 42).  The Eleventh

Amendment states, "[t]he Judicial power of the United States shall not be construed to extend to

any suit in law or equity, commenced or prosecuted against one of the United States by Citizens

of another State, or by Citizens or Subjects of any foreign state."  It has also been construed to

prohibit citizens from suing their own states in federal court for money damages.  See Hans v.

Louisiana, 134 U.S. 1, 15 (1890).

There are, of course, three notable exceptions to Eleventh Amendment immunity.  First,

18

Congress may, under some circumstances, abrogate the States' Eleventh Amendment immunity.[7]

Second, a State may voluntarily waive its immunity from suit by accepting federal funding for a

particular program.  See Nihiser v. Ohio Envtl. Prot. Agency, 269 F.3d 626, 627 (6th Cir.

2001)("States can lose or forego this immunity through waiver or congressional abrogation").

Third, the Eleventh Amendment does not bar suits seeking prospective injunctive relief, in the

form of an order compelling state officials to comply with federal law, even if compliance with

such an order requires the expenditure of funds from the state treasury.  See Ex Parte Young, 209

U.S. 123 (1908); Edelman v. Jordan, 415 U.S. 651, 668 (1974)(noting, with respect to fiscal

consequences of complying with orders for prospective, injunctive relief, that "[s]uch an

ancillary effect on the state treasury is a permissible and often an inevitable consequence of the

principle announced in Ex Parte Young").

Plaintiffs argue that, by accepting federal funds under the IDEA, the State of Ohio has

waived immunity from suit.  The IDEA states, "[a] State shall not be immune under the eleventh

amendment to the Constitution of the United States from suit in Federal court for a violation of

this chapter."  20 U.S.C. § 1403(a).  While that section is titled "Abrogation of state sovereign

immunity," at least one circuit court has noted that § 1403 "is logically capable of constituting

both a clear statement of abrogation and an unambiguous expression of an intent to condition the

availability of federal IDEA funds on the state's relinquishment of immunity."  A.W. v. Jersey

City Public Schools, 341 F.3d 234, 245 (3d Cir. 2003).  The Third Circuit in that case noted that,

"[e]very circuit court to have addressed the issue has held that the section unambiguously

_____

    [7]  Plaintiffs note that the United States Supreme Court recently held that Congress validly
abrogated the States' Eleventh Amendment immunity with respect to Title II of the Americans
with Disabilities Act.  See Tennessee v. Lane, 124 S. Ct. 1978 (2004).

expresses Congress's intent to condition entitlement to federal financial assistance under the IDEA on a state's surrender of immunity."  Id.  See also Bradley v. Arkansas Dep't of Educ., 189 F.3d 745, 753 (8th Cir. 1999)(holding that 20 U.S.C. §§ 1403(a) and 1415 provide clear warning that states accepting funds under the IDEA waive immunity from suit in federal court), overruled on other grounds, Jim C. v. United States, 235 F.3d 1079 (8th Cir. 2000); M.A. v. State-Operated Sch. Dist. of the City of Newark, 344 F.3d 335, 347 (3d Cir. 2003)("Taken together, §§ 1403 and 1415 embody a clear and unambiguous expression of Congress's intent to condition a state's participation in the IDEA on the state's waiver of Eleventh Amendment immunity from suit in federal court"); Board of Educ. of Oak Park v. Kelly E., 207 F.3d 931, 935 (7th Cir. 2000)("[o]ne string attached to money under the IDEA is submitting to suit in federal court").

While the Court agrees that the State of Ohio has waived immunity from suit by accepting federal funding under the IDEA, the waiver exception to Eleventh Amendment immunity appears to be completely inapplicable in this case.  Plaintiffs readily admit that they are not seeking compensatory damages, general damages, or remunerative relief, or any kind of an order requiring the State of Ohio to increase its funding for special education.[8]  Instead,

---

[8]  The IDEA broadly permits the courts to "grant such relief as the court determines is appropriate."  20 U.S.C. § 1415(i)(2)(B)(iii).  However, normally, such relief is equitable in nature.  For example, while a court may order a school district to reimburse parents for private school expenditures, general compensatory damages for tort-like injuries are not available.  See School Comm. of the Town of Burlington v. Department of Educ., 471 U.S. 359, 369 (1985); Crocker v. Tennessee Secondary Sch. Athletic Ass'n, 980 F.2d 382, 386 (6th Cir. 1992).  The IDEA provides that in a suit against a State, remedies are available "to the same extent as those remedies are available for such a violation in the suit against any public entity other than a State."  20 U.S.C. § 1403(b).

Plaintiffs are seeking prospective, injunctive relief in the form of an order that the State comply

with the requirements of the IDEA.  The relief requested falls squarely within the exception set

forth in Ex Parte Young.  As noted above, even if state officials must expend money to comply

with such an order, this has only an ancillary effect on the state treasury, and such prospective,

injunctive relief is not barred by the Eleventh Amendment.  See Edelman, 415 U.S. at 668.

