**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JOHN DOE, et al.,** | : | |
| | : | |
| **Plaintiffs,** | : | **Case No.  C2-91-464** |
| | : | |
| **v.** | : | **JUDGE HOLSCHUH** |
| | : | |
| **STATE OF OHIO, et al.,** | : | **MAGISTRATE JUDGE KEMP** |
| | : | |
| | : | |
| **Defendants.** | : | |

---

**REPLY TO MEMORANDA IN OPPOSITION TO DISMISSAL**
**AND PARTIAL SUMMARY JUDGMENT**

---

JIM PETRO
Attorney General
ss/Todd R. Marti
TODD R. MARTI (0019280)
Assistant Attorney General
Education Section
30 East Broad Street, 16th Floor
Columbus, OH  43215
(614) 644-7250
tmarti@ag.state.oh.us

*Counsel for the Defendants*

# TABLE OF CONTENTS

**Page(s)**

Table of Authorities…………………………………………………………………......4

A.   Plaintiffs' IDEIA claims fail as a matter of law………………………………………7

        1.   The Court lacks subject matter jurisdiction…………………………..7

             a.   Decisions recognizing a private cause of action against states under prior statutes are inapposite…………......7

             b.   The lack of precedent on the scope of judicial jurisdiction is not surprising since the IDEIA has been in effect for less than a year…………………………9

             c.   Plaintiffs' arguments about the sufficiency of the Secretary's enforcement are both inapposite and irrelevant………………………………………………………9

        2.   The Court should defer to the primary jurisdiction of the Secretary of Education……………………………………………………………..10

             a.   The Secretary has authority to adjudicate states' compliance with the IDEIA…………………….....................11

             b.   The Secretary is entitled to deference in this highly technical area……………………………….......11

        3.   Plaintiffs' IDEIA claims against Defendant Taft and all state agencies other than ODE and OSFC should be dismissed……………………13

        4.   The stale aspects of Plaintiffs' claims must be dismissed as moot…..13

B.   Plaintiffs have not disputed that their Rehabilitation Act claim should be dismissed……………………………………………………………………..14

C.   Plaintiffs' claims under 42 U.S.C. § 1983 fail as a matter of law…………………..14

      1.   Plaintiffs' arguments against legislative immunity are rebutted by by controlling precedent……………………………………………………..14

      2.   Portions of Plaintiffs' claims are time barred………………………....16

3.      Plaintiffs cannot save their Third Cause of Action by invoking
        Substantive Due Process……………………………………………………16

        a.      Plaintiffs have not pled a Substantive Due Process claim……………..17

        b.      This claim fails under Substantive Due Process standards……………18

4.      Plaintiffs' failure to rebut evidence that they are barred from pressing
        claims under § 2, Art. VI of Ohio's Constitution requires summary
        judgment dismissing their Fourth Cause of Action……………………………20

5.      Plaintiffs' complaints about the efficacy of Ohio's
        attempts to accommodate local control are insufficient
        to save their Fifth Cause of Action……………………………………………21

6.      Analogies to desegregation cases are factually and legally flawed……………23

Certificate of Service……………………………………………………………………..25

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Agri-Mark, Inc. v. Niro, Inc.*, 233 F. Supp. 2d 200 (D. Mass. 2002)................................ 17

*Albright v. Oliver*, 510 U.S. 266, 273, 114 S. Ct. 807 (1994) ........................................... 19

American *Ins. Co. v. Dayton*, 532 F. Supp. 174 (S.D. Ohio 1980) .................................. 21

*BE&K Constr. Co. v. NLRB*, 536 U.S. 516, 112 S. Ct. 2390 (2002) ................................ 20

*Beth V. v. Carroll*, 87 F.3d 80 (3d Cir. 1996)....................................................................... 7

*Bill Johnson's Rests. v. NLRB*, 461 U.S. 731, 103 S. Ct. 2161 (1983) ............................. 20

*Board of Educ. v. Steven L.*, 89 F.3d 464 (7th Cir. 1996).................................................. 14

*Bogan v. Scott–Harris*, 523 U.S. 44, 118 S. Ct. 966 (1998)............................................. 15

*California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 92 S. Ct. 609 (1972)............................................................................................................ 20

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548 (1986). ..................................... 21

*Codero v. Pennsylvania Dept. of Educ.*, 795 F. Supp. 1352 (M.D. Pa. 1992)................... 7

*Converse County School District No. Two v. Pratt*, 993 F. Supp. 848 (D. Wyo. 1997) .................................................................................................................. 13

*Curry v. Dempsey*, 701 F.2d 580 (6th Cir. 1983). .............................................................. 22

*Doe v. Smith*, 879 F.2d 1340 (6th Cir. 1989)...................................................................... 12

*Dunn v. Fairfield Community High School District*, 158 F.3d 962 (7th Cir. 1998).......... 19

*FCC v. Beach Communications*, 508 U.S. 308, 113 S. Ct. 2096 (1993) .......................... 22

*Fitzke v. Shappell*, 468 F.2d 1072 (6th Cir. 1972);............................................................ 21

