**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JOHN DOE, et al.,** | : | |
| | : | |
| **Plaintiffs,** | : | **Case No. C2-91-464** |
| | : | |
| **v.** | : | **JUDGE HOLSCHUH** |
| | : | |
| **STATE OF OHIO, et al.,** | : | **MAG. JUDGE KEMP** |
| | : | |
| | : | |
| **Defendants.** | : | |

**JOINT MOTION FOR PRELIMINARY APPROVAL OF PARTIAL CLASS
ACTION SETTLEMENT, TO SET A HEARING ON THE FINAL APPROVAL
OF THE PARTIAL SETTLEMENT, AND TO APPROVE THE PROPOSED
NOTICE THEREOF**

**RICHARD CORDRAY**
**Ohio Attorney General**
**TODD R. MARTI (0019280)**                        **SUSAN G. TOBIN (0021725)**
**Assistant Attorney General**                        **JASON BOYLAN (0082409)**
**Education Section**                                 **Ohio Legal Rights Service**
**30 East Broad Street, 16th Floor**       **50 West Broad Street, Suite 1400**
**Columbus, OH 43215**                                **Columbus, Ohio 43215**
**(614) 644-7250**                                    **(614) 466-7264**

**Counsel for Defendants**                            **Counsel for Plaintiffs**

# TABLE OF CONTENTS

MOTION……………………………………………………………………………………4

SUMMARY OF ARGUMENT…………………………………………………………………...5

FACTS…………………………………………………………………………………………7

    A.    Proceedings through 2007……………………………………………………7

        1.    1991 through 2005: removal, substitution of plaintiffs,
            and a stay based on parallel state court litigation…………………………7

        2.    2005 through 2007: the complaint is amended, jurisdiction
            is challenged, and settlement discussions begin…………………………..8

            a.    The amended complaint………………………………………...8

                i.    Waiver Claims……………………………………8

                ii.    Monitoring Claims………………………………9

                iii.    Complaint Claims………………………………9

            b.    The Defendants seek dismissal………………………………10

            c.    The settlement process begins………………………………...10

    B.    The Settlement……………………………………………………………...10

        1.    The Waiver Claims are resolved through heightened scrutiny,
            increased transparency/stakeholder input, and greater
            protection for individual students……………………………………..10

        2.    The Monitoring Claims are resolved through increased
            transparency/stakeholder input, broader coverage,
            greater protection for individual students, and improved
            enforcement……………………………………………………………11

        3.    The Complaint Claims are resolved through broader coverage,
            more user friendly procedures, tighter timelines, and better
            enforcement……………………………………………………………12

    C.    The Parties' plan for noticing the proposed settlement…………………………13

        1.    The Plaintiff class is large and widely dispersed…………………………13

        2.    Methods of Notice……………………………………………...........................14

        a.      Notice provided by the Ohio Department of Education....................14

        b.      Notice provided by the Ohio Legal Rights Service..........................15

ARGUMENT......................................................................................................................16

    A.    The proposed settlement is fair, reasonable, and adequate.................................16

        1.     There is no risk of fraud or collusion because the settlement is
                the result of deliberative, arms length negotiations.................................16

        2.     The lengthy history of this case, the complexity of the issues
                involved, and the Plaintiffs' special circumstances support the
                settlement....................................................................................................17

        3.     The settlement was reached after significant discovery............................18

        4.     The settlement is fair in light of the Plaintiffs' probability
                of success. ..................................................................................................18

        5.     Experienced counsel recommend the settlement.......................................20

        6.     The settlement is in the public's interest...................................................20

    B.    The Parties' proposal provides adequate notice to the Plaintiff class........................22

        1.     The notice fully describes the case, the settlement, where
                additional information can be obtained, and the objection/approval
                process and, does so in an understandable way........................................22

        2.     The notice and proposed order will be sent to the parties
                and non-party stakeholders and the notice document will be
                published in print and electronic media......................................................23

CONCLUSION...................................................................................................................24

EXHIBITS

    1.    Consent Order

    2.    Information on Counsel

    3.    Notice of Proposed Class Action Settlement

## MOTION

All Plaintiffs and all Defendants move the Court to:

> A. Preliminarily approve the Consent Order attached as exhibit 1 hereto;
>
> C. Set a hearing on the final approval of the Consent Order; and
>
> B. Approve the Notice of Proposed Class Action Settlement attached as exhibit 3 hereto and the method of notice described at pp. 13-15 below.

