## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **JOHN DOE, et al.,** | : | |
| | : | |
| **Plaintiffs,** | : | **Case No. 2:91-cv-464** |
| | : | |
| v. | : | **JUDGE HOLSCHUH** |
| | : | |
| **STATE OF OHIO, et al.,** | : | **MAGISTRATE JUDGE KEMP** |
| | : | |
| **Defendants.** | : | |

### Consent Order

This matter is before the Court on the **Plaintiffs'** Amended Class Action Complaint for Declaratory and Injunctive Relief (Doc. No. 100). The class in this case is certified as: "all children, ages three through 21, currently enrolled or seeking enrollment, now or in the future, in Ohio's public school system, who have a disability under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 *et seq.*, the Rehabilitation Act of 1973, 29 U.S.C. §§ 790 *et seq.*, or the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq.*, and who require, as a result of their disability, special education and related services or accommodations that are designed to meet individual educational needs of students with disabilities as adequately as the needs of nondisabled children are met, and the parents or guardians of such children. Children who are disabled include those who are mentally retarded, who are hearing impaired or deaf, who have a speech or language impairment, who are blind or otherwise visually impaired, who have a serious emotional disturbance, who have an orthopedic impairment, who are autistic, who have a traumatic brain injury, or who have some other health impairment or specific disability. Children who are disabled also include those who are multi-handicapped, who are developmentally handicapped, who are severe behavior handicapped, who have a specific learning disability, who have attention deficit disorder or hyperactivity disorder, or who have a physical or mental impairment that substantially affects their ability to perform a major life activity."[1]

The named Plaintiffs in this case are:
JOHN DOE, a minor, by and through his parent, L.B.;
T.M., a minor, by and through his parent, S.J.;
L.J., a minor, by and through his parent, J.J.;
T.D., a minor, by and through his parent, A.D.;

---

[1] Subsequent to the Court's approval of the class definition, the Ohio law which defined a "child with a disability" was amended to delete the categories of "severe behavior handicapped" and "developmentally handicapped." Under current law found at O.R.C. 3323.01(A), the disability categories are: "mental retardation, a hearing impairment (including deafness), a speech or language impairment, a visual impairment (including blindness), a serious emotional disturbance, an orthopedic impairment, autism, traumatic brain injury, an other health impairment, a specific learning disability, deaf-blindness, or multiple disabilities."

L.A., a minor, by and through his parent, E.A.;
B.M., a minor, by and through his parent, D.M.;
S.W., a minor, by and through his parent, C.S.; and
M.G., a minor, by and through his parent, J.G.

The named Defendants in this case are:
State Of Ohio;
Ted Strickland, In His Official Capacity As Governor of the State of Ohio;
The Ohio Schools Facilities Commission;
Deborah Delisle, In Her Official Capacity as the State Superintendent of Public Instruction;
The Ohio State Board of Education;
The Ohio Department of Education;
The Office for Exceptional Children, Ohio Department of Education; and
The Office for Early Learning and School Readiness, Ohio Department of Education.

The Court takes notice that the Plaintiffs and the Defendants have reached a partial settlement of claims in the Plaintiffs' Amended Complaint, specifically, those that are based on the allegations made in part (1) only of paragraph 175 (b) and paragraphs 234-236, 239-240, 351-365, 368-376, 378-385, 389, 390-392 and 395.

### Principles

Defendant State of Ohio is responsible for ensuring the delivery of a free appropriate public education (FAPE) for all eligible children ages three through twenty-one in the least restrictive environment (LRE) according to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §1400 *et seq.* and Ohio Revised Code (ORC) Chapter 3323.

A free, appropriate public education must be provided in the least restrictive environment, individually tailored to meet the unique needs of each child with a disability and documented in each child's written Individualized Education Program (IEP).

Defendants Ohio Department of Education (ODE), the Office for Exceptional Children (OEC), and the Office for Early Learning and School Readiness (OELSR) are ultimately responsible for ensuring that each educational agency in the State is in compliance with the IEP requirements and the other provisions of the IDEA. If the local educational agency is unwilling or unable to comply with the IDEA, ODE must provide or arrange for the provision of services directly to the student.

The State's general supervision responsibility under the IDEA requires that the State have policies and procedures in place to effectively identify and correct Ohio's educational agencies' noncompliance with the IDEA and state special education statutes and rules in a timely fashion.

The IDEA requires state education agencies to monitor and enforce compliance of local public agencies with federal and state special education laws. State education agencies are also required under IDEA to operate an effective complaint system to respond to allegations of violations of IDEA committed by local educational agencies (LEAs).

