```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION
```

| | | |
|---|---|---|
| John Doe, et al., | : | |
| Plaintiffs, | : | |
| v. | : | Case No. 2:91-cv-0464 |
| State of Ohio, et al., | : | JUDGE MICHAEL H. WATSON |
| | | Magistrate Judge Kemp |
| Defendants. | : | |

OPINION AND ORDER

This case is before the Court on Defendants' motion for a protective order regarding certain discovery requests. (Docket No. 225.) This motion has been fully briefed.

I.  BACKGROUND

This case is a class action lawsuit brought by a class certified as "all children, ages three through 21, currently enrolled or seeking enrollment, now or in the future, in Ohio's public school system, who have a disability under the Individuals with Disabilities Education Act [(IDEA)], 20 U.S.C. §§1400 et seq., the Rehabilitation Act of 1973, 29 U.S.C. §§790 et seq., or the Americans with Disabilities Act, 42 U.S.C. §§12010, et seq., and who require, as a result of their disability, special education and related services or accommodations that are designed to meet individual educational needs of students with disabilities as adequately as the needs of nondisabled children are met, and the parents or guardians of such children." (Docket No. 168.)  The class definition goes on to define the types of disabilities at issue.  (Id.)

In or around May of 2009, the parties reached a partial settlement.  On July 2, 2009, the Court preliminarily approved the partial settlement, scheduled a fairness hearing, and ordered that notice be distributed to the class members.  In setting out

their proposed plan for notice to the class, the parties wrote that the Plaintiff Class is large and widely dispersed and that there are over 260,000 students with disabilities who are receiving special education services across more than 700 educational entities.  (Docket No. 149 at 13-14.)

The method of notice approved by the Court for the partial settlement consisted of (a) notice provided by the Ohio Department of Education, which included posting a copy of the notice and the Consent Order prominently on its website, providing a copy of the notice and Consent Order to all local educational agencies and asking them to post the notice prominently in a central location accessible to the public in each of its buildings and link to it on their websites, providing a copy of the notice and Consent Order to various other organizations and having them post a copy in their offices and on their websites, and posting a copy of the notice in several newspaper publications for three Sundays; and (b) notice provided by the Ohio Legal Rights Service, class counsel, which included mailing the notice to the named plaintiffs and amici, posting or publishing the notice and Consent Order in the OLRS newsletter and on its website, and disseminating the notice and Consent Order electronically to statewide organizations representing people with disabilities.  (Docket No. 149 at 14-15.)

On October 21, 2009, following a fairness hearing held the day before, a consent order was filed reflecting the parties' partial settlement.  (Docket No. 168.)  The Consent Order did not resolve any of Plaintiffs' claims related to the funding of special education in the State of Ohio.  (Docket No. 203 at 6.)  The claims remaining before the Court after the Court granted in part and denied in part Defendants' most recent motion to dismiss, are claims pursuant to IDEA, and Section 504 of the Rehabilitation Act of 1973.  (Docket No. 203.)

On January 4, 2013, Plaintiffs served the document requests at issue in Defendants' motion: Plaintiffs' Fifth Request for Production of Documents - Data ("Fifth Request") which includes 23 requests seeking data within the statewide data collection system for Ohio's primary and secondary education, the Electronic Management Information System ("EMIS").  These requests generally seek data from the 2011-2012 school year to the present.  In several of these requests, Plaintiffs are seeking access to data for all students, not just students who are part of the Plaintiff Class.  For example, Request No. 5 of the Fifth Request seeks "access to the database(s) containing Data specific to Student demographics including: a) Gender, b) Age, c) Race/Ethnicity, d) Native Language, e) Home Language, f) Eligibility for Free or Reduced Lunch Programs, g) Resident of a Household in which a Member is Eligible for Free or Reduced-Price Lunch, h) Public Assistance Eligibility and/or Receipt, I) Title I Eligibility and/or Receipt." (Docket No. 225-4 at 5.)  The requests also seek several other types of data including but not limited to students' participation in and performance on certain achievement tests and assessments, attendance records, records of promotion or retention from grade level to grade level, and disciplinary records.  (Docket No. 225-4 at 10-12.)

