**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **John Doe,** *et al.,* | : | **Case No.: 2:91-cv-00464** |
| **Plaintiffs,** | : | **Judge: Michael H. Watson** |
| **v.** | : | **Magistrate Judge: Chelsey M. Vascura** |
| **State of Ohio,** *et al.,* | : | |
| **Defendants.** | : | |

---

**JOINT MOTION FOR PRELIMINARY APPROVAL OF PROPOSED**
**CLASS ACTION SETTLEMENT AGREEMENT**

---

The Plaintiffs and Defendants respectfully move that this Court:

A.      Preliminarily approve the Settlement Agreement attached as Exhibit A;

B.      Approve the Notice of Proposed Class Action Settlement, attached as Exhibit B, and

C.      Enter the Proposed Order Regarding Class Notice, attached as Exhibit C, ordering that notice to class members take place as proposed, setting a date for hearing on final approval of the Proposed Class Action Settlement Agreement, scheduling further briefing, and establishing a timeline and process for comments and objections.

## I.      INTRODUCTION

The Plaintiffs and Defendants ("parties") ask the Court to grant preliminary approval of the Proposed Class Settlement Agreement ("the Agreement"). The Agreement meets the standard for approval under the precedents of the Sixth Circuit and this Court and under the Federal Rules of Civil Procedure, which require the Agreement be a fair, reasonable, and adequate resolution of the class claims. As shown below, the Agreement satisfies this standard.

The parties also ask the Court to approve their proposal for notifying current and potential class members of the Agreement's terms and the anticipated fairness hearing.

This case began over two decades ago, with the current phase of litigation beginning in October 2009, after the parties entered into a limited consent decree. After nine years of litigation with extensive discovery, the parties, with the help of a capable mediator, have reached an Agreement that they all view as a favorable resolution of the case (despite their differing views of this case). Through the Agreement, the State will create a plan, informed by several strategies, for redesigning the state support system for special education in order to improve rates of achievement, including Least Restrictive Environment ("LRE") rates. The plan will impact students state-wide with a particular focus on 11 school districts, 8 of which are large urban districts.[1] The 11 districts will be supported in the development of their own improvement plans. Additionally, the parties have agreed that Plaintiffs will be awarded $3 million in attorneys' fees and costs for nine years of litigation, including compensation for 11,614.85 hours of attorney time and 4,305.6 hours of paralegal time.

The Agreement meets the standards for preliminary approval by this Court under the precedents of the Sixth Circuit and this Court and Federal Rule of Civil Procedure 23, which was

---

[1] The 11 Districts are: Akron Public, Canton City, Cleveland Metropolitan, Cincinnati Public, Columbus City, Dayton Public, Toledo Public, Youngstown City, Lima City, Zanesville City, and East Cleveland City School Districts.

amended in 2018. Among other reasons, the Agreement benefits the members of the Plaintiff class as well as school districts, while allowing the parties to avoid the delay, costs, and risks inherent in further litigation and trial. The Agreement is the result of arms-length negotiations between experienced counsel and comes after ample opportunity for discovery and multiple mediation sessions. It resolves complicated factual and legal issues in a highly specialized area of disability law.

For these reasons, and those discussed below the parties request that the Court preliminarily approve the Agreement as a fair, adequate, and reasonable resolution of class members' claims, approve their proposed class notice, and set a schedule for the next steps, including a fairness hearing.

## II.    FACTS

### A.    History of Proceedings

In 1996, the Court certified a class of: All children, ages three through 21, currently enrolled or seeking enrollment, now or in the future, in Ohio's public school system, who (1) have a disability under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 *et seq.*, the Rehabilitation Act of 1973, 29 U.S.C. §§ 790 *et seq.*, or the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*, and (2) require, as a result of their disability, special education and related services or accommodations that are designed to meet the individual educational needs of students with disabilities as adequately as the needs of nondisabled children are met, and the parents or guardians of such children. Doc. 59 (entered on Feb. 20, 1996).

