# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| John Doe, *et al*., | : | Case No.: 2:91-cv-00464 |
| | : | |
| Plaintiffs, | : | Judge:  Michael H. Watson |
| | : | |
| vs., | : | Magistrate Judge:  Chelsey M. Vascura |
| | : | |
| State of Ohio, *et al*. | : | Magistrate Judge Norah McCann King, |
| | : | Assigned |
| Defendants. | : | |

## JOINT MOTION FOR FINAL APPROVAL OF THE SETTLEMENT

The Parties respectfully move this Court to grant final approval of the proposed class

Settlement Agreement, attached as Exhibit A.  The Settlement Agreement meets the

requirements of Fed. R. Civ. P. 23 and is supported by class members and stakeholders.

Accordingly, the Court should grant final approval of the Agreement.

Respectfully submitted,

/s/ Kerstin Sjoberg
Kerstin Sjoberg (0076405)
ksjoberg@disabilityrightsohio.org
Trial Attorney
Laura Osseck (0082231)
losseck@disabilityrightsohio.org
Jason C. Boylan (0082409)
jboylan@disabilityrightsohio.org
Disability Rights Ohio
200 Civic Center Drive, Suite 300
Columbus, Ohio  43215
Facsimile:  (614) 644-1888

*Counsel for Plaintiffs*

/s/  Mark Landes*
Mark Landes (0027227)
mlandes@isaacwiles.com
Maribeth Deavers (0055903)
mmeluch@isaacwiles.com
Aaron M. Glasgow (0075466)
aglasgow@isaacwiles.com
Isaac Wiles Burkholder & Teetor, LLC
Two Miranova Place, 7th Floor
Columbus, Ohio 43215
Tel: (614) 221-2121
Fax: (614) 365-9516

*Attorneys for Defendants*

*Approval for electronic signature received
via telephone on February 5, 2020.

Douglas G. Green
dgreen@steptoe.com
Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, DC  20036
Telephone:  (202) 429-3000
Facsimile:   (202) 429-3902

Ira A. Burnim
irabster@gmail.com
Lewis L. Bossing
lewisb@bazelon.org
Judge Bazelon Center for Mental Health Law
1101 15th Street, NW, Suite 1212
Washington, DC  20005
Telephone:  (202) 467-5730
Facsimile:   (202) 223-0409

Lewis L. Bossing
lewisb@bazelon.org
Judge Bazelon Center for Mental Health Law
1101 15th Street, NW, Suite 1212
Washington, DC  20005
Telephone:  (202) 467-5730
Facsimile:   (202) 223-0409

*Of Counsel*

## I.     INTRODUCTION

The Parties ask the Court to grant final approval of the proposed class Settlement

Agreement.  As set forth in detail in the Parties' Motion for Preliminary Approval (Doc. 584), the

Settlement Agreement ("Agreement") is a fair, reasonable, and adequate resolution of the class

claims, and it satisfies the requirements for final approval described by the Sixth Circuit, this Court,

and the recently-amended Rule 23 of the Federal Rules of Civil Procedure.

The Agreement has received support from class members and organizations in the education

field with only two class members objecting to the Agreement.  Collectively, the support highlights

the many benefits of the Agreement, which is designed to address key areas of need - the State must

improve Least Restrictive Environment ("LRE") and achievement rates for students with disabilities

in Ohio.  To achieve these improvements, the Agreement requires the State to create a plan,

informed by several strategies, for redesigning the state system of support for special education and

include a particular focus on 11 school districts.[1]  The plan will benefit students statewide as well as

students in the 11 districts.  Additionally, the State must assist the 11 districts in the development of

their own plans to improve student achievement and LRE, which the State will monitor and enforce

within its authority under state and federal law.  The Agreement provides a mechanism for

modification if desired outcomes are not being achieved.  The Agreement's benefits adequately

resolve the class claims and allow the parties to avoid the costs and uncertainty of further litigation

of those claims.

Further, the parties have agreed that Plaintiffs will be awarded $3,000,000 in attorneys' fees

and costs for nine years of litigation, including compensation for 11,614.85 hours of attorney time

and 4,305.6 hours of paralegal time.

