# SETTLEMENT AGREEMENT

This Settlement Agreement is between John Doe, et al. ("Plaintiffs") and State of Ohio, et al. ("Defendants") and will become effective upon Court approval, subject to the provisions of Section 12 below.

## BACKGROUND INFORMATION

A. Plaintiffs are individual students who have filed a lawsuit styled *John Doe, et al., v. State of Ohio, et al.*, in the United States District Court, Southern District of Ohio, Eastern Division, Case No. 2:91-cv-464, asserting claims under the Individuals with Disabilities Education Act ("IDEA") and Section 504 of the Rehabilitation Act;

B. The parties agree that there has been significant progress statewide in educating students in the least restrictive environment ("LRE") over the past decades. Currently, the percentage of students who spend more than 80% of their time in regular classrooms is above the national average, with almost 70% of students in the non-urban districts (Typology 1-6) spending greater than 80% in general education settings;

C. The parties further agree that through the efforts of the State of Ohio, particularly the Ohio Department of Education ("ODE"), graduation rates statewide for Ohio students, including those of special education students, have continued to improve over the past decade; for the school year 2016-2017, all subgroups improved their proficiency rates in English language arts and math compared to the previous year; and more than 3,000 Ohio students met the Prepared for Success criteria, and nearly 6,000 more earned a "bonus point" compared to last year;

D. Through discovery and consultation with experts in the field of education, the parties agree that certain students with disabilities in large urban settings in Ohio need additional focus and support;

E. The parties share a commitment to quality education for all students in Ohio and a results oriented approach to special education, specifically directed to eleven large urban districts in Ohio to include those in Typology 8 along with Lima, Zanesville and East Cleveland (collectively, the "Target Districts").

F. ODE has proposed and Plaintiffs agree that a shared commitment to the following objectives (the "Guiding Principles") will further improve outcomes for students with disabilities enrolled in schools in the Target Districts. The parties also agree that this shared commitment is consistent with and will enhance the identification of comprehensive (Priority) and targeted (Focus) support for schools outlined in ODE's state plan that was submitted and approved by the US Department of Education and with ODE's strategic plan (currently being finalized). :

- Additional support by ODE to assist with the Target District's compliance with IDEA, including through ODE's Urban Support team, Educational Service Centers, and State Support Teams;

- Strengthening ODE's Urban Support Team;

- Focusing the school improvement activities of the Urban Support Team to complement support provided by the Educational Service Centers and State Support Teams;

- Additional professional development based on particular and observed needs,

- Increased focus on language and literacy, including through support from the Regional Literacy Specialists, and

- Improved initiatives for post-secondary transition, including pursuant to the Workforce Innovation and Opportunity Act.

G. The actions that Defendants will take pursuant to this Agreement are geared toward improving the achievement of students with disabilities and their inclusion in regular classrooms. As described below, Defendants believe this will improve the Ohio Department of Education's ("ODE") statewide system of support for school districts.

## PROVISIONS

NOW THEREFORE, in consideration of the foregoing and for valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree to the following terms, covenants and obligations:

1. <u>Development of Plan</u>. Within one year of the Effective Date of this Agreement, , ODE will design a plan for a redesigned state support system for special education including a particularized approach for the Target Districts (the "Plan") consistent with the Guiding Principles.

2. <u>Content and Objectives of the Plan</u>. The Plan will be reasonably designed to improve rates of achievement, including LRE, in the local districts, particularly the Target Districts. For purposes of this Agreement, "achievement" shall mean improvement in student scores in language, literacy and math; improving rates of students that meet the Prepared For Success ("PFS") component of the Ohio School Report Card; and, improvement in the special education program performance indicators outlined in ODE's Part B State Performance Plan (SPP) that includes measurable and rigorous targets for the 17 indicators identified by the Office of Special Education Programs (OSEP) at the U.S. Department of Education (USDOE), which is updated consistent with governing law. The Plan will also be consistent with ODE's goals outlined in the state plan submitted under the Every Student Succeeds Act. The goals for improvement in achievement, including LRE, for the Target Districts will be ambitious. The Plan will be informed by evidenced-based strategies and include:

    a. Measures designed to achieve the existing, or updated, SPP indicators for achievement and LRE beginning in the second year of this Agreement, for each of the Target Districts. The current indicators for achievement and LRE– Indicators

