**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

John Doe, *et al*.,

        **Plaintiffs,**

                                   **Case No.: 2:91-cv-00464**

      **v.**                         **JUDGE MICHAEL H. WATSON**
                                        **Magistrate Judge King**

State of Ohio, *et al*.

        **Defendants.**

---

## REPORT AND RECOMMENDATION

---

The parties to this litigation have entered into a Settlement Agreement (*see* Doc. 584) and have filed for final approval of that Settlement Agreement (Doc. 597). The Court granted preliminary approval of the Settlement on November 15, 2019 and ordered notice to be provided to class members in the method described in the Court's Order (Doc. 585). Plaintiffs also filed a Motion for Attorneys' Fees and Costs on December 5, 2019 (Doc. 588) with supplemental materials filed on February 4, 2020 (Doc. 593). The fairness hearing held on February 11, 2020 was referred to the Undersigned to preside over and to be followed by a report and recommendation (Doc. 589). The Court heard from the Parties, as well as certain class members and stakeholders who provided comments regarding the Settlement Agreement. Having considered the Settlement Agreement, along with the Parties' arguments in support of final approval, the comments the Court received from class members and stakeholders, and Plaintiffs' motion for attorneys' fees and costs, it is **RECOMMENDED** that the Court **GRANT** final approval of the Settlement Agreement, award attorney's fees, costs, and expenses in the amount of $3,000,000.00, and enter final judgment in this case.

# I.  BACKGROUND

## A.  Procedural History

This case began almost two decades ago. As it developed over the years, the central focus of the case became whether Defendants were meeting their obligations to provide a "free appropriate public education" ("FAPE") under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*, and Section 504 of the Rehabilitation Act of 1973 ("Section 504").

IDEA requires that all students with disabilities "have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). Section 504 requires that "[a] recipient [of federal financial assistance] that operates a public elementary or secondary education program or activity … provide a free appropriate public education to each qualified [ ] person [with a disability] who is in the recipient's jurisdiction, regardless of the nature or severity of the person's [disability]." 34 C.F.R. § 104.33(a).

In 1996, the Court certified a class of: "All children, ages three through 21, currently enrolled or seeking enrollment, now or in the future, in Ohio's public school system, who have a disability . . . , and who require, as a result of their disability, special education and related services or accommodations that are designed to meet individual educational needs of students with disabilities as adequately as the needs of nondisabled children are met, and the parents or guardians of such children." Doc. 59, PageID# 5445 (Feb. 20, 1996).

The current phase of litigation began in October 2009, after the parties had entered into a limited Consent Decree (Doc. 168). Plaintiffs asserted at that stage that there are systemic denials of FAPE in at least 11 urban districts and that Ohio has failed to meet its obligations

under IDEA and Section 504 to identify and eliminate these systemic violations. The record reflects extensive discovery, including numerous depositions and expert reports by both sides. In October 2017, the Parties began an extended mediation, with Columbus attorney Frank Ray acting as the mediator. Through mediation, the parties came to a settlement of their claims, memorialized in the Settlement Agreement executed in November 2018.

### B. The Settlement Agreement

The terms of the Agreement are designed to improve special education both across the State and especially in the 11 Districts. The Parties agreed that the Ohio Department of Education ("ODE") will develop a plan (the "State's Plan") for a redesigned state support system for special education, with a particular focus on the 11 Districts. The State's Plan will be designed to improve rates of achievement, including least restrictive environment ("LRE") rates, for students with disabilities, particularly in the 11 Districts. The State's Plan must be informed by several strategies, including:

1. Measures designed to meet or exceed existing or updated targets for achievement and LRE;

2. Increased focus on language and literacy, including early literacy;

3. Additional professional development;

4. Activities to improve school climate and support the implementation of positive behavior interventions and multi-tiered systems of support;

5. Strategies for improving post-secondary transition services as well as informing parents that students may continue to receive special education until they reach age 22 or have met graduation requirements; and

6. Technical assistance to the 11 Districts to support the development of their own improvement plans.

The State's Plan must be developed in consultation with an Advisory Group (the "Advisory Group") comprised of at least seven members with a broad range of experience in the

area of special education.  The Advisory Group will assess the State's progress and determine whether desired outcomes are being achieved.  The State's Plan must include a mechanism for modification if desired outcomes are not being achieved.

The Parties' Settlement Agreement will be implemented over a period of five years and includes a dispute resolution process that provides for, as necessary and appropriate, resort to the Court.

### C.    Attorneys' Fees and Costs

During mediation (although after the Parties had reached agreement on substantive terms, Supplemental Declaration of Kerstin Sjoberg, ¶ 7 (Doc. 593-1), the Parties also agreed to a resolution of Plaintiffs' claim for fees and costs.  Plaintiffs had initially requested $5,782,214.46 in attorneys' fees and $612,021.18 in costs for work performed over the nine years of litigation after entry of the Consent Order.  This figure was based on 11,614.85 hours of attorney time and 4,305.6 hours of paralegal time.  During mediation, the Parties agreed that Defendants would pay Plaintiffs $3,000,000 over a period of five years in full satisfaction of Plaintiffs' claim for attorneys' fees and costs.  The Parties also agree that this payment would include any future claim for fees and expenses for Plaintiffs' attorneys' work on or with the Advisory Group.

### D.    This Court Granted Preliminary Approval

As noted *supra*, the Court granted preliminary approval of the Settlement Agreement, directed that notice be provided to members of the Class consistent with the Parties' proposed procedure, and set the matter for a final fairness hearing on February 11, 2020 (Doc. 585).