The Court further notes that, in their reply brief, Defendants appear to concede that,

because Plaintiffs are not asking the Court to order the State of Ohio to increase funding for

special education, the Eleventh Amendment does not bar Plaintiffs' claims.  For the reasons

stated above, the Court concludes that the Eleventh Amendment does not bar the relief sought by

Plaintiffs in their IDEA claim.

In summary, with respect to Plaintiffs' IDEA claim, the Court concludes that: (1)

Plaintiffs were not required to exhaust administrative remedies; (2) the IDEA expressly confers

on Plaintiffs the right to bring a cause of action based on allegations that systemic failures in the

way a State funds and monitors its special education programs result in the denial of a FAPE;

and (3) the Eleventh Amendment does not bar the type of relief sought by Plaintiffs.  Since it

cannot be said that it appears beyond doubt that Plaintiffs can prove no set of facts in support of

their IDEA claim which would entitle them to the relief requested, Defendants are not entitled to

its dismissal.

**B.**     **Section 504 of the Rehabilitation Act/Title II of the Americans with**
           **Disabilities Act**

Plaintiffs' Complaint also alleges violations of Section 504 of the Rehabilitation Act

("§ 504") and Title II of the Americans with Disabilities Act ("ADA"):

The system of funding and provision of services to students with disabilities in

21

> the State of Ohio. . . and the actions and inactions of the defendants result in
> students with disabilities being denied the benefits of, being excluded from
> participation in programs or activities for which they are otherwise qualified, and
> otherwise being discriminated against on the basis of their handicaps in violation
> of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 and
> implementing regulations and in violation of the Americans with Disabilities Act,
> 42 U.S.C. § 12131, et seq.

(Class Action Compl. at ¶ 175).

Title II of the ADA states: "no qualified individual with a disability shall, by reason of

such disability, be excluded from participation in or be denied the benefits of the services,

programs, or activities of a public entity, or be subjected to discrimination by any such entity."

42 U.S.C. § 12132. Section 504 provides that "[n]o otherwise qualified individual with a

disability . . . shall, solely by reason of her or his disability, be excluded from the participation

in, be denied the benefits of, or be subjected to discrimination under any program or activity

receiving Federal financial assistance. . ." 29 U.S.C. § 794(a). The parties agree that Plaintiffs'

ADA claims and § 504 claims may be analyzed together since Title II adopts the substantive

standards of § 504. See Thompson v. Williamson County, Tennessee, 219 F.3d 555, 557 n.3

(6th Cir. 2000).[9]

Citing Smith v. Robinson, 468 U.S. 992 (1984), Defendants argue that Plaintiffs cannot

bring a § 504 claim or an ADA claim to enforce an alleged denial of a free appropriate public

education. In Smith, the Supreme Court held that the EHA, the IDEA's predecessor statute, was

_____

[9] To establish a prima facie case under either statute, Plaintiffs must prove that: (1) they
have disabilities; (2) they are otherwise qualified; and (3) they are being excluded from
participation in, being denied the benefits of, or being subjected to discrimination by a public
entity solely because of their disabilities. See Kaltenberger v. Ohio College of Podiatric Med.,
162 F.3d 432, 435 (6th Cir. 1998). With respect to a claim brought under § 504, Plaintiffs must
also prove that the relevant program or activity is receiving federal funding. See id. at n.4.

the exclusive avenue for challenging discriminatory conduct in education.  However, as

Plaintiffs correctly point out, 20 U.S.C. § 1415(l) was added to the IDEA in 1986 to overrule

Smith in part.

That portion of the statute reads as follows:

> Nothing in this chapter shall be construed to restrict or limit the rights,
> procedures, and remedies available under the Constitution, the Americans with
> Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of the
> Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws
> protecting the rights of children with disabilities, except that before the filing of a
> civil action under such laws seeking relief that is also available under this
> subchapter, the procedures under subsections (f) and (g) of this section shall be
> exhausted to the same extent as would be required had the action been brought
> under this subchapter.

20 U.S.C. § 1415(l).  In amending the statute, Congress wanted to "reaffirm . . . the viability of

section 504, 42 U.S.C. § 1983, and other statutes as separate vehicles for ensuring the rights of

handicapped children."  H.R. Rep. No. 296, 99th Cong., 1st Sess. 4 (1985).

Citing the last phrase of § 1415(l), Defendants then argue that because Plaintiffs failed to

exhaust administrative remedies under the IDEA, they are also barred from seeking relief under

§ 504 and the ADA.  However, the statute requires exhaustion of administrative remedies only

"to the same extent as would be required had the action been brought" under the IDEA.  Since

this Court has already held that Plaintiffs were not required to exhaust their administrative

remedies under the IDEA, it follows that no such requirement exists with respect to § 504 or the

ADA.