*Heller v. Doe*, 509 U.S. 312, 113 S. Ct. 2637 (1993)……………………...………...19,22

*James v. Unified School District*, 899 F. Supp 530 (D. Kans. 1995) ............................... 19

*Mathews v. De Castro*, 429 U.S. 181, 97 S. Ct. 431 (1976) ............................................. 23

*Mazevski v. Horseheads Central School District*, 950 F. Supp. 69 (W.D.N.Y. 1997)..... 19

*Michael C. v. Radnor Township School District*, 1999 U.S. Dist. LEXIS 1352
   (E.D. Pa. 1999)........................................................................................................ 12

*Ms. S v. Vashon Island School District*, 337 F.3d 1115 (9th Cir. 2003)........................... 12

*Nestle Ice Cream Co. v. NLRB*, 46 F.3d 578 (6th Cir. 1995) ........................................... 20

*New York City Transit Authority v. Beazer*, 440 U.S. 568, 99 S. Ct. 1355 (1979).......... 23

*Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89,  104 S. Ct. 900 (1984). 24

*Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 99 S. Ct. 2282 (1979).............. 23

*Reno v. Flores*, 507 U.S. 292, 113 S. Ct. 1429 (1993) .................................................... 18

*Rodiriecus v. Waukegan School District*, 90 F.3d 249 (7th Cir. 1996) ............................ 12

*Romer v. Evans*, 517 U.S. 620, 116 S. Ct. 1620 (1996)................................................... 23

*San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 93 S. Ct. 1278 (1973) ............. 21

*Sanchez v. Reagan*, 770 F.2d 202 (D.C. Cir. 1982)………………………………...14

*Seal v. Morgan*, 229 F.3d 567 (6th Cir. 2000)................................................................18

*Supreme Court of Virginia v. Consumers Union*, 446 U.S. 719, 100 S. Ct.1967 (1980) . 16

*Thomas v. Gee*, 850 F. Supp. 665 (S.D. Ohio 1994) ...................................................... 19

*Walker v. Bain*, 257 F.3d 660 (6th Cir. 2001)................................................................. 19

*Wells v Brown*, 891 F.2d 591 (6th Cir. 1989) ................................................................. 17

## **STATE CASES**

*DeRolph v. State*, 89 Ohio St. 3d 1, 728 N.E.2d 993 (2000)………………………...20,23,24

*State ex rel. State of Ohio  v. Lewis*, 99 Ohio St.3d 97, 789 N.E.2d 195 (Ohio 2003).…. 20

## <u>FEDERAL STATUTES AND AUTHORITIES</u>

20 U.S.C. § 1412(a)……………………………………………………………...11

20 U.S.C. § 1412(d)……………………………………………………………...11

20 U.S.C. § 1412(d)(2)………………………………………………….......11

20 U.S. C. §1415………………………………………………………………..7,9

20 U.S.C § 1415(b)…………………………………………………………....…..7

20 U.S. C. §1415(f)…………………………………………………….…....7,8

20 U.S. C. § 1415(i)(2)(A)………………………………………………………7,8

20 U.S. C. §1415(k)…………………………………………………….……....7,8

20 U.S.C. § 1416…………………………………………………………....7,.8,9

20 U.S.C. § 1416(b)(2)(C)(ii)………………………………………………..8,10

20 U.S.C. § 1416(d)…………………………………………………….......…..10

20 U.S.C. § 1416 (e)(1)………………………………………………...……….10

20 U.S.C. § 1416 (e)(1)(a)……………………………….…………………….10

20 U.S.U. § 1416 (e)(2)……………………………………………......…….......10

20 U.S.U. § 1416 (e)(2)(a)…………………………………..…………………..10

20 U.S.U. § 1416 (e)(3)………………………………………………………….10

20 U.S.C. § 1416(e)(8)(A)…………………………....…………………………11

20 U.S.C. § 1416 (e)(8)(C)……………………………………….....…..………11

42 U.S.C. § 1983……………………………………………………….....14,16

A.      **Plaintiffs' IDEIA claims fail as a matter of law**

1.      **The Court lacks subject matter jurisdiction.**

Defendants' motion explained that 20 U.S.C. § 1415(i)(2)(A) only provides for judicial resolution of IDEIA disputes of the type covered by §§ 1415(f) and (k); that those subsections focus exclusively on disputes between parents and local educational agencies ("LEA"); and that, in contrast,  20 U.S.C. § 1416 expressly gives the U.S. Secretary of Education authority to evaluate and enforce state level compliance with the IDEIA. Defendants therefore argued that the courts no longer have jurisdiction over claims, like those pressed here, that states are out of compliance with the act. Doc. No. 110-1 at 14-20. Plaintiffs do not dispute any of those premises, but nonetheless offer several arguments against the conclusion that this Court lacks subject matter jurisdiction. None are valid.

a.      **Decisions recognizing a private cause of action against states under prior statutes are inapposite because those statutes have changed.**

Plaintiffs place primary reliance upon Doc. No. 89, issued in 2004, and several cases discussed in that opinion that recognized private causes of actions against states under the IDEA, Doc. No. 113-1 at 16-18, 23,[1]  but that reliance is misplaced because the controlling statutes have been significantly changed since those decisions were issued.  That is true in two respects.