Respectfully Submitted,

RICHARD CORDRAY
Ohio Attorney General

Ss/Todd R. Marti_____                    Ss/Susan G. Tobin_____
TODD R. MARTI (0019280)                        SUSAN G. TOBIN (0021725)
Assistant Attorney General                     Ohio Legal Rights Service
Education Section                              50 West Broad Street, Suite 1400
30 East Broad Street, 16th Floor               Columbus, Ohio 43215
Columbus, OH  43215                            (614) 466-7264
(614) 644-7250

Counsel for Defendants                         Counsel for Plaintiffs

4

## SUMMARY OF ARGUMENT

The parties to this long running class action about Ohio's special education system ask the Court to grant preliminary approval to a settlement that will yield significant benefits to the students whom the system serves. They also ask the Court to approve their proposal for notifying the class of the settlement and how to be heard on its fairness.

This case challenges, among other things, Ohio's state level practices for implementing the Individuals with Disabilities Education Act ("IDEA"). After extensive negotiations, the parties have agreed to: 1) changes in the way Ohio reviews school districts' requests for waivers of standards adopted to serve students with disabilities, 2) the way Ohio monitors districts' compliance with IDEA requirements, and 3) the way Ohio investigates complaints about claimed violations of rights under the IDEA. Those changes make those practices more transparent and increase parents' and other stake holders' ability to make their views known. In addition, a number of those changes will result in more prompt decisions in this inherently time sensitive area.

The proposed settlement meets the standards for preliminary approval set by Sixth Circuit and Southern District precedent. There is no risk of fraud or collusion because the settlement is the result of arms length negotiations mediated in part by a well respected former judge and it comes after ample opportunity for discovery. The settlement resolves factually complicated issues in a highly specialized area of law and does so in a way that provides significant benefits to the members of the Plaintiff class.  It provides those benefits now, and hence avoids the years of litigation, a great benefit when one considers that it is exceedingly difficult to make up for deficiencies in any given year of a child's

education. Further, experienced counsel for the parties have joined the elected officials responsible for education and civil rights policy in concluding that the settlement is in the public interest.

The parties' proposal for notifying interested parties also satisfies controlling precedent. They have developed a notice that describes this case, the proposed settlement, the objection/approval process, and where additional information can be obtained. Although the numerosity and physical dispersion of the class make it impossible to provide actual notice to each class member, the parties have agreed to a notice regimen that will apprise the class as a whole of the terms of the proposed settlement, where additional information can be found, and the process for being heard on its approval. That regimen includes distribution to all school districts, a number of advocacy groups, and publication in a number of large circulation newspapers and on the internet.

In sum, the parties agree that this settlement will provide real benefits to Ohio's students with disabilities. They also agree that their plan for noticing the settlement will fairly apprise the class members of the settlement and the proceedings about determining its fairness. They therefore ask the Court to approve the settlement and their proposal for notifying class members.

---

[12] Doc. No.s 1 through 38.

## FACTS

Three factors are relevant to this motion. The first concerns proceedings in this case through 2007. The second concerns the settlement. The third concerns the Parties' plan for noticing the proposed settlement.

### A.    Proceedings through 2007.

#### 1.    1991 through 2005: removal, substitution of plaintiffs, and a stay based on parallel state court litigation.

This case originated in 1991 in state court as a challenge to Ohio's funding for primary and secondary education.  It was removed to this Court and significant discovery and motion practice followed over the next several years.[2]

In 1993 the Ohio Legal Rights Service sought to intervene on behalf of a putative class of students entitled to special education and related services. Intervention was allowed, the intervening complaint was accepted, and the class was ultimately certified.[3] The intervening complaint not only challenged funding, but also claimed that Ohio inadequately monitored local school districts' compliance with the Individuals with Disabilities Education Act ("IDEA").[5] The original Plaintiffs later dismissed their claims, and the case continued on the intervening Plaintiffs' claims.[6]

The case was stayed pending related litigation in Ohio's state courts, but was reactivated in 2003, when the Defendants sought summary judgment.[7]  That relief was mostly denied,[8] and the Plaintiffs were given leave to conduct discovery directed towards

---

[3] Doc. No.s 39, 45, 46, 48, 53, 59.
[5] Doc. No. 46.
[6] Doc. No.  51.
[7] Doc. No.s 80, 81.
[8] Doc. No. 89.

the formulation of an amended complaint.[9] Plaintiffs took multiple depositions and collected thousands of pages of written discovery.