**Terms of the Agreement**

FOR GOOD CAUSE SHOWN, THE COURT ORDERS THE FOLLOWING:

### I.    Monitoring.

(A)    Public involvement/public access to information.

The Ohio Department of Education's IDEA monitoring system shall involve and actively seek participation from people who have a stake in results for children/students and compliance with legal and regulatory requirements. This includes, at a minimum, parents, students and advocacy organizations. In order to do so, ODE:

1.    Shall prospectively publish and make available on its website the LEAs that will be the subject of IDEA monitoring in a given fiscal year.

2.    Shall publish and shall make available on its website information on each LEA's performance on the indicators of the State Performance Plan that apply to LEAs, including all compliance indicators. Separately, ODE will publicly rate each LEA's performance through its LEA determination process, which includes all compliance indicators for LEAs, according to the following categories created by Office of Special Education Programs ("OSEP"):

   a.    Meets Requirements;
   b.    Needs Assistance;
   c.    Needs Intervention; and
   d.    Needs Substantial Intervention.

3.    Shall post on its website before the beginning of any on-site IDEA monitoring a notice of when a LEA will be subject to the monitoring and the times and locations of the initial information session of the IDEA monitoring process, as well as the time and place of the meeting described in paragraph I(A)(4) below.

4.    Shall hold an open meeting within the district during the LEA's IDEA monitoring process where any person can present matters relevant to the LEA's compliance with Federal and Ohio laws concerning special education. Such persons may also present such matters in writing submitted to ODE at or by the time of this meeting, and within thirty (30) days after the meeting. ODE will consider those matters in its monitoring. ODE is not required to specifically address any such matters in the written product resulting from the monitoring unless such matters require corrective action. At that meeting ODE will advise parents about the existence of and place of availability of the formal complaint process, and that their submission of comments does not constitute a formal complaint.

3

ODE shall require that:

        a.      The LEA send letters to the parents/guardians of all children with disabilities advising them of the time and place of the meeting, offering to hold private meetings with ODE about their child's services and needs and advising them of the availability of "Whose IDEA Is This?" and

        b.      The LEA make copies of "Whose IDEA Is This?" available at the meeting.

    5.      Shall allow any interested person access to all documents involved in the monitoring process, including district policies and aggregated information that are available to the public in light of the Family Educational Rights and Privacy Act (FERPA) and parallel provisions of Ohio law.

(B)     Consideration of complaint and due process matters.

ODE's IDEA monitoring system shall ensure that LEAs remedy violations of procedural or other requirements/entitlements specific to a child, regardless of the source of the information. Monitoring will include review of complaints and due process requests to inform the monitoring process and selection of LEAs for review. ODE is required to specifically address any such matters in the written product resulting from the monitoring where matters require corrective action, but LEA noncompliance regarding an individual student will be addressed in separate correspondence to the LEA and the parent/guardian of the student rather than documents released to the public, and a corrective action plan will be developed and implemented by the LEA.

(C)     Districts in fiscal or academic watch/emergency.

ODE will annually review every district in academic or fiscal watch or emergency for possible IDEA monitoring of its compliance with state and federal special education laws. Any such district that appears to be out of substantial compliance with those laws will be scheduled for IDEA monitoring according to ODE's overall system for prioritizing IDEA monitoring. This review may be done by the examination of data, rather than by on site visits, although IDEA monitoring will take its usual form if it is conducted. Regardless of the specific level of non-compliance, if ODE finds noncompliance in the district, it will notify the district in writing of the non-compliance, and of the requirement that the non-compliance be corrected as soon as possible, and in no case more than one year after ODE's identification (the date of written notification to the district) of the non-compliance.

"Out of substantial compliance" means:

    1.      non-compliance that is extensive and not found in only a small percentage of files;

    2.      non-compliance that shows a denial of a basic right under the IDEA (e.g., an extended delay in initial evaluation beyond applicable timelines with a corresponding delay in the child's receipt of FAPE, or a failure to provide any services in accordance with the IEP); or,

3.     a long-standing failure to meet IDEA requirements and not an isolated incident.

The IDEA monitoring conducted pursuant to this subsection [I.(C)] may be coordinated with other ODE monitoring.

(D)     Waivers.

1.     ODE shall not grant waivers of the standards provided under IDEA, ORC Chapter 3323 or Ohio Administrative Code (OAC) 3301-51 to public agencies if the result is the denial of FAPE to children with disabilities.