On March 4, 2013, this Court held a status conference in which the parties discussed the type of notice that FERPA required before Defendants could produce the data sought in the Fifth Request.  On March 6, 2013, this Court ordered Defendants to file an appropriate motion and memorandum on the subject of how and whether to give parties notice required by FERPA regarding information that Defendants have been requested to produce during discovery.  (Docket No. 221.)  In response, Defendants filed the motion for protective order that is before the Court.  (Docket No. 225.)  Defendants' motion argues that the

Court should issue an order holding Plaintiffs' Fifth Request for Production of Documents "in abeyance until the finalization of the State of Ohio's biennial budget and the resolution of an anticipated motion to determine that budget's impact on this Court's jurisdiction." (Docket No. 225 at 4.)

## II. ANALYSIS

Although Defendants' motion treats its request for a protective order as one to hold the Fifth Request for Production of Documents in abeyance, there are some distinct considerations in determining whether a protective order is appropriate and whether holding discovery in abeyance is appropriate.

Before turning to those two topics, it is worth noting some of the issues that were not raised in Defendants' motion. First, Defendants have not argued that any of the statutes at issue create a privilege that would place Plaintiffs' requests outside the scope of discovery. Fed. R. Civ. P. 26(b)(1). Second, Defendants have not moved to limit the extent of discovery pursuant to Rule 26(b)(2)(C)(iii). This second omission is noteworthy because Defendants' reply brief appears to argue that the discovery at issue is not relevant to the case. To the extent that Defendants are seeking to inject that argument into their original motion, that effort fails because the relevance argument was not fairly raised in their original motion. Further, Defendants' representation of their attempts to confer with the Class Plaintiffs in an effort to resolve the dispute without court action does not include any representation that the parties discussed limiting the scope of the discovery sought in order to ensure that the burden would not outweigh the likely benefit of the discovery. Rather, Defendants represented that the efforts to resolve the dispute centered on satisfying FERPA's notice requirements: "Counsel have therefore spent considerable effort in trying to determine how to satisfy FERPA and who should

4

bear the costs. Those efforts included multiple written and electronic communications, at least two in person meetings, and a conference with the Court."

Defendants' description of their efforts to resolve the dispute also omit any reference to the question of whether state statutes prevent disclosure of the discovery at issue. Plaintiffs state that Defendants only raised that issue "shortly before Defendants' deadline for submitting a motion." (Docket No. 228 at 2.) While it may be that Defendants have not truly satisfied their Rule 26(c)(1) obligation to confer in good faith in an effort to resolve the dispute as to that issue, the impact of the state statutes has been heavily briefed by both parties, and the Court will resolve that issue.

### A. Request for a Protective Order – State Statutes

Defendants contend that Ohio law bars release of the records at issue and that Ohio law is stricter than FERPA. If Ohio law truly barred release of the records, it would continue to do so after the finalization of the biennial budget. Accordingly, the Court will consider whether this argument has merit as opposed to whether it warrants a stay.

Defendants point to two sections of the Ohio Revised Code that limit the disclosure of "personally identifiable information." Section 3301.0714(D)(1) prohibits "the reporting under this section of any personally identifiable information about any student" with certain exceptions. Section §3319.321(B)(1) and (C) prohibits the release of "personally identifiable information other than directory information concerning any student attending a public school" with certain exceptions.

Section 3301.0714 is entitled "Statewide education management information system; rules; reports; sanctions." EMIS, the database at issue in Defendants' motion for a protective

order, was created pursuant to that section of the Code.  (Docket No. 225-3.)  Section 3301.0714 directs the State Board of Education to adopt rules for EMIS that "require the state board to establish guidelines for the establishment and maintenance of the system . . . . [including]: (1) Standards identifying and defining the types of data in the system in accordance with divisions (B) and (C) of this section . . . ."