After nine years of litigation and extensive discovery, the parties began an extended mediation in October 2018. Through mediation, the parties came to a comprehensive settlement of their claims. The terms of this settlement specified that the Ohio Department of Education

("ODE") would develop a plan to redesign the state support system for special education with a particular focus on 11 school districts, 8 of which are large urban districts (the "11 Districts").

Also with the help of the mediator, the parties agreed to a resolution of Plaintiffs' claim for fees and costs. The parties agreed that Plaintiffs would receive an award of $3 million in attorneys' fees and costs pursuant to the fee-shifting provisions of IDEA and Section 504 of the Rehabilitation Act. At the fairness hearing, the parties will seek the Court's approval of the award under Federal Rule of Civil Procedure 23(e).

### B. The Moving Parties' Settlement Agreement

#### 1. Free Appropriate Public Education

The Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*, and Section 504 of the Rehabilitation Act of 1973 ("Section 504") require that all students with disabilities receive a free appropriate education ("FAPE"). This includes the right for students with disabilities to be educated in the least restrictive environment (LRE). The terms of the Agreement are designed to improve special education both across the State and especially in the 11 Districts.

The parties agreed that ODE will develop a plan (the "State's Plan") for a redesigned state support system for special education with a particular focus on the 11 Districts. The State's Plan will be designed to improve rates of achievement, including LRE rates, for students with disabilities, particularly in the 11 Districts. The State's Plan must be informed by several strategies including:

1. Measures designed to meet or exceed existing or updated targets for achievement and LRE;

2. Increased focus on language and literacy, including early literacy;

3. Additional professional development;

4

    4.      Activities to improve school climate and support the implementation of positive behavior interventions and multi-tiered systems of support;

    5.      Strategies for improving post-secondary transition services as well as informing parents that students may continue to receive special education until they reach age 22 or have met graduation requirements; and

    6.      Technical assistance to the 11 Districts to support the development of their own improvement plans.

The State's Plan must be developed in consultation with an Advisory Group (the "Advisory Group") comprised of at least seven members. This advisory body will bring together people with a broad range of experience to serve as a sort of "think tank." The Advisory Group will assess the State's progress and determine whether desired outcomes are being achieved. The State's Plan must include a mechanism for modification if desired outcomes are not being achieved.

The Parties' Agreement will be implemented over a period of five years and includes a dispute resolution process that provides for, as necessary and appropriate, resort to the Court.

## 2. Attorneys' Fees and Costs

Plaintiffs requested of Defendants $5,782,214.46 in attorneys' fees and $612,021.18 in costs for work done over nine years of litigation, including 11,614.85 hours of attorney time and 4,305.6 hours of paralegal time, including work by skilled educational advocates. After Defendants informed Plaintiffs of their objections to the request, the parties agreed to present the matter to the mediator. During mediation, the parties agreed that Plaintiffs would be paid $3 million by Defendants for attorneys' fees and costs. The parties agree that the payment to Plaintiffs will include any claim for fees and expenses for their work on the Advisory Group.

The parties intend to submit an assented-to Motion for Attorneys' Fees as part of the process for final approval of the Agreement.

### C. The Parties' Proposed Notice and Schedule

The parties propose that they provide notice, in the form of Exhibit B, within 15 days of the Court's preliminary approval of the Agreement. The parties propose distributing this Notice through both direct and public methods.

The parties propose that a copy of the Notice be made available to any affected student or student's parent or guardian upon request. ODE shall post a copy of the Notice prominently on its website. ODE shall also disseminate a copy of the Notice to all local educational agencies and ask that the Notice be posted on the local educational agency's website and in a central location accessible to the public in each building that is open to the public. In the 11 Districts identified in the Agreement, ODE shall request that each District disseminate the Notice directly to class members through email, any electronic portals (*e.g.*, parent/student portals used to distribute grades, assignments, forms, etc.), or other means that are reasonably calculated to reach the parents or students in those Districts. ODE shall arrange for the Notice to be posted in the offices in, and on the websites of, each of Ohio' 16 State Support Teams and 60 Education Service Centers.