---

[1] The 11 Districts are: Akron Public, Canton City, Cleveland Metropolitan, Cincinnati Public, Columbus City, Dayton
Public, Toledo Public, Youngstown City, Lima City, Zanesville City, and East Cleveland City School Districts.

After nine years of litigation, substantial discovery, expert evaluations and reports, and multiple rounds of arms-length negotiations, the Parties view the proposed Agreement as an acceptable resolution to this case that will benefit class members.  As shown below, Rule 23 of the federal Rules of Civil Procedure and Sixth Circuit case law counsel approval.  Accordingly, the Parties respectfully request this Court approve the proposed Agreement as the final resolution of class claims.

## II.     FACTS

### A.     History of Proceedings

Comprehensive descriptions of the Plaintiffs' Complaint, discovery proceedings, expert evaluations and reports, and past settlement efforts are contained in the Parties' Joint Motion for Preliminary Approval filed on November 5, 2019 (Doc. 584) and in Plaintiffs' Motions for Attorneys' Fees and Costs filed on December 5, 2019 (Doc. 588) and are not repeated here.

In brief, the Agreement seeks to settle the claims of the certified class of systemic denial of the special education that is their due under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 *et seq.* and the Rehabilitation Act of 1973, 29 U.S.C. §§ 790 *et seq.*  The class consists of:  All children, ages three through 21, currently enrolled or seeking enrollment, now or in the future, in Ohio's public school system, who (1) have a disability under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 *et seq.*, the Rehabilitation Act of 1973, 29 U.S.C. §§ 790 *et seq.*, or the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*, and (2) require, as a result of their disability, special education and related services or accommodations that are designed to meet the individual educational needs of students with disabilities as adequately as the needs of nondisabled children are met, and the parents or guardians of such children.  Doc. 59 (entered on Feb. 20, 1996).

###### B.       The Parties' Settlement Agreement

The Agreement, attached as Exhibit A, is intended to improve special education and related services provided to students with disabilities across the State, and, in particular, in the 11 districts. It is intended to improve both student achievement and LRE rates, that is, the results for students with disabilities.

The Agreement provides for additional support to school districts by the Ohio Department of Education ("ODE") so that school districts, particularly the 11 Districts, meet the requirements of federal law.  This requires the development of a plan (the "Plan") to redesign and improve ODE's support to school districts for providing special education.  For the 11 Districts, the Plan must include measures designed to achieve existing or, updated, targets for student achievement and LRE rates.  Existing targets may be increased but not lowered during the term of the Agreement.

The Plan will include a focus on improving language and literacy, including early literacy, for students with disabilities.  The Plan will also include a focus on improving supports to students with disabilities who are getting ready to leave high school with the aim of better preparing them for life after school.  It will also include measures to help parents understand that their children, if they have not met graduation requirements, can continue receiving special education until they reach age 22.  The Plan will stress the use of assistive technology, as well as two proven educational strategies --universal design for learning ("UDL") and multi-tiered systems of support ("MTSS").  The Plan will include more training for school district staff in providing special education and related services that will improve student achievement and LRE.

The Plan provides for the 11 Districts to develop and implement their own plans.  ODE will monitor and take action if school districts fail to properly implement their improvement plans.  The Plan will be reviewed to make sure it is achieving desired results and modified if it is not.

An Advisory Group will assist ODE to develop the Plan and monitor the Plan's implementation. The Advisory Group, which has already been formed, includes two representatives chosen by the plaintiffs, one representative chosen by ODE, the Director of the Office for Exceptional Children ("OEC"), the Associate Director of OEC, and the Director of the Urban Support Team. The Advisory Group will review how the Plan is working and propose modifications if desired results are not being achieved. ODE will update the Advisory Group about the Plan and how it is working.

The Agreement has a process for resolving disputes that may arise while it is in place. The Parties will first try to work together to resolve disagreements. If unsuccessful, the Parties will seek the assistance of a mediator. If they are unable to resolve the dispute through mediation, Plaintiffs or Defendants can seek appropriate intervention from the Court.