2

      1, 3c, 5a, and 14 -- may be increased but not lowered during the term of this Agreement;

b. A process for the periodic review of the Plan for the purpose of (i) assessing its effectiveness and (ii) prospects for ODE to increase the SPP indicators if and when appropriate, which will be done every 5 years, at a minimum;

c. Increased focus on language and literacy, including early literacy. The increased focus will include support provided by Regional Early Literary Specialists including dedication of one individual Regional Early Literacy Specialist to each of the Target Districts;

d. Providing the Urban Support Teams with the leadership and staff to provide necessary support to the Target Districts to identify barriers to achievement, including LRE, and strategies to overcome these barriers;

e. Provision of additional professional development activities and technical support to the IEP teams in the Target Districts to ensure students receive the necessary supports and services pursuant to the requirements of the IDEA and that decisions are made on an individualized basis;

f. Provision of professional development for leadership and teachers (with particular attention to the Target Districts) focused on areas of greatest need and with emphasis on student achievement, including LRE;

g. Providing targeted support to improve school climate (i.e. a climate where every student feels safe and engaged) and implementation of a district-wide system of positive behavior intervention and support including Tier II and Tier III interventions and supports;

h. Providing support for the implementation of robust multi-tiered systems of support ("MTSS");

i. Providing technical support and assistance to each of the Target Districts in connection with the development of its own improvement plan consistent with, and as outlined in, the Plan (which shall include parameters to assist the local districts in their own planning process), including continuing to offer guidance regarding the Target Districts' responsibilities for providing IDEA "related services" that address a student's mental health needs;

j. A policy for imposing progressive sanctions on local districts for failing to meet their improvement plans;

k. Increased focus on strategies for improving post-secondary transition, including language and literacy;

    l. Universal design for learning and assistive technology;

    m. Continued focus on helping parents understand that students may continue to receive special education until they reach age 22 or they have met the requirements for graduation that apply to students without disabilities, whichever occurs first, and

    n. A provision for modifying the Plan if improvements are not occurring. Any modifications will be informed by evidence based strategies.

3. <u>Target Districts Advisory Group</u>. ODE will design the Plan in consultation with the Target Districts Advisory Group, which will be comprised of no less than seven (7) members consisting of: two representatives designated by Plaintiffs, one representative designated by ODE, the Director of the Office for Exceptional Children ("OEC"), the Associate Director of OEC, the Director of the Urban Support Team, and up to two additional members as mutually agreed upon by the parties. The Target Districts Advisory Group shall be administratively supported by ODE. Plaintiffs acknowledge that ODE has a federally required State Advisory Panel for Exceptional Children ("SAPEC"). The purpose of the Target Districts Advisory Group is twofold: (1) to offer guidance to ODE in developing the Plan, which will then be presented to SAPEC for review, and (2) to review and provide advice regarding ODE's efforts to develop the Plan and implement the Plan across the Target Districts. The Target Districts Advisory Group is advisory only and lacks authority to require approval of the Plan by ODE, who has the full authority to approve the Plan after considering input from SAPEC and the Target Districts Advisory Group. The Target Districts Advisory Group will have the discretion to establish its own operating procedures. ODE and the Target Districts Advisory Group will agree on the frequency and location of Target District Advisory Group meetings (with an option for Advisory group members to participate by phone or videoconference). The Target District Advisory Group will decide the manner in which it reviews the Plan and provides its advice regarding ODE's implementation of the Plan.