### E.    Completion of Parties' Notice Obligations

On December 2, 2019, ODE posted the Notice on its website and sent the Notice via email to all Local Education Agencies ("LEA"), State Support Teams ("SST"), and Educational Service Centers ("ESC") and requested that each post the Notice on their websites as well as in a

central location in all buildings open to the public (Doc. 587-2, ¶¶ 3-4).  ODE also requested that school districts send the Notice directly to the parents or students through email, any electronic portals (for example, parent or student portals used to distribute grades, assignments or forms) or other means reasonably calculated to reach the parents or students in their district.  *Id.*

Disability Rights Ohio also posted the Notice on its website on November 12, 2019, and sent the Notice through its Constant Contact listserv and posted the Notice on its Facebook page on November 13, 2019 (Doc. 587-1, ¶ 3(d)).  Disability Rights Ohio also provided the Notice to all class representatives on November 26, 2019, as well as to all individuals who called and requested a copy.  *Id.* at ¶ 3(a), (b); (Doc. 597-2, ¶ 11).  By the end of the comment period, Disability Rights Ohio had received 43 telephone calls and e-mails (Doc. 597-2, ¶ 10).  Finally, Disability Rights Ohio provided information, including the Notice, to over fifteen organizations so that they could, in turn, disseminate the Notice to the individuals whom they serve (Doc. 587-1, ¶ 3(c)).

As directed by the Court, the Parties met their notice obligations and provided the required documentation to the Court by December 5, 2019.

**F.      Fairness Hearing on February 11, 2020**

The Undersigned held a Fairness Hearing on February 11, 2020.  Counsel, Named Plaintiffs, and other Class Members were present.  All counsel supported the final approval of the Settlement Agreement.  The Court also heard from four Class Members or stakeholder who

had submitted timely comments, three of whom supported the proposed settlement and one of

whom objected.  Those comments are discussed below.

## II.    APPROVAL OF THE CLASS ACTION SETTLEMENT

### A.    The Settlement Agreement Merits Final Approval.

Before finally approving a class action settlement, a District Court must conclude that the

settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  In making this

determination, the Court considers the following factors:

> (1) the risk of fraud or collusion; (2) the complexity, expense, and
> likely duration of the litigation; (3) the amount of discovery engaged
> in by the parties; (4) the likelihood of success on the merits; (5) the
> opinions of class counsel and class representatives; (6) the reaction
> of [ ] class members; and (7) the public interest.

*In re Packaged Ice Antitrust Litig.*, No. 17-2137, 2018 WL 4520931, at *6 (6th Cir. May 24,

2018) (citing *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen.*

*Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)); *see also Poplar Creek Development Co. v.*

*Chesapeake Appalachia, LLC*, 636 F. 3d 235, 244 (6th Cir. 2011) (citations and internal

quotation marks omitted).  The Court "enjoys wide discretion in assessing the weight and

applicability of these factors."  *Granada Investments, Inc. v. DWG Corp.*, 962 F. 2d 1203, 1205-

06 (6th Cir. 1992) (citation omitted).

The 2018 amendments to Rule 23 also contain specific factors that federal courts must

consider in determining whether a proposed settlement is fair, reasonable, and adequate:

> [T]he court may approve [the proposed settlement] only after a
> hearing and only on finding that it is fair, reasonable, and adequate
> after considering whether:
> (A) the class representatives and class counsel have adequately
> represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> (i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). This amendment to the Rule was not intended to "displace" the factors developed by the Circuit Courts. *See* Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment. Therefore, in considering whether to approve the parties' proposed settlement, a District Court in the Sixth Circuit should look to both the factors found in Rule 23 as well as the Sixth Circuit's traditional factors. *See*, *e.g.*, *Hays v. Eaton Grp. Attorneys, LLC*, No. CV 17-88-JWD-RLB, 2019 WL 427331, at *9 (M.D. La. Feb. 4, 2019) ("There is, not surprisingly, overlap between the 2018 amendment's fairness, reasonableness and adequacy considerations and those set out in the . . . [c]ircuit test. This [c]ourt will therefore combine the two in its review and analysis."); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019) ("The [c]ourt first considers the Rule 23(e)(2) factors, and then considers the [Circuit's] additional *Grinnell* factors not otherwise addressed by the Rule 23(e)(2) factors."). Each of the factors identified in case law or in Rule 23(e)(2) are discussed below; those factors that overlap are discussed together.

## 1.      The Risk of Fraud or Collusion

"Courts presume the absence of fraud or collusion unless there is evidence to the contrary." *Stanley v. Turner Oil & Gas Properties, Inc.*, No. 2:16-CV-386, 2018 WL 2928028, at *5 (S.D. Ohio June 12, 2018) (Deavers, M.J.) (quoting *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006)); *see also Brent v. Midland Funding, LLC*, No. 3:11 CV 1332, 2011 WL 3862363, at *15 (N.D. Ohio Sept. 1, 2011) ("[T]he courts respect the integrity of

counsel and presume the absence of fraud and collusion in negotiating the settlement, unless evidence to the contrary is offered.") (quoting 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11.51 (4th ed.2002)) (quotation marks omitted).

Here, the Parties negotiated in good faith—and no facts suggest otherwise. The Parties have engaged in years of litigation, including extensive discovery, and multiple mediation sessions. Throughout discovery, the parties vigorously sought out evidence to support their claims. Declaration of Kerstin Sjoberg, ¶ 15 (Doc. 588-1). The Parties exchanged tens of thousands of documents during the discovery process pursuant to written discovery requests. *Id.* ¶ 15. Additionally, Plaintiffs developed evidence from three different expert teams that asserted systematic denials of FAPE. *Id.* ¶¶ 16-17. The record amply documents Defendants' responsive efforts. *See Bronson v. Bd. of Educ. of City Sch. Dist. of City of Cincinnati*, 604 F. Supp. 68, 77 (S.D. Ohio 1984) (relevance of negotiations occurring after the case was well-advanced). Finally, the Parties engaged in fact witness discovery through written requests as well as multiple depositions of class representatives and class exemplars. Declaration of Kerstin Sjoberg, ¶ 15 (Doc. 588-1).