Defendants next argue that, even if these other statutes generally remain as viable

options, Plaintiffs have nevertheless failed to state a claim of discrimination under either § 504

or the ADA because Plaintiffs have failed to allege that Defendants acted in bad faith or

exercised gross misjudgment.  This Court agrees.  As one district court has explained:

> While both the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* ("IDEA") and section 504 mandate that local educational agencies provide a FAPE to children with disabilities, the scope of protection afforded under each of these statutes is somewhat different. "Section 504 provides relief from discrimination, whereas the IDEA provides relief from inappropriate educational placement decisions, regardless of discrimination." Based on this distinction, courts have found that, in order to establish a section 504 violation, a plaintiff must demonstrate bad faith or gross misjudgment in addition to the denial of a FAPE.  See Sellers v. School Bd. of Mannassas, 141 F.3d 524, 529 (4th Cir.1998), petition for certiorari filed, 67 U.S.L.W. 3083 (Jul. 13, 1998) (No. 98-79); Monahan v. State of Nebraska, 687 F.2d 1164, 1170 (8th Cir.1982); K.U. v. Alvin Indep. Sch., 991 F.Supp. 599, 603 (S.D.Tex.1998); Walker v. District of Columbia, 969 F.Supp. 794, 797 (D.D.C.1997); Wenger, 961 F.Supp. at 422.

A.W. v. Marlborough Co., 25 F. Supp. 2d 27, 31-32 (D. Conn. 1998)(internal citations omitted).

Although the Sixth Circuit has not directly addressed this issue in a published opinion, two recent cases are instructive, and lead this Court to believe allegations of bad faith or gross misjudgment are required.  In N.L. v. Knox County Schools, 315 F.3d 688 (6th Cir.), reh'g and suggestion for reh'g en banc denied (2003), in connection with plaintiffs' § 504 claim, the Court noted:

> To prove discrimination in the education context, courts have held that something more than a simple failure to provide a free appropriate public education must be shown.  See Monahan v. Nebraska, 687 F.2d 1164, 1170 (8th Cir. 1982); see also Lunceford v. D.C. Bd. of Educ., 745 F.2d 1577, 1580 (D.C. Cir. 1984).

314 F.3d at 695.  The Court acknowledged that, with the enactment of 20 U.S.C. § 1415(l), the IDEA was no longer the exclusive avenue for plaintiffs challenging the denial of a FAPE.

However, the Court noted:

> This amendment has not been held to have altered the prior holdings that *more harm is required* than a denial of free appropriate public education to make out a section 504 claim.  See Sellers by Sellers v. Sch. Bd. of Manassas, 141 F.3d 524, 529 (4th Cir.1998) (citing Monahan, 687 F.2d at 1170 and Lunceford, 745 F.2d at 1580); see also Urban v. Jefferson County Sch. Dist. 89 F.3d 720, 728 (10th Cir.

24

> 1996) (finding that the similarity between the substantive and procedural
> frameworks of the IDEA and section 504 means that, if a disabled child is
> ineligible for placement under the IDEA, he is also ineligible under section 504);
> Doe v. Arlington County Sch. Bd., 41 F. Supp. 2d 599, 608 (E.D.Va. 1999)
> (noting that when the IDEA claims are dismissed, section 504 claims on same
> allegations are also dismissed).

N.L., 315 F.3d at 695 (emphasis added).  The Court held that because N.L. was ineligible for

services under the IDEA, N.L. was also ineligible for services under § 504.  See id. at 696.

    The Sixth Circuit further elaborated on this standard in Campbell v. Board of Education

of the Centerline School District, No. 01-1186, 2003 WL 344217 (6th Cir. Feb. 13,

2003)(unpublished).  In that case, parents filed suit under § 504 seeking reimbursement for the

cost of enrolling their handicapped child in a private tutorial reading program.  The school

district had refused to pay, offering instead to assign the student to the district's standard

remedial reading program.  The Court found insufficient evidence of discrimination and affirmed

the district court's decision to grant defendant's motion for summary judgment.  The Court held

that § 504 of the Rehabilitation Act:

> further requires that the [plaintiffs] must ultimately prove that the defendant's
> failure to provide [the student] with a "free appropriate public education" was
> discriminatory.  Surmounting that evidentiary hurdle requires that "either bad
> faith or gross misjudgment must be shown before a § 504 violation can be made
> out, at least in the context of handicapped children."  Monahan v. State of
> Nebraska, 687 F.2d 1164, 1171 (8th Cir. 1982), cert. denied, 460 U.S. 1012, 103
> S. Ct. 1252, 75 L. Ed.2d 481 (1983); see N.L. ex rel. Mrs. C. v. Knox County
> Schools, 315 F.3d 688, 695 (6th Cir. 2003)(citing Monahan with approval).

Campbell, 2003 WL 344217 at **5.

    Plaintiffs urge this Court to ignore the Sixth Circuit's holdings in N.L. and Campbell.