First, those precedents were based on now superseded versions of §1415. The cases relied upon in Doc. No. 89, *Beth V. v. Carroll*, 87 F.3d 80 (3[d] Cir. 1996) and *Codero v. Pennsylvania Dept. of Educ.*, 795 F. Supp. 1352 (M.D. Pa. 1992) were controlled by iterations of § 1415(i)(2)(a) that made all complaints presentable under § 1415(b) cognizable in the court,

---

[1]  All citations to specific pages of parties' memoranda are to the PDF pagination of the particular memorandum established by the Court's electronic filing system.

with no reference to §§ 1415(f) and (k). However, Congress amended § 1415(i)(2)(A) in 1997 to redefine the scope of the courts' power to those claims falling within the scope of §§ 1415(f) and (k). And of particular importance here, Congress amended §§ 1415(f) and (k)—after both those cases and Doc. No. 89 itself—to make it clear that §§ 1415(f) and (k) deal *exclusively* with disputes between parents and LEAs, a reality Plaintiffs have not disputed.

Second, those cases were decided before Congress fundamentally redrafted § 1416 in late 2004 to make it clear that the Secretary of Education is the arbiter of state level compliance with the IDEIA. Prior to that restructuring, the statutes did not expressly provide  for administrative evaluation of state level compliance and the Secretary had few options for compelling state compliance; she could only withhold funds or ask the Justice Department to sue. Given that legal backdrop, it's not surprising that the courts perceived a Congressional warrant to entertain claims of state level non-compliance.

But that backdrop has changed; through the 2004 enactment of the IDEIA Congress has given the Secretary the same sort of supervisory authority that courts previously exercised through litigation. The IDEIA now requires States to provide detailed expositions of how they plan to comply with the act,[2] annual reports on their execution of those plans,[3] and requires ongoing monitoring of States' compliance,[4] the equivalent of discovery. It requires the Secretary to make findings about state level compliance,[5]  the equivalent of adjudication. And if violations are found, the IDEIA requires the Secretary to use the same sort of remedial measures courts would typically employ in institutional reform litigation.[6]  In  short,  the  cases

---

[2] § 1416(b)
[3] § 1416(b)(2)(C)(ii)
[4] § 1416(a)(2)-(4)
[5] § 1416(c) and (d)
[6] § 1416(e)

Plaintiffs rely on were decided *before* Congress charged the Secretary with tasks courts would otherwise perform. That fundamental change, coupled with the changes limiting the scope of judicial jurisdiction under §1415, so changed the legal landscape as to make inapposite the cases mapping that terrain in its earlier condition.

> **b.** **The lack of precedent on the scope of judicial jurisdiction is not surprising since the IDEIA has been in effect for less than a year.**

Plaintiffs also argue that the Court should reject our analysis because we have cited no precedent supporting it. There is admittedly no precedent on the courts' jurisdiction over claims of statewide non-compliance with the IDEIA, but that it not surprising: the IDEIA has only been in effect less than a year, since July 1, 2005.

> **c.** **Plaintiffs' arguments about the sufficiency of the Secretary's enforcement are both inapposite and irrelevant.**

Plaintiffs also suggest that jurisdiction could not have been transferred to the Secretary because some organizations criticized the Secretary's efforts to evaluate and enforce state level compliance with prior versions of the act. Doc. No. 113-1 at 23-24.[7] That argument fails for two reasons.

First, those criticisms addressed a different system. Under prior law, the Secretary had few options; the most she could do was withhold funds or encourage the Justice Department to file suit, and the report, *Back to School on Civil Rights* (Nat. Council on Disabilities 2000), that Plaintiffs cite recognized that neither were effective. The law is now radically different, providing the Secretary with a much wider range of remedies. *Compare* 20 U.S.C. § 1416 (2005) with 20 U.S.C. § 1416 (1997). Indeed, the current law adopted several of the

---

[7] All citations to specific pages of parties' memoranda are to the PDF pagination of the particular memorandum established by the Court's electronic filing system.

recommendations made in the report Plaintiffs cite, so that report has little factual relevance to the law at issue here. *Compare Back to School* at recommendation IIIB.6, p. 140 (suggesting evaluation of state performance at regular intervals) with §§ 1416(b)(2)(C)(ii) and (d) (requiring annual state performance reports and the Secretary's evaluation thereof); recommendation IIIB. 11, p. 155-156 (suggesting that states be provided technical assistance in addressing areas of non-compliance) with §§ 1416(e)(1)(a) and (2)(a) (providing technical assistance to address areas of non-compliance); recommendation III B.12A and IIIB.12B, p. 156-160 (suggesting that the Secretary be given a range of sanctions to address on going non-compliance) with §§1416(e)(1) through (3) (providing the Secretary with increased options to address non compliance).