        **2.    2005 through 2007: the complaint is amended jurisdiction is challenged, and settlement discussions begin.**

        **a.    The Amended Complaint**

The amended complaint was filed in the summer of 2005. It challenged the adequacy of Ohio's special education funding ("the Funding Claims") based on the IDEA, the Rehabilitation Act of 1973, and the U.S. Constitution.[10] Of more particular interest here, it also claimed that Ohio inadequately supervised school districts' compliance with the IDEA ("the Supervision Claims"). The Supervision Claims fell into three categories.

        **i.    Waiver Claims.**

The first was that Ohio improperly granted waivers of state operating standards ("the Waiver Claims"). Those standards control the ratios of teachers and other staff to special education students and student age ranges allowable within a class. State law allows the Ohio Department of Education ("ODE") to temporarily waive compliance with the standards in appropriate cases.

Plaintiffs claimed that Ohio was not requiring sufficient proof that students' needs would be met or that districts had plans to correct the problems leading to waiver requests. They also claimed that Ohio granted too many waivers and was too free in allowing waivers to be renewed from year to year.[11]

---

[9] Doc. No. 96

[10] Doc. No. 100.

[11] *Id.* at ¶¶ 234-240.

### ii.    Monitoring Claims

The IDEA requires states to monitor school districts' compliance with the Act's requirements. ODE monitors a subset of Ohio's districts each fiscal year. Plaintiffs claimed that Ohio did not adequately fulfill its monitoring obligations ("the Monitoring Claims").  They charged that ODE relies too heavily on computer generated information and districts' self evaluations and does not address denials of special education services to individual students ( free appropriate public education or "FAPE denials"). They also claimed that Ohio does not require that problems be corrected within one year, and that its enforcement mechanisms are inadequate.[12]

### iii.    Complaint Claims.

Federal regulations require states to establish administrative process to investigate claims that school districts are violating the Act's requirements.[13]  Plaintiffs claimed that Ohio's complaint process was inadequate ("the Complaint Claims"). More specifically, they alleged that Ohio's complaint system  failed to address FAPE denials, takes too long to resolve complaints in some circumstances, and lacks sufficient mechanisms to enforce findings.[14]

### b.    The Defendants seek dismissal.

The Defendants, all state entities and officials, responded with a motion to dismiss. They argued all of the IDEA claims failed because revisions to the Act shifted jurisdiction over state level compliance with the Act from the courts to the U.S. Secretary

---

[12] *Id.* at ¶¶ 351-370, 381, 383.
[13] 34 C.F.R. § 300.153
[14] *Id.* at ¶¶ 371-380, 381, 383.

of Education.[15] They also argued that Plaintiffs' Rehabilitation Act and constitutional claims failed as a matter of law.[16] Those motions were fully briefed by the parties and their *amici* during 2005 and 2006.

**c.      The settlement process begins.**

In 2007 the Court asked whether the Parties would be amenable to mediation. The parties agreed, and retired federal district court Judge Robert Duncan was selected as mediator.  The parties met with Judge Duncan several times to establish the scope of the mediation and the procedures governing it. The first mediation session occurred in December of 2007.

**B.      The Settlement.**

It quickly became apparent that the Funding Claims could not be resolved, so the Parties focused their attention on the Supervision Claims. Plaintiffs provided an initial statement of what they were looking for and the Defendants responded. Those were the first of numerous exchanges, and the parties met multiple times during 2008 and early 2009. Judge Duncan presided over some of those sessions.

By April of 2009 the Parties reached an agreement resolving the Supervision Claims. It covers all of the components of those Claims.

**1.      The Waiver Claims are resolved through heightened scrutiny, increased transparency/stakeholder input, and greater protection for individual students.**

The settlement addresses the Waiver Claims in three ways.