2.     ODE shall conduct an inquiry whenever any public agency requests a waiver of special education standards to guarantee that prospective waiver recipients are not violating the rights of students with disabilities under the IDEA, ORC 3323 or OAC 3301-51. This inquiry shall include, but not be limited to:

    a.     supporting documentation to show that the public agency has made adequate attempts to prevent the need for a waiver;

    b.     supporting documentation to show that the public agency has a viable and expeditious plan for rectifying the situation giving rise to the need for a waiver;

    c.     on-site visits to inspect the appropriateness of services or facilities when ODE deems appropriate; and

    d.     review of IEPs and other documentation of delivery of services when appropriate to ensure that a waiver that has been granted by ODE has not impacted the receipt of FAPE.

3.     ODE will post waiver applications and ODE's approvals and denials on its website. This web page will contain a notice that FAPE can not be denied due to the provision of a waiver and will include a link to "Whose IDEA Is This?" It will also include contact information for the Ohio Legal Rights Service (OLRS) and other low-cost sources of legal assistance.

4.     ODE shall require that each public agency seeking a waiver provide notice of the waiver request to the parents of each child affected by the proposed waiver at the same time the request is submitted to ODE. The notice shall include the following:

    a.     a statement that FAPE cannot be denied due to the operation of the waiver;

    b.     notice of how and when parents may present any concerns that they have about the proposed waiver to the public agency and ODE;

    c.     notice that the public agency seeking the waiver will provide them with a copy of "Whose IDEA Is This?" upon request;

    d.     contact information for the person within the public agency to whom parents' concerns should be directed; and

    e.     notice of the web page link to the information contained in paragraph 3, above.

5.    If, during the course of the inquiry, ODE learns that any student's IEP will not be implemented or any student will otherwise be denied FAPE as a result of the waiver, the waiver shall not be approved, or if previously approved, it may be revoked, and ODE shall require that the agency devise an alternative and acceptable plan for services, including a reasonable timeline for implementation of the plan.

6.    If ODE determines that any student's IEP will not be implemented or any student will otherwise be denied FAPE as a result of the waiver, ODE will take corrective action to ensure compliance with the IDEA and state special education standards. Such corrective action may include targeting resources to the public agency or withholding and reallocating state and federal Title VI, Part B funds (VIB funds), to ensure the delivery of FAPE to the child or to all children with disabilities.

(E)    This Consent Order does not resolve and plaintiffs and plaintiff class specifically do not waive any allegations and claims they may have regarding Defendants' responsibilities for monitoring and enforcing the allocation for and expenditure of funds for special education and related services to plaintiffs and the plaintiff class.

(F)    Corrective Action.

1.    ODE shall require a corrective action plan when deficiencies are found in a LEA as a result of state or federal monitoring activities. Correction of all deficiencies shall occur not later than one (1) calendar year from the date of the issuance of the letter of findings. Improvement plans must include measurable and rigorous targets to respond to each issue raised by the report. A deficiency occurs where a LEA has failed to meet federal standards under IDEA, or state special education standards under the ORC, and/or the OAC, including the delivery of FAPE in the LRE.

2.    ODE will implement a system of progressive sanctions for non-compliance attached hereto as Exhibit A. Components of the system of progressive sanctions shall include, as appropriate to the type of non-compliance involved:

   a.    Educational records review to address systemic issues discovered during a complaint investigation or during monitoring;

   b.    Professional development and technical assistance for district personnel, complete with records of these activities and documentation that district practices have been corrected;

   c.    Fiscal records review; and

   d.    Recovery of funds by ODE to address misappropriation of either state or federal funds.

   The parties understand that not all sanctions will be imposed in every corrective action. Should a district or other provider fail to meet the timeline in the corrective

6

action plans, ODE/OEC may delay and ultimately move to withhold applicable state and/or federal funds.

3.  If during its monitoring process ODE encounters any child-specific non-compliance impacting FAPE, ODE will require that the child's LEA reconvene the IEP team within a defined amount of days not to exceed fifteen (15) school days, to address the specific non-compliance. This deadline can be extended if requested by the parents/guardians. ODE shall provide information about the area of non-compliance to the parent of the affected child prior to the IEP meeting such that the parent is sufficiently notified of the non-compliance. The public agency will report results of the IEP team meeting back to ODE within ten (10) calendar days.

(G)  Training.

ODE monitoring staff shall be adequately and routinely trained in the legal requirements of federal and state special education laws, research-based educational practices to improve results for children, and the provisions of this agreement related to compliance. At least annually, ODE shall invite OLRS and the Ohio Coalition for the Education of Children with Disabilities (OCECD) to be involved in the development of the curriculum for that training.