    Defendants have not pointed to a definition of "personally identifiable information" in the Ohio Revised Code or in any rules or guidelines.  Instead, they seem to rely upon the FERPA definition of "personally identifiable information."  However, the FERPA definition of that term (which will be discussed in more detail in the next section) is not consistent with the way that term is used in section 3301.0714.  Plaintiffs point out that another subsection of section 3301.0714 provides, "[e]xcept as provided in [certain sections of the Revised Code that allow reporting for early childhood programs, administration of scholarship programs, and calculation of payment to county boards of developmental disabilities], at no time shall the state board or the department have access to information that would enable any data verification code to be matched to personally identifiable student data."  Ohio Rev. Code Ann. §3301.0714(D)(2)(a).  The data verification code is an identifier assigned to each student, and section 3301.0714 requires all individual student data to be reported utilizing that code.  <u>Id</u>.  In accordance with that requirement, all of the data in EMIS is "organized and collected in reference by a student identification number, called an 'SSID,' that is assigned to each student," and "[a]ll student information in EMIS is maintained by SSID."  (Docket No. 225-3.)  Accordingly, all of the information in EMIS can be and is "matched" to a data verification code – the SSID.

    Logically then, none of that information in EMIS can be

6

within the statute and/or State Board of Education's definition of "personally identifiable student data." This is further supported by an excerpt from the State Auditor's <u>Statewide Audit of Student Attendance Data and Accountability System Report</u>, which states that the Ohio Department of Education "uses only the SSID, in lieu of personally identifiable student information, for EMIS reporting purposes to protect the privacy of student records." (Doc. 228 at Exh. 5.) Therefore, the information being sought from Defendants here is not the type of "personally identifiable information" that is protected by section 3301.0714.

Furthermore, Plaintiffs point out that Defendants have produced the same types of data to non-profit organizations for their own benefit and apparently without fear of the penalties cited in their brief. Defendants respond by pointing to section 3301.12(A)(3), which provides that the superintendent shall conduct studies and research projects that "may include analysis of data contained in the education management information system established under section 3301.0714 of the Revised Code." Section 3301.0714 specifically spells out exceptions to the general prohibition of reporting of "any personally identifiable information about any student," and those exceptions do not include section 3301.12.[1] In addition, section 3301.0714 of the

---

[1] The relevant language follows:

> The guidelines shall also prohibit the reporting under this section of any personally identifiable information about any student, except for the purpose of assigning the data verification code required by division (D)(2) of this section, to any other person unless such person is employed by the school district or the information technology center operated under section 3301.075 of the Revised Code and is authorized by the district or technology center to have access to such information or is employed by an entity with which the department contracts for the scoring or the development of state

Revised Code lists the sections pursuant to which the state board or the department could have access to information that would enable any data verification code to be matched to "personally identifiable student data" and section 3301.12 is not one of the exceptions.[2] Accordingly, it appears that the data that the superintendent is permitted to release pursuant to section 3301.12 and that the superintendent has access to generally does not fit within the definition of "personally identifiable student data." Accordingly, the Court finds that section 3301.12 supports the conclusion that the type of information being sought from Defendants here is not the type of "personally identifiable information" that is protected by section 3301.0714.

Defendants have pointed to no definition of "personally identifiable information" applicable to section 3319.321, and the Court has no reason to believe that the definition would differ in that section of Title XXXIII. Therefore, the Court concludes that the information being sought from Defendants here is not the type of "personally identifiable information" that is protected by section 3319.321.

Defendants point to other state statutes, but those are not

---

    assessments. The guidelines may require school
    districts to provide the social security numbers of
    individual staff members and the county of residence
    for a student. Nothing in this section prohibits the
    state board of education or department of education
    from providing a student's county of residence to the
    department of taxation to facilitate the distribution
    of tax revenue.

Ohio Rev. Code Ann. §3301.0714 (West)

    [2] Section 3301.0714(D)(2)(a) provides in relevant part: "Except as provided in sections 3301.941, 3310.11, 3310.42, 3310.63, 3313.978, and 3317.20 of the Revised Code, at no time shall the state board or the department have access to information that would enable any data verification code to be matched to personally identifiable student data."

applicable to the circumstances here.  Accordingly, Defendants have not demonstrated that any state statute prohibits the release of the information Plaintiffs are seeking.  As such, there is no need to address the question of whether FERPA preempts the state statutes at issue.