Additionally, Plaintiffs will provide direct notice to the class representatives. Plaintiffs will also ask community organizations providing services to parents and students in the 11 Districts to disseminate the Notice. Finally, Disability Rights Ohio, one of the class counsel, will post the Notice on its website and social media platforms.

The parties also propose that class members be afforded a 60-day time period to submit written comments to the Agreement and fee award, beginning on the date of the Court's preliminary approval. Class members will be asked to send any written comments to Disability

Rights Ohio, who will then disseminate copies to the Court and Defendants' counsel. The Notice will describe the process and deadline for submitting comments.

The parties propose that motions and memoranda in support of final approval of the Agreement shall be filed three weeks after the close of the comment period. Plaintiffs' assented-to motion for attorneys' fees, will be filed within 20 days from the date of the Court's order granting preliminary approval.

## III. ARGUMENT

In the Sixth Circuit, before approving a settlement proposal:

> (1) the court must preliminarily approve the proposed settlement, i.e., the court should determine whether the compromise embodied in the decree is illegal or tainted with collusion; (2) members of the class must be given notice of the proposed settlement; and (3) a hearing must be held to determine whether the decree is fair to those affected, adequate and reasonable.

*Tennessee Ass'n of Health Maint. Organizations v. Grier*, 262 F.3d 559, 565-66 (6th Cir. 2001) (citing *Williams v. Vukovich*, 720 F.2d 909, 920-21 (6th Cir. 1983)). Preliminary approval is based on a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms. *See Vukovich*, 720 F.2d at 921 (describing the different stages of review).

Rule 23 of the Federal Rules of Civil Procedure, amended in 2018, provides additional detail about the process. It requires parties to provide the court "with information sufficient to enable it to determine whether to give notice of the proposal to the class." Fed. R. Civ. P. 23(e)(1)(A). "The court must direct notice . . . if the parties' show[] that the court will likely be able to . . . approve the proposal under Rule 23(e)(2)" after a fairness hearing. Fed. R. Civ. P. 23(e)(1)(B); Fed. R. Civ. P. 23(e)(1) advisory committee's notes to 2018 amendment (notice should be directed if "the proposed settlement will likely earn final approval after notice and an opportunity to object").

In the present motion and attachments, the parties have provided sufficient information to support preliminary approval of their Agreement.  Thus, the Court should direct notice to the class and schedule a fairness hearing.  The Agreement is fair, reasonable, and adequate—and the parties' notice plan is reasonably calculated to reach current and potential class members and inform them of their rights.

## A.    The Moving Parties' Proposed Settlement is Fair, Reasonable, and Adequate

Before finally approving a class action settlement, "a district court must conclude that it is fair, reasonable, and adequate."  *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) (internal quotation omitted).  Because the Rules provided no further guidance until recently, federal courts developed criteria for evaluating proposed settlements.

Under Sixth Circuit precedent, when considering a proposed class settlement, district courts look to seven factors: (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel; (6) the reaction of class members; and (7) the public interest.  *See*, *e.g.*, *In re Packaged Ice Antitrust Litig.*, No. 17-2137, 2018 WL 4520931, at *6 (6th Cir. May 24, 2018) (citing *Gen. Motors Corp.*, 497 F.3d at 631).

The 2018 amendments to Rule 23 also contain specific factors courts must consider in determining whether a proposed settlement is fair, reasonable, and adequate.  Rule 23(e)(2) provides:

> [T]he court may approve [the settlement proposal] only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:
(i) the costs, risks, and delay of trial and appeal;
(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
(iii) the terms of any proposed award of attorney's fees, including timing of payment; and
(iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The recent amendment to the Rules was not intended to "displace" the factors developed by the court. Fed. R. Civ. P. 23(e)(2) advisory committee's notes to 2018 amendment. Therefore, in considering whether to approve the parties' proposed settlement, the Court should look to both the factors found in Rule 23 as well as the Sixth Circuit's traditional factors. *See*, *e.g.*, *Hays v. Eaton Grp. Attorneys*, No. CV 17-88-JWD-RLB, 2019 WL 427331, at *9 (M.D. La. Feb. 4, 2019) ("There is, not surprisingly, overlap between the 2018 amendment's fairness, reasonableness and adequacy considerations and those set out in the . . . Circuit test. This Court will therefore combine the two in its review and analysis."); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019) ("The [c]ourt first considers the Rule 23(e)(2) factors, and then considers the [Circuit's] additional *Grinnell* factors not otherwise addressed by the Rule 23(e)(2) factors.").

Below, the parties address each factor identified in Sixth Circuit precedent and/or Rule 23(e)(2). All factors here—those provided in Rule 23 and the Sixth Circuit's traditional factors—support preliminary approval of the Agreement.

1.     **The Class Counsel and Class Representatives Have Adequately Represented the Class.**

Rule 23 requires courts to consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2). Class counsel are qualified, experienced, and capable of conducting the litigation. Plaintiffs' counsel consists of lawyers from Disability Rights Ohio, Steptoe & Johnson LLP ("Steptoe"), and the Bazelon Center for Mental Health Law ("Bazelon"). Steptoe is a national, indeed international law firm, with vast experience in complex litigation. Bazelon has a national practice and a national reputation for expertise in complex disability rights litigation. Disability Rights Ohio is the state designated protection and advocacy system for individuals with disabilities, and the organization's attorneys involved in this case have many years of experience in disability rights litigation. Defendants' counsel also have many years' experience representing and defending the State against class action lawsuits. For these reasons, all counsel were fully qualified to represent the interests of their clients.

Additionally, the class representatives have vigorously prosecuted the interests of the class throughout this dispute and settlement negotiations. They possess the same interests and suffered the same injury as the class members. The named Plaintiffs fully participated in the litigation, including by responding to written discovery requests, providing copious records, and attending depositions. During mediation, class counsel represents that class representatives raised with class counsel any concerns they had.

2.     **There is No Risk of Fraud or Collusion. The Parties Negotiated at Arm's Length After Years of Litigation including Extensive Discovery.**

"Courts presume the absence of fraud or collusion unless there is evidence to the contrary." *Stanley v. Turner Oil & Gas Properties, Inc.*, No. 2:16-cv-386, 2018 WL 2928028, at

*5 (S.D. Ohio June 12, 2018) (Deavers, M.J.) (quoting *IUE-CWA v. Gen. Motors Corp.*, 238

F.R.D. 583, 598 (E.D. Mich. 2006)); see also *Brent v. Midland Funding, LLC*, No. 3:11 CV

1332, 2011 WL 3862363, at *15 (N.D. Ohio Sept. 1, 2011) ("[T]he courts respect the integrity of

counsel and presume the absence of fraud and collusion in negotiating the settlement, unless

evidence to the contrary is offered.") (quoting 4 Alba Conte & Herbert B. Newberg, Newberg on

Class Actions § 11.51 (4th ed.2002)) (quotation marks omitted).

Here, the parties negotiated in good faith—and no facts suggest otherwise. The parties

have engaged in years of litigation including extensive discovery and multiple mediation

sessions with this Court (one in 2013 as well as the more recent mediation process). Throughout

discovery, the parties vigorously sought out evidence to support their claims. The parties

exchanged tens of thousands of documents during the discovery process pursuant to written

discovery requests. Additionally, Plaintiffs developed evidence from three different experts that

asserted systematic denials of FAPE; Defendants presented evidence from five experts who

defended the State's approach to handling the problems that exist in special education and

highlighted the progress that has been made. Both sides had the opportunity to respond to

evidence presented by the other through depositions and rebuttal expert reports. *See Bronson v.

Bd. of Educ. of City Sch. Dist. of City of Cincinnati*, 604 F. Supp. 68, 77 (S.D. Ohio 1984)

(relevance of negotiations occurring after the case was well-advanced).