Defendants have agreed to pay $3,000,000 to Plaintiffs' attorneys as compensation for their time and costs. Plaintiffs spent 11,614.85 hours of attorney time and 4,305.6 hours of paralegal time over a nine-year period pursuing the class's claims. Plaintiffs' lodestar for fees is $5,782,214.46. In addition, Plaintiffs had $612,021.18 in out of pocket costs. The parties agree that the payment to Plaintiffs will include any claim for fees and expenses for their work on the Advisory Group.

### C. Completion of Parties' Notice Obligations

In their Motion for Preliminary Approval, the Parties outlined a notice process, which the Court approved. *See* Doc. 585. Complying with that process, the Parties timely informed the class and public of the proposed Settlement Agreement through both direct and indirect methods.

Shortly after preliminary approval, ODE posted the Notice on its website and sent the Notice via email to all Local Education Agencies ("LEAs"), State Support Teams ("SSTs"), and Educational Service Centers ("ESCs") and requested that each post the Notice on their websites as well as in a central location in all buildings open to the public. Doc. 587-2, ¶¶ 3-4. ODE also

requested that school districts send the Notice directly to the parents or students through email, any electronic portals (for example, parent or student portals used to distribute grades, assignments or forms) or other means reasonably calculated to reach the parents or students in the district.  *Id.*

Disability Rights Ohio also posted the Notice on its website, sent the Notice through its Constant Contact listserv, and posted the Notice on its Facebook page.  Doc. 587-1, ¶3(d). Disability Rights Ohio also provided the Notice to all class representatives and to all individuals who called and requested a copy.  *Id.* ¶ 3(a)-(b).  Disability Rights Ohio provided information, including the Notice to over 15 organizations so that they could disseminate the Notice to the individuals they serve.  *Id.* ¶ 3(c).  During the comment period, Disability Rights Ohio received 43 telephone calls and e-mails.  Declaration of Laura Osseck, ¶ 10, attached as Exhibit B.

As instructed, the Parties met their notice obligations and provided the required documentation to the Court by December 5, 2019 per the Court's order.

### D. Responses to the Court-Approved Notice of Preliminary Approval

Notice of the Parties' Settlement Agreement generated comments from a range of stakeholders.  The Court received 38 letters from class members, from community organizations that include, and advocate on behalf of, individual class members, and from advocacy groups who represent and support the rights of students with disabilities.  Osseck Decl., ¶ 4.  These individuals and organizations support the Settlement Agreement, and urge this Court to approve it as a fair and adequate resolution of class claims.  Many of these supporters specifically mentioned the Agreement's commitment to inclusion, improved services for transition, improved behavioral services, and improved professional development for staff and administration.

The Court also received two comments from class members, both of whom have experienced extreme difficulty advocating for and obtaining needed services for their children and questioned

whether the Agreement would help families like theirs and whether it covers all children with educational needs.

## III.    ARGUMENT

District courts in the Sixth Circuit must follow three procedural steps in approving a proposed class settlement: (1) the Court preliminarily approves the proposed settlement; (2) the parties provide notice of the proposed settlement to the class members; and (3) the Court holds a fairness hearing. *Tennessee Ass'n of Health Maint. Organizations v. Grier*, 262 F.3d 559, 565-66 (6th Cir. 2001) (citing *Williams v. Vukovich*, 720 F.2d 909, 920-21 (6th Cir. 1983)).  The Court has already granted preliminary approval of the Settlement Agreement; the Parties provided notice to class members as the Court instructed; and, the Court scheduled a fairness hearing for February 11, 2020.