4. <u>Role of Target Districts Advisory Group</u>. The parties acknowledge and understand that the role of the Target Districts Advisory Group is advisory only and it will have no authority to direct the actions of OEC or ODE. The parties further acknowledge and understand that Ohio is a local control state and ODE will not be held responsible for the actions or failure to act by local districts in adopting, implementing, or complying with those facets of the Plan made applicable to the local districts if (i) Defendants lack the authority under federal and state law to secure implementation or compliance by the local district or (ii) if Defendants have the authority under federal and state law to secure implementation or compliance by the local district, Defendants have made all reasonable efforts to secure implementation or compliance by the local district. If Defendants determine they lack the authority under federal and state law to secure implementation or

compliance by a local school district, Defendants will notify Plaintiffs. The parties acknowledge and understand that changes in leadership in a school district or unforeseen events may temporarily delay a school district's implementation of one or more facets of the Plan applicable to the school district. If one of the Target Districts has a change in key personnel and that results in the Target District's lack of improvement, or, for example, if there is a failure of a Target District to implement certain school improvement activity allegedly due to collective bargaining restrictions, these would be addressed by the above standard. Plaintiffs cannot pursue action against ODE for that failure if it is outside of ODE's control.

5. <u>Updates by ODE</u>. ODE will provide updates to the Target Districts Advisory Group as to its development and implementation of the Plan no less than on a quarterly basis and the Target Districts Advisory Group may make suggestions to ODE on the implementation of the Plan.

6. <u>Implementation of the Plan</u>. Beginning in the second year of this Agreement and subsequent years, ODE shall make all reasonable efforts to implement the Plan. In the second year of this Agreement, ODE will assist each Target District in developing its respective local district improvement plan. Beginning in the second year of this Agreement and in subsequent years, the Target Districts Advisory Group will advise the parties whether, in their view, the Plan is being implemented with fidelity, and will provide suggestions to ODE to address any deficiencies noted in the Plan or its implementation.

7. <u>Local District Compliance</u>. Beginning in the third year of this Agreement, ODE shall make all reasonable efforts within its authority under federal and state law to assure the Target Districts are implementing their respective improvement plans. Throughout the term of this Agreement, ODE shall continue to implement and assess the redesigned system of support in accordance with the Plan.

8. <u>Alternative dispute resolution</u>. If the Plaintiffs determine there is evidentiary support that ODE has not met its obligations, described above, to develop and implement the Plan in accordance with the deadlines outlined above, or that beginning in the third year of this Agreement, improvements in achievement, including LRE, against the goals outlined in the SPP, are not being realized, Plaintiffs can seek relief under the following alternative dispute resolution procedure:

    a. Plaintiffs shall provide written notice to ODE of the basis for Plaintiffs' dissatisfaction, said notice being directed specifically to the following individuals:

       - State Superintendent of Public Instruction

       - Chief Legal Counsel

- Senior Executive Director of Curriculum and Assessment

- Director of Office for Exceptional Children

b. Within thirty (30) days of receipt of the notice from Plaintiffs, DRO and ODE shall meet and confer in an effort to agree on how to address Plaintiffs' concerns. The parties may consult with the Target Districts Advisory Group for assistance in addressing Plaintiffs' concerns.

c. If DRO and ODE cannot resolve the disagreement, they shall submit the dispute to mediation. DRO and ODE shall agree on a mediator, said mediator being someone with experience and knowledge in special education. ODE shall timely implement the solutions agreed upon during mediation.

d. If DRO and ODE cannot reach agreement during a mediation process of two months, Plaintiffs may seek relief from the Court.

e. Notwithstanding the foregoing, the parties acknowledge and agree that this alternative dispute resolution is not intended to supersede ODE's current day-to-day practice of receiving and addressing educational practice issues through the Office for the Exceptional Children.

9. <u>Term of Agreement</u>. The term of this Agreement will be for five years from the Effective Date of the Agreement.

10. This Agreement is intended to resolve all claims asserted in the Plaintiffs' current Complaint, or that could have been asserted in this action, by each and any member of the class certified in this action. All such claims are hereby released in full in perpetuity by each and every member and on behalf of each and every member's heirs, successors, assigns and representatives. The certified class acknowledges and agrees that the terms of this Agreement are beneficial to the certified class. This waiver applies to any and all claims for systemic relief related to matters addressed in this Settlement Agreement. This waiver is not intended to bar an individual class member from pursuing an administrative or judicial action claiming that, as to that class member alone, the class member is not receiving all the special education services in the LRE to which the class member is entitled, under IDEA, Section 504, or Ohio law.