The Parties participated in multiple mediation sessions before reaching the Settlement Agreement. The most recent mediation process spanned more than a year and was achieved only with the assistance of a capable and experienced mediator, Frank Ray, Esq. Supplemental Declaration of Kerstin Sjoberg, ¶ 7 (Doc. 593-1). *See Thompson v. Midwest Found Indep. Physicians Ass'n.*, 124 F.R.D. 154, 158-59 (S.D. Ohio 1988) (relevance of extended negotiations); *see also* Fed. R. Civ. P. 23(e)(2)(B) (requiring the proposed settlement be "negotiated at arm's length").

The Parties' litigation history, including extensive discovery, indicates that the Settlement Agreement reflects a good-faith compromise, not an act of collusion or fraud. Indeed, as defense counsel represented at the Fairness Hearing, both Parties were preparing as if this case were proceeding to trial and the Parties were able to reach agreement only after extensive mediation. In short, the case has been vigorously contested and litigated.

This factor favors approval of the Settlement Agreement.

### 2. The Costs and Risks of Pursuing a Continued Litigated Outcome Suggest that the Proposed Settlement is a Fair, Reasonable, and Adequate Result.

Rule 23 requires courts to consider "the costs, risks, and delay of trial and appeal" in determining whether to approve settlement agreements. Fed. R. Civ. P. 23(e)(2)(C)(i); *see also*, *Packaged Ice*, 2018 WL 4520931, at *6 (citing *Gen. Motors Corp.*, 497 F.3d at 631). In considering these factors, courts look to the complexity, expense, and likely duration of the litigation. Settlement is more likely to be approved if the case has a long history, *Bronson*, 604 F. Supp. at 77; if the issues involved would require significant trial time to resolve, *In re Cincinnati Policing*, 209 F.R.D. 395, 400 (S.D. Ohio 2002); if appeals are likely to further delay ultimate resolution, *e.g.*, *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 371 (S.D. Ohio 1990); or if the plaintiffs' circumstances make delay particularly prejudicial, *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1015 (S.D. Ohio 2001).

Here, the costs and risks of continued litigation weigh in favor of approval. This case began almost two decades ago, with the current phase of litigation beginning in October 2009 after the parties had entered into a limited consent decree. Litigating this case through trial would have entailed further delay and additional risk and expense, including the risk of class

decertification.[1] Approval of the Settlement Agreement thus results in both finality for the Parties and immediate benefits for class members.

Additionally, the Settlement Agreement is informed by the expert reports developed by both Plaintiffs and Defendants during discovery. *See* Declaration of Dr. Thomas Hehir, ¶ 8 (Doc. 597-1, PageID# 10871). Thus, the Settlement Agreement is informed by data and the analyses of multiple educational experts.

This factor, too, favors approval of the Settlement Agreement.

### 3. The Likelihood of Success of the Merits

"The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits. The likelihood of success, in turn, provides a gauge from which the benefits of settlement must be measured." *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 245 (6th Cir. 2011) (citations and internal quotation marks omitted).

The primary disputed issue in this action is whether, under Ohio's current system, students in Ohio public schools receiving special education services are receiving the required FAPE within the least restrictive environment. In order to establish their claims, Plaintiffs were required to establish that the actions of the Defendants resulted in a systemic failure by Ohio to provide the minimum education required under IDEA and Section 504. If the case were permitted to continue as a class action, this requirement would have posed a significant evidentiary burden on Plaintiffs, given the existence of over six hundred traditional districts. Adding to this complexity, the Supreme Court issued its decision in *Endrew F. ex rel. Joseph F.*

---

[1] Defendants had moved to decertify the class (Doc. 538) and the Court denied that motion only on the grounds of mootness, in light of the proposed settlement. Order (Doc. 585, PageID# 9986).

*v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988 (2017), which altered the theretofore governing standard for FAPE, during the pendency of the litigation.

Given the evidentiary burden and the shifting standards related to FAPE, it is not at all clear that either side would have succeeded on the merits. Both sides shared considerable risk in moving forward with this case to a decision on the merits. Defendants risked an adverse judgment that could have offered less flexibility to them than does the Settlement Agreement; Plaintiffs risked an entirely adverse judgment or a judgment that offered less favorable relief, and certainly a delay in any relief.

Under these circumstances, the certainty of the benefits provided by the Settlement Agreement favors approval.

> ### 4. The Class Counsel and Class Representatives Have Adequately Represented the Class.

Rule 23 requires courts to consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2). Class counsel are qualified, experienced, and capable of conducting the litigation. Plaintiffs' counsel consists of lawyers from Disability Rights Ohio, Steptoe & Johnson LLP ("Steptoe"), and the Bazelon Center for Mental Health Law ("Bazelon"). Supplemental Declaration of Kerstin Sjoberge, ¶ 3 (Doc. 593-1). Steptoe is a national—indeed international—law firm, with vast experience in complex litigation. *Id.* ¶ 5. Bazelon has a national practice and a national reputation for expertise in complex disability rights litigation. *Id.* Disability Rights Ohio is the state-designated protection and advocacy system for individuals with disabilities, and the organization's attorneys involved in this case have many years of experience in disability rights litigation. *Id.* ¶ 4. Defendants' counsel also have many years' experience in litigation before this Court. In short, all counsel are fully qualified to represent the interests of their clients in this case.