They claim that N.L. is factually distinguishable from the case at hand because the student in that

case was found ineligible for special education services under the IDEA. Plaintiffs note that the certified class in the instant case consists of children with disabilities who *are* eligible to receive special education services. However, these factual differences do nothing to change the applicable law concerning the distinctions between claims brought under the IDEA and those brought under § 504. In <u>N.L.</u>, the Sixth Circuit clearly held that, in the context of special education, it is more difficult for a plaintiff to state a claim under § 504 than it is to state a claim under the IDEA. In order to establish a claim of disability discrimination under § 504, a plaintiff must show more than a denial of a FAPE; a plaintiff must also show that the denial of the FAPE was discriminatory. In <u>Campbell</u>, the Court explained that this requires a showing of "either bad faith or gross misjudgment." <u>Campbell</u>, 2003 WL 344217 at **5.

Plaintiffs note that <u>Campbell</u> is an unreported case. Although citation to unpublished Sixth Circuit cases is disfavored and unpublished cases do not constitute binding precedent, in the absence of clear published case law from the Sixth Circuit, unpublished opinions may be relied upon for guidance. <u>See</u> <u>Norton v. Parke</u>, 892 F.2d 476, 479 n. 7 (6th Cir.1989). In this case, <u>Campbell</u> appears to be the only Sixth Circuit case law addressing the question of whether, in the special education context, a plaintiff asserting a § 504 claim must allege bad faith or gross misjudgment.

Plaintiffs also argue that the Sixth Circuit's holding in <u>Campbell</u> is "at best an unreported anomaly, and at worst is simply wrong." (Pls.' Mem. Opp'n at 26). They note that the "bad faith or gross misjudgment" requirement set forth in <u>Campbell</u> comes from <u>Monahan</u>, an Eighth Circuit case decided prior to the enactment of 20 U.S.C. § 1415(l) in 1986. Citing <u>Howell v. Waterford Public Schools</u>, 731 F. Supp. 1314, 1318 (E.D. Mich. 1990), Plaintiffs claim that,

because Monahan quoted language similar to language contained in Smith v. Robinson, which

was overruled in part by the enactment of 20 U.S.C. § 1415(l), the Sixth Circuit's continued

reliance on Monahan is misplaced.

However, as Defendants note, the Sixth Circuit is not the only circuit still relying on

Monahan or requiring plaintiffs asserting a § 504 claim to show "bad faith or gross

misjudgment."  In Sellers by Sellers v. School Board of Manassas, 141 F.3d 524 (4th Cir. 1998),

a case cited by the Sixth Circuit in N.L., the Fourth Circuit noted that "IDEA and the

Rehabilitation Act are different statutes.  Whereas IDEA affirmatively requires participating

States to assure disabled children a free appropriate public education, section 504 of the

Rehabilitation Act instead prohibits discrimination against disabled individuals."  Id. at 528

(internal citation omitted).  The Fourth Circuit held:

> To prove discrimination in the education context, "something more than a mere
> failure to provide the 'free appropriate education' required by [IDEA] must be
> shown."  Monahan v. Nebraska, 687 F.2d 1164, 1170 (8th Cir.1982); see also
> Lunceford v. District of Columbia Bd. of Educ., 745 F.2d 1577, 1580
> (D.C.Cir.1984). We agree with those courts that hold "that either bad faith or
> gross misjudgment should be shown before a § 504 violation can be made out, at
> least in the context of education of handicapped children." Monahan, 687 F.2d at
> 1171; see also Hoekstra v. Independent Sch. Dist. No. 283, 103 F.3d 624, 626-27
> (8th Cir. 1996), cert. denied, 520 U.S. 1244, 117 S. Ct. 1852, 137 L. Ed.2d 1054
> (1997); Wenger v. Canastota Cent. Sch. Dist., 979 F. Supp. 147, 152
> (N.D.N.Y.1997).

Sellers, 141 F.3d at 529.  See also M.P. v. Independent Sch. Dist. No. 721, 326 F.3d 975, 982

(8th Cir. 2003)(citing Monahan and holding that, in order to establish a prima facie case of

disability discrimination under § 504, a plaintiff must show either bad faith or gross

misjudgment); Sonkowsky v. Board of Educ. for Independent Sch. Dist. No. 721, 327 F.3d 675,

678 (8th Cir. 2003)("[i]n the context of educational services, liability does not attach absent a

27

showing of bad faith or gross misjudgment on the part of the school officials"); <u>Bradley v.</u>

<u>Arkansas Dep't of Educ.</u>, 301 F.3d 952, 956 (8th Cir. 2002)("[i]n order to state any claim against

a state school official under § 504, the [plaintiffs] must show that the official 'acted in bad faith

or with gross misjudgment'"); <u>Birmingham v. Omaha Sch. Dist.</u>, 220 F.3d 850, 856 (8th Cir.