>     **2.      The Court should defer to the primary jurisdiction of the Secretary of Education.**

Defendants' motion explained that even if the Court has subject matter jurisdiction over this case it should nonetheless defer to the Secretary's primary jurisdiction over Ohio's systemic compliance with the IDEIA because she will be passing on that question independent of this case, because of the highly technical nature of the issues involved in Plaintiffs' IDEIA claim, and because of the Secretary's superior ability to analyze the mountains of data involved. They therefore urged this Court to follow the Supreme Court and Sixth Circuit precedent indicating that this case should be dismissed subject to refiling when the Secretary completes her evaluation of Ohio's systemic compliance with the IDEIA. Doc. No. 110-1 at 20-29.

Plaintiffs have not disputed our summary of the factors relevant to deferral to an agency's primary jurisdiction, the technical nature of the issues involved in their IDEIA claims, the large body of data that will have to be analyzed to resolve those claims, or that that

Supreme Court and Sixth Circuit precedent indicate that dismissal is appropriate if the Court decides to defer to the Secretary's jurisdiction. Instead they offer two arguments as to why deferral is nonetheless inappropriate. Neither withstand scrutiny.

### a. The Secretary has authority to adjudicate States' compliance with the IDEIA.

Plaintiffs first respond by arguing that the Secretary does not have authority to adjudicate Ohio's compliance with the IDEIA, Doc. No. 113-1 at 21,[8] but that argument is belied by the relevant statutes.

The statutes controlling grant applications make it clear that the Secretary does indeed decide a state's compliance with the IDEIA, and does so through an adjudicatory process. 20 U.S.C. § 1412(d) requires the Secretary to make a determination of whether a state is eligible for receiving federal funds under the substantive requirements set out in § 1412(a)—the same requirements Plaintiffs seek to enforce here—and hence contemplates the Secretary expressly deciding whether a state complies with those statutes. 20 U.S.C. § 1412(d)(2) provides for notice and opportunity for hearing on disputed matters and 20 U.S.C. § 1416(e)(8)(C) indicates that the ultimate determination includes findings of fact, findings subject to judicial review. 20 U.S.C. § 1416(e)(8)(A). Those features rebut Plaintiff's contention.

### b. The Secretary is entitled to deference in this highly technical area.

Plaintiffs also argue that the Secretary is entitled to no particular deference because, in their view, the cases holding that courts should defer to educational officials are istinguishable in that they involved LEAs. Doc. No. 113-1 at 26-27.[9] That argument fails on two levels.

---

[8] All citations to specific pages of parties' memoranda are to the PDF pagination of the particular memorandum established by the Court's electronic filing system.

First, Plaintiffs' attempts to distinguish the cases misses the reason that courts have consistently deferred to those agencies—because of the relative expertise of those bodies. That deference is based on the indisputable fact that educational agencies "possess…specialized knowledge and experience" while, in contrast, "federal courts are generalists with no expertise in the educational needs of handicapped children." *Doe v. Smith*, 879 F.2d 1340, 1343 (6th Cir. 1989).

That dynamic does not disappear because the educational agency involved here is federal rather than local or because this case involves systemic rather than individual claims. At their core, Plaintiffs' IDEIA claims still require evaluation of whether the various details of Ohio's special education system raised in their Amended Complaint deprive Ohio's children of a free appropriate public education. The Defendants intend no disrespect, but submit that the United States Department of Education, agency with decades of experience in this highly technical area, has an exponentially greater level of expertise than a court of general jurisdiction. *That* is the controlling dynamic and it requires the deference that is the *raison d'etre* for the primary jurisdiction doctrine.

Second, Plaintiffs' analysis is contrary to the weight of related precedent. Consistent with the precept that "considerable weight must be conferred to an executive department's construction of a statutory scheme which it is entrusted to administer," *Michael C. v. Radnor Township School District*, 1999 U.S. Dist. LEXIS 1352 (E.D. Pa. 1999), slip Op. at *10 *aff'd.* 202 F.3d 642 (3d Cir. 2000), the courts have consistently deferred to the Secretary's interpretation of what the IDEA requires. *Ms. S v. Vashon Island School District*, 337 F.3d 1115, 1134 (9th Cir. 2003); *Rodiriecus v. Waukegan School District*, 90 F.3d 249, 254 (7th Cir.

---

[9] All citations to specific pages of parties' memoranda are to the PDF pagination of the particular memorandum established by the Court's electronic filing system.

1996); *Converse County School District No. Two v. Pratt*, 993 F. Supp. 848, 859 n. 4 (D. Wyo. 1997). While those cases are not directly on point, they establish that courts defer to the Secretary's determinations of what the IDEA requires.

> **3.** **Plaintiffs IDEIA claims against Defendant Taft and all state agencies other than ODE and OSFG should be dismissed.**

Defendants' motion pointed out that individuals cannot be sued under the IDEIA and therefore argued that Plaintiff's IDEIA claims against Defendant Taft should be dismissed. Defendants also pointed out that only state agencies receiving IDEIA funds can be sued under the act; any others are immune from suit. Doc. No. 110-1 at 30-31.

Plaintiffs have not disputed those points. Therefore Plaintiffs' IDEIA claims against Defendant Taft and all state agencies, other than the Ohio Department of Education and the Ohio School Facilities Commission, should be dismissed.