*First, it guarantees appropriate scrutiny of waiver requests.* Districts will be required to submit documents establishing the need for waivers and their plans for

---

[15] Doc. No. 110 at pp. 12, 14-20 and Doc. No. 125 at pp. 7-10.
[16] Doc. No. 110 at pp. 13, 34-45 and Doc. No. 125 at pp. 16-24.

addressing the problems prompting their requests.[17]  In addition, ODE will conduct site visits and review documents addressing individual students' needs in appropriate cases.[18]

*Second, it increases the waiver process' transparency and facilitates input from affected parties.*  Before waivers are approved or denied, waiver applications will be posted on ODE's website, and districts will be required to notify the parents of children affected by proposed waivers.[19] Further, those parents will be provided with information about their rights and contact data for officials and organizations that can address their concerns.[20]

*Third, it protects individual children's interests.* The settlement prohibits the granting of waivers that would result in FAPE denials.[21] It also requires that any FAPE denials discovered in the waiver process be remedied.[22]

      **2.**      **The Monitoring Claims are resolved through increased transparency/stakeholder input, broader coverage, greater protection for individual students, and improved enforcement.**

The settlement addresses the Monitoring Claims in four ways.

*First, it increases the transparency of the monitoring process and encourages increased stakeholder involvement.* ODE will post data on each district's IDEA compliance on its website.[23] It will also post a list of the districts to be monitored during the fiscal year, information of when it will monitor specific districts, and the times and locations of public meetings in each district where individuals may present

---

[17] "Consent Order," filed as Ex. 1, at p. 5, § I(D)(2).
[18] *Id.*
[19] *Id.* at p. 5, § I(D)(3),(4).
[20] *Id.* at p. 5, § I(D)(3).
[21] *Id.* at p. 5, § I(D)(5).
[22] *Id.* at p. 6, § I(D)(6).
[23] *Id.* at p. 3, § I(A)(2).

concerns/information about the district.[24] In addition, ODE will allow public access to all relevant documents not exempted from public disclosure by federal or state law.[25]

*Second, it increases the scope of monitoring.* Districts in fiscal or academic watch or emergency will be considered for monitoring each year they remain in that status. They will actually be monitored if they appear to be out of substantial compliance with special education laws. [26]

*Third, it increases the protection afforded individual children.* The parents of affected children will be notified of the public meeting discussed above.[27] They will also be offered private meetings with ODE to present any concerns they may have.[28] ODE and Districts will be required to address any FAPE denials discovered via monitoring.[29]

*Fourth, it provides for increased enforcement.* Districts will be required to cure any non-compliance within one year.[30] Further, ODE has agreed to a system of progressive sanctions to address non-compliance.[31]

> **3.** T**he Complaint Claims are resolved through broader coverage, more user friendly procedures, tighter timelines, and better enforcement.**

The settlement addresses the Complaint claims in four ways.

*First, it increases the scope of claims covered.* Claims of FAPE denials will now be resolved through the state process.[32]

---

[24] "Consent Order," filed as Ex. 1, at p. 3, §§ I (A) (1), (3), (4).
[25] *Id.* at p. 4, § I (A)(5).
[26] *Id.* at p. 4, § I(C).
[27] *Id.* at p. 3, § I(A)(3).
[28] *Id.* at p. 3, § I(A)(3), (4)(a)
[29] *Id.* at p. 4, § I(B), p. 6, § (F)(3).
[30] *Id.* at p. 6, § (F)(1).
[31] *Id.* at p. 6, § II(F)(2)
[32] *Id.* at p. 9, § II (B).

*Second, the process has been made more user friendly.* ODE has agreed to help complainants obtain resources to assist in framing complaints and to modify its procedures in other ways that make the complaint process more accessible.[33] It has also agreed to more forgiving procedures for administering deficient complaints.[34]

*Third, it imposes tighter timelines for resolving complaints.* It does so by limiting the impact of summer vacations and mediation on the deadline for resolving complaints.[35]

*Fourth, it provides for better enforcement of complaint resolutions.* That is accomplished by requiring that most resolutions be implemented within a year, requiring periodic progress reports in complex cases, and imposing sanctions for non-compliance.[36]

### C. The Parties' plan for noticing the proposed settlement.

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, plaintiffs and defendants jointly move the Court for approval of the notice to be given to plaintiff class members in the form and manner described below.  The proposed notice to the plaintiff class is filed with this motion as Exhibit 3.