## II.  Complaints.

ODE shall enforce compliance with the decisions rendered in complaint proceedings through the progressive sanctions system discussed in paragraph I (F)(2) above.

(A)  Openness, accessibility, and investigations.

1.  When investigating a complaint, ODE will obtain relevant information needed to make an independent determination as to whether the public agency is violating a requirement of Part B of the IDEA, Part 300 of the federal regulations or provisions of ORC Chapter 3323 and OAC 3301-51.

2.  ODE shall investigate all matters properly raised via the complaint process. Investigation of a complaint means, at a minimum, interviewing the complaining party, a representative of the public agency, the parent or student if not the complaining party, and any other relevant witnesses, and reviewing documents provided by any of these individuals. Interview means at a minimum speaking with the person by telephone.

3.  When relevant to determining issues raised in the complaint, ODE will conduct an onsite investigation of facilities, equipment, supplies and other resources.

4.  ODE shall ensure that its staff has sufficient knowledge and training and has access to qualified consultants to enable ODE to make appropriate and independent determinations about the identification, evaluation, educational placement, or the delivery of FAPE to the child or children served by the public entity.

5. Complainants who request assistance in making a sufficient complaint, including assistance to parents with disabilities and parents who are not English proficient, will be provided notice of resources to assist parents without counsel in completing complaints and in correcting deficiencies in meeting complaint requirements, including, but not limited to the identity and contact information of OLRS and OCECD.

6. When a complaint or a portion of a complaint is dismissed as deficient, ODE shall provide notice to the complainant that sets forth:

   a. The reasons for the determination of insufficiency;

   b. A statement that the complaint can not go forward on items that are insufficient until a complaint is filed that meets the requirements of Part 34, Section 300.153(b) of the Code of Federal Regulations (CFR);

   c. A statement that the complaint (or the portion of the complaint that is insufficient) may be re-filed within one year of the occurrence of the event that is the subject of the complaint; and

   d. A notice of resources to assist parents who are not represented by counsel in completing complaints and in correcting deficiencies included in the determination of insufficiency including, but not limited to the contact information for OLRS and OCECD.

7. ODE will not find a complaint insufficient for minor errors or omissions. When some complaint issues are insufficient, ODE will proceed with the portions of the complaint that are sufficient. Whenever ODE dismisses a complaint or a portion of a complaint as insufficient, it shall provide the complaining party with a copy of the Order in this case and with the notice described in paragraph 6, above.

8. ODE shall ensure immediately that when a complainant files a complaint, ODE provides specific notice of procedures for requesting mediation, and availability of mediation regardless of whether or not a complaint is dismissed for insufficiency.

9. ODE shall ensure that the written materials that ODE provides to parents explaining complaint procedures and requirements for sufficient complaints are reviewed so that they are clear and comprehensible to unrepresented parents and the general public. Such written materials shall be prepared in consultation with a communication professional and public notice and opportunity for public comment will be provided.

10. ODE shall ensure that its complaint form contains sufficient space on the form for explaining and facilitating the fulfillment of the requirements of 34 CFR 300.153(b).

11.    ODE shall ensure that when a parent calls ODE with questions about what must be in a complaint the parent's questions are answered by an ODE employee qualified to address the issues.

12.    Subject to FERPA and Ohio public records law, the ODE complaint process shall be open and accessible to parents, students, and other interested parties, and provide for meaningful investigation and resolution of complaints. ODE will post publicly on its website copies of all letters of findings and corrective action plans with personally identifying information about the student redacted. However, the name of the public agency that is the subject of the complaint will not be redacted.  All such documents shall be posted not later than ninety (90) days after the date of the issuance of those documents.  Subject to FERPA and Ohio's Public Records Act, upon receipt of a public records request, ODE will provide the person with a redacted copy of the requested complaint within thirty (30) days of the request.

(B)    Matters properly raised via the complaint process.

1.    ODE's complaint system will resolve complaints challenging the appropriateness of a child's educational program, services or the delivery of FAPE. ODE will determine not only whether the public agency has followed the required procedures, but also whether the public agency has reached a decision that is consistent with Part B of the IDEA in light of the individual child's abilities and needs.  In performing that task ODE will act consistent with 71 Federal Register 46601 (August 14, 2006).

2.    The complaint system shall also resolve complaints alleging a public agency's failure to implement a due process hearing or state level review decision.

3.    Complaints alleging injuries to the child or the use of restraints or seclusion shall not be deemed insufficient on the face of the complaint if they are framed within the context of IDEA.  Such matters include:

a.    a pattern of challenging behaviors that are related to the child's disability;

b.    whether the child has had or should have had a functional behavioral assessment (FBA) and a positive behavior intervention plan (PBIP);

c.    whether the FBA and PBIP are appropriate;

d.    whether the child's behavior and interventions are addressed or should have been addressed in the IEP; and

e.    whether staff has been sufficiently trained in de-escalation and restraint techniques.