### B.   Request for a Protective Order – FERPA

Defendants also argue that FERPA requires them to notify the parents of the children whose data is sought of the potential release of that information.  They assert that the cost of such notification is unduly burdensome, especially if the need for such discovery becomes moot after the new budget is finalized.  Plaintiffs argue that the information they seek is not "personally identifiable information" protected by FERPA.  Accordingly, the Court will first consider whether the information sought here is protected by FERPA and then turn to the issue of burden.

#### 1. Whether the Information at Issue is Protected by FERPA

FERPA protects education records and personally identifiable information in those records from improper disclosure.  20 U.S.C.A. §1232g.  However, disclosure pursuant to a subpoena or judicial order is proper when done in compliance with the requirements of FERPA and its regulations.  20 U.S.C.A. §1232g(b).

Subsection (b) of section 1232g governs disclosure of records and information.  The applicable subsection here, subsection (b)(2), requires that the parents and the students be notified of any orders or subpoenas before "personally identifiable information" in education records is disclosed pursuant to judicial order or lawfully issued subpoena, with certain exceptions not applicable here.  The language of section (b)(2) follows:

> (2) No funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of releasing, or providing access to, any personally identifiable information in education records other than directory information, or as is permitted under paragraph (1) of this subsection, unless--
>
> (A) there is written consent from the student's parents . . . or
>
> (B) except as provided in paragraph (1)(J), such information is furnished in compliance with judicial order, or pursuant to any lawfully issued subpoena, upon condition that parents and the students are notified of all such orders or subpoenas in advance of the compliance therewith by the educational institution or agency . . . .

20 U.S.C.A. §1232g(b)(2).  Accordingly, parents and students need to be notified before information is disclosed pursuant to a subpoena or court order when the information to be released includes "personally identifiable information" as defined by FERPA.  See 20 U.S.C.A. §1232g(b) and 34 C.F.R. §99.31.

   Defendants argue that the information sought by Plaintiffs includes information that fits within the definition of "personally identifiable information" set forth in FERPA and its regulations.  Specifically, Defendants point to 34 C.F.R. §99.3, which defines "personally identifiable information" as including "personal identifier[s]" such as "the student's social security number, student number, or biometric record," as well as "indirect identifiers, such as the student's date of birth." Defendants aver that all of the data requested is organized around student numbers known as SSIDs and the data cannot be produced without the SSIDs.  Defendants also explain that Plaintiffs seek information about students' age, which is recorded in Defendants' records by students' dates of birth.

   Plaintiffs primarily respond by inaccurately summarizing the

regulations defining "personally identifiable information," stating that "[i]nformation from student records is not considered personally identifiable under FERPA unless it links the information to a specific student."  (Docket No. 228 at 5.) In fact, the regulations provide a non-exclusive list of examples of "personally identifiable information" including the examples quoted above and "[o]ther information that, alone or in combination, is linked or linkable to a specific student that would allow a reasonable person in the school community, who does not have personal knowledge of the relevant circumstances, to identify the student with reasonable certainty."  34 C.F.R. §99.3.  Plaintiffs also point to Ohio law, arguing that Defendants are not permitted to have access to personally identifiable information pursuant to state law and Defendants' policy and, therefore, the information in EMIS cannot be "personally identifiable information" for purposes of FERPA. However, as discussed above, Ohio law defines "personally identifiable information" more narrowly than FERPA.  The clear language of FERPA's regulations provides that at least the SSID and the students' date of birth constitute "personally identifiable information" pursuant to FERPA.

    Accordingly, compliance with FERPA will place some burden on Defendants.  Defendants could either comply with FERPA's requirement "that parents and the students are notified of all such orders or subpoenas in advance of the compliance therewith by the educational institution or agency," 20 U.S.C.A. §1232g(b)(2), or Defendants could redact all personally identifiable information. Ragusa v. Malverne Union Free Sch. Dist., 549 F. Supp. 2d 288, 293 (E.D.N.Y. 2008) ("there is nothing in FERPA that would prohibit Defendants from releasing education records that had all 'personally identifiable information' redacted") (citing, inter alia, U.S. v. Miami Univ.,

11

294 F.3d 797, 824 (6th Cir. 2002) (noting that parties "may still request student disciplinary records that do not contain personally identifiable information.  Nothing in the FERPA would prevent the Universities from releasing properly redacted records")).  A decision to redact "personally identifiable information" would, of course require a determination of what information other than birth dates and SSIDs fit within that description.  However, the parties have not provided enough facts to permit the Court to discuss meaningfully the burden of redacting "personally identifiable information," so the Court will focus on the notice required by FERPA.