The parties participated in multiple mediation sessions to reach this Agreement. The

most recent mediation process extended for over a year. The parties participated in several day-

long, in-person meetings with the mediator and exchanged multiple drafts of proposed settlement

agreements. The parties also engaged in several telephone conversations to discuss the details of

certain provisions in the settlement agreement and to explain each side's position on certain

issues. Throughout these negotiations, both sides vigorously sought to advance their interests and the interests of those they represent. *See Thompson v. Midwest Found Indep. Physicians Ass'n.*, 124 F.R.D. 154, 158-59 (S.D. Ohio 1988) (relevance of extended negotiations); *see* Fed. R. Civ. P. 23(e)(2)(B) (requiring the proposed settlement be "negotiated at arm's length").

The parties' litigation history indicates that the Agreement is a good-faith compromise, not an act of collusion or fraud. The case has been vigorously contested, but as in most cases, the parties found a way, satisfactory to both sides, to settle their differences.

### 3. The Costs and Risks of Pursuing a Litigated Outcome Suggest that the Proposed Settlement is a Fair, Reasonable, and Adequate Result.

Rule 23 requires courts to consider "the costs, risks, and delay of trial and appeal" in determining whether to approve settlement agreements. Fed. R. Civ. P. 23(e)(2)(C)(i); *see also*, *Packaged Ice*, 2018 WL 4520931, at *6 (citing *Gen. Motors Corp.*, 497 F.3d at 631).

Courts look to the complexity, expense, and likely duration of the litigation when considering these factors. Settlement is more likely to be approved if the case has a long history, *Bronson*, 604 F. Supp. at 77; if the issues involved would require significant trial time to resolve, *In re Cincinnati Policing*, 209 F.R.D. 395, 400 (S.D. Ohio 2002); if appeals are likely to further delay ultimate resolution, *e.g.*, *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 371 (S.D. Ohio 1990); or if the plaintiffs' circumstances make delay particularly prejudicial, *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1015 (S.D. Ohio 2001).

Here, the costs and risks of continued litigation weigh in favor of approval in the present case. This case began over two decades ago, with the current phase of litigation beginning in October 2009 after the parties entered into a limited consent decree. Litigating this case through trial would bring further delay and additional expense; whereas, approval of the Agreement would result in both finality for the parties and immediate benefits for all class members.

Additionally, the Agreement is informed by the expert reports developed by both Plaintiffs and Defendants during discovery. Plaintiffs presented reports from Dr. Thomas Hehir, Dr. Thomas Parrish, and Dr. Mary Jo Dare. Defendants presented reports from Dr. Robert Pasternack, Dr. Eric A. Hanushek, and three Ohio special education experts. Each of the experts relied on significant amounts of information, including state-wide data, educational records from hundreds of students with disabilities, and thousands of pages of documents from state records. Both sides had the opportunity to review and respond to each other's expert reports, depose the experts, and provide rebuttal reports. The reports resulted in a settlement that is informed by data and the analyses of multiple educational experts.

Both the Plaintiffs and the Defendants face litigation risks if they continue press their claims and defenses. Defendants face the risk of Plaintiffs securing a judgment that provides less flexibility to Defendants than the Agreement. Plaintiffs face the risk of obtaining relief less to their liking than the Agreement and/or of delaying relief to class members. Many students with disabilities have matriculated through the educational system without the benefits that class members will receive through the Agreement. Litigation would delay this further and to the detriment of class members.

The Sixth Circuit has stated that "court[s] should defer to the judgment of experienced counsel who [have] competently evaluated the strength of [their] proofs." *Vukovich*, 720 F.2d at 922 (citations omitted). Plaintiffs' counsel collectively has decades of experience in complex federal civil rights litigation on behalf of people with disabilities. State Defendants likewise have experienced legal teams with decades of litigation experience. These experienced counsel all seek the Agreement's approval.