With these procedural requirements satisfied, the remaining issue before the Court is whether the Settlement Agreement meets the substantive requirements for final approval. Specifically, before granting approval of a class action settlement, a district court must find that it is "'fair, reasonable, and adequate.'"  *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) (quoting the former Fed. R. Civ. P. 23(e)(1)(c), now Fed. R. Civ. P. 23(e)(2)).  Traditionally, district courts in the Sixth Circuit look to the following seven factors in evaluating a proposed class settlement: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel; (6) the reaction of class members; and (7) the public interest.  *See, e.g.*, *In re Packaged Ice Antitrust Litig.*, No. 17-2137, 2018 WL 4520931, at *6 (6th Cir. May 24, 2018) (citing *Gen. Motors Corp.*, 497 F.3d at 631).  Following the December 2018 amendments to Federal Rule of Civil Procedure 23(e), district courts nationwide are now required to also consider whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    (i) the costs, risks, and delay of trial and appeal;

    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv) Any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The Court has already made a preliminary determination that the Agreement is "fair, reasonable, and adequate" for the reasons set forth in the Joint Motion for Preliminary Approval, Doc. 584. As explained in that Motion, the class representatives and class counsel have adequately represented the class, *id.* at 10; there is no evidence of fraud or collusion and the Parties reached the settlement after extensive arms-length negotiations, *id.* at 10-12; the costs and risks of pursuing a litigated outcome favor approving the proposed settlement, *id.* at 12-13; the settlement treats class members equitably, *id.* at 16; and, the settlement serves the public interest, *id.* at 17. The Parties incorporate in full their Joint Motion for Preliminary Approval. Doc. 584.

In support of final approval, Plaintiffs have submitted declarations from class representatives concerning the roles they played. *See* Declaration of Jason Johnson, attached as Exhibit C; Declaration of Amy Stinson, attached as Exhibit D; Declaration of Candance Ulbrich, attached as Exhibit E. Plaintiffs have also submitted a declaration from Dr. Thomas Hehir, their lead expert, in support of the Agreement. *See* Declaration of Dr. Thomas Hehir, attached as Exhibit F.

Based on the record before the Court, the Parties submit, no dispute exists as to whether final approval should be granted. The remainder of this brief, therefore, addresses the reaction of class members and stakeholders, a matter the Parties have not previously addressed.

**A.    The Proposed Settlement Should be Approved in Light of the Positive Reaction from Class Members and Stakeholder Organizations.**

The letters from class members commenting on the proposed Class Settlement have already been filed with the Court. Docs. 591-1, 592, 596. In their comments, class members indicated that they want class members to receive appropriate educational services resulting in improved outcomes for students with disabilities.

Community disability and advocacy organizations also weighed in with support for the Agreement stating that the Agreement should improve student achievement, the inclusion of students in general education classrooms per IDEA's LRE mandate, and improve the quality of services delivered through IEPs.

**1.    Comments from Class Representatives and Class Members**

The experiences described by the class members, including Class Representatives, illustrate how the provisions in the Agreement will benefit class members. The Declarations of the Class Representatives, which set forth their individual circumstances and the impact the proposed settlement has on them, are attached hereto as Exhibits C through E. The Declarations support the proposed Agreement in this case.

In addition, commenting class members generally approved the Agreement's commitment to improved outcomes, improved services for students with disabilities, and improved professional development. *See* Doc. 591-1. Class members specifically noted the Agreement's focus on literacy, transition services, behavior supports and services, and assistive technology as reasons to support the Agreement. *See, e.g., id.* at Page ID# 10073, 10077, 10094.

The Court received only two letters in opposition to the Settlement Agreement from class members. *Id.* at Page ID # 10097, 10100. These letters reflect the same general issues that are described in the letters of the support, namely the struggles many parents face advocating for and obtaining appropriate services for their children. One letter, however, questions the efficacy of Multi-Tiered Systems of Support ("MTSS"). Research demonstrates MTSS's efficacy, and it is supported by ODE and both Plaintiffs' and Defendants' experts.[2] The Agreement requires "support for the implementation of robust multi-tiered systems of support ("MTSS")."

The other letter in opposition questions whether the Settlement Agreement will impact school districts outside of the 11 districts or children identified as needing both special education and gifted services ("twice-exceptional"). The Parties believe that it will. The Agreement applies statewide and "twice-exceptional" children are members of the class. The concerns of the two parents opposing the Agreement are understandable; they are not barriers to the approval of the Settlement Agreement.