11. <u>Access to Information</u>. Subject to federal and state privacy laws, including FERPA, ODE will provide the Advisory Group with data and other information reasonably requested by the Target District Advisory Group and within a reasonable time period.

12. <u>Contingent Approval.</u> This agreement is explicitly contingent on the parties agreeing to the amount of attorney's fees and costs to be paid by Defendants to counsel for the class. The parties agree to seek the proposal of the mediator and ODE agrees to use reasonable efforts to seek approval to pay the amount of the mediator's proposal. If the fees are not approved pursuant to the State's process, this document is null and void for all purposes. By signing this Agreement, the parties agree that before there is an agreement on fees, there is no prevailing party in the pending matter that is based on this Agreement.

13. <u>Court Approval.</u> If the parties agree pursuant to paragraph 12, they will submit this Agreement to the Court for approval pursuant to Fed.R.Civ.P. 23. The parties agree that, if the Agreement is approved, the Court has the authority and jurisdiction to ensure the parties meet their obligations under the Agreement.

14. <u>Consent Decree.</u> Plaintiffs acknowledge that the Consent Decree entered October 21, 2009 is no longer operative.

## DEFINITIONS

a. "Plaintiffs" refers to the named Plaintiffs and the plaintiff class. The certified plaintiff class is described in Doc. 59 (entered on Feb. 20, 1996).

b. "Defendants" refers to The State of Ohio; John Kasich, in his official capacity as Governor of the State of Ohio; Paolo DeMaria in his official capacity as the State Superintendent of Public Instruction; The Ohio State Board of Education; and The Ohio Department of Education.

c. The "parties" refers to the named Plaintiffs, the plaintiff class, and Defendants.

d. The eleven "Target Districts" are the: Akron City School District, Canton City School District, Cincinnati Public School District, Cleveland Metropolitan School District, Columbus City School District, Dayton Public School District, East Cleveland City School District, Lima City School District, Toledo Public School District, Youngstown City School District, and Zanesville City School District.

e. "LRE," when used in this Agreement, refers to the percent of students with disabilities ages 6 through 21 served inside the regular class environment 80 percent or more of the day. This is measured by Indicator 5a of the SPP.

f. "Urban Support Team" refers to a unit within ODE's Office of Exceptional Children that provides and helps manage support and technical assistance to Ohio's urban districts as part of ODE's state support system for special education.

g. "Educational Service Centers" are service providers that contract with client school districts for the provision of administrative, academic, fiscal, and operational support services as currently described in Ohio Revised Code Sections 3313.843 and 3313.845.

h. "State Support Teams" are regional teams, coordinated by ODE, that provide technical assistance to Ohio school districts to improve school climate and learning outcomes, with a focus on students with disabilities.

i. The "State Advisory Panel for Exceptional Children (SAPEC)" is an advisory panel created pursuant to 34 C.F.R. Part 300.167 - 300.169. Defendants intend to submit to SAPEC the plan described in paragraphs 1-2 below.

j. "Positive Behavioral Interventions and Supports" (PBIS) is a school-wide approach to improving school climate and student behavior. PBIS includes three levels of support. Tier I is for all students. Tier II is direct interventions for students, such as counseling. Tier III is more intensive interventions.

k. The "Effective Date" is the date that this Agreement is approved by the Court.

- Counterparts. This Agreement may be executed in counterparts and each counterpart will become effective and binding on the Effective Date of this Agreement.

The parties have now set their hands this day:

For the Plaintiffs:

_____  11-5-2018
Kerstin Sjoberg, Disability Rights Ohio                 Date

_____  11/5/2018
Douglas G. Green, Steptoe & Johnson LLP          Date

_____  11/5/2018
Ira A. Burnim, Judge Bazelon Center for              Date
Mental Health Law

Class Counsel

For the Defendants:

_____  11-2-2018
Paolo DeMaria                                                        Date
State Superintendent of Public Instruction

8