Additionally, the class representatives have vigorously prosecuted the interests of the class throughout the litigation and settlement negotiations. The named Plaintiffs fully participated in the litigation, including by responding to written discovery requests, providing copious records, and attending depositions. Declaration of Jason Johnson (Doc. 597-3); Declaration of Amy Stinson (Doc. 597-4). During mediation, class representatives were kept informed of the progress of mediation and had the opportunity to raise with class counsel any concerns they had. Declaration of Jason Johnson, ¶ 22 (Doc. 597-3); Declaration of Amy Stinson, ¶ 18 (Doc. 597-4).

This factor, too, weighs in favor of approval of the Settlement Agreement.

### 5.    The Opinions of Class Counsel and Class Representatives

The United States Court of Appeals for the Sixth Circuit has observed that "court[s] should defer to the judgment of experienced counsel who [have] competently evaluated the strength of [their] proofs." *See, e.g.*, *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983) ("[T]he deference afforded counsel should correspond to the amount of discovery completed and the character of the evidence uncovered."); *see also Kritzer v. Safelite Solutions, LLC*, No. 2:20-CV-0729, 2012 WL 1945144, at *7 (S.D. Ohio May 30, 2012) (citation omitted) ("The Court gives weight to the belief of experienced counsel that a settlement is in the best interests of the class.").

Collectively, Plaintiffs' counsel has decades of experience in complex federal civil rights litigation on behalf of people with disabilities. Declaration of Kerstin Sjoberg, ¶ 18 (Doc. 588-1). State Defendants likewise have experienced counsel with decades of litigation experience. After significant discovery and arm's length negotiations, the Parties have reached settlement. These well-experienced Class Counsel have concluded that this settlement is fair and reasonable and confers substantial benefits on the class. Class representatives have also approved the Settlement

Agreement. *See* Declaration of Jason Johnson, ¶¶ 24, 25 (Doc. 597-3); Declaration of Amy Stinson, ¶¶ 19, 20 (Doc. 597-4).

This factor also favors approval of the proposed settlement.

**6. Reaction of Class Members**

In the Court-ordered Notice, class members were afforded a 60-day period to provide comments to the Court regarding the Settlement Agreement. The Court received approximately 40 comments from class members or stakeholder from different areas of the State. (Docs. 591-1; 592, 598).[2] All but two of the comments favored the Settlement Agreement.[3] The favorable comments include a letter in support from the Ohio Coalition for the Education of Children with Disabilities ("OCECD"), a leading disability education advocacy organization in Ohio, as well as a letter in support from the Ohio Poverty Law Center. Moreover, three commenters spoke in favor of the settlement at the Fairness Hearing held by the Court. One commenter discussed her hope that this settlement agreement will help current and future families of children with disabilities have more support and resources. Another commenter was pleased with the settlement agreement's focus on inclusive education into general education classrooms. The third commenter similarly voiced her support for the settlement agreement.

As noted *supra*, the Court received two timely objections, (Doc. 591-1 at PageID ## 10097–99, 10100-102), and one of those objectors spoke against the Settlement Agreement at the Fairness Hearing. That objector voiced general agreement with the Settlement Agreement but noted her concern about opportunity for parental involvement and a need to ensure oversight of the Multi-Tiered System of Support ("MTSS") incorporated into the State Plan so as to avoid delay or denial of individual children's evaluations for qualifying disabilities. In response to the

---

[2] It is significant to note in this regard that the class consists of more than 250,000 individuals.
[3] A third, vaguely-worded objection was filed, but that comment was untimely. (Doc. 596).

objector's comments, Class Counsel and counsel for Defendants observed that the Settlement Agreement in fact addressed the need for oversight.  They also noted the opportunity for parental involvement in the Advisory Group contemplated in the Settlement Agreement.[4]

The other written objection appears to have been partially based on a misunderstanding that the Settlement Agreement would affect only the 11 Target Districts.  As counsel stated during the Fairness Hearing, however, while the Settlement Agreement focuses on the 11 Target Districts, the State Plan will apply to every school district in the State of Ohio.

The Court has considered all timely submitted comments, including those that did not contain all requested information.  The overwhelming majority of comments were supportive of the Settlement Agreement, and the comments of organizations with particular expertise in providing services to students with disabilities also supported the Settlement Agreement.  There is no indication that a significant number of class members have concerns about the Settlement Agreement, and the Court believes that the parties can address the objectors' concerns through implementation of the Settlement Agreement.  Accordingly, this factor favors approval of the Settlement Agreement.

### 7.     The Public Interest

"Public policy generally favors settlement of class action lawsuits."  *Hainey v. Parrott*, 617 F.Supp.2d 668, 679 (S.D. Ohio 2007) (citations omitted).  In this case, the Settlement Agreement provides significant relief to the class, including redesign of the state-wide system of support to school districts to improve outcomes for students with disabilities.  The Settlement Agreement also includes a focus on 11 Districts identified as having the most significant needs. The Settlement Agreement thereby serves the public interest. The public has a strong interest in

---

[4] Counsel for Disability Rights Ohio also observed that parents may, informally, contribute to implementation and oversight of the State Plan through communication with that organization.

improving education and educational outcomes.  The Settlement Agreement is intended to

improve educational outcomes for students with disabilities across the State, which will increase

the skills and qualifications of students entering Ohio's workforce and institutions of higher

education, as well as improve the prospects for independent living on the part of students with

the most significant disabilities.

In addition, the public is served by the avoidance of the costs and time that would be have

been expended on trial and possible appeal from any judgment entered in this case, and by the

conservation of judicial resources.  The Settlement Agreement provides more immediate relief to

class members than would further litigation.

This factor therefore favors approving the Settlement Agreement.