2000)("[w]here alleged ADA and § 504 violations are based on educational services for disabled

children, the plaintiff must prove that school officials acted in bad faith or with gross

misjudgment"); <u>R.S. v. District of Columbia</u>, 292 F. Supp. 2d 23, 28 (D.D.C. 2003)(noting that

in order to state a claim under § 504 in the special education context, "a plaintiff must show bad

faith or gross misjudgment on the part of a defendant"); <u>Beth B. v. Van Clay</u>, 211 F. Supp. 2d

1020, 1035 (N.D. Ill. 2001)(holding that § 504 and ADA claims required a showing of bad faith

or gross misjudgment on the part of school officials); <u>S.W. v. Holbrook Pub. Sch.</u>, 221 F. Supp.

2d 222, 228 (D. Mass. 2002)(dismissing § 504 claim because plaintiffs did not allege that the

school had acted in bad faith or with gross misjudgment).

Plaintiffs also attempt to distinguish <u>Campbell</u> on its facts, noting that the case involved a

disagreement about which remedial reading program was best for the child.  Plaintiffs claim that,

under those circumstances, it made sense for the Court to require a showing of bad faith or gross

misjudgment, because it involved a question of educational methodology, one on which

educators could reasonably disagree.  Plaintiffs note that their allegations of systemic

deficiencies are much broader.  However, Plaintiffs have offered no authority to support their

claim that no showing of bad faith or gross misjudgment is required under the circumstances of

this case.  In the absence of other Sixth Circuit case law, this Court will look to the standard

adopted by the Sixth Circuit in <u>Campbell</u> for guidance on this subject.  The Court further notes

that this standard is consistent with the standard applied in many other courts.

Because Plaintiffs' Complaint contains no allegations to support a claim that Defendants acted in bad faith or exercised gross misjudgment, the Court concludes that, with respect to the claims brought pursuant to Title II of the ADA and § 504 of the Rehabilitation Act, Plaintiffs have failed to state a claim upon which relief may be granted.

### C.      42 U.S.C. § 1983/Fourteenth Amendment

Plaintiffs also seek relief pursuant to 42 U.S.C. § 1983 for alleged violations of the Fourteenth Amendment to the United States Constitution.  The Complaint reads as follows:

> The system of funding and provision of service to students with disabilities in the State of Ohio . . . and the actions and inactions of defendants deny students with disabilities of their state and federal constitutional rights to due process and equal protection of the law pursuant to the United States Constitution and 42 U.S.C. § 1983.

(Class Action Compl. at ¶ 173).[10]  42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, deprives someone else of "rights, privileges, or immunities secured by the Constitution and laws."  Defendants argue that Plaintiffs have failed to state a claim under either the Equal Protection Clause or the Due Process Clause of the Fourteenth

---

[10]  42 U.S.C. § 1983 reads in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

Amendment.

The Court can quickly dispose of two of Defendants' arguments relevant to both of Plaintiffs' § 1983 claims. Citing 20 U.S.C. § 1415(l), Defendants again argue that Plaintiffs have failed to exhaust their administrative remedies. However, for the reasons discussed above, the Court finds that no exhaustion is required. Defendants also argue that the State is not a "person" amenable to suit under 42 U.S.C. §1983. See Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989). However, Will does not prohibit § 1983 claims against the State in suits like this one where plaintiffs seek only prospective injunctive relief. Id. at 71 n.10.

### 1.    Equal Protection Clause

The Equal Protection Clause of the Fourteenth Amendment prohibits a state from denying to any person within its jurisdiction the equal protection of the laws. In essence, a State must "treat similarly situated individuals in a similar manner." Buchanan v. City of Bolivar, 99 F.3d 1352, 1360 (6th Cir. 1996)(quoting Gutzwiller v. Fenik, 860 F.2d 1317, 1328 (6th Cir.1988)).

Plaintiffs contend that children with disabilities are similarly situated to children without disabilities in that all children are subject to Ohio's compulsory education laws and all children must meet certain requirements to be eligible to graduate from high school. Plaintiffs further contend that all children are similarly situated in their need for education. Plaintiffs allege, however, that Defendants treat children with disabilities less favorably than children without disabilities. For example, Plaintiffs contend that while the State ensures 100% of the recommended level of funding for children without disabilities, the State ensures less than 100% of the recommended level of funding for children with disabilities. Plaintiffs further contend that

the funding formulas used grossly underestimate the cost of educating students with disabilities, and fail to account for many services required by the IDEA.  Finally, Plaintiffs contend that State budget cuts have disproportionately targeted special education funding.