> **4.** **The stale aspects of Plaintiffs' claims must be dismissed as moot.**

Defendants' motion explained that Plaintiffs' IDEIA claims are governed by a two year statute of limitations and that several matters raised in their amended complaint were alleged to have occurred more than two years before the amended complaint was filed. Defendants therefore urged that all aspects of Plaintiff's claims based on those matters are time barred. Doc. No. 110-1 at 31.

Plaintiffs do not dispute the two year limitations period or that the matters in question occurred more than two years before the amended complaint was filed, but argue that those matters relate back under Fed. R. Civ. P. 15(b) and involve continuing violations. While Defendants do not agree with those contentions, they will not address them because a concession in Plaintiffs' memorandum establishes that claims based on those matters must be dismissed for mootness regardless of Plaintiffs' contentions.

As Plaintiffs' memoranda notes, they seek only prospective relief, and such relief focuses exclusively on matters extant at the time of the trial. Doc. No. 113-1 at. p 28, n.13.[10] The stale allegations Defendants object to concern matters that occurred in long past school years, Doc. No. 100 at ¶¶ 82-85 and in budgetary bienniums that closed years ago, *id.* at ¶¶ 161-162, 185-194. As such, those matters are now moot. *Board of Educ. v. Steven L.*, 89 F.3d 464 , 467 (7th Cir. 1996) (passage of a school year moots claims for declaratory and injunctive relief regarding the adequacy of special education services); *Sanchez v. Reagan*, 770 F.2d 202, 210 (D.C. Cir. 1982)(end of the fiscal year moots claims based on legislation covering only that year). That requires dismissal of any aspect of Plaintiffs' claims based on them, regardless of the relation back provisions of rule 15 or the continuing violation doctrine.

**B.     Plaintiffs have not disputed that their Rehabilitation Act claim should be dismissed.**

Defendants' Motion explained that Plaintiffs' claim under the Rehabilitation Act is identical to the claim dismissed in Doc. No. 89, that the law underlying that dismissal has not changed, and therefore argued that Plaintiffs' current Rehabilitation Act claim is barred by the law of the case doctrine. Plaintiffs have not disputed that, Doc. No. 113-1 at 30, and this claim should therefore be dismissed.

**C.     Plaintiffs' claims under 42 U.S.C. § 1983 fail as a matter of law.**

**1.     Plaintiffs' arguments against legislative immunity are rebutted by by controlling precedent.**

Defendants Motion explained that Plaintiffs' 42 U.S.C. § 1983 claims against Governor Taft fail for two reasons: because they are either barred by absolute legislative immunity or are moot. More specifically, Defendants pointed out that legislative immunity precludes actions for

---

[10] All citations to specific pages of parties' memoranda are to the PDF pagination of the particular memorandum established by the Court's electronic filing system.

prospective relief, that Governor Taft's actions in proposing and approving budgetary legislation is considered are considered legislative activities, and that any claims based on his sequestering funds during a now closed fiscal year are moot. Doc. No. 110-1 at 33-4.

Plaintiffs do not dispute the consequences of legislative immunity,[11] but advance two arguments as to why no such immunity is available, contending that Defendants seek to extend legislative immunity beyond its recognized limits. Doc. No. 113-1 at 37-38.[12] Their arguments fail as a matter of law.

Plaintiffs' assertions that Governor Taft's actions in connection with the structuring of Ohio's school funding system were executive rather than legislative are rebutted by *Bogan v. Scott–Harris*, 523 U.S. 44, 118 S. Ct. 966 (1998). There, as here, plaintiffs sued an executive official for proposing and approving structural/budgetary legislation and argued that legislative immunity didn't apply because he was an executive official rather than a legislator. The Court rejected that contention, holding that the "introduction of a budget and signing [it] into law…also were formally legislative, even though he was an executive official" because "they were integral steps in the legislative process." *Id* at 56. That is precisely what Plaintiffs challenge in paragraphs 156 and 157 of their complaint, so Taft is likewise protected by legislative immunity.

That is not changed by Plaintiffs' invocation of federal supremacy. Their primary authority, *Scheuer v. Rhodes*, 416 U.S. 232, 94 S. Ct. 232 (1974), tells us nothing about the relevance of federal supremacy to claims of legislative immunity because it involved no claim

---

[11] Plaintiffs have not disputed our mootness analysis. Indeed, other portions of their brief seem to concede the point. Doc. No. 113-1 at. p 28, n.13, discussed at p.14 above. Hence Defendants will deal exclusively with legislative immunity.

[12] All citations to specific pages of parties' memoranda are to the PDF pagination of the particular memorandum established by the Court's electronic filing system.

of such immunity. In contrast, *Bogan* did involve legislative immunity as well as matters of historically federal concern—claims of racial discrimination—and  yet the Court gave no indication that federal supremacy was barred by the recognition of legislative immunity, a pattern also seen in *Supreme Court of Virginia v. Consumers Union*, 446 U.S. 719, 100 S. Ct.1967 (1980). Hence there is no support for the proposition that legislative immunity is trumped by the assertion of  federal claims.