#### 1. Plaintiff Class is large and widely dispersed.

The plaintiff class consists of all students age three through twenty-one who are enrolled or seeking enrollment in Ohio's public school system and require special education, related services, or accommodations as a result of a disability.  There are over

---

[33] "Consent Order," filed as Ex. 1, at pp. 7-8, §§ II (A)(5), (8)-(11).
[34] *Id.* at pp. 7-8, §§ II (A)(6),(7).
[35] *Id.* at pp. 9-10, §§ II(C).
[36] *Id.* at pp. 10-11, §§ II(D).

13

260,000 students with disabilities who are receiving special education services across more than 700 educational entities.

      **2.**        **Method of Notice.**

           **a.**        **Notice provided by the Ohio Department of Education.**

ODE shall post a copy of the notice and the Consent Order prominently on its website, www.ode.state.oh.us.  ODE shall notify all local educational agencies ("LEAs") in Ohio by providing a copy of the notice and asking them to post it prominently in a central location accessible to the public in each of the LEA' buildings.  ODE will also ask that copies of the notice and Consent Order be made available upon request from each LEA's administrative offices.  ODE shall also ask each LEA to post a link on its website, if applicable, to the ODE website that posts the notice and Consent Order.

ODE shall ensure that the notice and Consent Order are made available to a number of organizations.  Each of the sixteen State Support Teams ("SSTs") and sixty Educational Service Centers ("ESCs") in Ohio shall post a copy of the notice in its office and on its website.  A copy of the notice and Consent Order shall be made available from each SST and ESC upon request.  ODE shall request that each member of Ohio's State Advisory Panel for Exceptional Children and the Ohio Coalition for the Education of Children with Disabilities ("OCECD") distribute the notice to their members and post the notice and Consent Order on their websites.  ODE shall also request that OCECD make a copy of the notice and Consent Order available upon request through its parent mentor program.  Postings of the notice with regard to websites, and LEA, SST, and ESC buildings shall begin within ten working days of the date of the Order approving this Joint Motion and conclude on the date of the fairness hearing.

ODE shall post a copy of the notice in the following publications: *The Columbus Dispatch*; *The Cleveland Plain Dealer*; *The Cincinnati Enquirer*; *The Toledo Blade*; *The Akron Beacon Journal*; *The Dayton Daily News*; *The Youngstown Vindicator*, and *The Athens News*.  Newspaper postings shall be made on each of the three Sundays preceding deadline for objecting to the settlement.

### b.    Notice Provided by the Ohio Legal Rights Service

Plaintiffs' counsel, the Ohio Legal Rights Service ("OLRS"), shall mail the notice to each of the named plaintiffs and *amici* within ten working days of the Order approving this Joint Motion.  A copy of the notice and Consent Order will be provided in the OLRS newsletter and placed on its website, www.olrs.ohio.gov.  OLRS shall disseminate a copy of the notice and Consent Order electronically to statewide organizations representing people with disabilities.

The notice informs recipients that members of the plaintiff class have the right to submit written comments or objections to the Court.  The parties propose that the objection period begin on the date of the Order approving this motion, and run until two weeks prior to the date of the fairness hearing.

The parties submit that the above-described notice procedure meets the requirements of Federal Rule of Civil Procedure 23 and of due process, as set forth more fully in the argument section of this Joint Motion.  The parties therefore move for approval of the notice procedure.

**ARGUMENT**

**A.    The proposed settlement is fair, reasonable, and adequate.**

Sixth Circuit precedent requires that, before approving a class action settlement, "a district court must conclude that it is 'fair, reasonable, and adequate.'"[37]  The Circuit has identified several factors to guide that inquiry. They include "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel; (6) the reaction of class members and (7) the public interest."[38] All support the approval of this settlement.

**1.    There is no risk of fraud or collusion because the settlement is the result of deliberative, arms length, negotiations.**

This factor examines whether the settling parties have acted in good faith. Among the indicia of such good faith are the facts that negotiations occurred after the case was well advanced,[39] that they were not rushed once they started,[40] that they were conducted in an arms length manner,[41] that the defendant had motivations to adequately consider the interests of non-parties impacted by the settlement,[42] and third party verification of the negotiations' legitimacy.[43]

All of those indicia vouch for the Parties' good faith. Settlement discussions

---

[37] *UAW v. GMC*, 497 F.3d 615, 631 (6th Cir. 2007).