4.    ODE will review evaluation data in the child's record, and any additional information provided to ODE by the parties to the complaint in order to resolve

9

complaints challenging the appropriateness of a child's educational program or services or the delivery of FAPE, so long as the information is provided within the complaint timelines set out in the letter of allegations.

(C)     Continuances in the complaint process.

    1.     The parties recognize the importance of timely complaint decisions and corrective action so that children with disabilities whose rights under IDEA have been violated are afforded a remedy as soon as practicable. To this end, ODE will issue a letter of findings (LOF) within sixty (60) days of the filing of the complaint with extensions granted only when exceptional circumstances regarding a specific complaint exist. Exceptional circumstances will be narrowly defined. A request from a public agency for more time in the absence of exceptional circumstances shall not be granted by ODE. A public agency's problems communicating with its counsel or staff do not constitute exceptional circumstances. Examples of such exceptional circumstances include:

        a.     The complaint investigation is held in abeyance because there is a due process hearing on the same issue; and

        b.     The occurrence of natural disasters that affect the public agency's ability to respond to the issues in the complaint.

    Exceptional circumstances do not include instances where the school is on summer vacation where the child could be denied a FAPE and/or extended school year ("ESY") services are at issue. In all other cases, ODE will make a case by case determination whether the specific circumstances resulting from summer vacation are exceptional and the letter extending the time shall explain the basis for the conclusion that the exceptional circumstances warrant the extension and the extension shall be for the minimum amount of time reasonably necessary to complete ODE's investigation of the complaint allegations.

    2.     ODE will send a letter informing the parties of an extension of the sixty (60) day time limit for exceptional circumstances which includes the basis for the extension. The timeline will be extended for the minimum time necessary to overcome the exceptional circumstance.

    3.     Mediation will not change the deadline for ODE to resolve complaints unless both parties agree to change the deadline. When ODE receives a request for an extension of the deadline for resolving a complaint based on mediation, it will ask the other party if it agrees to the proposed extension. If both parties agree, ODE will set new dates for the provision of documentation and the letter of findings ("LOF"). If the parties withdraw from mediation, the LOF will issue within 30 days from the notice of withdrawal unless the complaint involves unique complexity or scheduling issues. In no event shall the LOF be delayed beyond 60 days from the notice of withdrawal.

(D)   Enforcement of complaint decisions.

   1.   The LOF will individually address each allegation contained in the complaint. ODE will ensure that the public agency effectively and timely implements a corrective action plan that addresses each violation. In cases involving complex resolutions and systemic issues, ODE shall require periodic progress reports indicating the status of the public agency's efforts to achieve compliance.

   2.   ODE, through its general supervisory authority under IDEA, Part B, will provide remedies for denial of appropriate services which shall include corrective action appropriate to address the individual needs of the child, including compensatory services or monetary reimbursement and appropriate future provision of services for all children with disabilities within the public agency that is the subject of the complaint.

   3.   ODE shall adopt procedures for the effective implementation of ODE's final decisions. These procedures shall include: technical assistance activities, negotiations and progressive sanctions, as appropriate.

   4.   Corrective actions shall be completed within one (1) year of the LOF, except in the case of exceptional circumstances. Even if complete compliance will not be achieved within the one (1) year timeline, children with disabilities will not be subjected to a failure to confer FAPE and will be provided with alternative arrangements for service delivery until full compliance is achieved.

   5.   If the public agency fails to implement the corrective action plan within the time provided by the plan of correction, or if ODE otherwise determines that the public agency is unable or unwilling to comply with the letter of findings, ODE shall take corrective action to ensure compliance, including but not limited to targeting resources to the public agency or withholding and reallocating state and federal VIB funds, to ensure provision of necessary services to the child or to all children with disabilities.