### 2.  Burden of Complying with FERPA

FERPA requires that "parents and the students are notified of all such orders or subpoenas" before an educational agency provides "personally identifiable information" in compliance with a judicial order or pursuant to a lawfully issued subpoena.  20 U.S.C.A. §1232g(b)(2).  Such notification does not require written consent.  34 C.F.R. §99.31(a) (setting forth exclusions from the written consent requirements of 34 C.F.R. §99.30).  The regulations provide that the information may be disclosed only if the "agency or institution makes a reasonable effort to notify the parent or eligible student of the order or subpoena in advance of compliance, so that the parent or eligible student may seek protective action," with certain exceptions not applicable here.  34 C.F.R. 99.31(a)(9)(ii).

Defendants contend that "a reasonable effort to notify" requires individual notice as opposed to notice by publication and that, at a minimum, notice by regular mail is probably required.  In support of that argument, Defendants point to two United States Department of Education opinion letters in order to interpret what a "reasonable effort" would be.  As Plaintiffs point out, the second letter is not really applicable here

because it involved notification to only one student, and primarily focused on the amount of time which was required to allow a parent or student to move to quash a subpoena. Furthermore, that letter stated that a "reasonable attempt" to notify a parent or student "is considered on a case-by-case basis" with a letter via U.S. mail being one potential reasonable attempt to notify. (Docket No. 225-9 at 2.) The other opinion letter, the Opton letter, is applicable, but Defendants are incorrect in their description of the weight ascribed to such an opinion letter. Defendants argue that those opinion letters are entitled to "considerable deference," but in making that assertion, they cite to Thornton v. Graphic Commc'ns Conference of Int'l Bhd. of Teamsters Supplemental Ret. & Disability Fund, 566 F.3d 597, 609 (6th Cir. 2009), a decision discussing Chevron deference which does not apply to opinion letters. Thornton provides that "Chevron requires courts to defer to an agency's construction of an ambiguous statute, which the agency is charged to administer, unless the construction is 'arbitrary, capricious, or manifestly contrary to the statute.'" However, the case that Thornton quotes, Battle Creek Health Sys. v. Leavitt, 498 F.3d 401 (6th Cir. 2007), elaborates on that statement by noting, "[i]nterpretations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant Chevron-style deference." Battle Creek Health Sys. v. Leavitt, 498 F.3d 401, 409 (6th Cir. 2007) (internal citations and quotations omitted). Accordingly, while the Opton opinion letter may be persuasive, it is not entitled to deference.

Plaintiffs contend that individualized notice is not required. They first point to Defendants' release of EMIS data to the Fordham Institute so that it could conduct a study, and invite Defendants to discuss how it obtained consent or provided

notice for the release of that data.  However, as Defendants point out in their reply, disclosure to organizations conducting studies for or on behalf of educational agencies or institutions for certain specified purposes is permitted without obtaining consent pursuant to 20 U.S.C. §1232g(b)(1)(F) and 34 C.F.R. §99.31(a)(6).  Plaintiffs also cite to a case from the Eastern District of New York which held that "[n]otice in this case can be effected by publication or other reasonable method chosen by the school district." Rios v. Read, 73 F.R.D. 589, 602 (E.D.N.Y. 1977).  The court in that case reasoned that "[t]he type of notice required, however, will depend on the circumstances of each case. . . .  Thus, where exceptionally large numbers of students are involved, it may be enough for a school or school district to publish the notice in a newspaper." Id. at 600.  The court noted that its conclusion was "supported by a letter written on February 19, 1975, by the Assistant General Counsel for Education, Department of Health, Education and Welfare to the Department's General Counsel," that described the response to a question concerning the notice requirement, and that letter left open the question of what type of notice would be required:

> (1) there is no legislative history as to whether publication would be adequate in the above-described circumstances; (2) we could not say as a matter of law that direct personal notice would be required in every case, absent regulations on the point; (3) however, at a minimum, some showing would have to be made that publication would be likely to reach the parents of the students, many of whom would presumably be of limited English-speaking ability; (4) the adequacy of the notice would depend on how reasonable it was under the circumstances.