**4.    The proposed method of distributing relief to the class is effective.**

The Court should also consider "the effectiveness of any proposed method of distributing relief to the class . . . " Fed. R. Civ. P. 23(e)(2)(C)(ii). Here, the Agreement contemplates the development of a Plan that will be implemented state-wide with a focus on the 11 Districts. The relief obtained through the Agreement will benefit all class members simultaneously. Additionally, all class members retain the right to pursue IDEA's procedural safeguards processes (i.e. due process or state complaints) if they have claims regarding the individual services they receive from their school districts.

**5.    The Proposed Award of Attorneys' Fees is Fair, Reasonable, and Adequate.**

Both the IDEA and Section 504 provide for an award of attorneys' fees and costs.

Plaintiffs requested of Defendants $5,782,214.46 in attorneys' fees for 11,614.85 hours of attorney time and 4,305.6 hours of paralegal time including skilled educational advocates. Plaintiffs also sought $612,021.18 in costs. Plaintiffs have agreed to accept $3 million in fees from Defendants for all work done through the course of the litigation, as well as all work and expenses in participating in the Advisory Group (excepting any fees that might be necessary to enforce the agreement).

The $3 million in fees, awarded for nine years of litigation, is reasonable in light of other recent cases. For example, in *Blackman v. District of Columbia*, Steptoe and Bazelon (Plaintiffs' counsel in this case) were awarded $1,454,030 in fees for 2.5 years of work. *Blackman v. District of Columbia*, 677 F. Supp. 2d. 169, 177 (D.D.C. 2010), aff'd 633 F.3d 1088 (D.C. Cir. 2011). Additionally, in other recent public interest lawsuits, plaintiffs have recovered comparable fees. For example, in *Dupuy v. McEwen*, class counsel were awarded $5,700,000 in fees in a Section1983 due process class action against Illinois Department of Children and

Family Services, which settled after preliminary injunction and was affirmed by the Seventh Circuit. *Dupuy v. McEwen*, 648 F. Supp. 2d 1007, 1031-32 (N.D. Ill. 2009).

Plaintiffs based their request for $5,782,214.46 on their "lodestar"—the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Plaintiffs have also demonstrated that the large number of hours dedicated to this litigation were reasonably spent, that they exercised billing judgment in identifying the attorney time for which they seek compensation, and that there is support for the hourly rates they requested. It was reasonable for Plaintiffs to spend over 11,000 hours preparing and settling this case due to:

(1) Its complexity (the Court docket spans 5,899 entries and includes 406 pages, and the case involves school districts across the state and 260,000 children);

(2) The extensive discovery completed (reviewing thousands of pages of documents, identifying and interviewing potential witnesses including class exemplars, responding to discovery requests, and taking and defending depositions, including experts and representative Plaintiffs);

(3) Time spent preparing for and participating in two mediations (one in 2013 as well as the current mediation process); and

(4) Time spent working with and supporting experts (which required numerous negotiations and Court conferences to secure access to information).

Plaintiffs also exercised billing judgment by not seeking compensation for: time prior to October 2009, time deemed to be excessive, duplicative, or otherwise unnecessary, timekeepers who billed fewer than 75 hours, time related to securing and implementing the parties' previous consent decree, and time on individual advocacy for representative Plaintiffs. Additionally, fees

for travel time were reduced by 50% and total time was reduced by 5% to account for the possibility that, in exercising billing judgment, Plaintiffs missed some time that might be considered excessive or duplicative.

The hourly fees that Plaintiffs requested were based on judicial decisions in the Southern District of Ohio and the District of the District of Columbia. *See*, *e.g.*, *Hunter v. Hamilton Cty. Bd. of Elections*, No. 1:10CV820, 2013 WL 5467751, at *17 (S.D. Ohio Sept. 30, 2013) (applying "Rubin Committee rates," or an inflation-adjusted attorneys' fee rate originally established by the 1983 Rubin Committee); *Blackman*, 677 F. Supp.2d at 176 (applying standard "Laffey" rates as "the appropriate hourly rate for each Bazelon lawyer"); *id.* at 175 (Laffey rates "will fairly compensate for the excellent work those [Steptoe] lawyers have performed on behalf of the plaintiff class, at the same time recognizing the firm's commitment to *pro bono publico*"); *Miller v. Holzmann*, 575 F. Supp. 2d 2, 18 n.29 (D.D.C. 2008) (Laffey rates are the "benchmark for reasonable fees" in District of Columbia) (quoting *Pleasants v. Ridge*, 424 F. Supp. 2d 67, 71 n.2 (D.D.C. 2006)).