### 2.      Expert support for the Settlement Agreement

Plaintiffs have submitted a declaration from Dr. Thomas Hehir in support of the Agreement. Exhibit F, Hehir Decl.. Dr. Hehir is a nationally-recognized expert and former director of the Office of Special Education Programs in the U.S. Department of Education with almost 40 years' experience working in the field of special education. Dr. Hehir conducted an expert evaluation in this case on behalf of Plaintiffs.

Dr. Hehir supports the Agreement because of its commitment to an improved system of monitoring the provision of special education across Ohio, including a commitment to implementing measures designed to achieve state targets for achievement and LRE. *Id.* ¶¶ 19, 27. He notes that

---

[2] Sugai, George, *School-wide Positive Behavior Support and Response to Intervention*, available at: http://www.rtinetwork.org/learn/behavior-supports/schoolwidebehavior (last visited, January 27, 2020).

the Agreement obligates the State to provide additional supports to the 11 districts to help them meet state targets and develop their own plans for improvement, which the State will monitor and, consistent with its authority, enforce.  *Id.* ¶¶ 20-22.  Dr. Hehir also highlights other commitments by the State that will help districts achieve better outcomes for students with disabilities, including a focus on language and literacy, professional development for staff, the use of multi-tiered systems of support, and appropriate transition planning.  *Id.* ¶¶ 23-26.  Dr. Hehir notes the important role the Advisory Group will play in the implementation of the Agreement by assisting in the development of the State's Plan and monitoring the Plan's implementation.  *Id.* ¶¶ 27-28.  Dr. Hehir agrees that the Settlement Agreement, if appropriately implemented, will address the problems he identified in his expert report.  *Id.* ¶ 18.

### 3.  Community and advocacy organizations support the Settlement Agreement

The Agreement has also received support from organizations that serve parents and students with disabilities.  The Ohio Coalition for the Education of Children with Disabilities ("OCECD"), a publicly-appointed agency, which serves as the state-wide Parent Training and Information Center, writes that they support the Agreement because it will improve the inclusion of students with disabilities in the general education classroom and student achievement, provide for better training for staff and administrators, improve the use of positive behavior interventions and supports, and improve transition services.  *See* Doc. 591-1 at PageID # 10079.

The NAACP Youngstown/Mahoning County Branch also wrote in support of the Agreement.  *Id.* at PageID # 10064.  The NAACP Youngstown/Mahoning County Branch provides advocacy services to students with disabilities in Youngstown City School District.  *Id.*  The NAACP states that the Agreement will provide support that school staff need to appropriately serve

students with disabilities, and thereby improve inclusion of students with disabilities in the general education classroom and levels of achievement. *Id.*

The Ohio Poverty Law Center ("OPLC") also wrote in support of the Agreement. Doc. 591-1 at PageID # 10095. OPLC is an advocacy organization that works closely with Legal Aid programs across the state to advance the interests of low-income Ohioans. *Id.* OPLC supports the creation of a plan that removes the barriers to education that students with disabilities face, including through positive behavior interventions and supports, and the development of individual improvement plans for the 11 districts. OPLC also praises the Agreement's provisions for responding when desired results are not obtained, for example, because districts fail to implement improvement plans. *Id.*

Ohio TASH, the state chapter of international TASH, works for inclusive schools and communities. Doc. 591-1 at PageID # 10069. Their letter supports the Agreement's focus on inclusion of students with disabilities in the general education classroom as well as its focus on academic achievement. *Id.*

Finally, the Ohio Education Association ("OEA"), Ohio's largest representative of special education teachers and providers of related services for students with disabilities also weighed in. Doc. 591-1 at PageID # 10119. In their letter, the OEA highlights the Agreement's focus on academic outcomes for students with disabilities and the inclusion of students with disabilities with their non-disabled peers. *Id.* The OEA also emphasizes the need for additional resources from the State so that the school districts and personnel have the support they need to appropriately serve students with disabilities and implement the terms of the Agreement. *Id.* The school districts that are part of the OEA look forward to a collaborative working relationship with the State to improve outcomes for students with disabilities. *Id.*

11

Significantly, no organization that provides services to students with disabilities objected to the Settlement Agreement.