**B.      Method of Distributing Relief to the Class**

The Court must also consider "the effectiveness of any proposed method of distributing

relief to the class." Fed. R. Civ. P. 23(e)(2)(C)(ii).  Here, the Settlement Agreement

contemplates the development of a State Plan that will be implemented on a state-wide basis

with a particularized focus on the 11 Districts.  The relief obtained through the Settlement

Agreement will benefit all class members.  Additionally, all class members retain the right to

pursue IDEA's procedural safeguards processes (*i.e.*, due process or state complaints) if they

have claims regarding the individual services they receive from their school districts.

This factor favors approval of the Settlement Agreement.

**C.      The Settlement Agreement Treats the Class Members Equitably Vis-à-Vis
         One Another.**

Rule 23 also directs courts to consider whether the class members will be treated

equitably vis-à-vis one another.  Fed. R. Civ. P. 23(e)(2)(D). Here, the Settlement Agreement

treats class members equitably.  The Settlement Agreement contains commitments from the State

that will benefit all class members. Its focus on the 11 Districts is appropriate, given the evidence developed during the litigation identifying those 11 Districts as most in need of attention, compared to the rest of the State.

This factor favors approval of the Settlement Agreement.

## III.    AWARD OF ATTORNEYS' FEES AND COSTS

On December 5, 2019, Plaintiffs' counsel filed a motion, pursuant to Fed. R. Civ. P. 54(d)(2), for approval of the negotiated sum of $3,000,000 in attorneys' fees and costs. (Doc. 588). As agreed to by the Parties, the award would be paid in annual installments of $600,000 per year for a period of five years. Supplement Declaration of Kirsten Sjoberg, ¶ 11 (Doc. 593-1). Pursuant to Rule 23(h), notice of the motion was disseminated to class members as part of the Notice of the Settlement Agreement. Class members were also afforded the opportunity to comment on the agreed-upon fee and costs award as well as to be heard on the matter at the Fairness Hearing. Three class members noted the award in their comments, one specifically agreeing with the award, one who did not express a view, and one who erroneously interpreted the award as a fund available to parents of students with disabilities.

Rule 23 authorizes a court to "award reasonable attorney's fees and nontaxable costs that are authorized by the parties' agreement." Fed. R. Civ. P. 23(h). When evaluating a negotiated fee award in civil rights cases such as this, a court should give weight to the agreement between the parties where there are no collusion concerns and there have been months of arms-length negotiations. *See*, *e.g.*, *Smith v. Ohio Dep't of Rehab. & Correction*, No. 2:08-CV-15, 2012 WL 1440254, at *18–19 (S.D. Ohio Apr. 26, 2012) (approving settlement agreement reached after three years of litigation and two years of settlement discussions); *cf. Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 277 (6th Cir. 2016) (affirming district court's determination that

"two-and-a-half years of litigation, extensive discovery, ongoing settlement negotiations, and formal mediation session all weighed against the possibility of fraud or collusion").

For the reasons set out below, the Undersigned **RECOMMENDS** approval of Plaintiffs' Motion for Attorneys' Fees and Costs. Plaintiffs are entitled to attorneys' fees and costs pursuant to the Parties' Settlement Agreement and federal law. Additionally, the amount of fees and costs sought are reasonable.

A.     **Attorneys' Fees**

The Parties have reached agreement on fees. Both IDEA and Section 504 include fee-shifting provisions entitling parties who secure relief through a judgment or settlement to an award of attorneys' fees.[5] In order to recover fees, a party must be a prevailing party. Under well-settled law, a party prevails when (1) it receives "at least some relief on the merits of [its] claim," and (2) there is a "judicially sanctioned change in the legal relationship of the parties." *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 603, 605 (2001) (internal citations and quotation marks omitted); *Tompkins ex rel. A.T. v. Troy Sch. Dist.,* 199 F. App'x 463, 466 (6th Cir. 2006) (internal citations omitted) (IDEA case); *B.H. v. W. Clermont Bd. of Educ.*, 788 F. Supp. 2d 682, 702 (S.D. Ohio 2011) (internal citations omitted) (IDEA case).

Here, there is no dispute that Plaintiffs are prevailing parties. Under the Settlement Agreement, Plaintiffs receive "relief on the merits of [their] claim" and there is a "judicially

---

[5] IDEA, 20 U.S.C. § 1415(i)(3)(B)(i)(I) ("In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs-- . . . (I) to a prevailing party who is the parent of a child with a disability."); Section 504, 29 U.S.C. § 794a ("In any action or proceeding to enforce or charge a violation of a provision of this subchapter, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."). Attorneys' fees are typically awarded as part of the allowable costs under 28 U.S.C. § 1920. *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 297-98 (2006) ("This language ['may award reasonable attorney's fees as part of the costs'] simply adds reasonable attorney's fees incurred by prevailing parents to the list of costs that prevailing parents are otherwise entitled to recover [set out in 28 U.S.C. § 1920]".).

sanctioned change in the legal relationship of the parties." *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health and Human Res.* 532 U.S. 598, 603, 605 (2001).

"When awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Rawlings v. Prudential-Bache Properties, Inc.,* 9 F. 3d 513, 516 (6th Cir. 1993) (citation omitted). District courts apply a two-part analysis to assess the reasonableness of an attorney fee petition. *See In re Cardinal Health Inc. Securities Litigation*, 528 F. Supp. 2d 752, 760 (S.D. Ohio 2007). First, the Court must determine the appropriate method to calculate the fees, using either the percentage of fund or the lodestar approach. *Id.* Whichever method is utilized, the Sixth Circuit requires only that awards of attorney's fees be reasonable under the circumstances. *Rawlings,* 9 F.3d at 516. Second, the Court must consider six factors to assess the reasonableness of the fee. *See Moulton v. U.S. Steel Corp.,* 581 F.3d 344, 352 (6th Cir. 2009) (citation omitted); *Ramey v. Cincinnati Inquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974).