Defendants do not deny that children with disabilities are similarly situated to children without disabilities.  Neither do they deny that they treat children with disabilities differently than children without disabilities.  They contend that they are entitled to dismissal of the Equal Protection claim because: (1) Plaintiffs have failed to allege that Defendants intentionally discriminated against them on the basis of their disability; and (2) there is a rational basis for the difference in treatment.[11]

Citing Purisch v. Tennessee Technological University, 76 F.3d 1414, 1424 (6th Cir. 1996), Defendants first argue that the Equal Protection claim must be dismissed because Plaintiffs failed to allege that Defendants intentionally discriminated against Plaintiffs because of their membership in a protected class.  Plaintiffs claim that it is not necessary for them to allege purposeful discrimination based on their disabilities.  In support, Plaintiffs cite to Village of Willowbrook v. Olech, 528 U.S. 562 (2000).  In that case, plaintiff filed an Equal Protection Clause claim against the Village of Willowbrook after the Village demanded that she grant a 33-

---

[11]  Citing Smith v. Robinson, 468 U.S. 992, 1009 (1984), Defendants again claim that the IDEA is "the exclusive avenue through which a plaintiff may assert an equal protection claim to a publicly funded special education."  Defendants therefore claim that Plaintiffs' § 1983 claim based on an alleged violation of the Equal Protection Clause must be dismissed.  However, as previously discussed, Congress enacted 20 U.S.C. § 1415(l) to overrule the holding in Smith. The Court rejects Defendants' argument that the Sixth Circuit reaffirmed the continued vitality of the Smith decision in N.L. v. Knox County Schools, 315 F.3d 688 (6th Cir. 2003).  In N.L., the Sixth Circuit noted that Smith had held that "any action for discrimination in education must be limited to an action under the IDEA."  Id. at 695-96.  However, citing 20 U.S.C. § 1415(l), it then noted that Congress "addressed" this holding by amending the IDEA to make clear that the statute did not limit remedies available under the Constitution or other statutes.  Id.

foot easement to connect her property to the municipal water supply.  Other property owners had

been required to grant only a 15-foot easement.  The Supreme Court noted that "[t]he purpose of

the equal protection clause of the Fourteenth Amendment is to secure every person within the

State's jurisdiction against intentional and arbitrary discrimination . . ." Id. at 564.  The Court

held that the homeowner, a "class of one," had stated a valid Equal Protection claim.  She had

alleged that the Village's demand was "irrational and wholly arbitrary." Id. at 565.  The Court

held that "[t]hese allegations, *quite apart from the Village's subjective motivation*, are sufficient

to state a claim for relief under traditional equal protection analysis." Id. (emphasis added).

In Olech, the Supreme Court held that plaintiffs asserting an Equal Protection claim need

not allege that they were a member of a suspect class or that defendants intentionally

discriminated against them.  It is enough for Plaintiffs to allege that they were "intentionally

treated differently from others similarly situated and that there is no rational basis for the

difference in treatment." Id. at 564.  Defendants argue that because Plaintiffs failed to allege

arbitrary conduct, Olech is inapplicable.  However, in at least three places, Plaintiffs' Complaint

refers to Defendants' arbitrary and irrational conduct.  See Compl. ¶¶ 35(b), 77, 91.  The Court

concludes that it is not necessary for Plaintiffs to allege intentional discrimination.  The

Complaint clearly alleges that Plaintiffs are similarly situated to non-disabled students and that

Defendants treated them differently; Defendants' intent to do so may be inferred.  The Complaint

further alleges that Defendants' conduct is "arbitrary and irrational."  Pursuant to the Supreme

Court's holding it Olech, these allegations are sufficient to withstand a motion to dismiss.[12]

---

[12]  For an informative law review article on this topic, see Robert C. Farrell, *Classes, Persons, Equal Protection, and Village of Willowbrook v. Olech*, 78 Wash. L. Rev. 367 (2003).

Defendants also argue that Plaintiffs' Equal Protection claim must be dismissed because there is a rational basis for the difference in treatment. The parties agree that because children with disabilities are not a suspect class, classifications based on disability are subject only to a rational basis review. See Board of Trustees of the Univ. of Alabama v. Garrett, 531 U.S. 356, 366-67 (2001). This means that there is no Equal Protection violation "if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." Id. at 367 (citing Heller v. Doe, 509 U.S. 312, 320 (1993)).

As Defendants note, when it comes to funding decisions, States are generally given "wide latitude." See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 440 (1985). See also Mathews v. de Castro, 429 U.S. 181, 185 (1976)(holding that legislation enacted pursuant to the spending power is "entitled to a strong presumption of constitutionality" and decisions to spend money in one way and not another do not give rise to Equal Protection claims "unless the choice is clearly wrong, a display of arbitrary power, not an exercise of judgment"). Therefore, "[t]o survive a motion to dismiss for failure to state a claim, a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications." See Bower v. Village of Mt. Sterling, No. 00-3418, 2002 WL 1752270 at **6 (6th Cir. July 26, 2002)(quoting Wroblewski v. City of Washburn, 965 F.2d 452, 459-60 (7th Cir. 1992).