> **2.      Portions of Plaintiff's claims are time barred.**

Defendants' arguments regarding the timeliness of portions of Plaintiffs' § 1983 claims are functionally indistinguishable from their arguments about the timeliness of Plaintiffs' IDEIA claims, as are Plaintiffs' counter arguments. In the interest of brevity Defendants therefore incorporate the arguments made in connection with those IDEIA claims, set out at pp. 13-14 above.

> **3.      Plaintiffs cannot save their Third Cause of Action by invoking Substantive Due Process.**

Defendants' motion explained that both the Supreme Court and the Sixth Circuit hold that the legislative process is all that is required to satisfy Procedural Due Process requirements when the deprivation results from generally applicable law. Defendants also pointed out that the matter challenged in Plaintiffs' Third Cause of Action–the way Ohio's school funding system is structured—is the result of generally applicable law and that Plaintiffs have made no claim that the legislative process was not followed in enacting the laws giving rise to that system. Defendants therefore argued that the Third Cause of action fails because all constitutionally required process has been provided. Doc. No. 110-1 at 34-37.

Other than one conclusory, and cursory, paragraph, Doc. No. 113-1 at 50-51, Plaintiffs and their amici have not disputed Defendants' analysis of the precedents or made any claim

that the legislature deviated from its processes. Instead, they appear to argue that this cause of action should be analyzed under Substantive Due Process principles. Doc. No. 113-1 at 34,35-39; Doc. No. 114-3 at 31, Doc. No. 121 at 7, 31, 39-40.[13] Those arguments fail for two reasons: because no such claim was pled and because the claim would fail under Substantive Due Process standards.

**a.      Plaintiffs have not pled a Substantive Due Process claim.**

The Sixth Circuit has held that even *pro se* prisoners are required to "plead with requisite specificity so as to give defendants" notice of what is at issue and that unpled allegations are not sufficient to save an otherwise invalid claim. *Wells v  Brown*, 891 F.2d 591, 594 (6th Cir. 1989) *See also Agri-Mark, Inc. v. Niro, Inc*., 233 F. Supp. 2d 200, 207 (D. Mass. 2002)("…plaintiffs are generally not permitted to raise brand new theories of their case in opposition to a motion for summary judgment, particularly where, as here, they have been given ample latitude to amend their complaint."). A review of Plaintiffs' Third Cause of Action reveals that it pled a Procedural, rather than Substantive, Due Process claim. Plaintiffs' Substantive Due Process arguments are therefore insufficient to save this otherwise undefended claim.

There are very real differences between Procedural and Substantive Due Process claims. A Procedural claim first focuses on a whether an action deprives the claimant of *either* a liberty or property interest. Such interests can be created by *either* state law or the federal Constitution itself. If such a deprivation is shown, the courts examine the sufficiency of the process given in connection with that deprivation.

---

[13] All citations to specific pages of parties' memoranda are to the PDF pagination of the particular memorandum established by the Court's electronic filing system.

In contrast, Substantive Due Process focuses *exclusively* on liberty interests. Further, those liberty interests are not based on state law; instead they must be "fundamental" under standards based on the federal Constitution. Moreover, the process provided in connection with an alleged deprivation of such an interest is irrelevant; Due Process' "substantive component [] forbids the government to infringe certain 'fundamental' liberty interests at all, *no matter what process is provided*, unless the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 302, 113 S. Ct. 1429 (1993)(emphasis added).

Plaintiffs' Third Cause of Action has all of the hallmarks of a Procedural claim and none of the attributes of a Substantive Due Process claim. It claims a deprivation of a "property interest," Doc. No. 100 at ¶¶ 405, 410. It is captioned as involving "State Created Interests." It makes claims of insufficient process. It makes no mention of fundamental rights. It says nothing about compelling interests or narrow tailoring.

In short, Plaintiffs Third Cause of Action alleges a procedural Due Process Claim. The various Substantive Due Process arguments they and their amici offer therefore do nothing to save it.

### b.       This claim fails under Substantive Due Process principles.

Moreover, a Substantive Due Process claim would fail on the merits even if it was read into the Third Cause of Action. That is true in two respects.

First, the deprivation alleged—the alleged failure to provide an adequate educational system—does not implicate a right deemed fundamental under the federal Constitution. "The list of fundamental rights and liberty interests... is short, and the Supreme Court has expressed very little interest in expanding it." *Seal v. Morgan*, 229 F.3d 567, 574-575 (6th Cir. 2000). Further, the Sixth Circuit, this Court, and other courts across the country have held that the

18

right to a public education is not on that list. *Id.*, *Thomas v. Gee*, 850 F. Supp. 665, 676 (S.D. Ohio 1994); *Dunn v. Fairfield Community High School District*, 158 F.3d 962, 966 (7th Cir. 1998); *Mazevski v. Horseheads Central School District*, 950 F. Supp. 69, 70, n. 1 (W.D.N.Y. 1997); *James v. Unified School District*, 899 F. Supp 530, 534 (D. Kans. 1995)(collecting cases). Consequently, the claim fails unless there is no rational basis for Ohio's system.