[38] *Id.*

[39] *Bronson v. Board of Educ.*, 604 F. Supp. 68, 77 (S. D. Ohio 1984); *Thompson v. Midwest Foundation Independent Physicians Assoc.*, 124 F.R.D. 154, 158 ¶ 28 (S.D. Ohio 1988).

[40] *Thompson*, 124 F.R.D. at 158 ¶ 30.

[41] *Stotts v. Memphis Fire Dep't*, 679 F.2d 541, 551 (6th Cir. 1982); *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d 985, 1015 (S.D. Ohio 2001); *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 375 (S.D. Ohio 2006).

[42] *Stotts*, 679 F.2d at 555, n.12

[43] *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. at 375.

began 16 years into the case, at the Court's behest. They took more than a year, and the parties vigorously sought to advance their own interests. The Defendants consistently considered the interests of Ohio's school districts, recognizing that there is no point to agreeing to terms those entities could not meet. Judge Duncan, who mediated many of the negotiation sessions, can verify that Parties negotiated in good faith.

As a general matter, the Court "respect[s] the integrity of counsel and presume[s] the absence of fraud or collusion in negotiating the settlement," and the facts just discussed provide additional support for that presumption here.[44]

### 2. The lengthy history of this case, the complexity of the issues involved, and the Plaintiffs' special circumstances support the settlement.

The courts consider the complexity, expense, and likely duration of the litigation in order to consider a settlement's procedural context. They hold that a settlement is more likely to be appropriate if the case has a long history,[45] if the issues involved would require significant discovery/trial time to resolve,[46] if appeals are likely to further delay ultimate resolution,[47] and if the plaintiffs' circumstances make delay particularly prejudicial.[48]

This case has all those attributes. It has been pending for almost 18 years. Fully litigating the issues resolved by the settlement would be a monumental undertaking. It would require discovery about the interaction between ODE and more than 900 school

---

[44] *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d at 1016.

[45] *Bronson*, 604 F. Supp. at 77; *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 905 (S.D. Ohio 2001).

[46] *In re Cincinnati Policing*, 209 F.R.D. 395, 400 (S.D. Ohio 2002).

[47] *In re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366, 371 ¶ 18 (S.D. Ohio 1990); *In re Southern Ohio Correctional Facility*, 173 F.R.D. 205, 213 (S.D. Ohio 1997).

[48] *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d at 1014.

districts, community schools, and MRDD boards. Presenting the results of that discovery could consume significant trial time. Given the stakes involved, it is almost inevitable that the losing party would appeal.

Perhaps most importantly, the Plaintiffs' special circumstances weigh heavily in favor of settlement. This case concerns the K-12 education system. Every year lost in a child's education is significant and those losses are very difficult, if not impossible, to recapture. Settlement would result in immediate benefit to students across the state, while continued litigation would only delay those benefits to additional cohorts of students.

### 3. The settlement was reached after significant discovery.

A settlement is more likely to be appropriate if it is reached after the parties have had the benefit of discovery. That makes it more likely that they entered into the deal "with their eyes wide open."

Such discovery occurred here. The docket indicates no less than 15 depositions have been taken.[49] That testimony was supplemented by interrogatories and the production of thousands of pages of documents. This settlement was therefore the result of informed analysis.

### 4. The settlement is fair in light of the Plaintiffs' probability of success.

This factor "weigh[s] the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement."[50] However, it does not require a full fledged decision on the merits; the "question rather is whether the parties are using

---

[49] See Doc. No.s 19, 21, 25, 128.
[50] *UAW*, 497 F.3d at 631 (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981)).

settlement to resolve a legitimate legal and factual disagreement."[51] In analyzing this, the courts recognize that there are "dangers and uncertainty [] inherent in any litigation,"[52] and will "not withhold approval simply because the benefits accrued from the decree are not what a successful plaintiff would have received in a fully litigated case."[53]

The Plaintiffs achieved almost all they sought through the Supervision Claims. The settlement significantly strengthens the waiver process, requiring increased proof from districts, more detailed examination by ODE, and increased protection for individual students.[54] It also reforms the monitoring process by broadening its scope, increasing transparency and stake holder involvement, enhancing protection for individual students, and strengthening enforcement mechanisms.[55] It improves the complaint system by broadening its scope, creating more user friendly procedures and tighter deadlines, and bolstering enforcement mechanisms.[56]

Further, the settlement limits the Plaintiffs' risk of achieving nothing on their IDEA claims because it avoids a decision on the Defendants' jurisdictional motion, a motion that could have precluded *any* IDEA relief.[57]  This Court has found such benefits significant in evaluating other proposed settlements.[58]

### 5.     Experienced counsel recommend the settlement.

---

[51] *UAW*, 497 F.3d at 631

[52] *Brotherton*, 141 F. Supp. 2d at 905.