### III.   Resolution of Plaintiffs' Claims.

Except as provided in this paragraph, this Consent Order fully resolves all claims based on the matters alleged in part (1) only of paragraph 175 (b) and paragraphs 234-236, 239-240, 351-365, 368-376, 378-385, 389, 390-392 and 395 of Plaintiffs' "Amended Class Action Complaint for Declaratory and Injunctive Relief," filed July 29, 2005, Doc. Nos. 100 and 101 in existence at the date that this Consent Order is approved by the district court pursuant to Fed. R. Civ. P. 23 ("the Settled Claims"). The Settled Claims will be deemed to have been dismissed, with prejudice, upon the District Court's approval of this Consent Order. This Consent Order does not resolve and Plaintiffs and Plaintiff class specifically do not waive any allegations and claims they may have regarding Defendants' responsibilities for monitoring and enforcing the allocation for and expenditure of funds for special education and related services to plaintiffs and the Plaintiff class. Plaintiffs do not waive any claims relating to the funding of special education, including those

11

portions of claim paragraph 389 that implicate these issues. Plaintiffs do not waive any claims to attorneys' fees and costs. The parties agree that, as a result of this Consent Order, plaintiffs are prevailing parties and are entitled to their attorneys' fees and costs in an amount to be determined by the parties' agreement no later than 60 days after final approval of the Consent Order. If the parties cannot agree on the amount of fees, the parties shall submit the issue to the Court.

## IV. Applicability and Enforcement.

(A)    The parties recognize that this agreement must be approved pursuant to Fed. R. Civ. P. 23. The effective date of this Consent Order shall be the date on which this Court enters its Judgment and Order approving the Consent Order pursuant to Fed. R. Civ. P. 23.

(B)    This Court shall retain jurisdiction over this matter for the purpose of enforcement of this Consent Order. Jurisdiction shall terminate 2 years after the entry of this order.

(C)    This settlement agreement is reached in order to resolve certain portions of Plaintiffs' claims and is not an admission of any wrongdoing or violation of law by any Defendant. By entering into this agreement, Defendants do not waive any defense raised or available to them, including but not limited to those raised in their motion for dismissal or summary judgment (Doe. Nos. 109 and 110). However, Defendants' obligations under this agreement shall continue even if they prevail on any of those defenses.

(D)    If at any time Plaintiffs believe that the Defendants have violated or otherwise not fulfilled any provision of this agreement, the Plaintiffs shall request a meeting with Defendants to discuss the matters. Plaintiffs shall request the meeting in writing and shall identify the issues to be discussed. Within a reasonable time thereafter, but in no case later than thirty (30) days, the parties shall meet and negotiate to attempt to resolve, in good faith, any such dispute. Plaintiffs may file a motion for contempt or other enforcement action only after such negotiation and failure to reach a resolution.

(E)    Any party seeking relief or modification of this Consent Order as justice requires, pursuant to Fed. R. Civ. P. 60(b), shall first notify all other parties of their intent to do so, and the parties shall negotiate for a period not to exceed sixty (60) days.

(F)    The terms of this Consent Order apply to the parties' agents, successors and assigns.

(G)    During the effective date of this Consent Order, ODE shall post a link to a copy of this order on the front page of the OEC's website.

(H)    Authority to Settle.

All parties represent and warrant that:

1.    they have the power, right, and authority to enter into this Consent Order and to perform all obligations contained in this order;

12

      2.      they have obtained in writing, as of the date of the effective date of the decree any agreement, consent or permission required from any other third party; and

      3.      the individual executing this Consent Order on behalf of the party has the requisite power and authority to cause this matter to be settled in accordance with the terms of this Consent Order.

(I)      The parties agree that they will recommend approval of the terms of this Consent Order to the Court. The parties also agree that they will fully support this Consent Order and any and all proceedings under Federal Rule of Civil Procedure 23(e).

(J)      The following named Defendants are no longer public officials in their former capacities: Robert Taft, former Governor of the State of Ohio, and Susan Zelman, former State Superintendent of Public Instruction. Pursuant to Fed. R. Civ. P. 25(d), "[a]n action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded. The court may order substitution at any time, but the absence of such an order doe not affect the substitution." Therefore, Governor Ted Strickland and Deborah Delisle, Superintendent of Public Instruction, have been substituted as parties.

IT IS SO ORDERED.

_John D. Holschuh_

John D. Holschuh, United States District Judge

Date: **October 21, 2009**

AGREED TO:
PLAINTIFFS:

X  _LB_ _____     Date: _4-13-2009_
JOHN DOE, a minor, by and through his parent, LB.

X T. _____     Date: _4-29-08_
T.M., a minor, by and through his parent, S.J.

_____     Date: _4/14/09_
L.J., a minor, by and through his parent, J.J.

X _____     Date: _____
T.D., a minor, by and through his parent, A.D.

_____     Date: _4-12-09_
L.A., a minor, by and through his parent, E.A.

X _____     Date: _4-1509_
B.M., a minor, by and through his parent, D.M.

_____     Date: _____
S.W., a minor, by and through his parent, C.S.

X _____     Date: _4-25-09_
M.G., a minor, by and through his parent, J.G.