Id. at 600.

In the absence of explicit instructions in FERPA or its regulations or precedent, this Court cannot conclude that direct, personal notification by regular mail is required in every

instance under FERPA.  While the Opton opinion letter cited by Defendants does state that individual notice is required and that notice on campus bulletin boards or in campus newspapers would not be adequate, the opinion letter does not provide any rationale for that opinion.  It contrasts the notice requirements in 34 C.F.R. 99.31(a)(9)(ii) with those in 34 C.F.R. 99.7, stating that the former require personal notice, while publication in campus newspapers or on campus bulletin boards may be sufficient for the latter.  Section 99.31(a)(9)(ii) requires "a reasonable effort to notify the parent or eligible student," and section 99.7 requires notice "by any means that are reasonably likely to inform the parents or eligible students of their rights."  While the Opton letter opinion does not explain why it interprets these two notice requirements differently, perhaps it permits publication for section 99.7 notice because that notice must be made to parents of students currently in attendance or eligible students currently in attendance, which necessarily means notice to a large number of individuals.  Certainly, when only one student is involved, as often is the case with subpoenaed records, publication in a campus newspaper would not be a reasonable means of notifying that one student.

    FERPA and its regulatory scheme treat the disclosure of personally identifiable information differently in different circumstances.  Some disclosures of personally identifiable information are prohibited unless the education agency obtains parents' written consent, some disclosures are permissible even if no notice is provided to the students or parents (such as disclosures for purposes of research), and disclosures pursuant to a lawfully-issued subpoena, as here, require Defendants to make a "reasonable effort to notify" the parent or student in advance of compliance, so that the "parent or eligible student may seek protective action" with certain exceptions.  34 C.F.R.

15

99.31(a)(9)(ii).  Nothing in FERPA or its regulations specifies the exact method of notice required here, and the Court cannot conclude that direct, personal notice by regular mail is always required prior to disclosure pursuant to a lawfully-issued subpoena.  Therefore, the Court must consider whether something short of direct, personal notice by regular mail would constitute a "reasonable effort to notify" in this case.

     First, the Court considers the degree of effort involved in providing direct, individual notice by US mail.  While Defendants argue in their motion that direct, personal notification by US mail is the only way that Defendants can satisfy their requirement to make "reasonable effort to notify" the approximately 1.5 million students whose data would be disclosed in response to the Fifth Request, Defendants previously represented that it would be "impossible" to notify approximately 260,000 class members when discussing what notice was required for purposes of Federal Rule of Civil Procedure 23(e)(1).  Specifically, in their second joint motion for preliminary approval of partial class action settlement, the parties wrote, "Given that the class is very large [over 260,000 students] and that its members are widely dispersed, it will be impossible to provide individual notice to each member.  None the less, the parties' [sic] propose a method of notice that will provide 'the class as a whole [with] notice adequate to flush out whatever objections might reasonably be raised to the settlement.'"  (Docket No. 149 at 23-24.)  While the parties' arguments in that brief addressed the requirements of Rule 23(e)(1), which provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal," their factual representations of the difficulty of providing individual notice are applicable here.  In fact, those factual arguments are more persuasive here where the number of students (or parents)

requiring notice is more than five times as great. Thus, the effort required to provide direct notice in this case may well be "unreasonable."