Given the above, Defendants' agreement to pay Plaintiffs $3 million in attorneys' fees and costs is reasonable.

### 6. The Settlement Treats the Class Members Equitably Vis-à-Vis One Another.

Rule 23 directs courts to consider whether the class members will be treated equitably vis-à-vis one another. Fed. R. Civ. P. 23(e)(2)(D).

Here, the Agreement treats class members equitably. The Agreement contains commitments from the State that will benefit all class members. Its focus on the 11 Districts is appropriate given the evidence developed during the litigation identifying the 11 Districts as in need of attention, compared to the rest of the State.

16

### 7. The Settlement is in the Public's Interest.

As the Sixth Circuit has noted, "the law generally favors and encourages the settlement of class actions." *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981) (citations omitted). Further, as this Court has held, the public is served by settlements that contribute to the provision of needed public services and are approved by public officials. *Thompson*, 124 F.R.D. at 161.

The settlement reached in this case serves the public interest. The Agreement will improve the education of children with disabilities across the State and in the 11 Districts. It specifies methods for accomplishing this end—including increasing focus on language and literacy skills, improving transition services to help students find jobs and/or pursue further education, and increasing professional development programs—that will make public education more effective and improve outcomes for students with disabilities. This will benefit not only the students themselves, but will also benefit the society at large by increasing students' skills toward successful future outcomes in integrated employment, education, and independent living.

The Agreement also is fiscally responsible. The Agreement allows Ohio and its taxpayers to avoid further litigation costs in this matter. It should also result in special education being provided more efficiently.

*** 

In sum, the Agreement is fair, reasonable, and adequate. It meets the factors in Rule 23 and Sixth Circuit precedent. It comes after years of litigation, extensive discovery, and mediation. It is entered into by knowledgeable parties and counsel, who have vigorously prosecuted and defended this case. It is an arms-length compromise. It will prevent further delay, expense, and risks of continued litigation. It should be approved—both preliminarily now, and ultimately later.

**B.     The Proposed Notice is Reasonably Calculated to Reach Current and Potential Class Members and will provide them the Opportunity to Share their Views with the Court.**

If the parties provide information sufficient to show the Court will likely approve the settlement, the Court must then "direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1)(B).

### 1.     Method of Providing Notice to Class Members.

Rule 23 and due process require notice of a proposed settlement agreement to be provided in a manner that is "reasonably calculated" to reach class members.  *Karkoukli's, Inc. v. Dohany*, 409 F.3d 279, 283 (6th Cir. 2005) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 318-20 (1950)).  No particular method of notice is required; instead, courts evaluate the proper method of notice on a case-by-case basis.  *See Shanechian v. Macy's Inc.*, No. 1:07-CV-828, 2013 WL 12178108 at *2-4 (S.D. Ohio June 25, 2013) (finding notice methods reasonable where the parties sent the notice to potential class members, maintained a dedicated settlement website, and circulated it through various news media); *see also*, *Packaged Ice*, 2018 WL 4520931, at *5 (affirming that notice was reasonable where the parties mailed notices directly to individuals, provided public notice through news organizations and on social media, and maintained a settlement website).

Here, as detailed above, the parties propose both direct notice to Class Members in the 11 Districts and public notice, including to inform those who might meet the class definition in the future.  In brief review, notice methods include mailing or emailing to current class members, posting in public school buildings and on public websites, and informing community stakeholders that provide services to students with disabilities.  See Section II, C, above.  These methods of notice are reasonably calculated to reach class members who will be affected by the proposed Agreement.