    **B.**    **The agreed-upon fee and cost award is fair and reasonable.**

Under amended Fed. R. Civ. P. 23(e)(2)(c)(iii), courts reviewing class action settlements must consider "the terms of any proposed award of attorney's fees, including timing of payment." The Parties' reached agreement on attorneys' fees, with Plaintiffs accepting a negotiated amount of fees. Like the Agreement, the Parties' fee agreement was heavily negotiated and represents significant compromises from both sides. *See* Doc. 593-1, ¶ 11.

Plaintiffs' filed their Motion for Attorneys' Fees and Costs on December 5, 2019, with supporting memorandum and attachments. *See* Doc. 588. Plaintiffs have also submitted supplemental information at the Court's request. *See* Docs. 593, 593-1 through 593-4. Plaintiffs' Motion and the supplemental materials detail why the agreed-to award of $3,000,000 is fair and proper under Rule 23(h), and consistent with relevant case law governing the award of attorneys' fees in this action. Those arguments, and their application to the facts of this case, are incorporated here by reference. The timing of the payment is reasonable. Defendants may make annual installments of $600,000 per year, rather than one lump sum payment.

Three class members noted the fee award in their comments. One expressed agreement with the award and one noted the award with the implication of an objection to it. The third class member misinterpreted the fee award to be a fund from which parents could seek reimbursement for attorneys' fees they incurred in individual cases. Such a fund is not part of the Agreement. Class members however retain the right to pursue procedural safeguards under IDEA, Section 504 or Ohio law on behalf of their individual students, which would include awards for attorneys' fees if the class member is a prevailing party. No other class members commented on the award of fees.

## IV.    CONCLUSION

For the reasons above, the Court should grant final approval of the Settlement Agreement.

Respectfully submitted,

| | |
|---|---|
| */s/ Kerstin Sjoberg*                              | /s/  *Mark Landes\** |
| Kerstin Sjoberg (0076405) | Mark Landes (0027227) |
| ksjoberg@disabilityrightsohio.org | mlandes@isaacwiles.com |
| Trial Attorney | Maribeth Deavers (0055903) |
| Laura Osseck (0082231) | mmeluch@isaacwiles.com |
| losseck@disabilityrightsohio.org | Aaron M. Glasgow (0075466) |
| Jason C. Boylan (0082409) | aglasgow@isaacwiles.com |
| jboylan@disabilityrightsohio.org | Isaac Wiles Burkholder & Teetor, LLC |
| Disability Rights Ohio | Two Miranova Place, 7th Floor |
| 200 Civic Center Drive, Suite 300 | Columbus, Ohio 43215 |
| Columbus, Ohio  43215 | Tel: (614) 221-2121 |
| Facsimile:  (614) 644-1888 | Fax: (614) 365-9516 |
| | |
| *Counsel for Plaintiffs* | *Attorneys for Defendants* |
| | |
| Douglas G. Green | \*Approval for electronic signature received |
| dgreen@steptoe.com | via telephone on February 5, 2020. |
| Steptoe & Johnson LLP | |
| 1330 Connecticut Avenue, NW | |
| Washington, DC  20036 | |
| Telephone:  (202) 429-3000 | |
| Facsimile:  (202) 429-3902 | |

Ira A. Burnim
irabster@gmail.com
Lewis L. Bossing
lewisb@bazelon.org
Judge Bazelon Center for Mental Health Law
1101 15th Street, NW, Suite 1212
Washington, DC  20005
Telephone:  (202) 467-5730
Facsimile:   (202) 223-0409

Lewis L. Bossing
lewisb@bazelon.org
Judge Bazelon Center for Mental Health Law
1101 15th Street, NW, Suite 1212
Washington, DC  20005
Telephone:  (202) 467-5730
Facsimile:   (202) 223-0409
*Of Counsel*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing Joint Motion for Final Approval of

Proposed Class Action Settlement was filed electronically on February 5, 2020.  Notice of this filing

will be sent by operation of the Court's electronic filing system to all parties indicated on the

electronic filing receipt.

s/Kerstin Sjoberg
Kerstin Sjoberg (0076405)

14