Plaintiffs have negotiated an attorney fee award of $3,000,000. Given the facts of this case, the Undersigned finds that the requested fee is reasonable under a lodestar analysis and **RECOMMENDS** that the request be approved.

### 1.     Lodestar Method

Rule 23(h) of the Federal Rules of Civil Procedure provides a consistent standard for all awards of attorney's fees in class action lawsuits and requires federal courts to assure "that the amount and mode of payment of fees are fair and proper." Fed. R. Civ. P. 23(h) advisory committee's note to 2003 amendment. The Rule recognizes that the nature of the Court's review depends on the circumstances of the case and should be guided by applicable case law. Fed. R. Civ. P. 23(h).

In reviewing a fee award in a settlement context, a court's primary concern must be the reasonableness of the award. *Geier v. Sundquist*, 372 F.3d 784, 792 (6th Cir. 2004) (citing *Blum v. Stenson*, 465 U.S. 886, 893 (1984)); *see also* Fed. R. Civ. P. 23(e)(2) (class action settlements should be approved when they meet fair, reasonable, and adequate standard). In cases such as this, "where litigants are vindicating a social grievance," district courts should use the lodestar method rather than the common fund doctrine to determine reasonable attorney's fees. *Geier*, 372 F. 3d at 790. The lodestar method should be used even if a dollar value could be assigned to the relief obtained. *Id.*

The lodestar method is based on the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). There is a strong presumption that the lodestar is the amount plaintiffs should receive as compensation for attorney time. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) ("A strong presumption that the lodestar figure—the product of reasonable hours times a reasonable rate—represents a 'reasonable' fee is wholly consistent with the rationale behind the usual fee-shifting statute . . . ."); *Blum*, 465 U.S. at 897; *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000) ("Generally, a 'strong presumption' favors the prevailing lawyer's entitlement to [their] lodestar fee.") (internal citations omitted).

"[M]odifications to the lodestar are proper only in certain 'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts.'" *Adcock-Ladd*, 227 F.3d at 350 (quoting *Delaware Valley Citizens' Council,* 478 U.S. at 565) (internal citation omitted); *Gibson v. Forest Hills Local Sch. Dist. Bd. of Educ.,* 655 F. App'x 423, 443 (6th Cir. 2016) ("[B]inding authority required the district court to more clearly explain which factors motivated its decision to depart from the lodestar calculation . . . .").

## 2. Hourly Rates

"It is well-established that a district court has broad discretion to determine what constitutes a reasonable hourly rate for an attorney." *Am. Broad. Companies, Inc. v. Brunner,* No. 1:04CV750, 2008 WL 11450441, at *10 (S.D. Ohio Sept. 30, 2008) (citations and quotation marks omitted). To determine the rates at which counsel should be compensated, courts should look to prevailing market rates in the relevant community for lawyers with comparable skill and experience.[6] *Blum*, 465 U.S. at 895; *Adcock-Ladd*, 227 F.3d at 350 (quoting *Blum*, 465 U.S. at 895) ("A trial court, in calculating the 'reasonable hourly rate' component of the lodestar computation, should initially assess the '*prevailing market rate in the relevant community*.'") (emphasis in original).

To avoid litigation over the appropriate "market rate" for non-profit counsel, some federal courts, including those in the Southern District of Ohio, have identified a set of presumptive rates to be used in fee-shifting cases. These rates are annually updated based on inflation. In the Southern District of Ohio, courts have used the rates identified by the Rubin Committee in 1983, adjusted upward each year by 4% for inflation ("Rubin rates"). *See, e.g., Gibson v. Forest Hills Sch. Dist., Bd. of Educ.*, No. 1:11-CV-329, 2014 WL 3530708, at *6 (S.D. Ohio, July 15, 2014) ("Judges in the Southern District of Ohio have applied the Rubin Committee rate with a 4% annual cost-of-living allowance to measure the reasonableness of fees requested.") (citing *Hunter v. Hamilton Cty. Bd. of Elections*, No. 1:10-CV-820, 2013 WL 5467751, at *17 (S.D. Ohio Sept. 30, 2013)); *Schumacher v. AK Steel Corp. Ret. Acc. Pension*

---

[6] The same rule applies for attorneys who work for a non-profit, like Disability Rights Ohio, and Bazelon, which does not typically charge for its services, or if their participation in the case is on a pro bono basis, as is the case with Steptoe's lawyers in this litigation. *See Blum*, 465 U.S. at 894 ("[C]ongress did not intend the calculation of fee awards to vary depending on whether plaintiff was represented by private counsel or by a nonprofit legal services organization."); *Eggers v. Bullitt Cty. Sch. Dist.,* 854 F.2d 892, 899 (6th Cir. 1988) (attorneys for publicly funded agencies are entitled to fees at fair market value); *Lentz v. City of Cleveland,* No. 1:04 CV 669, 2011 WL 5360141 at *7 (N.D. Ohio Nov. 7, 2011) (awarding non-profit attorney a rate of $475 per hour).

*Plan*, 995 F. Supp. 2d 835, 844 (S.D. Ohio 2014). Courts in the District of Columbia have established a similar method for calculating reasonable attorneys' fees, known as "Laffey rates." *Miller v. Holzmann*, 575 F.Supp. 2d 2, 18 n. 29 (D.D.C. 2008).