Plaintiffs have alleged that the current system of funding special education programs violates the Equal Protection Clause. As Plaintiffs explain:

> Under the current education funding system, the state has established the annual cost of educating each child attending public school in the state. The state set that "base cost of an adequate education per pupil," at $4,949 for fiscal year 2003. Ohio Rev. Code Ann. § 3317.012 (Anderson's 2003). The state also established a formula for determining the amount of state and local funds for the education of each child with a disability attending public school in Ohio. That

33

amount is determined by adding the base cost to the product of the base cost multiplied by a specified weight. *Id.* § 3317.022(3)(a), 3317.013.  The weight differs depending on the type of disability the student has.  More severe disabilities are provided a higher weight than less severe disabilities that will, presumably, require a school district to spend less money in providing an adequate education.  Because the state is required to provide children with disabilities with an appropriate education under IDEA, the base amount plus the product of the base amount multiplied by the applicable weight must be the amount necessary to provide an appropriate education to each child.

Although the original weights proposed to the State were purportedly based on the minimum cost of providing a child with an appropriate education, and therefore the minimum level of funding that would permit the State to stay in compliance with IDEA, the state has failed to ensure funds for 100% of that minimum cost.  The state guaranteed only 82.5% of the necessary funds for fiscal year 2002, and only 87.5% for fiscal year 2003, whereas the state fully funded the formula for educating children without disabilities.  Ohio Rev. Code Ann. § 3317.013 (Anderson's 2003).  Providing 100% of the recommended funding for regular education, while providing only 87.5% of the recommended funding for special education, results in disparate treatment of children with disabilities without any rational basis.

Pls.' Mem. Opp'n Mot. Summ. J. at 30-31.  Plaintiffs claim that this funding disparity, along with budget cuts that continue to target special education, constitutes an arbitrary display of power that discriminates against children with disabilities.

In response, Defendants argue that the difference in treatment is rational.  They claim that the State realizes that it costs more money to educate children with disabilities than it costs to educate children without disabilities.  Accordingly, legislators allocate more money per pupil to educate children with disabilities than they allocate to educate children without disabilities. (Def.'s Reply Brief at 16-17).  Defendants therefore conclude, "[c]learly there is a rational basis for Ohio's funding of special education which provides more state funding to children with disabilities than to those without disabilities and provides even greater funding to children with more severe disabilities." Id. at 19.

34

Defendants miss the point.  The question is not whether it is rational for the State to spend more money per pupil to educate children with disabilities than it spends to educate children without disabilities.  The question is whether there is any rational basis for the State to guarantee 100% of the funds it determines are necessary to provide an adequate education for children without disabilities and only 87.5% of the funds it determines are necessary to provide an adequate education for disabled children.  Defendants note that the new weighted system for funding special education is being phased in.  By 2005, 90% of the recommended funding level will be guaranteed.  See Ohio Rev. Code § 3317.013(F).  However, 90% appears to be the cap; there is no indication that the State plans to guarantee 100% of the recommended funding level. See id.

The Supreme Court has held that a § 1983 plaintiff's challenge to the lack of rational basis for an equal protection claim cannot succeed "it there is any reasonably conceivable state of facts that could provide a rational basis for the classification."  FCC v. Beach Communications, Inc., 508 U.S. 307, 313 (1993).  In this case, while there might well be a rational basis for the disparity in percentages of funding guaranteed by State, Defendants have not yet identified one, and the Court refuses to speculate as to what it might be.  In the Court's view, Plaintiff's allegations, if true, are sufficient to overcome the presumption of rationality and are sufficient to state an Equal Protection claim.[13]

### 2. Due Process Clause

Plaintiffs have also alleged that Ohio's system of school funding violates their procedural due process rights as guaranteed by the Fourteenth Amendment to the United States

---

[13]  The Court, however, makes no prediction concerning the ultimate merits of this claim.

Constitution.  The Fourteenth Amendment prohibits a state from depriving any person of life, liberty, or property, without due process of law.  Plaintiffs seeking to establish a procedural due process violation must show: (1) that they have been deprived of a protected liberty or property interest; and (2) that the available state procedures were inadequate to compensate for the alleged deprivation.  See Collyer v. Darling, 98 F.3d 211, 223 (6th Cir. 1996).  As the Supreme Court explained in Zinermon v. Burch, 494 U.S. 113, 126 (1990), "to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate."  The Due Process Clause "grants the aggrieved party the opportunity to present his case and have its merits fairly judged."  Logan v. Zimmerman Brush Co., 455 U.S. 422, 433 (1982).  That opportunity must take place at a "meaningful time and in a meaningful manner."  Id. at 437 (quoting Armstrong v. Manzo, 380 U.S. 545, 522 (1965)).

Defendants claim that Plaintiffs have failed to state a claim upon which relief may be granted because Plaintiffs have no protected right to an increased level of state funding for special education.[14]  Plaintiffs do, however, have a property right in a free, appropriate public education, secured by the IDEA and state statutes implementing that federal law.  See Fetto v. Sergi, 181 F. Supp. 2d 53, 80 (D. Conn. 2001)(student had "a protected property right to an appropriate IEP under the IDEA"); Quackenbush v. Johnson City Sch. Dist., 716 F.2d 141, 148 (2d Cir. 1983)(denial of FAPE constitutes denial of right secured by federal law); B.D. v.