As discussed in connection with Plaintiffs' Equal Protection claim, Ohio's system is rationally related to the preservation of local control. Doc. No. 110-1 at 41-45. In the alternative, the alleged under-funding of the system could be rationally based on the desire to preserve the public fisc, a legitimate government interest, *Walker v. Bain*, 257 F.3d 660, 669, (6th Cir. 2001). That too would save the system under the very lenient rational basis review that controls in the absence of a fundamental right. *Heller v. Doe*, 509 U.S. 312, 320, 113 S. Ct. 2367(1993)(a challenged law must be upheld "if there is any reasonably conceivable state of facts that could provide a rational basis").

Second, any Substantive Due Process claim based on the claimed lack of judicial remedies in the state courts fails because of the existence of a more textually explicit constitutional basis for the claim. "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273, 114 S. Ct. 807 (1994).

In this case the access to court right is governed by the more textually explicit provisions of the First Amendment. "[T]he Supreme Court [has] recognized that the right of access to the court is an aspect of the First Amendment right to petition the Government for redress of grievances." *Nestle Ice Cream Co. v. NLRB*, 46 F.3d 578, 585 (6th Cir. 1995). *See*

19

*BE&K Constr. Co. v. NLRB*, 536 U.S. 516, 526, 112 S. Ct. 2390 (2002); *Bill Johnson's Rests. v. NLRB*, 461 U.S. 731, 741, 103 S. Ct. 2161 (1983); *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510, 92 S. Ct. 609 (1972). The standards controlling that provision, rather than Substantive Due Process principles, therefore control any such claim.

> **4.    Plaintiffs' failure to produce evidence that they are barred from pressing claims under § 2, Art. VI of Ohio's Constitution requires summary judgment dismissing their Fourth Cause of Action.**

Plaintiffs' Fourth Cause of Action claims that they have been denied their federal right to access the courts because Ohio's courts are supposedly barred from entertaining claims under § 2, Art. VI of Ohio's Constitution. Defendants' Motion explained that Plaintiffs must show that they have been prejudiced in the prosecution of such claims, and pointed to portions of *State ex rel. State of Ohio v. Lewis*, 99 Ohio St.3d 97, 789 N.E.2d 195 (Ohio 2003), establishing that although such claims could not be brought under the *DeRolph* caption, they could be pressed via other cases. Defendants presented evidence that such claims are in fact being litigated in Ohio's courts, including Ohio's Supreme Court, without any barrier. Defendants therefore sought summary judgment on this claim. Doc. No. 110-1 at 37-40; Doc. No. 110-8 at ¶¶21, 25, 27, 35; Doc . No. 108-3 at PDF p.19, ¶¶ 67-68.

Plaintiffs have not addressed, much less disputed, our analysis of either the federal access to court precedents or *Lewis*. Nor have they objected to or countered the evidence that § 2, Art. VI claims are being entertained in Ohio's Courts. That requires summary judgment on this claim.

Fed. R. Civ. P. 56(e) states that party facing summary judgment "may not rest upon mere allegations or denials," and the Supreme Court has held that judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986). It is undisputed that Plaintiffs must prove that they are prevented from prosecuting § 2, Art. VI claims to prevail on their Fourth Cause of Action. Defendants have produced evidence that such claims are indeed being pressed, evidence that must be accepted as true given Plaintiffs' failure to rebut it. *Fitzke v. Shappell*, 468 F.2d 1072, 1077 (6th Cir. 1972); American *Ins. Co. v. Dayton*, 532 F. Supp. 174, 177 (S.D. Ohio 1980). Plaintiffs have come forward with no evidence establishing that they may not pursue claims under § 2, Art. VI. That failure of proof requires summary judgment for Defendants on this claim.

> **5. Plaintiffs' complaints about the efficacy of Ohio's attempts to accommodate local control are insufficient to save their Fifth Cause of Action.**

Defendants' Motion argued that Plaintiffs' Fifth Cause of Action is indistinguishable from the Equal Protection challenge rejected in *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 93 S. Ct. 1278 (1973). It pointed out that like the Texas system challenged there, Ohio's system relies on roughly equal portions of state and local funding. It also showed that, like Texas, Ohio had a strong tradition of local control over education and that its current system is an attempt to preserve that tradition while addressing more recent economic and demographic changes. Defendants therefore argued that, like Texas', Ohio's reliance on local funding was sufficiently related to preserving that tradition to have a rational basis and hence meets the controlling constitutional standard. Doc. No. 110-1 at 40-45.

Plaintiffs do not dispute that this claim is controlled by the rational basis standard. Doc. No. 113-1 at 51.[14] They do not dispute the striking factual parallels between the Texas and Ohio systems discussed in our motion. Nor do they dispute that, like Texas, Ohio has a strong tradition of local control or that the continued reliance on local funding is rationally related to accommodating that tradition.