[53] *Williams v. Vukovich*, 720 F.2d 909, 922 (6th Cir. 1983).

[54] See pp. 10-11, nn. 17-22 above and the corresponding text.

[55] See pp. 11-12, nn. 23-31  above and the corresponding text.

[56] See pp. 12-17, nn. 32-36  above and the corresponding text.

[57]  See Doc. No. 110 at pp. 12, 14-20 and Doc. No. 125 at pp. 7-10.

[58] *In re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. at 371 ¶ 18; *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d  at 1011

The Sixth Circuit holds that "court[s] should defer to the judgment of experienced counsel who [have] competently evaluated the strength of [their] proofs."[59] This court likewise gives "significant weight to the belief of experienced Counsel that the settlement is in the best interest of the class."[60] The counsel that crafted this settlement are experienced and they recommend the settlement.

Plaintiffs are represented by a lawyer with more than 27 years of experience in special education law. She has represented clients in civil rights cases at all levels of the federal judicial system and in countless administrative proceedings.[61] The Defendants are represented by a lawyer with more than 15 years experience handling education and civil rights cases, including a number of special education and institutional reform matters.[62] Both sides therefore enjoy the benefits of sound counsel.

Those counsel urge that the settlement should be approved. They agree that it will substantively benefit the members of the Plaintiff class. They also agree that resolving Plaintiffs' claims through the settlement is far superior to doing so through litigation, a process that would take years and consume significant public resources. Their recommendation provides additional support for the settlement.

**6.        The settlement is in the public's interest.**

The Sixth Circuit has noted that "the law generally favors and encourages the settlement of class actions,"[63] particularly in civil rights cases.[64] This Court holds that the public is well served by class action settlements that contribute to the continued provision

---

[59] *Williams*, 720 F.2d at 922-3.
[60] *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d at 1016.
[61] See Ex. 2 hereto.
[62] *Id.*
[63] *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981).
[64] *Stotts*, 679 F.2d 554-5.

of needed public services, [65]and that the public benefit of such settlements is verified when they are approved by other public officials.[66]

This settlement follows that pattern. It resolves portions of a complex class action based on the IDEA, an important civil rights law. Further, it does so in a way that improves essential educational services. Finally, it has been approved by Ohio's Attorney General, who has shared responsibility for the enforcement of Ohioans' civil rights. These facts show that the settlement is in the public's interest.

***

In sum, this settlement meets the elements that the Sixth Circuit and this Court have identified for determining whether a settlement should be approved. It comes in a long running case with a well developed record. It is the result good faith negotiations. It provides Plaintiffs with most of the relief they sought through the settled claims and does so without risking an adverse decision on a pending motion that would preclude *any* relief on those claims. It provides that relief far more quickly than could be achieved through full blown litigation. It is recommended by experienced counsel. The Parties therefore submit that it is "fair, reasonable, and adequate" and should be given preliminary approval under Fed. R. Civ. P. 23(e).

**B.     The Parties' proposal provides adequate notice to the Plaintiff class.**

Federal Rule of Civil Procedure 23(e)(1) provides that "[t]he court must direct

---

[65] *Thompson*, 124 F.R.D. at 161.
[66] *Id.* at 161.

notice in a reasonable manner to all class members who would be bound by the proposal." Sixth Circuit precedent establishes that reasonable provisions are sufficient, even if less that all class members receive actual notice.[67] "Notice under Rule 23, however, need only be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."[68] Consequently, "notice by publication, by posting, and by selected individual delivery" can be "reasonable in the circumstances" of a particular case.[69] The notice provisions proposed here meet those standards.