14

DEFENDANTS:

STATE OF OHIO

By: *Ted Strickland*                                Date: 5/21/09

TED STRICKLAND, for the State of Ohio and
in his official capacity as Governor of the State of Ohio

THE OHIO SCHOOLS FACILITIES COMMISSION

By: *Michael C Shoemaker*                          Date: 5/14/09

Michael Shoemaker, Exec. Director

Deborah Delisle, in her official capacity as the State
Superintendent of Public Instruction

*Deborah Delisle*                                   Date: _____

Deborah Delisle, Superintendent

THE OHIO STATE BOARD OF EDUCATION

By: *Jennifer Sheets*                               Date: 5/20/09

Jennifer Sheets, President

THE OHIO DEPARTMENT OF EDUCATION

By: *Matthew J. DeTemple*                           Date: _____

Matthew DeTemple, Chief Counsel

THE OFFICE FOR EXCEPTIONAL CHILDREN, OHIO
DEPARTMENT OF EDUCATION

By: *Kathe Shelby*                                  Date: 5-20-09

Kathe Shelby, Director

THE OFFICE FOR EARLY LEARNING AND SCHOOL
READINESS, OHIO DEPARTMENT OF EDUCATION

By: *Sandy Miller*                                  Date: May 20, 2009

Sandy Miller, Director

15

APPROVED BY:

RICHARD CORDRAY
Attorney General


TODD R. MARTI (0019280)
Assistant Attorney General
Education Section
30 East Broad Street, 16th Floor
Columbus, Ohio  43215
Phone:
Facsimile:
Email:

Date: _5- 21 - 09_


SUSAN G. TOBIN (0021725)
JASON C. BOYLAN (0082409)
Ohio Legal Rights Service
50 West Broad Street, Suite 1400
Columbus, Ohio  43215
**Phone:** (614) 466-7264
Facsimile: (614) 644-1888
stobin@olrs.state.oh.us
jboylan@olrs.state.oh.us

Date: _5/21/09_


16

## OEC System of Progressive Sanctions

The Ohio Department of Education (ODE), Office for Exceptional Children (OEC) strives to ensure all children, including students with disabilities and students identified as gifted, achieve positive educational outcomes. To accomplish this, OEC supports professional development and technical assistance provided at the state, regional, and local levels for districts and other providers. OEC also utilizes a system of progressive sanctions to help ensure compliance with state and federal regulations. This system is described next.

Oversight Components

Specific oversight components utilized by OEC to ensure compliance with state and federal requirements include the following:

- Special Education Focused Monitoring system, including early childhood monitoring conducted by the ODE Office of Early Learning & School Readiness
    - On-site monitoring visits
    - Self-assessment

- Management Assistant Reviews (MAR) & Special Education Fiscal Accountability Report

- Complaints / Due Process Hearings

- Gifted Identification and Service Provision
    - District self-reports
    - Identification and service data audits
    - Unit funding eligibility monitoring
    - Complaint investigations

Non-compliance

Districts identified as noncompliant will receive written notification from OEC, describing the noncompliance and the requirement to create and implement a corrective action plan. The corrective action plan will include a step-by-step process that the district will follow to address the area(s) of non-compliance, including benchmark dates for completion, as well as the method for documenting the completion of these steps.

Components of corrective action plans may include the following

- Educational records review to address systemic issues discovered during a complaint investigation or during monitoring;

**Doe Consent Order, Ex. A, p. 1**

- Professional development and technical assistance for district personnel, complete with records of these activities and documentation that district practices have been corrected;
- Fiscal records review;
- Recovery of funds by ODE to address misappropriation of either state or federal funds;

Should a district or other provider fail to meet the timeline in their corrective action plans, ODE/OEC may delay and ultimately move to withhold applicable state and/or federal funds.

<u>Sanction Process</u>

When a district or other provider does not complete the required corrective activities within the required timeline, the following steps will be taken by ODE/OEC staff:

1) District/provider will be sent a letter signed by the OEC Director documenting its failure to comply with its corrective action plan. The letter will provide a revised benchmark date for completing the remaining items. The letter will also indicate whether and which applicable funds (state and/or federal) will be delayed should the revised benchmark dates not be met.

   Applicable funds include
   - i. IDEA Part-B funds (Pre-K and School-age)
   - ii. Gifted Identification funds (GRF)
   - iii. Gifted Unit funds (GRF)
   - iv. State weighted special education funds (GRF foundation funds).