Second, the Court considers the importance of the interests being protected by the notice. In enacting FERPA, Congress did not create enforceable rights to nondisclosure. Gonzaga Univ. v. Doe, 536 U.S. 273, 287 (2002) ("FERPA's provisions speak only to the Secretary of Education . . . . This focus is two steps removed from the interests of individual students and parents and clearly does not confer the sort of '*individual* entitlement' that is enforceable under § 1983."). By way of contrast, class members' interest in receiving Rule 23(e)(1) notice of settlement of a class action is a right protected by the Due Process Clause. Fidel v. Farley, 534 F.3d 508, 513-14 (6th Cir. 2008) (citations omitted). In addition, the potential harm to students' privacy interests will be lessened here by the fact that the Court will require that the parties enter into a protective order governing the release and maintenance of the data at issue. Accordingly, although the privacy interests here are important, they do not rise to the level of constitutional rights, and they are not likely to be harmed by the disclosure at issue. Taking into account the severe burden involved in giving personal notice, the limited nature of the privacy interests involved, and the lack of potential harm, the Court finds that it would not be reasonable to require direct personal notice.

This does not answer the question of to whom notice must be given, or how it must be provided. As to the first issue, Defendants assert that notice is not required to be given to the Class Plaintiffs pursuant to 34 C.F.R. §99.31(a)(9)(B) because the class members waived their FERPA rights by filing this case. Section 99.31(a)(9)(B) provides, "[i]f a parent or eligible student initiates legal action against an educational agency or

17

institution, the educational agency or institution may disclose to the court, without a court order or subpoena, the student's education records that are relevant for the educational agency or institution to defend itself." This regulation does not discuss disclosure of information to the opposing party, however, but to the court. It would put Plaintiffs in a difficult position if Defendants were permitted to disclose large amounts of information to the court that Plaintiffs could not see, and the Court is not in a position to evaluate that information. Additionally, because the membership of the class changes as individuals are born and leave the school system, and in light of the fact that the most recent notice to potential class members was provided in 2009, the Court concludes that disclosure of the data requested here would affect a large number of potential class members who have never been given notice of their potential inclusion in the class and could not be deemed to have waived any FERPA rights by their potential inclusion in the case. Accordingly, notice must be given to all (approximately 1,700,000) students or parents and not just the approximately 1,462,000 students who are not included in the Plaintiff Class.

As to the remaining issue – how to notify those students or parents in a way that is not direct mailing but is still likely to reach them – the Court prefers not to craft a notice procedure without further input from the parties. Because the Defendants' position has been either that state law absolutely prohibits disclosure of the information, or that direct notice is required, it does not appear that the parties have discussed alternative methods for giving notice in an effort to agree on such methods. Therefore, the parties are directed to confer regarding a method that would constitute a "reasonable effort to notify" the parents or eligible students of the subpoena, and to contact the Court within fourteen days either to advise the Court that they have

chosen a notification method or that a further conference is needed.

### C. Privacy

Defendants also argue that the discovery would unnecessarily undermine third parties' privacy interests, because the new budget may moot some or all of the claims.  In support of their argument, they point to the harm which can result from making personally identifiable information public.  Here, however, Plaintiffs do not oppose, and the Court would require, a protective order that governs the release and maintenance of the information at issue in order to addresses any confidentiality concerns relating to this information.  The protective order should specifically provide that the information is to be used only for purposes of this litigation and will be returned or destroyed, as appropriate, at the completion of this case.  Additionally, the order should contain limitations on the disclosure of the information during discovery and to the Court.  This should suffice to protect any privacy interests here.

### D.  Abeyance

In the absence of more definitive evidence that the new budget is very likely to render this case moot, and in light of the age of the case, the Court denies Defendants' motion to hold the discovery in abeyance.

### III.  CONCLUSION

For the foregoing reasons, the motion for a protective order is denied.  The parties are directed to confer regarding a method that would constitute a "reasonable effort to notify" the parents or eligible students of the subpoena under FERPA and its regulations.  The parties are also directed to draft a protective order governing the release and maintenance of the information at issue, specifically providing that the information is to be used only for purposes of this litigation and will be returned or

destroyed, as appropriate, at the completion of this case, and containing limitations on the disclosure of the information during discovery and to the Court. The parties shall report back to the Court with a joint recommendation as to method of notice and with a draft protective order within fourteen days of the date of this Order, or contact the Court to request a conference.

## IV.

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge. 28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3,pt. I., F., 5. The motion must specifically designate the order or part in question and the basis for any objection. Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge. S.D. Ohio L.R. 72.3.

/s/ Terence P. Kemp
United States Magistrate Judge