### 2.    Contents of the Notice to Class Members

In terms of content, proper notice "should be 'reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Gen. Motors Corp.*, 497 F.3d at 629 (quoting *Mullane*, 339 U.S. at 314); *Gooch v. Life Inv'rs Ins. Co. of Am.*, 672 F.3d 402, 423 (6th Cir. 2012) (notice must "fairly apprise [class members] of the terms of the proposed settlement" so that they "may come to their own conclusions about whether the settlement serves their interests") (quoting *Gen. Motors Corp.*, 497 F.3d at 630).  District courts have "wide discretion" in determining the proper "form and content of the notice." *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984) (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1350-51 (9th Cir. 1980)).

Here, the parties' proposed Notice meets these tests.  The proposed Notice explains the basis for the lawsuit, the parties involved, the people affected, the class definition, and the terms of the proposed Agreement.  It states how one can obtain a full copy of the Agreement and more information about the litigation.  It also explains how class members can comment on the Agreement before the Court decides whether to grant final approval. It provides the date, time, and location for the fairness hearing.

The parties intentionally wrote the proposed Notice in a clear, understandable, and accessible manner. Because the service system, this lawsuit, and the Agreement are complex, the proposed Notice invites interested parties to contact class counsel with any questions and provides for accommodations for people who need to submit comments or objections in alternative formats.

The parties believe the proposed Notice's content is appropriate and ask that it be approved.

IV.    CONCLUSION

       The Court should preliminarily approve the proposed Agreement because it is a fair,

reasonable, and adequate resolution of class members' claims. The parties' proposed methods of

notice, and the Notice itself, also should be approved since they are reasonably calculated to

reach and inform class members about the Agreement and how they can be heard.


Respectfully submitted,

s/ Kerstin Sjoberg                                          s/Mark Landes *
Kerstin Sjoberg (0076405)                                   Mark Landes (0027227)
ksjoberg@disabilityrightsohio.org                           mlandes@isaacwiles.com
Trial Attorney                                              Maribeth Meluch (0055903)
Laura Osseck (0082231)                                      mmeluch@isaacwiles.com
losseck@disabilityrightsohio.org                            Aaron M. Glasgow (0075466)
Jason C. Boylan (0082409)                                   aglasgow@isaacwiles.com
jboylan@disabilityrightsohio.org                            Isaac Wiles Burkholder & Teetor LLC
Disability Rights Ohio                                      Two Miranova Place, 7th Floor
200 Civic Center Drive, Suite 300                           Columbus, OH  43215
Columbus, OH  43215                                         Telephone:  (614) 221-5216
Telephone:  (614) 466-7264                                  Facsimile:  (614) 221-4541
Facsimile:   (614) 644-1888

*Counsel for Plaintiffs*                                     *Counsel for Defendants*

Douglas G. Green
dgreen@steptoe.com
Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, DC  20036
Telephone:  (202) 429-3000
Facsimile:   (202) 429-3902


Ira A. Burnim
irabster@gmail.com
Lewis L. Bossing
lewisb@bazelon.org
Judge Bazelon Center for Mental Health Law
1101 15th Street, NW, Suite 1212
Washington, DC  20005
Telephone:  (202) 467-5730
Facsimile:   (202) 223-0409

Lewis L. Bossing
lewisb@bazelon.org
Judge Bazelon Center for Mental Health Law
1101 15th Street, NW, Suite 1212
Washington, DC  20005
Telephone:  (202) 467-5730
Facsimile:  (202) 223-0409

*Of Counsel*

\* Email approval for electronic signature received November 5, 2019.

## CERTIFICATE OF SERVICE

A copy of the foregoing **JOINT MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AGREEMENT** has been served via the Court's electronic filing system this 5th day of November 2019, which will send notice of such filing to all counsel of record.

s/ Kerstin Sjoberg
Kerstin Sjoberg (0076405)