The Rubin rates are also consistent with rates used by other district courts in the Sixth Circuit. *See In re Sulzer Orthopedics, Inc.,* 398 F.3d 778, 780 (6th Cir. 2005) (approving rates of $200-$500/hour); *Ne. Coal. for Homeless v. Brunner*, No. 2:06-CV-896, 2010 WL 4939946, at *7 (S.D. Ohio Nov. 30, 2010) (court approved as reasonable, rates ranging from $280-$400/hour); *Estep v. Blackwell*, No. 1:06CV106, 2006 WL 3469569, at *2 (S.D. Ohio Nov. 29, 2006) (court approved rates ranging from $190-$400/hour); *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, No. 1:08-CV-605, 2010 WL 1751995, at *4 (N.D. Ohio Apr. 30, 2010) *(*court approved rates ranging from $250-$450/hour for attorneys and $110-$150/hour for paralegals); *Jordan v. Michigan Conference of Teamsters Welfare Fund*, No. 96-73113, 2000 WL 33321350, at *6 (E.D. Mich. Sept. 28, 2000) (court approved rates of $275 and $300/hour).

The $6 million originally sought by Plaintiffs was based on the number of hours believed by Plaintiffs' counsel to have been reasonably spent on the case, valued at Rubin rates for Disability Rights Ohio lawyers, and at Laffey rates for District of Columbia-based attorneys:

| Disability Rights Ohio | | | Bazelon Center | | | Steptoe & Johnson LLP | | |
|---|---|---|---|---|---|---|---|---|
| Counsel | Years Exp. | Rate | Counsel | Years Exp. | Rate | Counsel | Years Exp. | Rate |
| Susan Tobin | 37 | $506.44 | Ira Burnim | 40 | $613.00 | Douglas Green | 40 | $613.00 |
| Kristin Hildebrant | 29 | $506.44 | Allison Barkoff | 20 | $544.00 | Raisa M. Daigneault | 9 | $417.00 |
| Kerstin Sjoberg | 15 | $447.60 | Lewis Bossing | 19 | $544.00 | Jill Maguire | 8 | $417.00 |
| Ronda Cress | 12 | $447.60 | Emily Read | 14 | $491.00 | Mark Murphy | 5 | $351.00 |
| Jason Boylan | 11 | $447.60 | Julia Graff | 13 | $491.00 | | | |
| Laura Osseck | 11 | $447.60 | Andrew Christy | 4 | $358.00 | | | |

| | | | | | |
|---|---|---|---|---|---|
| Earnestine Hargett | 29 | $200.00 | Alice Abrokwa | 6 | $358.00 |
| Laura Bordeau | 14 | $149.60 | | | |
| Christine Retherford | 6 | $149.60 | | | |
| Scott Winzig | 6 | $149.60 | | | |
| Amanda Danko | <5 | $149.60 | | | |

Declaration of Kerstin Sjoberg, ¶ 21 (Doc. 588-1); Declaration of Ira Burnim, ¶ 20 (Doc. 588-2); Declaration of Douglas Green, ¶ R (Doc. 588-3).

In calculating their lodestar, it was reasonable for Plaintiffs to value counsel's time according to the Rubin and Laffey rates. Disability Rights Ohio, unsuccessful in recruiting a major Ohio law firm as co-counsel, was justified in seeking the assistance of Bazelon and Steptoe with decades of experience in disability rights and complex litigation. Out-of-market rates for counsel are appropriate when they have "expertise and national practice." *U.S. ex rel Lefan v. Gen. Elec. Co*., 397 F. App'x 144, 146 (6th Cir. 2010); *Louisville Black Police Officers Org. v. City of Louisville*, 700 F.2d 268, 278 (6th Cir.1983 ) (district courts may "look to a national market . . . or any other market they believe appropriate to fairly compensate particular attorneys in individual cases"); *Swapalease, Inc. v. Sublease Exchange.com, Inc*., No. 1:07-CV-45, 2009 WL 1119591, at *5 (S.D. Ohio Apr. 27, 2009) (special education law, like patent law, is "a highly specialized field of practice"). The rates Plaintiffs used were those used by federal courts in counsels' respective markets as the presumptive market rates in fee-shifting cases. The rates are reasonable given the amount and nature of the experience of Plaintiffs' counsel. Moreover, Plaintiffs have submitted a supporting declaration from an experienced attorney attesting to the reasonableness of the rates for purposes of calculating Plaintiffs' lodestar. *See generally* Supplemental Declaration of Kerstin Sjoberg (Doc. 593-1).

Accordingly, the Undersigned concludes that the above listed hourly rates are reasonable.

### 3. Number of Compensable Hours.

The lodestar calculation is also based on hours reasonably expended. *Dowling v. Litton Loan Servicing, LP*, No. 05-CV-098, 2008 WL 906042, at *2 (S.D. Ohio Mar. 31, 2009), *aff'd*, 320 F. App'x 442 (6th Cir. 2009) (citation omitted). That is, "[p]laintiffs' attorney should not recover for hours that are excessive, redundant, or otherwise unnecessary." *Id.* (internal quotation marks and citation omitted). To determine whether hours expended are reasonable, the Court looks to "whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Id.* at *3 (internal quotation marks and citation omitted).

> [T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended. If a claimant clears this hurdle, the burden shifts to the adverse party to demonstrate that a particular entry represents frivolous work . . . Once a plaintiff proffers an itemized and detailed bill, it is well-established that conclusory allegations that the hours are excessive and that counsel employed poor billing judgment do not suffice to undermine it.

*Id.* at *3-4 (internal quotation marks and citations omitted).