---

[14]  Citing 20 U.S.C. § 1415(l), Defendants also again argue that Plaintiffs were required to exhaust their administrative remedies prior to filing suit.  For the reasons stated above, the Court rejects this argument.

DeBuono, 130 F. Supp. 2d 401, 431 (S.D.N.Y. 2000)(students had a "protected property right to an individualized treatment plan that would meet their needs").  Plaintiffs' Complaint clearly alleges that they have been denied a FAPE.  The Court therefore concludes that it sufficiently alleges the deprivation of a protected liberty or property interest.[15]

However, Plaintiffs' Complaint falls short when it comes to allegations that available state procedures were inadequate to compensate for the alleged deprivation.  The contours of Plaintiffs' procedural due process claim are somewhat ill-defined.[16]  However, in their memorandum in opposition, Plaintiffs state as follows:

> As to the process that must attend deprivation of IDEA or 504 rights, plaintiff does not challenge the statutory schemes themselves as constitutionally inadequate.  Rather, plaintiff contends that those procedures were inadequate to address systemic issues of Ohio's special education funding scheme.

(Mem. in Opp'n Mot. Summ. J. at 32-33).  Plaintiffs go on to explain:

> . . . the funding structure for special education controls how school districts make decisions about special education students, including eligibility for service, disability label and placement.  Districts are encouraged by the funding system to identify more school-aged students as disabled and as having more severe disabilities.  Conversely, the special education preschool funding system of limited unit funding discourages referral for evaluations and subsequent identification of all eligible children.  Parents are unaware of school districts' manipulation of disability labels and placements.  They are not informed of or offered less restrictive placements or necessary related services because the funding, services, and/or facilities are not available in the district.  No parent or child can be aware of these influences on the decision making process, and thus

---

[15]  Plaintiffs characterize their interest in a FAPE as a protected *liberty* interest rather than a protected *property* interest. This is inapposite.

[16]  In their motion for summary judgment, Defendants noted that it was impossible to tell whether Plaintiffs were asserting a substantive due process claim, a procedural due process claim, or both.  In their memorandum in opposition, Plaintiffs clarified that they are asserting only a procedural due process claim.

they are denied notice and a meaningful opportunity to be heard in their child's education.  Thus, plaintiff is not attacking the procedures provided to the class under the law (as suggested by defendants); instead, these procedures, including the right to participate in and be fully informed in decision-making process are curtailed by Ohio's structure of school funding.

Id. at 33-34 (internal citation omitted).

Plaintiffs note that John Doe, at one point, did challenge the adequacy of his education through the administrative procedures available under the IDEA, but lost his hearing and his appeal.  Plaintiffs claim that he was denied services to which he was entitled, allegedly because those services were inadequately funded.  Plaintiffs conclude that "[t]he IDEA's procedures proved to be inadequate to guarantee John Doe the services to which he was entitled."  (Id. at 33).[17]

The crux of Plaintiffs' claim, then, as the Court understands it, is that because disabled children and their parents do not fully understand all of the factors that enter into a school district's decision to label a disabled child in a particular way or to recommend a particular placement, disabled children and their parents are somewhat ignorant when it comes to asserting their rights under the IDEA.  In other words, they know that they are not happy with the education they are receiving, but they simply do not know enough to attack the true root of the problem – the structure of funding for special education.  While there is no question that such ignorance may impede Plaintiffs' ability to get the services to which they may be entitled under the IDEA, in the Court's view, such ignorance cannot necessarily be blamed on Defendants, and it does not constitute a due process violation.  Plaintiffs have presented the Court with no

_____

[17]  As Defendants point out, just because John Doe lost at the administrative level, this does not mandate a finding that the state procedures were inadequate.

38

authority to support their rather novel argument.  In the Court's view, Plaintiffs were given all that the Due Process Clause requires -- notice and a meaningful opportunity to be heard.  For these reasons, the Court concludes that, with respect to the alleged due process violation, Plaintiffs have failed to state a claim upon which relief may be granted.

IV.     **Conclusion**

     For the reasons stated above, Defendants' motion for summary judgment (Record at 81) is **GRANTED IN PART and DENIED IN PART**.  The Court dismisses Plaintiffs' claims brought under § 504 of the Rehabilitation Act and Title II of the ADA.  The Court also dismisses Plaintiffs' § 1983 claim alleging a violation of the Due Process Clause of the Fourteenth Amendment.  However, the Court denies Defendants' motion with respect to Plaintiffs' IDEA claim and Plaintiffs' § 1983 claim alleging a violation of the Equal Protection Clause of the Fourteenth Amendment.

**IT IS SO ORDERED.**

Date: July 9, 2004                              **/s/John D. Holschuh    **
                                                John D. Holschuh, Judge
                                                United States District Court