Instead, they point to some aspects of Ohio's system that have, in their view, the effect of limiting local choice in some circumstances. In essence, they do not challenge the legitimacy of retaining local funding to retain local control, but instead argue that Ohio's attempt to strike that balance is flawed. That argument misunderstands the nature of rational basis review.

Supreme Court precedent establishes that a "classification does not fail rational-basis review because it is not made with mathematical nicety or because in practice it results in some inequality." *Heller v. Doe*, 509 U.S. 312, 321, 113 S. Ct. 2637 (1993).   The Sixth Circuit has likewise held that the "Constitution [] does not impose…an obligation to simultaneously address every fact of economic hardship" or "empower [courts] to second-guess [a legislature] charged with the difficult task of allocating limited public [] funds among the myriad of potential recipients." *Curry v. Dempsey*, 701 F.2d 580, 584 (6th Cir. 1983). The precision of laws subject to such review is not subject to judicial vetting: a "legislative choice is not subject to courtroom factfinding" and  "courts are compelled…to accept a legislature's generalizations even when there is an imperfect fit between means and ends." *Heller*, 509 U.S. at 320, 321. Once "plausible reasons" are identified, "judicial inquiry is at an end," *FCC v. Beach*

_____

[14] All citations to specific pages of parties' memoranda are to the PDF pagination of the particular memorandum established by the Court's electronic filing system.

*Communications*, 508 U.S. 303, 313-314, 113 S. Ct. 2096 (1993) even if "the rationale …

seems tenuous." *Romer v. Evans*, 517 U.S. 620, 632, 116 S. Ct. 1620 (1996).

Because Plaintiffs do not dispute the rational relationship between reliance upon local

funding and local control, their claims about certain aspects of that system are insufficient to

rebut the strong presumption of constitutionality prevailing here. Instead, they amount to

attacks on the legislature's precision and such matters are beyond the scope of rational basis

review.  "So long as its judgments are rational, and not invidious, the legislature's efforts to

tackle the problems of the poor and the needy are not subject to a constitutional straitjacket."

*Mathews v. De Castro*, 429 U.S. 181, 185, 97 S. Ct. 431 (1976). There is—and can be—no

allegation of invidious action here. *See New York City Transit Authority v. Beazer*, 440 U.S.

568, 593, n. 40, 99 S. Ct. 1355 (1979)(distinctions are invidious when "drawn with an evil

eye…or motivated by a feeling of antipathy."); *Pers. Adm'r of Massachusetts v. Feeney*, 442

U.S. 256, 279, 99 S. Ct. 2282 (1979)(an  invidious action is taken "'because of,' not 'in spite

of,' it's adverse effects"). Any alleged imprecision in Ohio's undisputed attempt to

accommodate the indisputably legitimate interest of local control is therefore of no

constitutional significance and this claim should be dismissed.

### 6. Analogies to desegregation cases are factually and legally flawed.

At various points Plaintiffs and their amici draw analogies between the Supreme

Court's response to southern resistance to desegregation and Ohio's response to *DeRolph*,

urging this Court to follow Supreme Court precedent allowing federal courts to engage in

pervasive and long term supervision of local schools. Doc. No. 113-1 at 49, Doc. No. 114-3 at

30-31, Doc. No. 42-43.[15] Even a cursory consideration reveals that those analogies are factually and legally flawed.

Factually, they are so overblown as to be offensive. Ohio's response to *DeRolph* comes nowhere close to the southern states' resistance to desegregation. No one can deny that Ohio made very real efforts to comply with *DeRolph*, dramatically increasing funding and making structural reforms. *DeRolph v. State*, 89 Ohio St. 3d 1, 10, 12-14, 19-20, 23-24, 728 N.E.2d 993 (2000). Indeed, the *DeRolph* majority acknowledged that, although more was needed, the State's very significant actions constituted "a good faith attempt to comply with the constitutional requirements." *Id.* at 36. Reasonable people can disagree over the sufficiency of those responses—as members of Ohio's Supreme Court consistently did—but no one can reasonably claim that Ohio engaged in massive resistance to that Court's orders. No matter how strongly one disagrees with the legislature's decisions those actions cannot be reasonably equated to Governor Wallace standing in the school house door.

Legally, they overlook a constitutional reality that goes to the heart of this case. The desegregation cases cited by Plaintiffs and their amici involved efforts to enforce *federal* rights.  But at bottom, Plaintiffs claims are based on Ohio's supposed non-compliance with *state* law: they are all directed towards requiring compliance with Ohio's Constitution, a result placed beyond the reach of the federal courts by *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89,  104 S. Ct. 900 (1984).

---

[15]  All citations to specific pages of parties' memoranda are to the PDF pagination of the particular memorandum established by the Court's electronic filing system.

Respectfully submitted,
JIM PETRO
Attorney General

ss/ Todd R. Marti
TODD R. MARTI (0019280)
Assistant Attorney General
Education Section
30 East Broad Street, 16th Floor
Columbus, OH  43215
(614) 644-7250
Counsel for Defendants

## CERTIFICATE OF SERVICE

A copy of the foregoing has been served via the Court's electronic filing system this 16th day of June, 2006.

TODD R. MARTI