      1.    **The notice fully describes the case, the settlement, where additional information can be obtained, and the objection/approval process and does so in an understandable way.**

The content of Rule 23(e) notice is not prescribed in the rule, but the cases establish that a notice is sufficient if it informs the class members of the nature of the pending action, the general terms of the settlement, that complete and detailed information is available from the court files, and that any class member may appear and be heard at the hearing.[70]

The notice proposed here satisfies that requirement. It describes this case.[71] It describes the terms of the settlement.[72] It tells where class members and interested parties can get more detailed information.[73] It therefore contains all the required contents.

Just as importantly, it is formatted to be make that information accessible. The

---

[67] *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008).

[68] *In re General Tire & Rubber Co. Sec. Litigation,* 726 F.2d 1075, 1086 (6th Cir. 1984).

[69] *Franks v. Kroger Co.*, 649 F.2d 1216, 1223 (6th Cir. 1981).

[70] *Miller v. Republic Nat. Life Ins. Co*., 559 F.2d 426 (5th Cir. 1997); see also, *Ohio Public Interest Campaign v. Fisher Foods, Inc.*, 546 F. Supp. 1 (N.D. Ohio 1982).

[71] Ex. 3 at pp. 1-2, ¶¶ 3-6.

[72] *Id.* at pp. 2-5, ¶¶ 7-12.

[73] Ex. 3. at p. 3, ¶ 8; p. 6, ¶ 16.

notice contains a heading structured such that the individual reader is readily informed that the notice is of particular importance to him or her. The heading is followed by a clear definition of the certified class, a description of the litigation, including allegations of the complaint, a summary of the proceedings that preceded the partial settlement, and a detailed summary of the proposed partial settlement. The notice further contains a procedure for making objections to or comments on the proposed partial settlement and includes a process to obtain a copy of the proposed Consent Order.

The parties' counsel have made a good faith effort to draft the notice in language that is understandable by all class members. The notice explains in simple terms the nature of the action, terms of the partial settlement, and methods for objection to or comment on the proposed settlement. The notice also gives class members and their parents or guardians the opportunity to ask questions regarding the nature of the action by providing a toll-free number at OLRS. This should ensure that class members who wish to object to or comment on the proposed settlement have an effective voice with which to do so.

> **2.    The notice and proposed order will be sent to the parties and non-party stakeholders and the notice document will be published in print and electronic media.**

Given that the class is very large and that its members are widely dispersed, it will be impossible to provide individual notice to each member. None the less, the parties' propose a method of notice that will provide "the class as a whole [with] notice adequate to flush out whatever objections might reasonably be raised to the settlement."[74]

The parties have agreed that the OLRS, as plaintiffs' counsel, shall mail a copy of

---

[74] *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008).

the notice and Consent Order to the eight named plaintiffs in this case. A copy of the notice and the Consent Order will be provided to all *amici* who have participated in the case. A copy of the notice and Consent Order will be made available on the OLRS website and upon request. OLRS shall also disseminate electronic copies of the notice and Consent Order to statewide disability advocacy organizations.

In light of the large number of plaintiff class members, the parties' counsel shall utilize the existing system of LEAs, statewide advocacy organizations, and publications in order to disseminate notice of the partial settlement to class members in as effective a manner as is possible under these circumstances. A copy of the notice and Consent Order will be made available to any class member or the member's parent or guardian upon request.

ODE shall post a copy of the notice and Consent Order on its website. ODE shall also disseminate a copy of the notice to all local educational agencies and arrange for the notice to be posted in each LEA's building. ODE shall arrange for the notice to be posted and made available through each of Ohio's SSTs, ESCs, and the OCECD. ODE shall also post the notice in the major newspapers in the State of Ohio.

## Conclusion

For all of the above reasons, the parties request that this Court preliminarily approve the settlement and the proposed notice and set this matter for hearing.

Respectfully Submitted,

Ss/Todd R. Marti                               ss/Susan G Tobin

TODD R. MARTI (0019280)               SUSAN G. TOBIN (0021725)

Assistant Attorney General                 JASON BOYLAN (0082409)

Education Section                           Ohio Legal Rights Service

30 East Broad Street, 16th Floor          50 West Broad Street, Suite 1400

Columbus, OH  43215                  Columbus, Ohio 43215

(614) 644-7250                             (614) 466-7264

Counsel for Defendants                   Counsel for Plaintiffs