2) Should the district/provider again fail to meet the benchmark date, it will receive a second letter, this time from the Associate Superintendent, Center for School Options and Finance, indicating which funds (state and or federal) will be delayed. The letter will also include steps the district/provider must take to secure release of these funds.

3) Subsequent non-compliance will result in ODE/OEC moving to withhold or recover additional district funds after providing the opportunity for an R.C. Chapter 119 hearing.

<u>Authority to Implement Sanctions</u>

The following citations outline ODE/OEC's authority to impose these sanctions:

A. Ohio Revised Code (ORC) Section 3317.01 establishes that ODE/OEC has the authority to administer and supervise the allocation and, subject to Controlling Board approval, distribution of all state payments under Chapter 3317.

<strong>Doe Consent Order, Ex. A, p. 2</strong>

ORC 3317.01 (C) further establishes that a board of edueation or governing board of an educational serviee eenter whieh has not conformed with other law [other than the sections of law specified in divisions (A) and (B) of ORC Section 3317.01] and the rules pursnant thereto, shall not participate in the distribution of funds authorized by sections 3317.022 to 3317.0211, 3317.11, 3317.16, 3317.17, and 3317.19 of the Revised Code, exeept for good and sufficient reason established to the satisfaction of the State Board of Education and the Controlling Board.

B. The Individuals with Disabilities Edueation Improvement Act of 2004 (IDEA 04) and the federal regulations at 34 C.F.R. Part 300 provide that the State Edueational Ageney (SEA) has the authority to administer and supervise the allocation and distribution of federal Part B moneys for the education of children with disabilities.

The federal law at 20 U.S.C. 1413(d), federal regulation at 34 C.F.R. 300.222, and state rule, Rule 3301-51-01(A)(8), provide that if the superintendent of public instruction, after reasonable notice and an opportunity for a hearing, finds that a state agency, school district, county board of MR/DD, or other educational agency that has been determined to be eligible under Part B of the IDEA is failing to comply with any requirement in sections 34 C.F.R. 300.201 to 34 C.F.R. 300.213:

The superintendent of public instruction must reduce or must not provide any further payment to the state agency, school district, county board of MR/DD, or other educational agency until the state superintendent is satisfied that the state agency, school district, county board of MR/DD, or other educational agency is complying with that requirement.

<u>Sample Sanction Process Letter #1</u>

Contact
District Name
Address
City, State, Zip

      Re: Failure to Comply with Corrective Action Plan

Dear Contact:

This letter will serve as notice of the district's failure to comply with specific benchmarks noted in the agreed upon corrective action plan dated October 10, 2008.

As of (date of letter), acceptable documentation of timely completion of the activities specified in the correction action plan has not been received.  For your reference, a copy of the corrective action plan is attached which indicates the steps which were to have been completed by the specified date.

Unless acceptable documentation of completion of the corrective action plan is received by (date) distribution of the following funds to the district will be delayed:

- o  IDEA Part B Funds
- o  Gifted Identification Supplementary Funds
- o  Gifted Unit Funds
- o  State Weighted Special Education Funds

State and Federal law and rule provide the Department with the authority to delay and or withhold state and federal funding should a district be found out of compliance with state and federal law.

Further failure to provide the required items will result in district funds being delayed and or withheld.

Your attention to this matter is appreciated.

Sincerely,


Director
Office for Exceptional Children
ec: President, District School Board

**Doe Consent Order, Ex. A, p. 4**

Sample Sanction Process Letter #2

Date

Contact
District Name
Address
City, State, Zip

Subject: Notice of Proposed Withholding of Funds and Opportunity to Request a Hearing

Dear Contact:

The purpose of this letter is to advise you that effective Date XX, 2008, the Ohio Department of Education (ODE) is proposing to withhold your district's IDEA/Gifted GRF fund in light of your district's failure to provide specific information by specified dates, as noted in two previous correspondences, issued by the Office for Exceptional Children. (Copies attached)

You have thirty days from the date of this letter to request a hearing. The hearing will be held within seven to fifteen days after ODE's receipt of your request for a hearing. If you do not request a hearing within the specified time period, ODE will proceed with the proposed withholding of funds.

In order for this matter to be resolved and avoid the possible withholding of funds, the district must comply with the items noted in the above-referenced correspondences to the satisfaction of the Office for Exceptional Children.

If this matter is resolved in an expeditious manner, ODE will withdraw its proposal to withhold funds.

Please contact me to let me know what steps you plan to take. Your prompt attention to this matter is greatly appreciated.

Respectfully submitted,


Associate Superintendent
Center for School Options and Finance

cc: President of Local School Board


**Doe Consent Order, Ex. A, p. 5**