Class counsel spent 11,614.85 hours of attorney time and 4,305.6 hours for paralegals litigating this matter since 2009. Supplemental Declaration of Kerstin Sjoberg, ¶ 8 (Doc. 593-1). In arriving at this number, Plaintiffs exercised billing judgment in identifying the attorney time for which to seek compensation. In the exercise of such judgment, Plaintiffs *excluded* all of the following time:

- All time prior to October 22, 2009, *i.e.,* the date of the parties' Consent Decree;

- Time deemed to be excessive, duplicative, or otherwise unnecessary;

- Timekeepers who billed fewer than 75 hours;

- Time related to securing and implementing the Parties' previous Consent Decree; and

- Time on individual advocacy for the representative Plaintiffs.

*Id.* at ¶ 9.

In addition, after excluding the above time, Plaintiffs further reduced their time by reducing travel time by 50% and reducing their total time by 5%, to account for the possibility that, in exercising billing judgment, Plaintiffs missed some time that might be considered excessive or duplicative. *Id.* At the Fairness Hearing, defense counsel reiterated that the fee request reflects a compromise on the behalf of Plaintiffs' counsel.

Based on the evidence submitted by Plaintiff, the Undersigned finds that Plaintiffs' counsel's hours were reasonably expended in pursuit of Plaintiffs' claims.

### 4.  Lodestar Calculation

Class Counsel's reasonable hours at reasonable rates produce a lodestar of $5,782,214.46, not including additional work that was necessary in preparing the motions for approval of the settlement and for the Final Fairness Hearing. *Id.* at ¶ 8.

Accordingly, the Undersigned concludes that the requested fee award of $3,000,000.00, inclusive of costs, is more than reasonable under a lodestar analysis. This is particularly true since, in class action settlements, "[t]he Court may enhance the lodestar with a separate multiplier that can serve as a means to account for the risk an attorney assumes in undertaking a case, the quality of the attorney's work product, and the public benefit achieved." *Mullins v. S. Ohio Pizza, Inc.*, No. 1:17-CV-426, 2019 WL 275711, at *5 (S.D. Ohio Jan. 18, 2019) (citation omitted); *see also Arledge v. Domino's Pizza, Inc.*, No. 3:16-CV-386-WHR, 2018 WL 5023950, at *5 (S.D. Ohio Oct. 17, 2018). The Court is also persuaded of the reasonableness of Plaintiffs'

request in light of the representation made by Plaintiffs' counsel at the Fairness Hearing that the requested amount was proposed by the mediator.

### 5. The *Ramey* Factors

The Sixth Circuit also requires district courts to consider the six "*Ramey* factors": (1) the value of the benefits rendered to the class; (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis (the lodestar cross-check); (5) the complexity of the litigation; and (6) the professional skill and standing of counsel on both sides. *Ramey*, 508 F.2d at 1196. "There is no formula for weighing these factors." *In re Cardinal Health*, 528 F. Supp. 2d at 764. "Rather, the Court should be mindful that each case presents a unique set of circumstances and arrives at a unique settlement, and thus different factors could predominate depending on the case." *Id.* (citing *Rawlings*, 9 F.3d at 516).

On balance, these factors support the requested fee award. First, as discussed above, Plaintiffs achieved a substantial benefit for the class. Second, an award of fees incentivizes attorneys to take such cases. Third, the fee award sought represents approximately 52% of Class Counsel's lodestar figure. Fourth, this case was both factually and legally complex, as it concerned issues related to the special education services provided in hundreds of school districts throughout Ohio, and the case was litigated during a period in which the governing law regarding in the area was in flux. Finally, the Undersigned has observed that both sides were represented by skilled attorneys with extensive experience.

### B. Litigation Costs and Expenses

Plaintiffs have also established that they incurred a total of $612,021.18 in costs and expenses prosecuting this case to date. *See* Supplemental Declaration of Kerstin Sjoberg (Doc.

593-1, PageID## 10543 – 10558). Their request for an award of $ 3 million is inclusive of these costs.

### C.    Timing of Payment

The Undersigned also finds that the timing of the payment of the attorneys' fee and cost award is reasonable. Defendants will pay $600,000 per year over a period of five (5) years. This arrangement avoids the burden to Defendants from being required to make a lump sum payment.

## IV.    CONCLUSION

For all the foregoing reasons, the Undersigned **RECOMMENDS** that the Parties' Joint Motion for Final Approval of the Settlement Agreement (Doc. 597) and Plaintiffs' Motion for Attorney's Fees and Costs (Doc. 588), be **GRANTED** and **FURTHER RECOMMENDS** that the Court **FIND** and **CONCLUDE** as follows:

1. That the proposed settlement is "fair, reasonable, and adequate," in the best interest of the Class, and qualifies for approval pursuant to Rule 23(e). The Court **DIRECTS** the parties to implement the settlement in accordance with the terms and conditions of the Settlement Agreement.

2. That the requirements of Rule 23 and due process have been satisfied in connection with the distribution of notice to the Class.

3. That Plaintiffs should be awarded attorneys' fees and costs in the amount of $3,000,000.00, inclusive of attorney fees, costs and expenses, which is a negotiated amount that is reasonable.

4. Defendants represent that they have notified appropriate state officials pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715 ("CAFA").

5. Approve **DISMISSAL** of this case **WITH PREJUDICE**. All Released Claims should be extinguished, discharged, and released against any and all Released

Parties, without costs except as provided herein. Class members retain their rights to pursue an administrative or judicial action claiming that, as to that class member alone, the class member is not receiving the special education services in the LRE to which the class member is entitled, under IDEA, Section 504, or Ohio law.

6. The Court retains jurisdiction over the case to enforce the terms of the Settlement Agreement, which is incorporated herein by reference, and to resolve any and all disputes thereunder.

## PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d

981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted).


 *s/ Norah McCann King*
United States Magistrate Judge

February 12, 2020